RECEIPT # 58914
AMOUNT $ 150
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 6-3-04

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE
2004 JUN -3 P 12: 44
U.S. DISTRICT COURT
DISTRICT OF MASS.

SHAWN DRUMGOLD, )
    Plaintiff )
  )
v. )   **COMPLAINT**
  )
TIMOTHY CALLAHAN, MICKY ROACH,)
PAUL MURPHY, RICHARD WALSH, and)
THE CITY OF BOSTON, )
    Defendants )

C.A. No. 04-11193 NG
MAGISTRATE JUDGE Cohen

## INTRODUCTION

1. This is an action for money damages for the violation of the plaintiff's constitutional rights brought pursuant to 42 U.S.C. §1983 and M.G. L. c. 12, §11i. Plaintiff Shawn Drumgold alleges that the defendant police officers Timothy Callahan, Paul Murphy, and Richard Walsh withheld exculpatory evidence and knowingly allowed at least one witness to commit perjury before the jury, in violation of the plaintiff's rights under the Massachusetts Constitution and the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. As a result of the misconduct cited above, the plaintiff was convicted of first-degree murder and sentenced to life in prison without parole in October 1989. The plaintiff was released after spending over fifteen years in prison, when the District Attorney entered a nolle prosequi on November 6, 2003. The plaintiff further alleges that the defendant City of Boston, and Boston Police Department had a policy, custom, or practice of improper and inadequate investigation and discipline of acts of misconduct committed by Boston police officers, including withholding of exculpatory evidence. The defendant police officers Callahan, Murphy, and Walsh conspired to conceal the existence of exculpatory evidence and deny the plaintiff his right to a fair trial. The defendant City of

1

Boston had a policy, custom, or practice of failure to train its police officers adequately in the laws regarding exculpatory evidence, perjury, and other laws, rules, and regulations relating to the rights of a citizen charged with a crime. These policies, customs, or practices resulted in implicit tolerance and authorization of continuing misconduct and caused the plaintiff's improper deprivation of his constitutional rights. The defendant Roach, as police Commissioner, was responsible for failing to change the policies and properly supervise the troops.

## JURISDICTION

2. Jurisdiction is based upon 28 U.S.C. §§1331 and 1343, and on the pendent jurisdiction of this court to entertain a claim arising under state law.

## PARTIES

3. Plaintiff Shawn Drumgold is a resident of Boston.

4. Defendant Micky Roach is a citizen of Massachusetts. At all times material to the allegations in the Complaint, he was the duly appointed Police Commissioner and member of the City of Boston Police Department and acting under color of law. He is being sued in his individual as well as his official capacity.

5. Defendant Timothy Callahan was at all times relevant to this complaint a police officer employed by the City of Boston. He is being sued in his individual as well as his official capacity as a police officer for the defendant City of Boston.

6. Defendant Paul Murphy was at all times relevant to this complaint a police officer employed by the City of Boston. He is being sued in his individual as well as official capacity as a police officer for the defendant City of Boston.

7. Defendant Richard Walsh was at all times relevant to this complaint a police officer employed by the City of Boston. He is being sued in his individual as well as official capacity as a police officer for the defendant City of Boston.

8. Defendant City of Boston is a municipality duly authorized under the laws of the Commonwealth of Massachusetts and the employer of the individual defendants.

## FACTS

9. On August 19, 1988, twelve-year-old Darlene Tiffany Moore was murdered during gang warfare in Boston.

10. Ten days later on August 29, 1988, the defendants arrested Shawn Drumgold and charged him with first-degree murder.

11. Drumgold was held without bail from August 29, 1988 until his trial in September 1989.

12. Shawn Drumgold was convicted of first-degree murder in October, 1989, and sentenced to life in prison without parole.

13. The plaintiff served fifteen years and four months in prison before he was finally released on November 6, 2003 when he was granted a new trial, and his case nolle prossed.

14. During the evidentiary hearing on Drumgold's Motion for a New Trial in 2003, the following facts were discovered:

(a) Mary Alexander, the key identification witness for the Commonwealth who did not pick the plaintiff's picture out of a photograph array in the initial 13 months of the investigation, testified at trial that she saw the plaintiff with a gun leaving the crime scene.

(b) The defendant police officers knew, according to the witness' mother, that Alexander suffered from a rare form of brain cancer that can affect a person's memory, perception, and cognition function yet never disclosed this exculpatory evidence to the prosecutors not to the

3

defense. According to Lola Alexander she told the defendants that her daughter had problems with her memory and at one point could not recall the name of her own son. The Commonwealth conceded such evidence may have "been a real factor in the jury's deliberations."

(c) Ricky Evans was another key Commonwealth witness. He testified as to incriminating observations of and statements by the plaintiff just before and after the shooting of Tiffany Moore at locations near the murder scene. He admitted at the hearing on a motion for new trial that defendant's Callahan and another unknown police officer "fed him details of the crime" that Evan's testified he otherwise would not have known to assist Evans in falsely implicating Drumgold at Drumgold's trial. The defendants provided Evans with descriptions and photographs of Drumgold; descriptions of Drumgold's clothing, car and details of conversations Drumgold was alleged to have had with co-defendant Taylor prior to and after the crime.

(d) The plaintiff was never informed, until 2003, that the defendant police officers promised Evans before they took a statement from him that they would help him with his pending cases. In fact, five days after the plaintiff was convicted, Evans' pending cocaine possession, stolen motor vehicle, and trespassing charges were disposed of without a conviction when defendants Callahan and Murphy accompanied him to court. Nor was a charge of distributing cocaine ever prosecuted by the Suffolk County District Attorney's Office. Prior to trial, the prosecutor claimed that Evans was not promised anything in exchange for his testimony.

(e) Defendant Callahan admitted at the motion for a new trial that he was in the courtroom when Evan's told the jury that he was not promised anything in exchange for his assistance. Callahan admitted that he took no steps to inform the court or the plaintiff's attorney as to his specific promises to Evans.

4

(f) Evans testified at the hearing on the motion for new trial that defendant Detective Callahan, when he was homeless before the trial, arranged for him to stay at the Howard Johnson's Hotel for some seven to eight months without having to pay for his room or meals. He was also given money each week that ranged from $70 to $100. The plaintiff's attorney at trial was never informed of this materially exculpatory evidence that would have revealed a strong bias on behalf of Evans to testify favorably to the Commonwealth.

(g) Evans testified at the new trial motion hearing that, after living in the hotel, defendant Callahan presented him with three photographs and asked him to identify the shooter. When he selected Theron Davis, who is now believed to have committed the murder, defendant Callahan pointed to the other two photographs and told Evans, "these are our suggestions." The defendant continually suggested to Evans that he should testify at trial that he saw the plaintiff near the murder scene.

(h) Witness Tracie Peaks' testimony at the trial at the age of 15 put the plaintiff at the murder scene. She testified at the motion for new trial hearing that defendant Detective Walsh pressured her to identify the plaintiff by pointing to his photograph in the photograph array and stating, "doesn't this one look familiar?"

(i) Defendant Detective Walsh also threatened to arrest her and put her in jail if she did not cooperate with them.

(j) The defendant Detectives also badgered and intimidated other witnesses, to wit, Vantrell McPherson and Eric Johnson, into identifying the plaintiff when they initially stated that they could not make an identification. Witness Johnson claimed that the defendants pressured him for over a year to implicate the plaintiff in the murder. One of the defendants coached him to say "yes to whatever question they ask you about Shawn." In addition, another witness, Antonio Anthony was

5

pressured into claiming he was not with Drumgold on the night of the murder, despite his initial claims that he was. Anthony claimed that defendants threatened to charge him with murder if he supported Drumgold's alibi. In exchange for his statement that he was not with Drumgold at the time of the murder, defendants paid for Anthony to stay at the Howard Johsnon's Hotel for several days.

(k) Defendants intimidated another of Drumgold's alibi witnesses, to wit, Olisa Graham. Ms. Graham corroborated Drumgold's alibi that he was on 23 Sonoma Street at the time of the murder. After being interviewed by the defendants, Graham testified in July of 2003 that she received a telephone call from an unknown male who warned her that if she came to court to testify she would be arrested because she had open cases in Suffolk County. As a result of this phone call, Graham did not testify at Drumgold's trial. Drumgold learned in 2003 that in 1989, during his trial, Graham had an open shoplifting case on her record.

15. In addition, the defendants secured an indictment against Drumgold with false and misleading information and defendants Walsh and Murphy willfully disregarded a District Court's order not to interrogate Drumgold. Defendants' conduct in willfully disobeying a court order was later described by a superior court judge as egregious police misconduct. The defendants were never reprimanded for their conduct.

16. The defendant City of Boston implicitly tolerated unlawful police practices including suppression of exculpatory evidence and perjury by failing to investigate properly and punish adequately officers who withheld exculpatory evidence and gave false testimony. Boston police officers thus believed they could violate with impunity the constitutional rights of defendants.

17. Defendant Evans was Police Commissioner through the period of time relevant to this lawsuit and did nothing to increase the credibility of the internal affairs procedures and continued the custom and policy that brought about the police abuses in this case.

18. Because of the actions of defendants Roach, Callahan, Murphy, Walsh, and the City of Boston, the plaintiff sustained severe permanent personal and emotional injuries, including but not limited to, loss of liberty, loss of income, humiliation, emotional distress, and loss of the companionship of his wife and child.

## COUNT I:
## VIOLATION OF 42 U.S.C. §1983 BY DEFENDANTS ROACH, CALLAHAN, MURPHY, AND WALSH

19. The plaintiff restates the allegations in paragraphs 1 through 18 and incorporates said paragraphs herein as paragraph 19.

20. By the actions described in paragraphs 1 through 24, defendants Roach, Callahan, Murphy, and Walsh deprived the plaintiff of due process and his right to a fair trial, in violation of 42 U.S.C. §1983 and the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States and are jointly liable.

## COUNT II:
## VIOLATION OF 42 U.S.C. § 1983 CONSPIRACY BY DEFENDANTS CALLAHAN, MURPHY, AND WALSH

21. The plaintiff restates the allegations in paragraphs 1 through 20 and incorporates said paragraphs herein as paragraph 21.

22. Defendant police officers Callahan, Murphy, and Walsh conspired together to deprive the plaintiff of his constitutional rights, his right to receive exculpatory evidence, and his right to a fair trial and are jointly liable.

7

23. In furtherance of this conspiracy, the defendant police officers concealed the existence of exculpatory evidence.

## COUNT III:
## VIOLATION OF 42 U.S.C. §1983 BY DEFENDANT CITY OF BOSTON

24. The plaintiff restates the allegations in paragraphs 1 through 23 and incorporates said paragraphs herein as paragraph 24.

25. The City of Boston maintains policies, customs, or practices exhibiting deliberate indifference to the constitutional rights of persons in Boston, which caused the violation of the plaintiff's rights.

26. It was the policy, custom, or practice of the defendant City of Boston to allow the defendant officers and other members of the police department to ignore laws, rules, and regulations governing proper police conduct. Pursuant to this policy, custom, or practice, defendant City of Boston implicitly tolerated unlawful police practices including perjury and the withholding of exculpatory evidence, failed to investigate adequately citizen complaints against its police officers, and failed to train and supervise properly its officers. The defendant City also tolerated a Code of Silence that allowed officers to violate constitutional rights of citizens with impunity.

27. This custom and policy goes back many years. As far back as 1981, a Superior Court judge found that Detective Arthur Linsky lied before the grand jury in the case of *Commonwealth v. Salmon*, 387 Mass. 160 (1982), but no disciplinary action was taken against him by the Boston Police.

28. In 1991, the then-Mayor of Boston, Raymond Flynn, requested that a special commission review the practices of the Boston police. The St. Clair Report was submitted on January 14, 1992.

29. The Report found a wide range of problems in the police department's Internal Affairs Division.

30. It reviewed complaints filed against Boston Police Department personnel since 1981.

31. The Report found that only 5.9% of the complaints were sustained and that such a statistic "strains the imagination as it assures 94% of the complaints are without merit."

32. The defendant City of Boston's policies, practices, or customs, as described in paragraphs 29 and 35, are illustrated by but not limited to the following conduct:

a. Christopher Harding was wrongfully arrested and convicted of attempted murder because members of the Boston police department committed perjury and withheld exculpatory evidence. On August 18, 1989, a shooting took place in the Mission Hill Housing Project where Mr. Harding lived. Boston police officers captured one suspect but the other fled. Officer Terrence O'Neil claimed he saw Mr. Harding running away and that Mr. Harding fired three shots, one of which was fired at him. Officer Mitchell wrote a report supporting O'Neil's claims, which she knew were false. Boston police officer Michael Stratton testified at trial that he witnessed Mr. Harding shoot at O'Neil. The officers' version of the events was proven to be false by a ballistics expert before trial. The expert proved conclusively that the bullet that struck the victim had been fired from the gun belonging to the second suspect and that only three bullets were fired from that gun. Thus, it was impossible for O'Neil, Stratton, or Mitchell to have witnessed three shots fired from that gun, as they claimed. The Boston Police Department suppressed this crucial exculpatory evidence of the ballistic expert's findings until just prior to

9

Mr. Harding's trial. In addition, because she might have recanted her earlier report, the Boston police department falsely stated that Officer Mitchell was out of town during the trial and could not testify, thereby suppressing exculpatory evidence. Mr. Harding was released after spending approximately seven years in jail. Boston police officers Stratton and Mitchell have never been disciplined in connection with this misconduct and O'Neil was not fired for his involvement until January 20, 2000.

b. City of Boston police officers falsely arrested Gary Willoughby in September 1989, and charged him with homicide. He was a poor Jamaican immigrant with no criminal record and no connection to the incident. After a police officer committed perjury before the grand jury, Mr. Willoughby was acquitted of all wrongdoing in 1990. He subsequently sued the City of Boston and the police officer. The City paid for the officer's defense and, in 1994, it compensated Mr. Willoughby for the wrongs committed against him. The police officer involved has never been disciplined in connection with this incident.

c. After serving seven years and three months in prison, Marvin Mitchell was vindicated through DNA testing and his conviction for rape was vacated in 1989. The victim described her assailant to the police as having worn pink pants, while Mr. Mitchell told the police he had been wearing gray pants on the day of the attack. In addition, the victim told the officers that the assailant had one crossed eye and was clean-shaven. Mr. Mitchell, on the other hand, did not have a crossed eye and had a goatee at the time of the incident. Boston police officers Trent Holland and Robin DeMarco both falsely testified under oath that Mr. Mitchell, while being detained, had suddenly exclaimed that he had been wearing pink pants on the day the victim was attacked. Officers DeMarco and Holland have never been disciplined in connection with this misconduct.

     d. A judge threw out a jury's 1989 guilty verdicts on drug charges secured through the testimony of Boston police officer Trent Holland. When Superior Court Judge Elizabeth A. Porada, who was later elevated to the Court of Appeals, threw out the verdicts, she ordered an investigation into whether or not Holland committed perjury. Judge Porada concluded that Holland's testimony about watching a drug transaction from a certain vantage point was necessarily false because his view would have been obstructed by a building. The perjury investigation was conducted by Boston police Sergeant James Curran. Not only was Holland not disciplined in connection with this misconduct, he was later promoted to detective.

     e. On October 23, 1989, Charles and Carol Stuart were shot in the Mission Hill neighborhood of Boston. William Bennett became a suspect and through intimidation and coercion, the police produced witnesses to implicate him. The police threatened the witnesses with arrest, physical beatings and imprisonment if they did not testify against Bennett. The police offered witnesses money and other inducements in an attempt to coerce them to testify falsely against Bennett. They supplied witnesses with crucial facts previously known to them for the purpose of enhancing the witnesses' knowledge of incriminating facts against Bennett. In addition, the police planted evidence in homes of witnesses in order to pressure them into incriminating Bennett. Bennett was, in fact, innocent of the charges.

     f. On November 21, 1991, a Suffolk County grand jury returned indictments against Tarahn Harris for murder in the first degree. In his ruling in favor of Harris' Motion to Dismiss the indictment, the Honorable Isaac Borenstein, Justice of the Superior Court, found that City of Boston police officer Herbert Spellman "knowingly and intentionally falsified, recklessly fabricated, distorted, misled and deceived the grand jury." Officer Spellman distorted Harris' statement, suggesting to the jury that Harris made incriminating statements, while failing to

11

inform the jury that Harris actually made exculpatory statements as well. He assigned to Harris statements that Harris had not made and knowledge that Harris may not have had. Judge Borenstein was "convinced that Officer Spellman knowingly falsified and distorted the evidence against Tarahn Harris...for the purpose of strengthening what appeared to be a weak case against Tarahn Harris." In response to a complaint of misconduct relating to this incident made to the Boston Police Department, the Boston Police Department on July 15, 1999, in spite of Judge Borenstein's findings, found the allegations against Officer Spellman to be "Not Sustained" and the Police Commissioner accepted the finding.

g. In 1994, Jerome Goffigan, an 11-year-old child, was murdered. Donnell Johnson was charged with the murder. The case agent, Detective William Mahoney, suppressed exculpatory evidence and lied under oath in Johnson's murder trial. Johnson was convicted but later released as an innocent man after five years in prison. Mahoney was never charged with perjury and pursuant to a compliant to internal affairs, he was found only to have been negligent in failing to turn over exculpatory evidence. Mahoney received only a 30-day suspension in 2002 that he has appealed.

33. To this very day, the Internal Affairs Division of the Boston Police Department continues to whitewash serious complaints of police misconduct. If any misconduct is found in its investigations, it is only for a much lesser charge than merited by the evidence, and the penalty does not fit the abuse.

## COUNT IV:
## VIOLATION OF M.G.L. c. 12 §11I

34. The plaintiff restates the allegations in paragraph 1 through 33 and incorporates said paragraphs herein as paragraph 34.

35. By the actions described in paragraphs 1 through 38, defendants Roach, Callahan, Murphy, and Walsh deprived the plaintiff of his civil rights, secured by the Constitutions of the United States and the Commonwealth of Massachusetts, through the use of threats, intimidation, and coercion, in violation of M.G.L. c.12 §11I.

WHEREFORE, the plaintiff requests that this Honorable Court:

1. Award compensatory damages against the defendants jointly and severally;

2. Award punitive damages against the defendants;

3. Award the costs of this action, including reasonable attorneys fees.

### JURY TRIAL DEMAND

A jury trial is hereby demanded.

Respectfully submitted
The Plaintiff Shawn Drumgold,
By his attorneys,

_____
Rosemary Curran Scapicchio (BBO No. 558312)
Four Longfellow Place, Ste 3703
Boston, MA 02114
T)617/263-7400

_____
Stephen B Hrones (BBO#242860)
HRONES & GARRITY
Lewis Wharf–Bay 232
Boston, MA 02110-3927
T)617/227-4019

Dated: June 3, 2004

13



# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS
SHAWN DRUMGOLD

## DEFENDANTS
TIMOTHY CALLAHAN, MICKY ROACH, PAUL MURPHY, RICHARD WALSH, and the CITY OF BOSTON

FILED IN CLERKS OFFICE
2004 JUN -3 P 12:48
U.S. DISTRICT COURT
DISTRICT OF MASS.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Suffolk
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: ___
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Stephen Hrones, Hrones & Garrity, Lewis Wharf-Bay 232, Boston, MA 02110
617/227-4019
Rosemary Curran Scapicchio, 4 Longfellow Place, Boston, MA 02114, 617/263-7400

ATTORNEYS (IF KNOWN)
**04-11193 NG**

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

42 USC §1983

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury—Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury—Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck ☐ 650 Airline Regs ☐ 660 Occupational Safety/Health | ☐ 820 Copyrights ☐ 830 Patent ☐ 840 Trademark | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / PERSONAL PROPERTY ☐ 370 Other Fraud | LABOR | SOCIAL SECURITY | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts ☐ 892 Economic Stabilization Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 195 Contract Product Liability | | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 894 Energy Allocation Act |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | | | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights / ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 550 Other | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23    DEMAND $ ___    Check YES only if demanded in complaint: **JURY DEMAND:** ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE Nancy Gertner    DOCKET NUMBER 97cv11607

DATE 6/3/04    SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)
   SHAWN DRUMGOLD v. TIMOTHY CALLAHAN, et al.

   FILED
   IN CLERKS OFFICE

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   2004 JUN -3 P 12: 44

   ___  I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   XX   II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases

   ___  III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

   ___  IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

   ___  V.   150, 152, 153.

   **04 - 11193 NG**

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?
   YES ___   NO (circled)

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)
   YES ___   NO (circled)

   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
   YES ___   NO ___

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?
   YES ___   NO (circled)

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
   YES (circled)   NO ___

   A. IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?
      EASTERN DIVISION (circled)   CENTRAL DIVISION   WESTERN DIVISION

   B. IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?
      EASTERN DIVISION   CENTRAL DIVISION   WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   Stephen Hrones, Hrones & Garrity 617/227-4019
ADDRESS           Lewis Wharf-Bay 232, Boston, MA 02110
TELEPHONE NO.     Rosemary Scapicchio, 617/263-7400
                  4 Longfellow Place, Boston, MA 02114

(Cover sheet local.wpd - 11/27/00)