UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO.  04-CV-11193-NG

| | |
|---|---|
| SHAWN DRUMGOLD, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| CITY OF BOSTON, ET AL., | ) |
| | ) |
| Defendants | ) |

**MEMORANDUM OF LAW IN SUPPORT OF TIMOTHY CALLAHAN'S AND RICHARD WALSH'S JOINT MOTION TO BIFURCATE TRIAL**

**I.   INTRODUCTION**

In this civil rights action, plaintiff Shawn Drumgold ("Drumgold") alleges that the misconduct of various Boston Police personnel led to his conviction, in 1989, for the murder of Tiffany Moore.  Drumgold alleges that the investigation into the shooting death of Moore was inadequate, that witnesses were coerced into testifying falsely, and that exculpatory information was withheld from his defense counsel.

Drumgold also alleges a custom, policy or practice by the City of Boston of "improper and inadequate investigation and discipline of acts of misconduct committed by Boston police officers, including withholding of exculpatory evidence."  *Complaint*, Introductory paragraph.

In support of his claim against the City, Drumgold references other litigation, including civil rights suits filed by Christopher Harding, Gary Willoughby, Marvin Mitchell and Donnell Johnson for allegedly wrongful convictions;  the investigation into the death of Carol Stuart, and testimony of two officers in, respectively, a drug case and

before a grand jury in a homicide case. None of the named defendants in this case were involved in any of those matters. Drumgold also references the "St. Clair Report," a management review of the Boston Police Department conducted in 1992, for the proposition that the Internal Affairs Division suffered from a "wide range of problems." Again, no named defendant is mentioned in the St. Clair Report.

Trial of both the individual liability claims simultaneously with the municipal liability claims would unfairly prejudice the individual defendants, would greatly prolong the discovery and trial of this case, and would unduly complicate the evidence presented to the jury. Accordingly, Callahan and Walsh request that this court order the bifurcation of the trial of this action.

## II.   STANDARD OF REVIEW

Fed.R.Civ.P. Rule 42(b) allows a court to order separate trial of any claim or issue when it finds such an order appropriate "in furtherance of convenience or to avoid prejudice [to a party], or when separate trials will be conducive to expedition and economy …" Fed.R.Civ.P. Rule 42(b). The burden is on the moving party to demonstrate to the court that severance is appropriate, and should demonstrate that separate trials are necessary to protect him from undue prejudice or inconvenience, and that the procedure would not cause his adversary such prejudice or inconvenience. The moving party must persuade the court that ordering bifurcated discovery and/or trial will achieve Rule 42(b)'s "paramount" consideration: to ensure "a fair and impartial trial and process to all litigatnts through a balance of benefit and prejudice." *Kimberly Clark Corp. v. James River Corp.*, 131 F.R.D. 607, 609 (N.D.Ga. 1989).

In ruling on a Rule 42(b) motion, the court may consider a number of factors to determine whether bifurcation is appropriate. The court may conclude that, when there is an overlap in evidentiary proofs, bifurcation is not desirable as issues of economy are not well served, *Proctor & Gamble Co. v. Nabisco Brands, Inc.*, 604 F.Supp. 1485, 1491-92 (D.Del. 1985); or if a party obtains an unfair advantage by separate trials, *Kimberly*

2

*Clark Corp.,* 131 F.R.D. at 608-09. On the other hand, the court may conclude that when a single issue is dispositive of the case, and resolution of that issue makes it unnecessary to try the other issues, or when a single trial of all issues would create the potential for jury bias or confusion, then bifurcation may be necessary to ensure a fair and impartial trial for all parties. 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2388, at 476- 77 (1995).

Only one of the criteria set forth in Rule 42(b) need be present for the Court to order a separate trial. *See Ricciuti v. New York City Transit Auth'y,* 796 F.Supp. 84, 86 (S.D.N.Y. 1992) (it is "established that bifurcation requires the presence of only one of these conditions"). Of course, a fair trial must be the Court's paramount consideration. *See Payton v. Abbot Labs*, 83 F.R.D. 382, 394 (D. Mass. 1979) ("[e]nsuring a fair trial must take precedence over economy and convenience").

Professors Wright and Miller have advised that bifurcation is appropriate where limiting instructions are not sufficient to avoid prejudice to a co-defendant, such as in situations where evidence admissible only on a certain issue may prejudice a party in the minds of the jury on other issues. 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2388, at 479. *See also Ismail v. Cohen et al.*, 706 F.Supp. 243, 251 (S.D.N.Y. 1989) (holding in excessive force case that "there is a danger that evidence admissible on the issues relating to conduct by the City or Officer Cohen will 'contaminate' the minds of the finder of fact in its consideration of the liability of the other defendant.").

### III. ARGUMENT

#### A. Bifurcation Is Consistent With Section 1983 Principles Of Liability

Bifurcation is necessary in this case in order to assure that the individual defendants are given a fair trial. No limiting instructions would suffice to cure the prejudice to these defendants if the plaintiff was to present evidence of the misconduct of other officers, as is necessary in order for him to make out a municipal liability case.

3

The plaintiff must <u>first</u> prove that he suffered a constitutional injury due to the conduct of the individual defendants before he can seek to hold the municipality liable for those actions. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct.1571, 89 L.Ed.2d 806 (1986) (per curiam); *Evans v. Avery*, 100 F.3d 1033, 1039-40 (1st Cir. 1996). Thus, in this Section 1983 case, the plaintiff must establish, as a prerequisite to his claim against the City, that his conviction was due to the intentional misconduct of the defendants. In essence, Section 1983 <u>requires</u> the jury to engage in a bifurcated analysis of the evidence.

Courts addressing Section 1983 litigation often order bifurcation of the trial into two phases, trying the individual liability case first, followed by a separate trial against the municipality if the jury finds a constitutional injury has occurred. *See Wilson v. Town of Mendon*, 294 F.3d. 1, 7 (1st Cir. 2002):

> … Magistrate Judge Swartwood … bifurcated the claims against the defendant officers from [plaintiff's] claims against the municipal defendants. In this regard, the court was treading a familiar path. Without a finding of a constitutional violation on the part of a municipal employee, there cannot be a finding of section 1983 damages liability on the part of the municipality. … Thus, a defendant's verdict in a bifurcated trial forecloses any further action against the municipality, resulting in less expense for the litigants, and a lighter burden on the court. On the other hand, a verdict against the municipal employee will almost always result in satisfaction of the judgment by the municipality …

*Wilson,* 294 F.3d at 7.

*See also Amato v. City of Saratoga Springs*, 170 F.2d 311 (2nd Cir. 1999), affirming the bifurcation of a police misconduct suit and noting that reasons of brevity and prevention of prejudice to individual officers were "legitimate bases for bifurcating the proceedings" and that "Section 1983 actions are particularly well suited for bifurcation because the evidence needed to show a 'policy or custom' on behalf of the

municipal entity is often unnecessary in the suit against the individual officer." *Amato*, 170 F.3d 311, 316, 320[1].

See also *City of Los Angeles v. Heller*, 475 U.S. 796 (bifurcated trial); *Perry v. Bordley et al.*, ___ F.3d ___, 2005 WL 1665999 (D.Mass.2005)(Stearns, J.) (bifurcated trial in excessive force case); *Mitchell v. City of Boston et al.*, 130 F.Supp.2d 201, 208 (D.Mass. 2001. Saris, J.) (ordering bifurcated trial in wrongful conviction case); *Deary v. City of Gloucester et al.,* 789 F.Supp. 61 (D.Mass.1992)(Tauro. J.)(bifurcated trial in excessive force case).

Bifurcation of the actions against the individual officers from that against the municipality is wholly consistent with the principles of liability under Section 1983, and is consistent with the objectives of Rule 42(b).

### B. Bifurcation Is Necessary To Ensure The Defendants Receive A Fair Trial

The individual defendants in this case cannot get a fair trial if they are lumped together with other instances of police misconduct – misconduct which was commited by other officers, in cases that these defendants had no part in. It is decidedly unfair to allow Drumgold to use the unrelated cases as a fulcrum to convince the jury that Callahan and Walsh must also have engaged in misconduct.

Drumgold cites to notorious events in the Boston Police Department in order to buttress his *Monell* claim against the City. Those allegations would infect the trial if they were to be included in the evidence offered against Callahan and Walsh, as they unfairly suggest that since <u>some</u> officers have been accused of the type of conduct Drumgold alleges here, then <u>these defendants</u> must also have engaged in that conduct. For example,

---

[1] But note that the *Amato* court disagreed that satisfaction of a damages award found in the first phase of a birfucated trial would automatically result in dismissal of the municipal liability case, since the potential of a nominal damages award issued against a municipality found to have had an unconstitutional custom, policy or practice would not necessarily be duplicative of a damages award that measured constitutional injury (although also noting that the victory may well be hollow, and the muncipality's agreement to pay a nominal damage award would effectively strip Article III jurisdiction from the court). *Amato*, 170 F.3d at 319-321.

5

Drumgold claims that Christopher Harding was "wrongfully arrested and convicted" after Boston police officers "committed perjury and withheld exculpatory evidence," *Complaint* at ¶ 32a[2]. Drumgold also alleges that Marvin Mitchell was convicted of rape after police officers "testified falsely under oath." *Complaint* at ¶ 32b. In the infamous Stuart murder investigation, Drumgold alleges that officers coerced witnesses and planted evidence. *Complaint* at ¶ 32c.

These allegations may well be admissible against the City to prove a pattern or practice claim. They are devastatingly prejudicial as against Callahan and Walsh, neither of whom participated in any of the investigations recounted by Drumgold – so much so that no jury instruction could cure the harm to them if these allegations were to be introduced during their trial.

Under Fed.R.Evid. Rule 404, a defendant's prior bad acts cannot be introduced against him to prove that he committed the actions complained of by the plaintiff. Here, Drumgold seeks to introduce prior bad acts of other officers against Callahan and Walsh in order to establish that all Boston police have a propensity to engage in such corruption. "This is just the type of evidence Fed. R. Evid. 404(b) precludes." *See Falk v. Clarke*, No. 88C7293, 1990 WL 43581, *6 (N.D.Ill. Apr. 3, 1990) (evidence excluded where counsel contended that other acts evidence was being offered to show a pattern of activity but was in reality disguising the impermissible propensity purpose).

The potential for harm that underscores the exclusionary provisions of Rule 404 is the prejudice that Callahan and Walsh anticipate from the introduction of other bad acts of other officers. Evidence of other crimes, wrongs, or acts is not admissible against a defendant to prove that he acted in a similar fashion in the case at hand, *see Lataille v.*

---

[2] In commenting on the allegations in Drumgold's complaint, Callahan and Walsh in no way admit or agree that his allegations are true. In fact, upon information and belief, none of the cases to which he refers have been adjudicated; thus, at trial, a series of "mini-trials" into the truth of the allegations will be necessary in the first instance. Indeed, an arbitrator reviewing the discharge of an officer in the Harding investigation concluded that the officer had <u>not</u> committed perjury, and ordered him restored to full duty. For purposes of this motion, however, Callahan and Walsh take the allegations in Drumgold's favor.

*Ponte*, 754 F.2d 33, 35 (1st Cir. 1985); *Udemba v. Nicoli,* 237 F.3d 8, (1st Cir. 2001), since such evidence carries an unacceptable risk that a jury will find liability for conduct other than the conduct at issue in the case before it, or that it will find liability, although uncertain of guilt, because a bad person deserves punishment. *See* Fed. R. Evid. 404(a) advisory committee note.

      The courts have repeatedly held that other bad acts of unrelated parties in civil rights suits cannot be admitted against the individual officers, but are relevant to the municipal liability claims. In most instances where cases are not bifurcated, the court issues instructions to the jury limiting them from considering the evidence against the individuals. *See, e.g., Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 572-574 (1st Cir. 1989); *see also Bordanaro v. McLeod*, 871 F.2d 1151, 1166 (1st Cir. 1989); *see also Superchi v. Town of Athol*, 170 F.R.D. 3, 5 (D.Mass. 1996) (prior citizen complaints against individual police officer alleging excessive force admitted with respect to the claims against the Town but not admissible with respect to the claims against the officer).

      No curative instruction can prevent the harm that is threatened by the evidence to be used against the City in the trial of this action. Plaintiff's theories of municipal liability in this matter are calculated to have the most prejudicial impact upon the individual officers, and no curative instruction can protect against that impact. In order for the jury to find that the individual defendants violated Drumgold's rights to a fair trial, the jury will have to consider the credibility of witnesses who testified against him – and withstood cross examination – at the original murder trial, then recanted years later, alleging coercion by police. Standing alone, the recanting witnesses may not convince the jury that the abuses they allege actually occurred. However, evidence admitted tending to show the bad character of other police officers may substantially and unfairly sway the jury's verdict, helping them to resolve credibility issues in favor of the recanting witnesses despite any deficiencies that their testimony may contain.

7

Limiting instructions can not mitigate the effects of such gravely prejudicial evidence, *see U.S. v. Garcia-Rosa*, 876 F.2d 209, 221-22 (1st Cir. 1989), since the other instances of misconduct would prove "devastating" to these defendants. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 1622, 20 L.Ed.2d 476 (1968). *See also Riccutti,* 796 F.Supp. at 86; *Disorbo v. Hoy,* 343 F.3d 172, 179 (2nd Cir. 2003)(holding that prejudice to individual officers justified bifurcation of trial).

Proof of the violations alleged here, such as conspiracy to violate Drumgold's civil rights, must be proven by sufficient evidence. The jury may not reach a conclusion based on speculation and conjecture. *Aubin v. Fudala*, 782 F.2d 280, 286 (1st Cir. 1983). There is a very real risk that the prior bad acts of other officers may spill over in the mind of the factfinder so as to encourage the jury to speculate that Callahan and Walsh, too, must have engaged in corrupt investigatory tactics. This prejudice infects Callahan and Walsh's rights to a fair trial, and for that reason alone bifurcation is necessary.

### C.     Bifurcation Favors Judicial Economy

One of the explicit goals of Rule 42(b) is to promote expedition and economy. This is not always accomplished, however, by means of a single trial. *E.g., Reiner Distributors, Inc. v. Admiral Corp.*, 257 F.Supp. 619, 620 (S.D.N.Y. 1965)("[w]hen there is a possibility, however, of shortening the trial considerably by holding a separate trial on an issue, the court should exercise its discretion ... and try the issue separately if such a procedure will not prejudice either side"). This is particularly true where the possibility exists that, if claims are bifurcated, there will never even be a second trial (as is the case if the jury rejects Drumgold's claim that Callahan and Walsh violated his constitutional rights). In that event, there can be no denying that bifurcation promotes expedition and economy. *Ricciuti v. New York Transit Authority*, 96 F.Supp. 84, 87 (S.D.N.Y. 1992)

8

(ordering bifurcation where "the potential benefit of avoiding a second trial ... outweighs the potential cost of conducting one large trial"). *See also Disorbo v. Hoy et al.,* 343 F.3d 172, 179 (2nd Cir. 2003) (approving bifurcation of individual liability from municipal liability for trial where, "[t]o allieviate the potential burden of forcing the plaintiffs to present similar, if not identical, evidence at the *Monell* trial against the city, the court ordered that the two trials proceed back-to-back with the same jury"); *Ismail v. Cohen*, 706 F.Supp. 243 (S.D.N.Y. 1989) ("As to the § 1983 claim against the City, this claim would involve a great deal of evidence which is entirely unnecessary to the resolution of all of the other claims in the case. The claims involved require proof of different facts and the *Monell* claim would involve the introduction of quite broad evidence unnecessary to claims to be heard in the first trial.")

Additionally, the differing standards of proof could lead to jury confusion. As the *Ismail* court noted, "[t]he presentation of divergent standards and factual evidence in one trial could lead to jury confusion. The § 1983 claim against the City would present different and far more complicated standards of liability and causation for the jury, would greatly expand the length and scope of the trial and would add to the expense of the parties." *Id.*, 706 F.Supp. at 251-52.

Finally, Drumgold can claim no prejudice arising out of the grant of a bifurcated trial. If he is successful on his claims against any of the individual defendants, he can immediately proceed with his case against the City. Indeed, his burden may even be lessened by proceeding serially at trial: "[t]he predicate burden of proving a constitutional harm on the part of a municipal employee remains an element of the caase regardless of the route taken and … the burden of placing that harm in the context of a

9

causative municipal custom and policy is significantly more onerous than the task of simply proving that an actionable wrong occurred." *Wilson v. Town of Mendon*, 294 F.3d 1, 8 (1st Cir. 2002). Certainly Drumgold can point to no prejudice to him that bifurcation would cause that could possibly outweigh the prejudice to Callahan and Walsh should bifurcation be denied.

## IV.  CONCLUSION

For the reasons stated herein, defendants Callahan and Walsh respectfully request that the Court order the bifurcation of trial in this case.

Respectfully submitted,

| | |
|---|---|
| TIMOTHY CALLAHAN | RICHARD WALSH, |
| By his attorney, | By his attorney, |
| __/s/ Mary Jo Harris _____ | ___/s/ Hugh R. Curran _____ |
| Mary Jo Harris, BBO # 561484 | High R. Curran, BBO # 402057 |
| Morgan, Brown & Joy, LLP | Bonner Kiernan Trebach & Crociata |
| 200 State Street | One Liberty Square |
| Boston, MA 02109 | Boston, MA 02109 |
| (617) 523-6666 | (617) 426-3900 |

Dated:  July 22, 2005

CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2005 I served a copy of the above document upon the following counsel of record by first class mail, postage prepaid:

| | |
|---|---|
| John Roache<br>Hogan, Roache & Malone<br>66 Long Wharf<br>Boston, MA 02110 | Rosemary Curran Scappiccio<br>Four Longfellow Place, Ste. 3703<br>Boston, MA 02114 |
| Hugh R. Curran<br>Bonner, Kiernan,<br>Trebach & Crociata<br>1 Liberty Square<br>Boston, MA 2109 | Michael W. Reilly<br>Tommasino & Tommasino<br>Two Center Plaza<br>Boston, MA 02108 |
| Donald R. Faymen<br>640 Main Street<br>Malden, MA 02148 | |

\_\_\_\_/s/ Mary Jo Harris _____

11