UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAWN DRUMGOLD, )<br>    Plaintiff )<br> )<br>v. )<br> )<br>TIMOTHY CALLAHAN, FRANCIS )<br>M. ROACHE, PAUL MURPHY, )<br>RICHARD WALSH and THE CITY )<br>OF BOSTON, )<br>    Defendants )<br>_____) | 04-CV-11193-NG |

### **DEFENDANTS FRANCIS M. ROACHE AND THE CITY OF BOSTON'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO BIFURACATE DISCOVERY AND TRIAL**

STATEMENT OF THE CASE

This is a civil rights action brought pursuant to 42 U.S.C. §1983 and M.G.L. C. 12, §11I against former Boston police officers Timothy Callahan, Paul Murphy and Richard Walsh[1] in which the plaintiff, Shawn Drumgold (hereinafter "Drumgold") alleges violations of his civil rights, as a result of his being allegedly wrongfully convicted of murdering Darlene Tiffany Moore, and against the City of Boston (hereinafter "the City") and former Boston police commissioner Francis M. Roache (hereinafter "Roache"), individually and in his official capacity, alleging improper hiring, supervision, training and disciplining of Boston police officers.

ISSUE

Should the action against the individual officers be bifurcated from the municipal liability portion of the suit during the discovery phase of the litigation and/or trial?

---

[1] Lieutenant Detective Timothy Callahan and Detective Richard Walsh have retired from the Boston Police Department. Detective Paul Murphy is deceased.

FACTS

Drumgold brings this civil action against the above-captioned defendants for alleged violations of his civil rights.  He alleges that during his criminal trial for the murder of Moore the individual officers 1) withheld exculpatory evidence and 2) knowingly allowed at least one witness to commit perjury before the jury.  Drumgold asserts that these alleged acts resulted in his conviction of first-degree murder for which he was sentenced to life in prison without parole in October 1989.  Drumgold alleges that these acts caused his resulting imprisonment and therefore violated his rights under the Massachusetts Constitution and the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

Drumgold further alleges that the City violated his civil rights on two fronts.  In the first, he alleges that his civil rights were violated by the City maintaining "a policy, custom or practice of improper and inadequate investigation and discipline of acts of misconduct committed by Boston police officers."  Complaint, p.1  He continues by alleging the existence of a policy, custom or practice of the City of Boston in failing "to train its police officers adequately in the laws regarding exculpatory evidence, perjury, and other laws, rules, and regulations relating to the rights of a citizen charged with a crime."  Complaint, pp.1-2.  Drumgold alleges that former Commissioner Roache is responsible relative to the above-described allegations for his alleged failure to change the above-described policies and supervise the officers.  Complaint, p. 2.

In support of his claims against the City, Drumgold cites in Count III of his Complaint nine examples of the alleged policy, custom or practice going back "many

2

years." The following are the "examples" offered by Drumgold in support of his claim against the City:

- 1981, alleged perjury of Boston Police Det. Arthur Linsky before grand jury (Commonwealth v. Salmon);

- 1989, alleged perjury and suppression of exculpatory evidence by three Boston police officers, Terrance O'Neill, Michael Stratton and an Officer Mitchell (Commonwealth v. Christopher Harding);

- 1989, unnamed Boston police officer alleged to have falsely arrested defendant and perjured himself before the grand jury (Commonwealth v. Willoughby);

- 1989, alleged perjury and subornation of perjury by Boston police officers, Robin DeMarco and Trent Holland (Commonwealth v. Marvin Mitchell); and

- 1989, alleged perjury of Boston police officer, Trent Holland re: guilty verdict on drug charges against unnamed defendant.

Drumgold cites three other incidences in support of his claim against the City beginning shortly after his conviction and very generally through to the present. The following cases were cited by Drumgold and occurred after his conviction:

- 10/23/89, unnamed Boston police officers investigating the death of Carol Stuart and the shooting of her husband, Charles Stuart, alleged to have intimidated witnesses or individuals selected to be witnesses and attempted to suborn perjury of said witness through threats or inducements to incriminate William Bennett;

- 1991, Boston police officer, Herbert Spellman, alleged to have perjured himself before the grand jury and/or failed to produce exculpatory evidence (Commonwealth v. Tarahn Harris); and

- 1995, Boston Police Det. William Mahoney alleged to have committed perjury and failed to produce exculpatory evidence Commonwealth v. Donnell Johnson).

The plaintiff further alleges without citing any specific occurrences that the said policy, custom or practice remains in effect today.  None of the above examples cited by Drumgold in support of his claim that the City had a policy, custom or practice in place involve any of the individual officers named as defendants in the case-at-bar.

## ARGUMENT

A.  STANDARD OF LAW

In terms of the discovery phase of a cause of action, Fed. R. Civ. P. R. 26(b)(2) allows, "[t]he frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

Furthermore in regard to the timing and sequence of the discovery phase of litigation, Fed. R.Civ. P. R. 26(d) states that "[u]nless the court upon motion, for the convenience of parties and witnesses and in the interests of justice, orders otherwise, methods of discovery may be used in any sequence, and the fact that a party is conducting discovery , whether by deposition or otherwise, does not operate to delay any other party's discovery."

Local Rule 26.3 of the United States District court concerns the phasing of discovery. In large part, the rule states that "to facilitate settlement and the efficient completion of discovery, the judicial officer has discretion to structure discovery activities by phasing and sequencing the topics which are the subject of discovery."

Relative to proceeding at the trial stage, Fed. R.Civ. P. R. 42(b) provides, "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ..."[2] Only one of the criteria set forth in Rule 42(b) need be present for the Court to order a separate trial. See Ricciuti v. New York City Transit Auth'y, 796 F.Supp. 84, 86 (S.D.N.Y. 1992) (it is "established that bifurcation requires the presence of only one of these conditions"). Of course, a fair trial must be the Court's paramount consideration. See Payton v. Abbot Labs, 83 F.R.D. 382, 394 (D. Mass. 1979) ("[e]nsuring a fair trial must take precedence over economy and convenience").

In the present case, the defendants' motion does not merely satisfy one of the conditions of Rule 42(b). Rather, an order for a separate trial is consistent with <u>all</u> the

---

[2] It is well settled that the decision to grant a motion under Rule 42(b) is committed to the sound discretion of the Court. E.g., Gonzales-Marin v. Equitable Life Assurance Society, 845 F.2d 678, 684 (1st. Cir. 1975).

goals of Rule 42(b): it avoids prejudice to the individual defendants, it is convenient, and it is expeditious and economical. Furthermore, and above all else, it ensures a fair trial.

B.     BIFURCATION OF TRIAL

Settled principles of municipal and supervisory liability under 42 U.S.C. 1983, and the character of the evidence the plaintiff will therefore offer against the defendants makes this a compelling case to order bifurcation of the issues. Under Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), Voutour v. Vitale, 761 F.2d 812 (1st. Cir. 1985) and City of Los Angeles v. Heller, 475 U.S. 378 (1989), the city may be held liable *only* if the individual officers are found to have violated the plaintiff's rights, since a municipality may not be held liable on a respondeat superior theory. See also, City of Canton v. Harris, 109 S.Ct. 1197 (1989) and Bordanaro v. McLeod, 871 F.2d 1151 (1st Cir. 1989).

Thus, the plaintiff must first establish that defendants Murphy, Callahan and Walsh[3] violated his constitutionally protected civil rights before proceeding against the City. Since liability first must be determined under these principles, the City and Roache seek bifurcation of the trial regarding the municipality from the individual officers for two reasons: (1) the tremendous expense the City would incur in proceeding to trial when its own liability would be measured by the outcome of the trial of Officers Murphy, Callahan and Walsh; and (2) for reasons of fairness, because Officers Murphy, Callahan and Walsh would be exposed to great prejudice by the admission of evidence which may

---

[3] If another police officer not named as a defendant and acting under the color of law were found to have violated the plaintiff's civil rights, but the named defendant officers were not found liable, the plaintiff having met the threshold of proving that his constitutional rights were violated could still proceed against the municipal defendant in his Monell claim.

6

be admissible only as to the City, i.e. the Internal Affairs records of other officers, and any other such evidence the plaintiff would seek to introduce at trial against the City.

        1.        THE RISK OF PREJUDICE TO THE DEFENDANT OFFICERS

The question of whether evidence of misconduct by other officers would be admissible against the defendant officers at trial is readily resolved. There is simply no basis for such highly prejudicial evidence to be admitted against them.[4] Such evidence is arguably admissible against the City in an effort to establish that the City maintained policies or customs of deliberate indifference to the rights of citizens. Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691-94 (1978). There is no basis, however, upon which such evidence may be admitted against the individual officers. *See, e.g.,* Carter v. District of Columbia, 795 F.2d 116, 126-27 (D.C. Cir. 1986) (the reading of inflammatory newspaper accounts of incidents involving other officers exposed defendant officers to unfair prejudice); Ricciuti, 796 F.Supp. at 86 (defendant officers would be unfairly prejudiced by evidence of incidents involving other officers); Marryshow v. Town of Bladensburg, 139 F.R.D. 318, 320 (D. Md. 1991) (evidence of prior incidents involving other officers offered to prove a custom or policy of the municipality is inadmissible against the defendant officers).

Given the incidents of misconduct from other cases cited by the plaintiff in his complaint, no matter how brief and pertaining to officers not involved in the underlying criminal proceedings, in support of his case against the City, and considering further that plaintiff may attempt to offer the St. Clair Report in evidence, it is clear that bifurcation

---

[4] This prejudice would only be exacerbated by the introduction in evidence of the St. Clair Report. Unless the claims against defendants are bifurcated, defendants' conduct will inevitably be evaluated in light of the findings and recommendations of the St. Clair Report. This risk does not exist in a bifurcated trial because the St. Clair Report is not admissible against the defendant officers.

of the trial is the only way of assuring all the defendants of a fair trial. Carter v. District of Columbia, 795 F.2d at 126-132 is instructive in this regard. In Carter, the lower court admitted evidence of other bad acts of the defendant officers, as well as evidence of misconduct by police officers other than the defendants. Although this evidence was ostensibly admitted to prove that the City maintained a policy or custom of permitting officers to violate citizens' civil rights, the *Carter* Court nevertheless ruled that it was an abuse of discretion to admit such evidence in an action involving the individual officers. *Id*. In *Carter*, the evidence of misconduct by other police officers took the form of inflammatory and sensational newspaper articles. The court concluded that specific accounts of allegations contained in newspaper articles were themselves of no probative value and the judge's decision to permit such accounts to be read verbatim constituted a conspicuous failure to exercise proper control, amounting to an abuse of discretion. *Id*. at 128. The lower court also admitted into evidence the personnel files of the defendant officers. The Appeals Court concluded that this too was an abuse of discretion because there was a significant risk that the jury would conclude that the evidence established the bad character of the defendants and that the defendants were likely to have acted the same way on the night in question. *Id*. at 131. Finally, the court ruled that the limiting instructions given the jury "were insufficient to guard against the danger of unfair prejudice." *Id*. at 126.

     In the present case, as in *Carter*, this Court should recognize that limiting instructions will not suffice. Indeed, without a bifurcation, the sheer volume of limiting instructions that will need to be given will prejudice these defendants. Moreover, the number of limiting instructions necessary would create a risk that the jury would be

unable to compartmentalize properly all of the evidence and, consequently, the individual officers will be prejudiced.[5]

    2.    THE RISK OF PREJUDICE TO THE CITY

The substantial risk of prejudice to the City necessitates not just the bifurcation of the trial, but substantially supports a basis for conducting of two separate trials with different juries. A jury, after finding a civil rights violation on the part of the named defendant officers or some other governmental actor would then be asked, relative to the claim against the municipality, to review additional evidence, much of it likely previously inadmissible against the defendant officers, concerning the bad acts of other officers in unrelated matters. The new and previously inadmissible evidence would very likely be an incendiary revelation to the jurors. Ultimately, the jury's natural inclination after assigning liability to one defendant would be to assign some degree of blame to the municipality regardless the content and/or quality of any limiting instructions made by the court. This is very important because after establishing an actionable violation of the plaintiff's civil rights, to succeed in his municipal liability claim the plaintiff must show (1) that the municipality created or maintained a policy, practice or custom in violation of a constitutional standard, (2) that the municipality's policymaking officials, who were on notice of the misconduct, remained deliberately indifferent to or tacitly authorized continuation of the misconduct, and (3) the policy, practice or custom caused the violation of the plaintiff's civil rights. Jonielunas v. City of Worcester Police Department, et al., 338 F.Supp.2d 173, 177 (D. Mass 2004). After finding liability on the

---

[5] In *United States v. Garcia-Rosa*, 876 F.2d 209, 222 (1st Cir. 1989), the First Circuit ruled that the prejudice caused the defendant by "other bad act" evidence "was so severe and unfair that it cannot be remedied merely through a limiting instruction." The same is true in this case.

part of an individual officer, the likelihood that a jury presented with evidence indicating the bad acts of other officers could overcome its predisposition to the plaintiff's case and pay proper attention to the causal nexus required for a finding of municipal liability is too much of a risk to the defendant municipality's right to a fair trial.  Part and parcel to that right is the presumption of an unbiased finder of fact.

       3.      BIFURCATION PROMOTES JUDICIAL ECONOMY

The considerations of prejudice discussed above mandate bifurcation without regard to considerations of convenience, expedition or judicial economy.  However, the argument for bifurcation is strengthened further by the fact that bifurcation promotes judicial economy.

One of the explicit goals of Rule 42(b) is to promote expedition and economy.  This is not always accomplished, however, by means of a single trial.  *E.g.,* Reiner Distributors, Inc. v. Admiral Corp., 257 F.Supp. 619, 620 (S.D.N.Y. 1965)("[w]hen there is a possibility, however, of shortening the trial considerably by holding a separate trial on an issue, the court should exercise its discretion ... and try the issue separately if such a procedure will not prejudice either side").  This is particularly true where the possibility exists that, if claims are bifurcated, there will never even be a second trial.  In that event, there can be no denying that bifurcation promotes expedition and economy.  Ricciuti, 796 F.Supp. at 87 (ordering bifurcation where "the potential benefit of avoiding a second trial ... outweighs the potential cost of conducting one large trial").

In the present case, if the Court were to allow defendants' motion for a separate trial, the claims against defendant officers will, of necessity, be tried first.  Once the claims against the defendant officers are tried, there is a significant likelihood that there

will be no need for a second trial.  First, the jury considering the claims against defendants could well return a verdict in the individual defendants' favor.  This would likely obviate the need for a second trial of the claims against the City.[6]  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Second, the jury could return a verdict in plaintiffs' favor that is then satisfied by defendants (or by the City indemnifying defendants) prior to any second trial.  It is axiomatic that a plaintiff is entitled to but one recovery.  *Marryshow* 193 F.R.D. at 320 ("[i]f Plaintiff's judgment were satisfied by payment, or secured by a bond pending appeal, there might be no practical reason to proceed against the [City]").

Third, the jury could return a verdict in plaintiffs' favor and the entire case could then settle before the trial of plaintiffs' claims against the City.  In fact, the City had offered to indemnify each individual defendant officer[7] in return for the plaintiff dismissing his municipal liability claim, but the plaintiff refused that offer.

A second trial is necessary only where (1) the jury returns a verdict in plaintiffs' favor on the claims against defendants; (2) the judgment in plaintiffs' favor is not satisfied, and (3) the plaintiffs remain unable to reach a settlement with the City.  The simple possibility (not likelihood) that two trials will ultimately be required does not, however, outweigh the significant potential benefits accompanying a bifurcation.[8]

---

[6] Plaintiff's claims against the City could survive a jury verdict in the defendant officers' favor only if the verdict were based upon defendants' qualified immunity.  *See, Ricciuti*, 796 F.Supp at 86 ("[t]his is true because the qualified immunity defense is available to individuals but not to government bodies").  The Court can determine whether the jury relied upon defendants' qualified immunity in reading its verdict through the use of special questions to the jury.

[7] The City's offer to indemnify the individually named officers is subject to the maximum amounts that the City is able to indemnify under G.L. c. 258, §9.

[8] There are creative measures available to the Court to minimize further the duplication of effort caused by two trials.  For example, the Court could try the two cases back-to-back to the <u>same</u> <u>jury</u>, thereby obviating the need to repeat evidence.

Accordingly, judicial economy would be well-served by separate trials of the claims against Officers Murphy, Callahan and Walsh, and the claims against the City and Roache, since a trial against the City and Roache would be mooted by verdicts for the individual defendant officers. Also, the type of evidence to be used against and for the City and Roache would be relevant as to what was and what was not the policy and custom of the City of Boston Police Department at the relevant time, and not relevant to trial on the facts.

C.  THE NECESSITY OF PHASED DISCOVERY

It is well within this Honorable Court's discretion "to structure discovery activities by phasing and sequencing the topics which are the subject of discovery" … "[i]n order to facilitate settlement and the efficient completion of discovery." U.S.D.C. Local Rule 26.3. In Wilson v. Town of Mendon, 294 F.3d 1, 7, FN 15 (1st Cir. 2002), District Judge Stearns, sitting by designation with the First Circuit Court of Appeals, opined that "[i]n phasing the trial of the case, the court will ordinarily phase discovery as well."[9] If the cases cited by the plaintiff in his complaint in support of his allegation of a policy, custom or procedure of the City and its police department to violate the civil rights of citizens are likely to be the subject of plaintiff's requests for discovery, the City will saddled with an undue and unnecessary burden. This Honorable Court should stay or limit the type of information discoverable from the City until after the liability of the individual defendant officers has been determined.

The burden and expense of what is likely to be the plaintiff's proposed route of discovery outweighs its likely benefit. Because of the allegations made by Drumgold, the

---

[9] Judge Stearns continues in his footnote to point out that "[r]eopening discovery on a plaintiff's municipal liability claims remains an option in the unlikely event that the municipality chooses not to satisfy an adverse phase one judgment."

12

City estimates it will need to produce scores of files regarding the alleged incidents cited in his complaint, including but not limited to the personnel files of all the police officers involved in the cited incidents, as well as the scores of Internal Affairs files associated with those police officers involved in the cited incidents of police misconduct.

The City anticipates it will require twenty to thirty (20 to 30) additional witnesses to be deposed or called at trial with respect to the municipal liability claim in addition to any expert discovery and testimony.

The City anticipates the individual liability claim will require the deposition or testimony at trial of fifty (50) witnesses in addition to any expert discovery and testimony.

If the trial is not bifurcated, the City anticipates the individual liability claims will require four to six (4 to 6) weeks of trial and the municipal liability claim an additional three to four (3 to 4) weeks of trial.  Therefore, in the interests of judicial economy the City respectfully requests this Honorable Court bifurcate both the discovery and trial of the municipal liability claims from those against the individual defendants.

    1.    <u>THE SUBJECT MATTER TO BE DISCOVERED IS IRRELEVANT.</u>

The subject matter to be sought from the City is irrelevant to any Section 1983 action against the individual defendant officers.  As noted above in detail, the plaintiff must prove that the individual defendant officers or some other person acting under the color of law violated his civil rights prior to being able to proceed against the City in his Section 1983 claim.  The plaintiff cites five instances before or around 1989 that relate to the events surrounding other criminal investigations in the City.  The plaintiff cites at least four other criminal investigations which occurred after the conviction of the plaintiff

13

for the murder of Darlene Tiffany Moore. This subject matter to be sought from the City and as evidenced by the cases cited by the plaintiff in his complaint does not directly pertain to the individual defendant officers. Possessing information pertaining the criminal investigations and/or prosecutions of those cases would do nothing to support the plaintiff's Section 1983 actions against the individual defendant officers.

      2.    THE SUBJECT MATTER TO BE DISCOVERED IS PREJUDICIAL.

The subject matter to be sought from the City is prejudicial to any Section 1983 action against the individual defendant officers. Aside from being irrelevant to his actions against the defendant officers, affording the plaintiff this information would be tantamount to arming him with a weapon capable of inflicting great prejudicial harm against the defendant officers and unduly endanger their opportunity to a fair trial. This is not necessary. It stands to reason, that the plaintiff will strive greatly to introduce directly or indirectly any information gleaned from the City relative to its Monell claim. If the plaintiff's claim against the individual officers is to stand, it must do so on facts germane to any violation of his rights attributable to the defendant officers and his conviction. How the investigation of the shootings of Charles and Carol Stuart was managed, or any of the other cases cited by the plaintiff, has nothing to do whatsoever with his efforts or ability to show that the individual defendant officers violated his civil rights.

      3.    THE EXPENSE AND BURDEN OF PRODUCTION OF THE SUBJECT MATTER TO BE DISCOVERED IS NOT JUSTIFIED.

The expense and burden of producing the subject matter likely to be sought from the City prior to any liability being assigned to the individual defendant officers is not

justifiable and would put undue strain on the resources of this court. The subject matter likely to be sought by the plaintiff is, like the material in his own case, goes back in many instances fourteen to fifteen years. The files of many of these cases are, in a word, voluminous and present the potential for numerous motions to limit the production of records contained therein on the grounds of privacy and/or privilege. The Court would need to manage or guide any discovery of this sensitive information. This would require the appointing of a special discovery master capable of overseeing the discovery of the subject matter and empowered to resolve with finality any discovery disputes arising therefrom.

    4.    DISCOVERY OF THE SUBJECT MATTER SHOULD BE STAYED UNTIL TRIAL, OR IN THE ALTERNATIVE THE PHASING OF DISCOVERY OF THE SUBJECT MATTER AS THE LIKELIHOOD OF TRIAL BECOMES ASSURED.

It would be just and economical for this Court in the proper exercise of its discretion to phase plaintiff's discovery of the City. While the allegations presented by the plaintiff are serious, and the plaintiff is entitled to proceed with his claim against the defendant municipality, Drumgold does not posses, nor do the rules of civil procedure endow him, with the right to conduct an unfettered "fishing expedition" into the files of unrelated cases in the possession of the City. Therefore, this Honorable Court should stay discovery of the City until the liability of the individual defendant officers has been determined, or in the alternative, phase plaintiff's discovery of the City in such a way that would sequence the topics which are the subject of discovery in order to facilitate

settlement and the efficient completion of discovery prior to the trial of the individual defendant officer.  L.R. 26.3.

## CONCLUSION

Plaintiff's claims against defendants are serious ones.  Defendants seek a separate trial so that the propriety of the individual defendant officers' conduct will be judged by their actions vis-à-vis the plaintiff.  All of the defendants are undeniably entitled to be judged in this manner and only be means of a separate trial may they be assured of being so judged.  Accordingly, in order to avoid unfair prejudice and to promote expedition and economy, defendants' motion for a separate trial should be allowed.

        Respectfully submitted
        Defendants The City
        of Boston and Francis M. Roache,
        by their attorneys,


          //s// John P. Roache
        John P. Roache BBO#421680
        Patrick J. Donnelly BBO#651113
        Hogan, Roache & Malone
        66 Long Wharf
        Boston, Massachusetts 02110
        (617) 367-0330

Dated: July 22, 2005

**CERTIFICATE OF SERVICE**

      I, John P. Roache, hereby certify that on this 22st day of July, 2005, I have served a copy of the foregoing DEFENDANTSFRANCIS M. ROACHE AND THE CITY OF BOSTON'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO BIFURCATE DISCOVERY AND TRIAL, where unable to do so electronically, via U.S. first class mail, postage prepaid, as follows:

Rosemary C. Scapicchio, Esquire
Four Longfellow Place, Ste 3703
Boston, Massachusetts 02114

Michael W. Reilly, Esquire
Tommasino & Tommasino
Two Center Plaza, Suite 800
Boston, Massachusetts 02108

Hugh R. Curran, Esquire
Bonner, Kiernan, Trebach & Crociata
One Liberty Square
Boston, Massachusetts 02109

Donald R. Faymen, Esquire
640 Main Street
Malden, Massachusetts 02148

Mary Jo Harris, Esquire
Morgan, Brown & Joy
200 State Street, 11th Floor
Boston, Massachusetts 02108-4472

Susan M. Weise, Esquire
City of Boston Law Department
Boston City Hall
Room 615
Boston, Massachusetts 02201

                                      //s// John P. Roache_____
                                      John P. Roache (BBO# 421680)