UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO.  04-CV-11193-NG

_____

SHAWN DRUMGOLD,                  )
                                 )
          Plaintiff              )
                                 )
vs.                              )
                                 )
CITY OF BOSTON, ET AL.,          )
                                 )
          Defendants             )
_____)

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL TESTIMONY AND PRODUCTION OF DOCUMENTS DIRECTED TO RICHARD LEHR, AND TO COMPEL PRODUCTION OF OTHER RELEVANT WITNESSES FOR DEPOSITION

Defendants Timothy Callahan, Francis M. Roache, Paul Murphy, Richard Walsh and the City of Boston (hereinafter "Defendants"), hereby move this Court pursuant to Federal Rules of Civil Procedure 37 for an order compelling that certain witnesses – specifically, former Boston Globe reporter Richard Lehr (hereinafter "Lehr"),  Edrina Graham Payne, Olisa Graham (no-show for day 2), Michelle Payne Short, Obie Graham, Tynetta Gray, Kathy Jamison, Vantrell McPherson (no show for day 2),  to give testimony and produce documents in this matter, and to allow the deposition of another witness, Terrance Taylor, who is currently in federal custody.

As set forth more fully below, Defendants properly subpoenaed the witnesses named above, the witnesses failed to appear (or, in the case of Graham and McPherson, failed to

return to complete their depositions) and no reason was given to excuse their non-appearance[1].

Defendants also submit that the testimony and documents requested of Lehr in this case should

be compelled because Mr. Lehr took an active role in the investigation of the Plaintiff's case, and

his interactions with various witnesses were instrumental in bringing forward the allegations that

formed the basis for Plaintiff's motion for new trial.  Discovery into Lehr's discussions with

these witnesses, via Lehr's testimony and his notes is thereby clearly relevant to the central

issues in this matter, would allow Defendants to assess the credibility of these witnesses, and is

unavailable from any other source.

## I.    FACTS RELEVANT TO THIS MOTION

This is a civil rights case brought by plaintiff Shawn Drumgold against the City of

Boston and three individual officers, alleging that his conviction of first degree murder in

October 1989 was the result of deliberate police misconduct.  Drumgold has alleged, *inter alia*,

that the officers manufactured evidence, coerced or intimidated individual witnesses into

testifying falsely or into refusing to testify on Drumgold's behalf, withheld evidence of one eye

witness's serious medical condition, and provided rewards and inducements to another witness in

order to secure his allegedly false inculpatory testimony.

The Boston Globe published Drumgold's allegations in a series of articles,

authored by Lehr, published in May and June of 2003.  (See Lehr newspaper articles,  attached

hereto as Exhibit A).  Lehr writes that he interviewed a number of witnesses, some of whom are

named and quoted.  Lehr's articles are the first time that any of the allegations that form the basis

---

[1] It was agreed between counsel for the Defendants and for Lehr that the Defendants would move to compel his appearance at deposition, outlining the reasons therefor in the motion (rather than requiring Lehr's counsel to move for a protective order).

of this suit were made public[2].   At the request of Drumgold's current counsel, Rosemary

Scappichio, Lehr actually conducted an investigation into the case (with the assistance of

Scappichio's private investigator), which included his locating and interviewing many of the

jurors and the witnesses who had originally testified at Drumgold's trial in 1989.   (Exhibit B,

Affidavit of Mary Jo Harris).   Drumgold's counsel utilized information obtained by Lehr in his

renewed motion for a new trial.   (*See* Supplemental Memorandum, attached hereto as Exhibit C).

Lehr's direct and active involvement in the investigation was further referenced in the Boston

Globe columnist Brian McGrory's by-line on June 4, 2003, in which he wrote that "[f]our key

prosecution witnesses have recanted their statements and testimony against [Drumgold] since

Globe's Richard Lehr started probing the case."  (See Globe article by McGrory, attached hereto

as Exhibit D).  Drumgold stated, in a documentary made about his case, that Lehr was able to

gather information that none of Drumgold's attorneys or private investigators were able to find.

(Ex. B).

      Defendants served a subpoena on Lehr on June 28, 2006.  The subpoena

commanded him to appear for deposition on July 11, 2006, and to produce any written

investigative materials and correspondence in his possession relative to Plaintiff and the

homicide of Tiffany Moore.  (See Exhibit E, Lehr subpoena, attached hereto).  Lehr's counsel

contacted the undersigned counsel for defendant Timothy Callahan by telephone  and informed

her that Lehr refused to appear voluntarily.  (See Ex. B).

      The defendants seek to depose Lehr for the following purposes:  (1) to obtain his

notes of interviews with named (i.e., non-confidential) sources, so that any prior inconsistent

statements can be identified;  (2)  to obtain his notes of interviews with witnesses who provided

---

[2] Drumgold had, previous to the publication of these articles, moved for a new trial on claims of juror and court
officer misconduct [ dates ], and on the grounds that his counsel failed to effectively represent him.  In neither of
those two petitions did Drumgold allege the police misconduct recited above.

information but who are not identified;  (3) to obtain information from him regarding the sources

of his information that suggested police or prosecutorial misconduct had occurred in the criminal

case;  (4)  to obtain from him any description of information that he may have provided to the

fact witnesses (named and un-named) in this case.

        The defendants respectfully submit that they have a legitimate, non-frivolous and

non-harassing interest in obtaining Lehr's testimony, that they have exhausted all possible

sources for the information sought, and that their interest in mounting a defense to this case

outweighs any interest Lehr may have in resisting discovery.  Further, to the extent that Lehr has

engaged as a member of the defense team (by conferring with Attorney Scappichio about

investigating the case, and working with Drumgold's private investigator to locate and interview

jurors and witnesses), no journalist privilege should shield Lehr from being compelled to give

testimony.  In the alternative, since Lehr has spoken publicly about his investigation and named

witnesses who were interviewed, Defendants submit that there is no need to protect the

information sought from disclosure as it is non-confidential and there would be no threat to the

First Amendment implicated by its production.

## II.    <u>SPECIFIC AREAS OF DISCOVERY SOUGHT</u>

    A.    <u>Testimony and Investigatory Notes of Richard Lehr</u>

        Trial witnesses Vantrell McPherson and Ricky Evans both spoke to Lehr and

were quoted in the series of articles he wrote about the Drumgold trial. (*See* Exhibit A).  Both

McPherson and Evans testified against Drumgold at his criminal trial in 1989.  Specifically,

according to the May 4, 2003 article, McPherson testified at Drumgold's trial that she ran into

Drumgold and his co-defendant, Terrance Taylor, before the shooting on the night that Moore

was killed.  *Id*.  McPherson testified that she heard Taylor say to Drumgold, "Come on, Shawn,

you know we got to do this." *Id*. However, according to Lehr, when he interviewed McPherson, she recanted this earlier testimony; she claimed that her prior testimony was false, and that she had given false testimony due to police coercion. *Id*. McPherson was and has been unable to identify any police officer who "coerced" her, claiming that she was yelled at by a "fat man" in the courthouse prior to taking the stand. She has also failed to identify, or testify, that any representative of the prosecutorial team – prosecutor, police officer, witness advocate – suggested or told her how to testify. (Exhibit F, McPherson Testimony, New Trial).

McPherson was deposed in this case on March 17, 2006. In her testimony about her interaction with Lehr, McPherson revealed that Lehr "popped up at her aunt's house," and that Lehr did all the talking, "telling [her] what he thought." (*See* Deposition of Vantrell McPherson, attached hereto as Exhibit G, at pp. 16, 27). McPherson also testified that Lehr had told her that there were witnesses who were changing their stories. *See id*. at 27. Defendants are entitled to discover what McPherson initially said to Lehr when he "popped up" to revisit the Moore murder with her, what information Lehr shared with McPherson and how McPherson responded when Lehr "popped up" to share his investigation's results with her, in order to determine if her recantation is based on truth, on a desire to conform with the statements of others, or on any other basis that would affect her credibility.

Ricky Evans testified at Drumgold's trial that he had seen Drumgold and Taylor outside his apartment building, a few blocks from the crime scene on the night that Moore was killed. He testified that both men had firearms, and that he heard them discussing where two men could be found – men whom investigators believe were the real targets the night that Moore was shot. (Exhibit H, Evans' Trial Testimony). Lehr reported on May 4, 2003, that Evans stood by his testimony in an interview he conducted with him for the article, that Evans denied

coercion, and that "what [he] said was the way it happened." (Ex. A). However, in the evidentiary hearing held on Drumgold's motion for a new trial in August 2003, Evans claimed that Lehr's reporting was wrong and mischaracterized his statements, claiming both coercion and rewards were given to him in exchange for false testimony. (Exhibit I, Evans' Testimony, New Trial). Defendants have a real need to determine whether Evans lied to Lehr or to the Court, either at the original trial or at the hearing on the motion for new trial, and discovery of Lehr's notes of that conversation, again, will impact on the credibility of a critical witness in this case.

Olisa Graham was interviewed by Lehr and identified in his article published on May 4, 2003, in which she is quoted as saying she was an alibi witness for Drumgold, but was frightened out of testifying on his behalf because she was threatened with arrest in a telephone conversation with an unnamed and unidentified man. (Ex. A ). Originally, Drumgold's first defense attorney, Steven Rappaport, contended that Graham's identity as an alibi witness was withheld from him, and that a tape recorded statement she had given the police was never turned over to him (signing an affidavit to the effect that had he known of her ability to corroborate an alibi, he would have called her at trial). Rappaport's original trial file has not been produced[3] but the District Attorney's Office was able to produce correspondence showing that the Assistant District Attorney had, in fact, delivered both her taped statement and transcription of it to Rappaport prior to trial. Rappaport conceded at the Motion for New Trial that his allegation that Graham's statement and identity were withheld was wrong. (Ex. J, Rappaport Testimony) Still, the apparent ignorance of Drumgold's defense team as to Graham's identity and the alleged

---

[3] In deposition, Rappaport claimed he turned his entire file over to successor counsel, Rosemary Scappichio. Scappichio has not produced the file to defense counsel, claiming she never received it from Rappaport. The missing trial file will be addressed in a separate motion to compel.

threats that were made to prevent her from testifying raise legitimate questions about how Lehr was able to identify her when they apparently were not[4].

Graham testified about this interview at her deposition on May 17, 2006. When asked about the accuracy of Lehr's account in his article of Graham's statements to him as represented in Lehr's article, Graham was equivocal.   Q: "Was [the article] accurate?" A: "I wouldn't say accurate, but it was – I can't actually remember every detail of it, but yes."  (*See* Deposition of Olisa Graham, attached hereto as Exhibit L, at p. 15).  Graham also testified that she believed Lehr took notes during their conversation.  (*Id*. at 27).   Since Lehr was apparently the first person from Drumgold's team to speak with Graham, the details of that conversation are significant[5].

B.    Other Witnesses Who Failed to Produce Themselves For Deposition

Five other witnesses were subpoenaed for deposition by Defendants, all of whom failed to appear. .  (*See* Subpoenas, attached hereto as Exhibit M).  As described below, each of these individuals has some knowledge of the Moore homicide and the circumstances leading up to Drumgold's conviction in the Moore case.

- Edrina Graham Payne – Allegedly an alibi witness at 23 Sonoma Street and girlfriend of Antonio Anthony.

- Michelle Payne Short – Allegedly an alibi witness at 23 Sonoma Street, and girlfriend of Co-Defendant Terrance Taylor.

---

[4] Lehr's testimony on this point is of special importance, since it is clear that tactical decisions were made by Drumgold's trial counsel that are now being recharacterized as police misconduct.  At deposition, Rappaport now claims that the decision not to call Graham was a calculated one.  It may well be that Rappaport's file would demonstrate other tactical decisions by the defense team that would undermine Drumgold's claims of police interference in his right to a fair trial.  Since Rappaport's file has apparently disappeared, Lehr's notes become even more significant, as they may be the only repository of the defense team's strategies and efforts.

[5] Defendants note that Lehr, in communicating with Drumgold's private investigator, expressed his interest in "keep[ing] the story alive by finding new alibi witnesses or new information, whatever."  Ex. N, email from Lehr to Scott Keller.   By such efforts, working cooperatively with the investigator,  defendants respectfully suggest that Lehr has made himself a fact witness in this case, and  should be compelled to give his testimony through deposition.

- Olisa Graham – Allegedly an alibi witness;  attended 1 day of deposition but  has refused attempts to reschedule or re-subpoena for conclusion of deposition.

- Obie Graham  -- Allegedly was one of two people who informed people, including Drumgold, of the Tiffany Moore shooting (and thus could corroborate Drumgold's alibi).  Graham is in custody and has refused to testify.

- Tynetta Gray – Allegedly informed others that Drumgold was one of the shooters.

- Kathy Jamison – Allegedly present with Obie Graham when Drumgold and others were informed of Tiffany Moore's shooting.

- Vantrell McPherson – Present when Tiffany Moore was shot; testified about statements made by Drumgold and Co-Defendant Taylor.  Recanted at motion for new trial, attended day 1 of deposition and has refused attempts to reschedule or re-subpoena for conclusion of deposition.

        None of the above witnesses have asserted any privilege that would preclude them from testifying.

III.        **ARGUMENT**

As a general matter, a party is entitled to discovery regarding any matter not privileged, which is reasonably calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26(b)(1).  A witness who has been properly served with a valid subpoena, pursuant to Fed. R. Civ. P. 45(a) and (b) must either appear as noticed, or must file for a protective order that the discovery not be had.  None of the witnesses listed above, with the exception of Lehr, have made any effort to seek a protective order (or have made any other attempt to reschedule the depositions).  Accordingly, defendants ask that they be compelled to attend and give testimony.

In order to take the deposition of an individual who is confined to prison, the party seeking discovery must obtain leave from Court.  Fed. R. Civ. P. 30(a)(2).  Terrance Taylor is currently incarcerated,  at U.S. Penitentiary in Hazelton, West Virginia, and defendants respectfully request that the Court give leave for his deposition to be taken.

It is anticipated that Lehr will argue that he is entitled to protection from deposition since the substance of the information sought was gathered or created by him in his role as an investigative journalist.  While there has not been any official recognition of a reporter's privilege in the First Circuit, where civil litigants have sought to obtain information gathered by news agencies or reporters, the First Circuit has recommended courts apply the provisions of Fed. R. Civ. P. Rule 26 "with a heightened sensitivity to any First Amendment implication that might result from the compelled disclosure of sources."  Bruno & Stillman, Inc. v. Globe Newspaper Co., 633 F.2d 583, 596 (1st Cir.1980).   However, the courts have carefully balanced this sensitivity with the "fundamental and comprehensive . . . need to develop all relevant facts in the adversary system."  See In the Matter of Roche, 381 Mass. 624, 633, 411 N.E.2d 466, 473 (1980).  "[W]e do not believe that the First Amendment creates at the level of

constitutional doctrine an exception to the longstanding principle that the public . . . has a right to every man's evidence'." Id. quoting Branzburg v. Hayes, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660 (1972)(internal quotations omitted).

The First Circuit has made it clear that in determining what protection from disclosure, if any, should be afforded to journalistic materials and information gathered by reporters or news agencies, "courts must balance the potential harm to the free flow of information that might result against the asserted need for the requested information." See Bruno & Stillman v. Globe Newspaper Co., 633 F.2d 583, 595-596(1st Cir. 1980).  Accordingly, once the party requesting production of the information has demonstrated the relevance of the materials sought, the burden falls on the objecting party to establish the need for maintaining confidentiality. Id. at 597.   The balancing of these considerations has led the First Circuit to approve of compelling disclosure of a reporter's confidential sources where they are "directly relevant to a nonfrivolous claim or inquiry undertaken in good faith;" and where "reasonable efforts were made to obtain the information elsewhere."  See In Re Special Proceedings, 373 F.3d 37, 45 (1st Cir. 2004).

The testimony and materials sought from Lehr are critically relevant, and Defendants here seek such information in good faith.  Drumgold alleges that his conviction of first degree murder in October 1989 was the result of deliberate police misconduct, and that the police were involved in coercing witnesses to testify adversely to him at his trial.  The first time any such allegations were ever made was after Lehr, in an investigation that he conducted, spoke with several trial witnesses.

Drumgold had twice moved for a new trial, based upon court officer and juror misconduct and upon ineffective assistance of trial counsel.  It was not until 2003, after Lehr

began speaking to trial witnesses, that any allegations of police misconduct or coercion were made.  This is especially striking given that at least one of the individuals that Drumgold claimed to have been with at the time of the shooting, Michelle Graham Payne, was the girlfriend of his co-defendant, Terrance Taylor.  Presumably, Taylor, who like Drumgold was on trial for first degree murder and in custody for over a year awaiting trial, would have been able to identify his girlfriend as an alibi witness.  Presumably, if Drumgold's alibi is true, <u>he</u> would have been able to direct the defense team to speak to these women, and again, if the allegations of police coercion are true, presumably they would have been made at the time.   However, Lehr appears to be the only person who was able to elicit these allegations of coercion.  Defendants have a right to test these new allegations, and to do so by learning how Lehr was able to accomplish what the defense team failed to uncover.

Given that the witnesses have now given testimony that directly contradicts earlier testimony they had sworn to under oath, Lehr's notes of his interviews of these sources are relevant to the instant case to identify prior inconsistent statements, which goes directly to the truthfulness and credibility of these witnesses.  Further, Defendants are entitled to explore whether these witnesses were influenced by information shared with them by Lehr into recanting their earlier testimony against Drumgold.  The deposition testimony of McPherson, in which she testified that Lehr did all the talking in her interview with him, and that he told her that there were witnesses who were changing their stories presents a strong inference that Lehr may have actually influenced McPherson's recanting of her earlier testimony against Drumgold.  (*See* Exhibit G). Since the theme of police misconduct only emerged through Lehr's interviews and reports, Defendants should be able to depose Lehr for further information with respect to the

truthfulness and credibility of those witnesses who are now supporting Drumgold's claims that he was wrongly convicted in large because of police misconduct.

Moreover, because Lehr himself has spoken publicly about his investigation and the interviews he conducted while reporting on this issue, the information Lehr is seeking to protect is non-confidential and therefore disclosure of such information portends no harm to the "free flow of information."  See Bruno & Stillman, 633 F.2d at 595-596.  In fact, Lehr gave a taped interview about his investigation of the Drumgold case, which was contained in a documentary about the Drumgold case.   Lehr felt free to discuss the details of his interviews publicly, and so cannot possibly object to being deposed in this matter on the grounds that the information he gathered in his investigation is confidential and protected from disclosure.

There is no question that the information Defendants seek here from Lehr is directly relevant to Drumgold's claims, and cannot be learned from any other source. Drumgold's attorney has stated publicly that she contacted Lehr expressly in order to win his assistance in her effort to obtain a new trial, and her investigator testified that he shared information with him throughout the investigation (also see Ex. N).  Any such information is directly relevant to Drumgold's claims of police misconduct (and, given the apparent loss of the trial file, no other source can be used to obtain this information).

The information sought by Defendants from Lehr  goes to "the heart of the matter," and Defendants, having deposed some fifteen fact witnesses to date (and having attempted to depose another ten non-cooperative witnesses), are certainly not using Lehr as a "default source of information."  See Wen Ho Lee v. Dep't. of Justice, et al., 2005 WL1513086 at *3, citing Zerilli v. Smith, 656 F.2d 705 (D.C.Cir.1981)(setting forth guidelines for balancing First Amendment interests with a litigant's need for information where a journalist's testimony

and documents are sought in a civil action -- that information must go to "the heart of the matter," and that the party seeking discovery "must have exhausted every reasonable alternative source of information").

## IV.    <u>CONCLUSION</u>

For the reasons stated herein, Defendants request that the Court order the following witnesses to appear and be questioned:  Richard Lehr, Edrina Graham Payne, Olisa Graham, Michelle Payne Short, Obie Graham, Tynetta Gray, Kathy Jamison, Vantrell McPherson,  and Terrance Taylor.

Respectfully submitted,

TIMOTHY CALLAHAN

By his attorney,

__/s/ Mary Jo Harris _____
Mary Jo Harris, BBO # 561484
Morgan, Brown & Joy, LLP
200 State Street
Boston, MA 02109
(617) 523-6666

RICHARD WALSH,

By his attorney,

___/s/ Hugh R. Curran      _____
High R. Curran, BBO # 402057
Bonner Kiernan Trebach & Crociata
One Liberty Square
Boston, MA 02109
(617) 426-3900

THE CITY OF BOSTON

___/s/ John Roache_____
Roache & Malone
66 Long Wharf
Boston, MA 02110

PAUL MURPHY

____/s/ William M. White _____
Davis, Robinson & White
One Faneuil Hall Marketplace
Boston, MA 02109

Dated:  November 20, 2006

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 20, 2006 I served a copy of Defendants' Motion to Compel  upon the following counsel of record by filing with the ECF/Pacer Case Management System and by sending a courtesy copy, first class mail, postage prepaid:

> Rosemary Curran Scappiccio
> Four Longfellow Place, Ste. 3703
> Boston, MA 02114
>
> Michael W. Reilly
> Tommasino & Tommasino
> Two Center Plaza
> Boston, MA 02108

I further certify that an electronic version and paper copy of the attached was forwarded on November 20, 2006 to counsel for the <u>Boston Globe</u>:

> Jonathan Albano
> Bingham McCutchen LLP
> 150 Federal Street
> Boston, MA 02110

/s/ Mary Jo Harris