COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPERIOR COURT
                                                DOCKET # 071882

COMMONWEALTH

v.

SHAWN DRUMGOLD

RECEIVED
MAY 1 6 2003
HOMICIDE UNIT

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HIS MOTION FOR A NEW TRIAL

FACTS

For a detailed account of the substantive facts in Shawn Drumgold's case, please refer to Drumgold's (Third) Motion For A New Trial (filed January 29, 2002).

## FACTUAL DEVELOPMENT SINCE DRUMGOLD'S SECOND MEMORANDUM IN SUPPORT OF THE MOTION FOR A NEW TRIAL

In May 2003, Dick Lehr, a reporter for the Boston Globe published three articles involving the Tiffany Moore homicide. Mr. Lehr conducted his own investigation into Drumgold's conviction. Mr. Lehr located and interviewed a number of witnesses who implicated Drumgold in his 1989 murder trial. According to the Boston Globe, these witnesses, independently, recanted their trial testimony implicating Drumgold in the murder of Tiffany Moore. More importantly, these witnesses independently described police and prosecution tactics of intimidation and coercion that resulted in false accusations of Drumgold's involvement in the Tiffany Moore homicide.

Specifically, the Boston Globe reported that Vantrell McPherson a key identification witness for the Commonwealth who was 13 at the time of trial, was intimidated into identifying Drumgold when she was "berated by a member of the

prosecution team" and reduced to tears. McPherson described a "fat guy" who "was yelling and screaming" urging her to identify Drumgold, despite the fact that she initially told the police she did not know who the shooters were. (Appx A.). This intimidation was never disclosed to Drumgold and is newly discovered evidence.

Eric Johnson, another key prosecution witness recanted his identification of Drumgold on May 15, 2003. Johnson claimed that the police pressured him for over a year to implicate Drumgold in Tiffany Moore's murder. In his initial interview with police Johnson claimed he did not know who was shooting. (Appx B). Two weeks prior to trial, Johnson implicated Drumgold. Johnson said his implication of Drumgold was "a lie." It's wrong, completely wrong." (Appx C). Johnson who was 15 at the time of trial, claims the police "got me to say Shawn, Shawn, Shawn." "I was just a kid." Johnson explained to the Globe the enormous pressure that police place upon him to implicated Drumgold: "They kept coming to my house-they were pressuring me. They kept saying, "We want you to say this." "I was 15. I was scared. (Appx. C.). Additionally, Johnson claimed that before he testified, one of the detectives coached him to "say yes to whatever questions they ask you about Shawn."(Appx. C). This coaching and intimidation was never disclosed to Drumgold and constitutes newly discovered evidence.

Key prosecution witness, Ricky Evans, claimed at trial that he expected no special treatment in return for his implication of Drumgold in the Tiffany Moore homicide. The Globe reported that five days after Drumgold was convicted, his trespassing charges were dropped, and his cocaine possession and his stolen motor vehicle charges were continued without a finding. Additionally, Evan's distribution of crack cocaine charge was never

2

prosecuted by Suffolk County District Attorney's Office, the same office that prosecuted Drumgold. (Appx. A). Prior to trial, the Suffolk County District Attorney's Office maintained that Evans was not promised anything in exchange for his testimony against Drumgold. The events surrounding the Commonwealth's dismissals, failure to prosecute, and the continuances for Evans, were never disclosed to Drumgold and constitute newly discovered evidence.

Mary Alexander, the key identification witness for the Commonwealth who could not pick Drumgold's picture out of a photo array in the initial 13 months of this investigation, claimed just before trial that she saw Drumgold with a gun, leaving the crime scene. New evidence suggests that the Boston Police knew that Alexander suffered from a rare form of brain cancer that can effect a person's memory, perception and cognitive function and never disclosed this information to the defense.(Appx. A.). Alexander's mother, Lola Alexander told the Globe that the police "didn't care" that her daughter had cancer and may have exploited her daughter's disease by coaching her to implicate Drumgold. (Appx. A.). Lola Alexander told the Globe that the police even suggested that she testify, because in Mrs. Alexander's words "they wanted me to see something." (Appx. A.). Drumgold was not informed of Alexander's cancer, and as such could not educated the jury as to the reliability of her identification of Drumgold, given her disease.

Finally, the Boston Police reports of interviews with Drumgold's associate, Antonio Anthony, were grossly distorted according to Anthony's interview with the Globe. Anthony claimed police pressured him into implicating Drumgold. Anthony claimed that during his interrogation, he "just lost control of the whole situation." He

described himself during the interrogation as "just a dumb puppet" "doing what they want me to do." (Appx. A.). Drumgold was never informed that Anthony initially corroborated his alibi, or that Anthony was intimidated into implicating Drumgold in the murder of Tiffany Moore. As such, this information is newly discovered.

ARGUMENT

I. THE PROSECUTION TEAM WITHHELD EXCULPATORY EVIDENCE FROM DRUMGOLD WHICH WOULD HAVE SUPPORTED HIS DEFENSE.

The prosecution's affirmative duty to disclose evidence favorable to a defendant dates back to the early twentieth century. Kyles v. Whitley, 514 U.S. 419, 432 (1995). The United States Supreme Court held in Brady v. Maryland, that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Brady, 373 U.S. 83, 87 (1963).

The Brady holding imposes an affirmative duty on the prosecution to produce requested evidence that is either materially favorable to the accused or impeaching evidence. Brady is not a rule of discovery, it is a rule of fairness and minimum prosecutorial obligations. U.S. v. Ailport, 17 F. 3d 235 (8th Cir. 1994), U.S. v. Brasley, 576 F. 2d 626, 630 (5th Cir. 1978) (citing, U.S. v. Agurs, 427 U.S. 97, 107 (1976).

In the Agurs decision, the United States Supreme Court articulated three distinct types of situations in which the Brady doctrine applies. Agurs, 427 U.S. 97 (1976). The Defendant need only demonstrate that the prosecutor suppressed material evidence favorable to him in order to establish a violation of one of the three categories. If the suppressed evidence is then found to be material, the conviction cannot stand. In this

4

case, Drumgold can prove that the suppressed evidence "might have affected the outcome." Monroe v. Blackburn, 607 F.2d 148, 151-152 (5th Cir. 1979). In order to establish a Brady violation, Drumgold must demonstrate that (1) the state suppressed evidence, (2) the evidence was favorable to the accused, and (3) the evidence was material to the defense. United States v. Bagley, 473 U.S. 667, 674 (1985); Brady v. Maryland, 373 U.S. 83, 87 (1963). Here strong evidence suggests that the prosecution team[1] intimidated witnesses into implicating Drumgold, and coached witness to testify falsely. Drumgold's trial was plagued by errors and omissions including the Commonwealth failure to disclosed evidence that would have cast doubt on Mary Alexander's identification of Drumgold as one of the shooters, and its failure to disclose impeachment evidence of promises and rewards to Ricky Evans. This evidence must be evaluated under Drumgold's Brady claim.

(1) The Commonwealth Suppressed the Evidence

To constitute "suppression of the evidence" under Brady, the government must have at one time possessed the evidence in question or at least had access to the evidence. Commonwealth v. Earle, 362 Mass. 11, 15-17 (1972). It is a requirement of due process that the prosecution must, when appropriately requested, give defense counsel or the court any exculpatory evidence in its possession. Commonwealth v. Walker, 14 Mass. App. Ct. 544 (1982) (quoting Brady, supra).

Here, member of the prosecution intimidated witnesses, withheld impeachment evidence and may have coached witnesses to give false testimony.

---

[1] None of the members of the Suffolk County District Attorney's Office and the Boston Police Homicide Unit involved in the prosecution and trial of Drumgold are associated with the current administration of the Suffolk County District Attorney's Office and the Boston Police Homicide Unit.

5

SCDA1133

(2) <u>The Suppressed Evidence Was Favorable To Drumgold</u>

The Commonwealth, by its failure to produce evidence favorable to the Drumgold, violated the rule of <u>Brady</u>, that suppression by the prosecution of requested material which is favorable to the accused is a denial of due process. <u>Commonwealth v. Ellison</u>, 376 Mass. 1972 (1978) (quoting <u>Brady</u>, <u>supra</u>). Had Drumgold known about the witness intimidation, Mary Alexander's cancer, promises to Ricky Evans prior to trial, it not only would have bolstered Drumgold's theory of defense, but it also would have raised the possibility that other suspects committed this crime. <u>Commonwealth v. Preston</u>, 359 Mass. 368 (1971). Because the Commonwealth failed to disclose this evidence to Drumgold, he was denied due process and the effective preparation and presentation of his defense. <u>Commonwealth v. Jackson</u>, 3 Mass. App. Ct. 288 (1975).

(3) <u>The Withheld Evidence Was Material</u>

Under federal law, evidence is material if there is a reasonable probability that the outcome would have been different had the evidence been disclosed to the defense. <u>Bagley</u> at 682. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome" of the prosecution. <u>Id</u>. Drumgold need not demonstrate that the disclosure would have resulted in his acquittal. <u>Kyles v. Whitley</u>, 514 U.S. 419, 434 (1995).

Under Massachusetts's law, the standard of determining materiality for the purpose of a <u>Brady</u> violation is more favorable to Drumgold. In Massachusetts, defendant can establish <u>Brady</u> violations by demonstrating the withheld report, or available evidence disclosed by it would have "influenced the jury". <u>Commonwealth v. Gallarelli</u>, 399 Mass. 17, at 23 (1987). Under both the state and federal standard, this

SCDA1134

new evidence of intimidation, coaching, and promises, would have "influenced the jury" such that the result of the proceeding would have been different. Kyles v. Whitley, 514 U.S. 491 (1995) (Because the net effect of the evidence withheld by the state in this case raises a reasonable probability in that its disclosure would have produced a different result, Drumgold was entitled to a new trial.)

Here, Drumgold can prove that the Commonwealth violated his rights to due process by suppressing material evidence that would have led to a "reasonable probability" of a different result. U.S. v. Lloyd, 71 F.3d 408 (D.C. Cir. 1995). Bagley materiality is not a sufficiency of the evidence test. A defendant need not demonstrate that after disclosing the inculpatory evidence in light of the undisclosed evidence that there would not be enough to convict. Kyles v. Whitley, 514 U.S. 419, 453 (1995). Rather Drumgold need only demonstrate that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the evidence. Nor is it Drumgold's obligation to prove prejudice. Id. Once a constitutional error has been found, Drumgold's convictions are reversed without regard to harmless error analysis. Finally, the state's obligation to disclose evidence turns on the cumulative effect of all the evidence favorable to Drumgold, not on the evidence considered item by item. As such, the individual prosecutor has a duty to learn of any favorable evidence known to others acting on behalf of the government in the case, including the police. Kyles v. Whitley, 514 U.S. 491 (1955)

There is no dispute that Drumgold has a constitutional right to present evidence that someone other than him committed this crime. In Commonwealth v. Graziano, 368 Mass. 325, 329-331 (1975). This Court held that "a defendant may introduce evidence to

7

show that another person committed the crime or had the motive, intent and opportunity to commit it. This other suspect evidence "should not be to remote in time or too weak in probative quality, and it should be closely related to the facts of the case against Drumgold." Id. at 330. Under Graziano, therefore, had the Commonwealth promptly disclosed the above evidence, Drumgold would have been entitled, at a minimum, to introduce evidence explaining the witness' identification of him as the shooter. Id. at 30.

Based on the newly disclosed evidence, it can no longer be said with any confidence that any of the trial testimony implicating Drumgold in the murder of Tiffany Moore or available evidence disclosed by it would not have influenced the jury." Commonwealth v. Healy, 438 Mass. 672 (2003); Commonwealth v. Daye, 435 Mass. 463 (2001). In fact, this evidence is so crucial to Drumgold theory, that it "undermines confidence" in the verdict. Bagley, 473 U.S. at 682; Strickler v. Greene, 527 U.S. 263, 290 (1999); McCambridge v. Hall, 266 F. 3d. 12 (1st Cir. 2001).

## CONCLUSION

For all of the above stated reasons, this Court should grant Drumgold's request for an evidentiary hearing, or in the alternative, order a new trial.

Respectfully submitted,
Shawn Drumgold,
By his Attorney,

Rosemary Curran Scapicchio
4 Longfellow Place
Suite 3703
Boston, MA 02114
(617) 263-7400
BBO# 558312

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party and upon any party appearing pro se by first class mail, postage prepaid or by hand delivery.

Dated: 5/16/03