UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11193-NG

SHAWN DRUMGOLD,
    Plaintiff

v.

TIMOTHY CALLAHAN, FRANCIS M. ROACHE,
PAUL MURPHY, RICHARD WALSH, and THE
CITY OF BOSTON,
    Defendants

**JOHN DALEY'S EMERGENCY MOTION FOR PROTECTIVE ORDER AND
MEMORANDUM OF LAW IN SUPPORT THEREOF,
WITH REQUEST FOR ORAL ARGUMENT**

Now comes retired Boston Police Lt. Det. John Daley ("Lt. Daley") in the above-referenced action and moves this Honorable Court, through counsel, for a protective order, pursuant to Fed. R. Civ. P. 26(c). Lt. Daley moves for relief on an emergency basis as his deposition is scheduled for January 23, 2007.[1]

**A.   INTRODUCTION**

Plaintiff has brought this action against the City of Boston, the Boston Police Commissioner, and individual police officers alleging a violation of his constitutional rights pursuant to 42 U.S.C. § 1983 and Mass. Gen. L. c. 12, § 11I. Plaintiff alleges that as a result of alleged misconduct by the Defendants he was convicted of first-degree murder and sentenced to life in prison without parole in October 1989. Thereafter, Plaintiff was released

---

[1] This motion is brought pursuant to Fed. R. Civ. P. 7 and Local Rule 7.1 (D. Mass.). It is filed on an emergency basis as Plaintiff is afforded fourteen (14) days after service of the motion to file an opposition. *See also,* L.R. 37.1. Under such a timeline, Plaintiff's opposition would not be due until after Lt. Daley's scheduled deposition, and Lt. Daley would otherwise be compelled to produce the disputed documents, absent agreement of counsel, as filing a motion for protective order "does not automatically operate to stay a deposition or other discovery." Goodwin v. City of Boston, et al., 118 F.R.D. 297, 298 (D. Mass. 1988).

when the District Attorney entered a *nolle prosequi* on November 6, 2003. *See* Pl. Compl. at ¶ 1. Lt. Daley is not a named defendant in this action.

Lt. Daley became a police officer with the Boston Police Department ("BPD") in 1951, and served for forty-one (41) years until his retirement in 1992. Lt. Daley was the commander of the BPD's Homicide Unit from April 27, 1985 through August 23, 1989. For thirty (30) of his 41 years, Lt. Daley wrote notes, in the form of a diary, about his life, experiences and stories he heard as a Boston Police officer. These diary notes were not "official" notes, not made contemporaneously with events described, and were subject to many revisions and edits during the years. In 1995, Lt. Daley completely rewrote all of his diary notes with the intent of someday adapting them to be published as a work of fiction. The original notes in their original form no longer exist.

Lt. Daley was first deposed by Plaintiff on November 15, 2006. His deposition was suspended, over objection of counsel, over the issue of production of Lt. Daley's diary notes. At the time of his deposition, Plaintiff had not served Lt. Daley with a subpoena *duces tecum* for any written documents or notes. Thereafter, on January 12, 2007, Plaintiff served counsel for Lt. Daley with a deposition subpoena *duces tecum* in the above-referenced case requesting that Lt. Daley produce and permit inspection at his deposition on January 23, 2007:

> "[a]ll notes, journals, diaries or writings of any kind authored by [Lt. Daley] during any time when [Lt. Daley] was head of the Homicide Unit of the Boston Police Department and/or any notes, journals, diaries or writings of any kind authored by [Lt. Daley] which concern, relate to or refer to the Homicide Unit of the Boston Police Department or any investigation of the Homicide Unit of the Boston Police Department and/or [Lt. Daley's] employment in the Homicide Unit of the Boston Police Department."

*See* Exhibit 1 (deposition subpoena).

Lt. Daley, through counsel, now moves for a protective order protecting disclosure and production of his personal diary. Plaintiff's discovery request to Lt. Daley is unduly burdensome, an invasion of Lt. Daley's personal privacy, requests irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence in this case. Furthermore, the information is otherwise available by deposing Lt. Daley.

**B.    STANDARD**

This court has broad discretion in "shaping the parameters of pretrial discovery". Aponte-Torres v. University of Puerto Rico, 445 F.3d 50, 59 (1st Cir. 2006). Pursuant to Fed. R. Civ. P. 26(b):

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

A discovery request that is relevant may be limited if the court finds that it is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive…" Fed. R. Civ. P. 26(b)(2). A protective order may issue if, for good cause shown the order is required to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense…" Fed. R. Civ. P. 26(c). As the party moving for a protective order, Lt. Daley has the burden of showing the existence of good cause for issuance of the protective order. Church of Scientology of Boston v. Internal Revenue Service, 138 F.R.D. 9 (D. Mass. 1990), and cases cited.

1.      **<u>Plaintiff's Request Is Duplicative, Burdensome, And Seeks Personal Information About Lt. Daley, Who Is Not A Party To This Case.</u>**

Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence". Fed. R. Evid. 401. Here, the discovery sought by Plaintiff is not relevant to the Plaintiff's claim against the Defendants. Because notes written by Lt. Daley take the form of a diary, a diary that has been continually revised and rewritten to later be adapted as a work of fiction, the requested diary is neither admissible nor reasonably calculated to lead to the discovery of admissible evidence in this case, and Lt. Daley's diary is not likely to make determination of Plaintiff's claims against the Defendants more probable or less probable than without the evidence. The best evidence, Lt. Daley's testimony, is readily available to the Plaintiff by taking Lt. Daley's deposition. The subpoena *duces tecum* directed to Lt. Daley, a non-party to this action, is burdensome, unreasonable, cumulative or duplicative, is intended to subject Lt. Daley to annoyance and embarrassment, and is an invasion of his personal privacy.

Beyond the request for production of Lt. Daley's diary, Plaintiff subpoena *duces tecum* seeks writings of "any kind" during all of Lt. Daley's 41 years on the BPD that merely reference the BPD's Homicide Unit. At its simplest reading, by asking for "writings of any kind" authored by Lt. Daley, Plaintiff requests anything that Lt. Daley ever authored either as an investigator or commander in the Homicide Unit, or anything that references any homicide investigation that was ongoing during any of his time with the BPD. During the time that Lt. Daley was a commander of the Homicide Unit alone, there are hundreds of pages of notes contained in Lt. Daley's diary. Furthermore, during Lt. Daley's 41 years as a

4

Boston police officer, he authored innumerable incident reports, forms and "writings" in hundreds of cases other than the one at bar. Upon information and belief, thousands of documents have already been produced in this litigation. Some of these documents are documents directed to Lt. Daley during his tenure as commander of the Homicide Unit from 1985 through 1989 with regard to Plaintiff's case. These documents have already been produced to the Plaintiff. Finally, any official police documentation or "writings of any kind" authored by Lt. Daley in his official capacity during his 41 years as a member of the BPD is not within Lt. Daley's possession, but would remain in the possession, custody and control of the BPD.

### 2. Lt. Daley Has A Right To Privacy In His Personal Diary

The essence of Plaintiff's subpoena *duces tecum* directed to Lt. Daley is believed to be the personal "diary" that Lt. Daley kept for more than 30 years. Lt. Daley's diary should be considered personal and exempt from disclosure. Lt. Daley's diary chronicles his life as a police officer, recounts rumors, hearsay and innuendo, was not used as part of his official business, and was written, edited and revised many times over the years with the hope of further editing it to later become a work of fiction. *See* In re Sealed Case (Government Records), 950 F.2d 736, 740 (D.C. Cir. 1991) (in evaluating a Fifth Amendment privilege, a diary containing an individual's end-of-the-day reflections on social and business experiences, not used in conducting office affairs, ordinarily would rank as a personal item); United States v. Kaitin, 109 F.R.D. 406 (D. Mass. 1986) (privacy interests protected by the Fifth Amendment prevent compelled production of intimate personal papers such as diaries or drafts of letters or essays); *see also* United States v. Karp, 484 F. Supp. 157, 158 (S.D.N.Y. 1980) (stating, in *dicta*, the Fifth Amendment is destined to be all but eliminated

5

in the area of subpoena *duces tecum* unless such subpoenas are personally intrusive and call for the production of purely private documents such as diaries, personal letters, etc.).

Much like the pocket calendar analyzed in In re Grand Jury Subpoena Duces Tecum Dated April 23, 1981, 522 F.Supp. 977 (S.D.N.Y. 1981), Lt. Daley's diary is private, "made no less private because it contains material relating to an officer's corporate employment." Id., at 984.  The City of Boston did not rely upon Lt. Daley's diary for information, and production of the diary will "intrude on many aspects of what [Lt. Daley] expected to be his…private life or thoughts".  Id.

Furthermore, a request for Lt. Daley's personal thoughts, opinions, or notes about any topic, case or person that he cared to write upon is neither relevant nor likely to lead to the discovery of admissible evidence in this case, but appears directed to simply annoy or cause embarrassment to a now-retired member of the Boston Police Department.  While Lt. Daley's diary contains notations about his life on the police force, it also contains very personal information.  Lt. Daley wrote his diary, and it was not maintained or written by anyone else.  No one had access to the diary, except for Lt. Daley.  The City of Boston did not require Lt. Daley to keep the diary, and the City did not provide the material for Lt. Daley to keep the diary.  Lt. Daley's diary entries were designed to be "purely private notations" for later drafting, editing and adaptation as a work of fiction.  Therefore, the diary serves no official purpose, is personal to Lt. Daley, and this Court should exempt its disclosure.  In re Grand Jury Subpoena Duces Tecum Dated April 23, 1981, 522 F. Supp. at 984-985.

Even if this Court were to consider a request for any notes or writings made exclusively during the time that Lt. Daley was commander of the Homicide Unit (April 27,

1985 – August 23, 1989), Lt. Daley would still object.  Lt. Daley has a reasonable expectation of privacy in his personal diary.  Doe v. Town of Plymouth, 825 F.Supp. 1102, 1107 (D. Mass. 1993) (the Constitution protects an individual interest in avoiding disclosure of personal matters, and the constitutional right to privacy is implicated by the disclosure of a broad range of information).  His expectation of privacy "encompasses an interest in avoiding disclosure of personal matters."  Borucki v. Ryan, 827 F.2d 836, 839 (1st Cir. 1987).

In addition to the reasons stated above, and incorporated here, any diary that he kept during the period of time that he was commander of the Homicide Unit was also subject to continuous revision, further indicating the non-contemporaneous nature of the diary entries. In 1995, three years after his retirement, Lt. Daley completely rewrote his personal diary with the hopes of publishing a work of fiction, and his notations about his life as a Boston Police officer were embellished as a result.  Lt. Daley's original diary notes no longer exist in their original form, are non-contemporaneous, and are his personal opinion or hearsay, contain speculation and suspicion, cite inaccurate dates, and were chronologically rearranged during Lt. Daley's many revisions.  Furthermore, the diary entries contain the personal and private information of victims, case details, and names of witnesses, all third parties not party to this action and who also hold a right of privacy.  To compel Lt. Daley to produce his personal diary would not only invade Lt. Daley's personal privacy but would cause Lt. Daley personal embarrassment.

C.    **CONCLUSION**

"The discovery rules are not intended as a broad license to mount serial fishing expeditions."  Aponte-Torres v. University of Puerto Rico, 445 F.3d at 59.  Personal, private diaries of a person not a party to the litigation, not made contemporaneously, based upon

7

hearsay and speculation, and rewritten and embellished in the hopes of publishing a work of fiction, are not relevant nor likely to lead to the discovery of admissible evidence in this case. Furthermore, any information that Plaintiff may seek by his subpoena *duces tecum* directed to Lt. Daley is available by deposing Lt. Daley. Therefore, Lt. Daley respectfully requests a protective order protecting him from being required to produce hundreds of pages of personal and private diary entries, or "writings of any kind" that Lt. Daley authored during his 41 years with the Boston Police Department.

### REQUEST FOR ORAL ARGUMENT

Pursuant to L.R. 7.1(D), Lt. Daley respectfully requests a hearing on his motion for protective order.

Respectfully submitted,
**JOHN DALEY**

By his attorney,

/s/ Eve A. Piemonte Stacey
Eve A. Piemonte Stacey – BBO# 628883
ROACH & CARPENTER, P.C.
24 School Street
Boston, Massachusetts 02108
Dated: January 17, 2007          (617) 720-1800

### CERTIFICATE OF SERVICE

I, Eve Piemonte Stacey, hereby certify that this document was filed through the ECF system on January 17, 2007, and that a true paper copy of this document will be sent to those indicated as non registered participants on the Notice of Electronic Filing on January 17, 2007 by first class mail.

/s/ Eve A. Piemonte Stacey
Eve A. Piemonte Stacey

9