UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHAWN DRUMGOLD,   Plaintiff | ) ) ) | C.A. NO. 04-11193NG |
| v | ) ) | |
| TIMOTHY CALLAHAN, ET AL.   Defendant(s) | ) ) ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO
COMPEL DEPOSITION OF ATTORNEY ROSEMARY SCAPICCHIO**

### I.   Introduction

The Defendants are seeking to take an extraordinary deposition of opposing counsel. Defendants seek to depose the Plaintiff's criminal defense lawyer concerning her tactics and strategy of over the thirteen years representing the Plaintiff. In support of this extraordinary request, the Defendants have offered no evidence suggesting that trial counsel is uniquely aware of any evidence which would be admissible at trial or likely to lead to admissible evidence.

Attorney Rosemary Scapicchio began to represent Shawn Drumgold in 1991, after he was convicted of first degree murder. From 1991 through 2003, Ms. Scapicchio litigated a direct appeal to the Supreme Judicial Court, litigated three Motions for New Trial and pursued a Federal Habeas Corpus action in this court. As a result of Ms. Scapicchio's extraordinary efforts over thirteen years on behalf of her client, she was successful in obtaining a new trial for the Plaintiff, Shawn Drumgold. The Commonwealth ultimately nol prossed the murder indictments.

1

Ms. Scapicchio is uniquely able to represent the Plaintiff Shawn Drumgold. Ms. Scapicchio is the only lawyer who has full knowledge and appreciation of the intricate and complicated history involved in representation of Mr. Drumgold. If Ms. Scapicchio is prevented or limited in her representation of Mr. Drumgold, Mr. Drumgold will be seriously deprived of his right to effective counsel in this case.

## II. Legal Argument

### A. The Defendants Have A Very High Burden To Meet When They Seek To Depose Opposing Counsel

The Defendants face a very high burden when they argue it is necessary for them to take the deposition of opposing counsel in civil litigation. Courts have generally recognized that the deposition of opposing counsel is a disfavored tactic which should be approved only in extraordinary circumstances. Shelton v. American Motors Corp., 805 F.2d. 1323 (8th Cir. 1986); Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del., Inc. v. Friedman (In re Friedman), 350 F.3d. 65, 71, 72 (2nd Cir. 2003). The First Circuit explained in Bogosian v. Woloohojian Realty Corp., 323 F.3d. 55 (1st Cir. 2003) that "Although not strictly forbidden, the procurement of trial testimony from opposing counsel is generally disfavored."

The tactic is particularly dangerous when a party is attempting to depose an opposing attorney concerning her representation of the Plaintiff in a criminal case. The court in Greater Newburyport Clamshell Alliance v. Public Service Co., 838 F.2d. 13, 21 (1st Cir. 1988) explained the substantial policy arguments against allowing a criminal defense attorney to be deposed about her actions as a defense attorney;

2

> …, utmost candor between an attorney and client is essential to effective assistance of counsel. "The essence of the Sixth Amendment right is, indeed, privacy of communication with counsel." ... The free exchange of information between attorney and client could be inhibited by requiring a criminal defendant, in effect, to waive subsequent enforcement of personal rights due to the content of communications during the criminal action.

The court in <u>Bogosian</u> set out several factors which are relevant for the court to consider when deciding whether to allow the deposition of opposing counsel. They include

> whether (i) the subpoena was issued primarily for purposes of harassment, (ii) whether there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case. (*Id*. at 66)

What is striking in this case, as argued in detail below, is that the Defendants have not offered a single focused argument concerning particular evidence which they seek from Ms. Scapicchio. The Defendants are unable to isolate evidence which is uniquely available only from Ms. Scapicchio and which is clearly relevant and crucial for the defense in this case. The Defendants instead raise a cloud of allegations, suggestions and hints of questions which they say are "unanswered" or "confused". The showing by the Defendants does not meet the standard necessary. The Defendants should not be allowed to depose counsel absent a particular and clear showing that the deposition of the attorney is necessary and the information cannot be obtained from other sources.

The weakness of Defendants' showing is illustrated by an examination of the case cited, multiple times, by the Defendants in support of their Motion.In <u>Carey v. Textron, Inc.</u>, 224 F.R.D. 530 (D.Mass. 2004) the court allowed the deposition of an attorney because in that product liability case "The crucial piece of evidence (i.e. the product in a products liability case)

has gone missing and Attorney Gelineau was, possibly, the only person to examine it." The court in that circumstance appropriately allowed the attorney to be narrowly examined concerning his knowledge of the missing product.

Similarly in <u>Greater Newburyport Clamshell Alliance v. Public Service Co.</u>, 838 F.2d. 13, 22 (1st Cir. 1988), the court held because the essence of that lawsuit involved the government's unauthorized interception of privileged conversations, the defendants would be allowed focused and narrow discovery concerning the exact conversations which were intercepted by the government.

The focused necessity for testimony in those two cases, combined with the narrowly focused discovery allowed, should be contrasted with the unfocused general desire to fish around and review thirteen years of representation involving dealings with multiple witnesses without restriction, which Defendants seek in this case.

**B.   The Defendants Have Not Exhibited A Need to Depose Attorney Scapicchio in Connection with This Case.**

A review of the particular examples cited by the Defendant to justify a deposition of Ms. Scapicchio makes it clear that this Motion is not a good faith attempt to find evidence necessary for the defense but is rather an attempt to try to disqualify Attorney Scapicchio from representing Mr. Drumgold. Page 5 through 12 of Defendants' Memorandum lists the particular grounds for justifying a deposition of counsel. A review of those grounds does not support the argument that the deposition of Ms. Scapicchio is a legitimate necessity.

    a. **Gemini Hullum**

There is no evidence of any substantive communication between Ms. Scapicchio and Ms. Hullum prior to Mr. Keller, the Plaintiff's private investigator, interviewing her. The Defendants cite Page 240 of Mr. Keller's deposition for the proposition that Ms. Scapicchio contacted Gemini Hullum prior to Mr. Keller's contact. The Defendants do not cite (Page 239 of Mr. Keller's deposition (attached as Exhibit 1)) where he testifies:

| | |
|---|---|
| Question: | Do you know whether or not Attorney Scapicchio had contacted Gemini Hullum prior to? |
| Answer: | Whether she did? |
| Question: | Yes. |
| Answer: | No. I am not sure. (Page 239) |

When Mr. Keller was asked whether Ms. Scapicchio "reached out to" Gemini Hullum, he answered "I don't recall what the initial … there's a correspondence, I believe between Rosie's secretary and myself, or may have been Rosemary, by, I know her secretary sent it out to me, regarding both Olisa Graham and Gemini Hullum and possible … maybe addresses." In Ms. Hullum's voluminous two-day deposition, Ms. Hullum makes no claim that she ever met with Ms. Scapicchio without Mr. Keller being present. The possibility that Attorney Scapicchio arranged the meeting between Mr. Keller and Gemini Hullum does not justify the deposition of trial counsel.

Ms. Hullum was also cross examined concerning her affidavit when she testified at the hearing on the Motion for New Trial (Attached Exhibit 2) She made no mention at that time, two months after the affidavits were signed, of Attorney Scapicchio having any substantive contact with her.

The Defendants' next cite Ms. Hullum's testimony that she does not know whether Ms. Scapicchio took notes during an interview of Gemini Hullum when Mr. Keller was also present. Ms. Scapicchio, as indicated by the Response to the Request for Production of Documents, does not have any such notes. Both Mr. Keller and Ms. Hullum have been deposed at length concerning these conversations. No showing is made that Attorney Scapicchio has any unique evidence on the subject.

Finally, the Defendants argue that Gemini Hullum's Affidavit, signed in connection with the Motion for New Trial, contains false statements. The Defendants are entitled to impeach Ms. Hullum if she is called as a witness at trial. There is no evidence or suggestion, however, that Ms. Scapicchio had any conversations with Ms. Hullum where she suggested a false statement should be made nor was Ms. Scapicchio, in any way, informed that statements by Ms. Hullum were false. Gemini Hullum is simply a witness who Defendants claim that they can impeach by way of affidavit. They have offered no explanation as to why they are entitled, therefore, to take the deposition of an attorney who filed the affidavit in court, particularly, when the Defendants have taken a two day deposition of the investigator who was present for all substantive conversations with this witness.

    b.    **OLISA GRAHAM**

The Defendants took a two day deposition of Olisa Graham. They also deposed Scott Keller at length concerning his discussions with Olisa Graham. The Defendants again claim that they can impeach Ms. Graham with inconsistencies between her Affidavit filed in connection with the Motion for New Trial and her testimony at her deposition.

The record is completely silent as to any suggestion that Ms. Scapicchio has any personal knowledge concerning the substantive areas of impeachment. Ms. Graham testified that Scott Keller, the Defendant's investigator, contacted her first. She testified that her first contact with Ms. Scapicchio was after Scott Keller had contacted her (Pages 11 through 13, Exhibit B) Ms. Graham was asked: "Did you speak to Mr. Keller before she spoke to Ms. Scapicchio?" and answered: "Yes." (Page 17) Ms. Graham then testified that she called Ms. Scapicchio: "Because I wanted to help Shawn." She was asked about the telephone conversation with Ms. Scapicchio. Her testimony was that she told Ms. Scapicchio "the same thing I told the detectives back when it happened and the same thing I told Dick Lehr and Scott Keller." (Exhibit B, Page 18) There is no evidence or suggestion that Ms. Scapicchio has any unique information not available from multiple other sources in connection with Olisa Graham.

Ms. Graham was also cross examined, near the time the affidavit was signed, at the hearing on the Motion for New Trial. (Exhibit 3). At that time she made it clear that she dealt with Scott Keller and not Attorney Scapicchio in connection with the affidavit.

    c.    **ANTONIO ANTHONY**

There is no credible reason why the Defendants would need to depose Attorney Scapicchio about Antonio Anthony. The testimony of Mr. Keller was that he visited Mr. Anthony in prison in an attempt to have Mr. Anthony sign an affidavit. Mr. Anthony said that the affidavit was not correct and refused to sign it. If Plaintiff, for some odd reason, attempted to call Mr. Anthony as a witness to testify to the matters in the draft affidavit, he could be impeached by

his refusal to sign the affidavit. There is no explanation provided as to why the Defendants should be able to depose Ms. Scapicchio concerning a draft affidavit that was not signed by the witness, particularly when the affidavit which was never submitted or offered as evidence.

### d.   LOLA ALEXANDER

There is no evidence that Ms. Scapicchio had any personal unique contact with Lola Alexander or that she drafted Lola Alexander's affidavit. The testimony of Scott Keller concerning the affidavit for the Motion for New Trial was that, with the exception of the Affidavit of Antonio Anthony, "I think I drafted all of them. I may have faxed or emailed them to Rosemary for her to edit it." (Deposition of Scott Keller, September 19, 2006, Page 67 through 169) Again the Defendants failed to explain why the potential impeachment of witnesses who testify concerning events which occurred 18 years ago entitles them to depose an attorney about draft affidavits that were never signed. There is absolutely no testimony that Ms. Scapicchio ever met with Lola Alexander outside the presence of her investigator.

### e.   VANTRELL MCPHERSON

Vantrell McPherson testified, as noted in Exhibit D to the Defendants' Motion, that she may have spoken to Ms. Scapicchio on the day of the trial (Exhibit P, Page 20). Ms. McPhearson thinks that she talked to Ms. Scapicchio when "they told me that I had to go to court." (Page 21) She was asked specifically who requested that she sign her Affidavit.

> Answer: "I don't remember."
> Question: "Was it Ms. Scapicchio?"
> Answer: "I don't remember." (Page 23)

She was asked:

> Question: "How many occasions have you spoken to Rosemary Scapicchio?'
> Answer: "I only remember speaking to her once."

> Question: "When was that?"
> Answer: "I don't recall."

There is no evidence, again, that Attorney Scapicchio had any substantive communications with Ms. McPherson.

The remaining claims concerning Ms. McPherson involve, again, the Defendants' claim that they can impeach Ms. McPherson's Affidavit. Potential impeachment does not support deposing Ms. Scapicchio, particularly when there is nothing in record which indicates that Ms. Scapicchio had any substantive involvement procuring the Affidavit which Ms. McPherson signed.

    **f.**    **BETTY AND TRACIE PEAKS**

Again, the Defendants offer no evidence that Ms. Scapicchio ever talked to Betty or Tracie Peaks and offer no evidence concerning drafting of Ms. Peaks' Affidavit. Mr. Keller was asked: "Do you know who drafted the Affidavit?" He answered: "I probably did." He then was asked: "Did you provide the draft of the Affidavit to Attorney Scapicchio before you went on to have it executed?" and answered: "I don't have a memory of that." (Exhibit E, Page 344)

Tracie Peaks was also cross examined by Assistant District Attorney Meier at the hearing on the Motion for New Trial (Exhibit 4). At that time, shortly after signing the affidavit, she testified clearly that her substantive discussions of the Drumgold case were with Mr. Keller.

The allegation in Defendants' pleadings that "there is a strong inference that Scapicchio changed the Affidavit to strengthen the basis for new trial in order to favor her client in the civil

9

rights litigation" is directly refuted by the actual evidence. The Defendants desired to depose Scapicchio is simply a fishing expedition.

### g. ATTORNEY STEVE RAPPAPORT

The Defendants argue once more that because a witness may have been in error in signing an affidavit, therefore they are entitled to a broad ranging deposition of Ms. Scapicchio. The Defendants claim that Mr. Rappaport signed his affidavit "at the insistence of Scapicchio" is unsupported and contrary to the record. Mr. Rappaport testified as follows

> Question: "Do you acknowledge that it is an affidavit prepared by Ms. Scapicchio for you to execute for the purposes of the Motion for New Trial hearing?
> Answer: "As I said before, I don't know who prepared it. " (Exhibit
>
> P, Page 146)
>
> Question: "At the time you executed this affidavit, do you believe it
>
> to be accurate?"
>
> Answer: "That's correct." (Page 147) (Exhibit U, Pages 146-148)

There is no evidence of Ms. Scapicchio's involvement in procuring the signature on the Affidavit or her "insistence" that Mr. Rappaport sign the Affidavit.

### h. AFFIDAVIT OF ROSEMARY SCAPICCHIO

Defendants argue that an affidavit by Attorney Scapicchio filed in opposition to a Motion to Quash in July of 2003 was not accurate. The affidavit is accurate but it is not relevant to this trial. The Plaintiff certainly does not intend to submit Ms. Scapicchio's affidavit as evidence since it consists of her hearsay opinion which is not likely to be admissible. There is certainly no

need for the Defendants to take a deposition in connection with an affidavit which will not be evidence at trial.

### i. Discovery Of Criminal Files

Plaintiff has responded fully to the Defendants' Request for Production of Documents. As Mr. Curran correctly notes in his Affidavit, Ms. Scapicchio has stated that she does not have the trial notes of Steven Rappaport or the investigative notes of Jay Groob. Plaintiff acknowledges the responsibility to produce any such documents if he has them under his custody, care or control. He simply does not have them. If the Defendants claim that documents in Plaintiff's control have not been produced, they should file a Motion to Compel. Disputes over Document Request do not entitle counsel for Defendants to take the deposition of opposing counsel. The Plaintiff is willing to enter into reasonable stipulations to make the record clear as to the documents which are under his custody, care or control. The fact that Plaintiff does not have the documents, does not entitle the Defendants to depose Plaintiff's lawyer.

### C. Defendants Have Not Established That The Information Sought From Ms. Scapicchio Is Unavailable From Any Other Source Or By Any Other Manner

As the court explained in <u>Bogosian v. Woloohojian Realty Corp.</u>, 323 F.3d. 55 (1st Cir. 2003), one of the important factors to consider in deciding whether or not to allow parties to depose opposing counsel is whether there are "other viable means to obtain the same evidence" (*Id.* at 66). In this case, the analysis of whether there are other viable means to obtain the same evidence is difficult because it is not clear exactly what evidence it is that the Defendants seek. There is blizzard of issues that the Defendants say that they are concerned about, but they do not provide any particulars as to exactly what it is they wish to depose Ms. Scapicchio about.

As to the most of the issues raised in the Motion, the individuals with the relevant evidence are the affiants who signed the affidavits and Mr. Keller who obtained the signed affidavits. There is no particular showing as to why it would be necessary for the Defendants to depose Ms. Scapicchio concerning an affidavit procured by Mr. Keller and signed by a witness. The witnesses were cross examined at the New Trial hearing and have all been deposed for hours. Mr. Keller was deposed over two days. The Defendants have had the opportunity to take an exhaustive amount of evidence concerning the affidavits and have no legitimate need to depose Ms. Scapicchio on the subject.

Even if the court were satisfied that there have been a showing on a particular issue, the issue could be resolved by way of interrogatories, requests for admissions or possible stipulations of fact. Those discovery tools, which should have been exercised as first options, have never been explored or requested by the Defendants.

To the extent that the Defendants are seeking documents, they have all of the remedies available under the rules of discovery including request for production of documents and, if they believe it is appropriate, a Motion to Compel. For example in <u>Patsy's Italian Restaurant, Inc. v. Banas,</u> 2007 W.L. 174031 (11907) the court denied a Motion to depose counsel and explained that the defendants' argument "does not necessitate deposing plaintiff's counsel because the information sought can be obtained from alternative means, such as through document requests and interrogatories."

**D.  Ms. Scapicchio Did Not Waive Her Right to Be Free from Abusive Discovery by Her Actions Defending Her Client.**

The strong reluctance to allow depositions of opposing attorneys does not arise solely from the necessity to protect the attorney-client privilege. Even when unprivileged communications are sought, depositions will not be allowed absent a specific need being established by the Defendant. <u>Patsy's Italian Restaurant, Inc. v. Banas</u>, 2007 W.L. 174031 (E.D.N.Y.). As the court in <u>Shelton v. American Motors Corp.</u>, 805 F.2d. 1323, 1327 (8th Cir. 1986) explained.

> Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious.

The Defendants argue in their Memorandum at Page 17 that "Plaintiff has clearly waived the attorney-client privilege by filing the instant civil action." It is not the case that filing a civil action automatically waives the attorney-client privilege. The court explained in <u>Greater Newburyport Clamshell Alliance</u> (*Id*. at 20). that an automatic waiver rule is "too harsh". The court explained that "Instead, a court should begin its analysis with a presumption in favor of preserving the privilege." The court explained that "the privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails." As discussed above, in this case, the Defendants have not established any clear

13

showing that evidence otherwise unavailable and central to the defense of the case can only be obtained through the deposition of Ms. Scapicchio.

The Defendants have had ample opportunity to conduct discovery necessary to their case. The Plaintiff has been willing to cooperate to allow legitimate discovery. The Plaintiff agreed to waive the privilege in order to allow a complete and intensive deposition of his investigator, Scott Keller. The Defendants examined Scott Keller for two days over four hundred pages of transcript. They deposed him in excruciating detail as to all of his activities in obtaining affidavits in connection with the Motion for New Trial (Exhibit D, at 6). The testimony was that all of the affidavits from the witnesses whom the Defendants claimed to be interested in, e.g. Vantrell McPherson, Tracie Peaks, Betty Peaks, Antonio Anthony and Gemini Hullum, were signed in the presence of Scott Keller. The Defendants have had complete and full access to the individual who actually had the affidavits signed on behalf of the Plaintiff. They had the benefit of limited waiver for that purpose. The Plaintiff has recognized the argument that "fairness requires that the privilege holder surrender the privilege to the extent that it will weaken, in a meaningful way, the defendant's ability to defend." Greater Newburyport Clamshell Alliance, *Id*. at 1920. It would be inappropriate to require the privilege holder to surrender the privilege to any further extent, particularly, when the privilege to be protected involves the defense of a criminal defendant.

### E. Ms. Scapcchio's Cooperation With The Media In Defense Of Her Client Does Not Entitle The Defendants To Her Deposition

The Defendants argue that Ms. Scapicchio cooperated with Richard Lehr, a reporter from the Boston Globe, and with a documentary concerning Shawn Drumgold's case. They argue that because of that cooperation, she has waived Mr. Drumgold's attorney-client privilege and her work product privilege and should be allowed to take a full free wheeling deposition of opposing counsel. The argument is incorrect on several grounds.

Initially, as explained by the Defendant in their Motion, Ms. Scapicchio's cooperation with the Boston Globe reporter consisted of her authorizing Mr. Keller to share certain information with the reporter from the Globe, Richard Lehr. The Defendants, as indicated above, have had the full opportunity to depose Mr. Keller concerning all information he was aware of. To extent that the information shared between Mr. Keller and Lehr is relevant, the Defendants had access to all of that information. There is no indication that Mr. Lehr received any unique information directly from Ms. Scapicchio. Therefore, there is no waiver of Ms. Scapicchio's work product or of Ms. Scapicchio's privilege.

Secondly, the Defendants attached copies of an interview of Ms. Scapicchio with a filmmaker. What is striking is that the Defendants offer no particular showing of waiver in regards to any of the areas where they claim to have the necessity to depose Ms. Scapicchio. The interviews regarding the documentary were conducted after Ms. Scapicchio successfully obtained the nol pros of the murder conviction. The statements made by Ms. Scapicchio related to her activities in defense of Mr. Drumgold in the Suffolk Superior Court. She expressed opinions on matters of a public concern arising from the conviction of Mr. Drumgold based upon

tainted evidence. It would be inappropriate and unwise, as a matter of policy, to hold that speaking out to expose evidence concerning unjust convictions would be punished by hampering the ability of an attorney's client to pursue appropriate civil remedies.

                                               Respectfully submitted,
                                               Shawn Drumgold, by His Attorney,

                                               /s/ Michael Reilly

                                               Michael W. Reilly, Esq.
                                               Tommasino & Tommasino
                                               Two Center Plaza
                                               Boston, MA   02108
                                               617 723 1720
                                               BBO 415900