UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SHAWN DRUMGOLD,<br>    *Plaintiff*,<br><br>vs.<br><br>TIMOTHY CALLAHAN, FRANCIS M.<br>ROACHE, PATRICIA MURPHY, *as Executrix*<br>*of the Estate of* PAUL MURPHY,<br>RICHARD WALSH, and<br>THE CITY OF BOSTON,<br>    *Defendants.* | C.A. NO. 04-11193NG |

**DEFENDANTS' JOINT RESPONSE TO PLAINTIFF'S MOTION TO
REAFFIRM PROTECTIVE ORDER AND REQUEST FOR CLARIFICATION**

NOW COME the Defendants, Richard Walsh, Timothy Callahan, Francis M. Roache, and Patricia Murphy, *as Executrix of the Estate of* Paul Murphy (collectively "Defendants"), and respond to the Plaintiff's Motion to Reaffirm the Protective Order and requests clarification from this Court of the parameters of the Order. As grounds therefore, the Defendants state that there is no legitimate interest for any of the parties to disclose the contents of Retired Boston Police Department Lieutenant John Daley's personal diary and notes other than to create potential prejudicial pre-trial publicity. In addition, there should be no disclosure of the content of these notes until all the parties have had a full and complete opportunity to question Lt. Daley as to the personal knowledge of the content, as well as the integrity and veracity of the contents of these notes. Counsel for Lt. Daley has stated that "these diary notes were not official notes, not made contemporaneously with events described, and were subject to many revisions and edits during

the years. In 1995, Lt. Daley completely rewrote all of his diary notes with the intent of someday adapting them to be published as a work of **fiction**."

At the continued deposition of Lt. Daley, the parties were presented with a Proposed Protective Order. At that time, there were a myriad of problems that counsel for all parties were faced with including, extremely limited time to review and agree to the language in the Proposed Protective Order, agreeing to a Protective Order without any knowledge of the content of the documents to be produced, and only one hour to conduct the deposition due to scheduling conflicts. In order to expedite the right and need for the plaintiff to obtain the documents and conduct the deposition of Lt. Daley, all counsel agreed that all documents provided be considered confidential pursuant to the protective order. Upon receipt of all documents other than the documents provided to the Court in camera, the plaintiff seeks to remove the agreement of the parties which was placed on the record at the deposition and wants the Protective Order to only cover the content of Daley's records which involve other homicide cases and Daley's personal information. Furthermore, the plaintiff asserts that any personal information or unsubstantiated rumors of personal issues regarding any of the parties involved in this litigation and non-parties, unrelated to the Tiffany Moore homicide is not subject to the Protective Order and can be disseminated to the public. The defendants do not oppose or stand in the way of the plaintiff's efforts to conduct discovery but merely state that the content of all of Daley's notes should be subject to the Protective Order for the reasons further detailed below.

I.   **FACTS:**

Upon review of the initial and subsequent production of Lt. Daley's personal diary, it is clear that it contains information on numerous homicide investigations, the Tiffany Moore investigation, unsupported rumors about the mother of Tiffany Moore, sudden deaths, suicides,

personal information pertaining to parties in the subject litigation, personal information pertaining to non-party civilians and police personnel, and other criminal investigations and trials. Lt. Daley has testified that "I revised it so many times that the dates sometimes become wildly inaccurate." Daley Deposition Transcript Vol. II, page 106, lines 14-15. Lt. Daley also testified: "I rewrote the notes again in –the whole thing in maybe 1995 and I rewrote it from these and other notes I have." Daley Deposition Transcript Vol. II, page 107, lines 12-14.

## II.  ARGUMENT

### A.  Any Disclosure of These Documents Would Cause Prejudicial Pretrial Publicity, Impair Law Enforcement or Judicial Efficiency, and Impair the Privacy Interests of Parties and Non-Parties.

The Defendants contend that Lt. Daley's personal diary and all of its contents should be subject to the Protective Order and not be disclosed outside of this litigation and subject to the terms of the Protective Order because "the right to [its] access is outweighed by the interests favoring nondisclosure." *U.S. v. Salemme*, 985 F.Supp. 193, 195 (D.Mass. 1997). The factors favoring nondisclosure are: "(i) prejudicial pretrial publicity; (ii) the danger of impairing law enforcement or judicial efficiency; and (iii) the privacy interests of third parties." *Id.* In this case, disclosure of the diary may cause prejudicial publicity to both the trial and the parties involved, and will negatively impact the privacy interests of parties and third party individuals. *See id.*

First, the trial and motion for new trial and subsequent release of Shawn Drumgold have been extensively covered in the media at the time of the those events and subsequently. In fact, the conviction, new trial, release of Shawn Drumgold, and the civil trial have been memorialized in a documentary entitled "The System is Broken" and reported extensively in the news and print

3

media. Like any high profile litigation, problems surface regarding the legitimacy of witness testimony and their ability to testify based on their own memory or what they have seen reported in the media and creates major fundamental obstacles for the parties and the Court in conducting a fair and impartial trial. In light of this factor, the Defendants contend that it is more prudent to have a blanket Protective Order regarding the dissemination of any of Lt. Daley's personal diary.

Secondly, the disclosure and dissemination of personal information of parties and non-parties unrelated to the Tiffany Moore murder investigation, and unsubstantiated rumors or speculation regarding personal issues of parties and non-parties unrelated to the Tiffany Moore murder investigation, is unnecessary and only serves to annoy, antagonize or embarrass these individuals. A protective order may issue if, for good cause shown the order is required to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense…" Fed. R.Civ.P. 26(b)(2). Clearly, there is no legitimate reason to disclose publicly personal information and unsubstantiated personal issues founded on rumor and innuendo.

Thirdly, the Tiffany Moore murder investigation technically remains an open investigation. The documents sought by Plaintiff may be considered as protected under the public records exemptions of M.G.L. c. 4, § 7, clause 26 (c), (e), and (f). Again, the issue is not preventing the plaintiff from conducting discovery but protecting the fundamental fairness and variety of interests involved in this case in evaluating what should be covered under the subject Protective Order. The disclosure of Lt. Daley's diary "may constitute an unwarranted invasion of personal privacy"; the materials prepared by him "are personal to him and not maintained as part of the files of the governmental unit"; and the documents Plaintiff seeks to disclose are "investigatory materials necessarily compiled out of the public view by law enforcement . . . the disclosure of which materials would probably so prejudice the possibility of effective law

enforcement that such disclosure would not be in the public interest." *See* M.G.L. c. 4, § 7, clause 26 (c), (e), and (f).

Lt. Daley testified that there was no practice of taking notes of conversations with homicide detectives and it was "never necessary" to write something down. Daley Deposition Transcript Vol. II, pages 51-52. The only criteria Lt. Daley used in deciding whether to write something down was "if it interested [him]." *Id.* at 52. The notes taken by Mr. Daley were not required as part of his employment but rather were "personal to him" and thus, fall within the exemption of M.G.L. c. 4, § 7, clause 26(e). The technically open investigation into the murder of Tiffany Moore may be prejudiced by the disclosure of Lt. Daley's diary, and current and future law enforcement will be prejudiced by such disclosure. *See* M.G.L. c. 4, § 7, clause 26(f).

**B.    The Documents Plaintiff Claims are not subject to the Protective Order are Not Necessary for Use Outside of this Litigation and There Is No Legitimate Reason to Make Them Public.**

The disclosure and dissemination of the content of Lt. Daley's personal diary outside the scope of a Protective Order will only cause prejudice to the parties, potentially impair law enforcement and third party privacy interests as mentioned previously. Any effort by any party to disseminate for public view the content of Lt. Daley's personal diary would clearly be an attempt to adversely impact a trial on the merits of the subject allegations and\or to embarrass and harass party and non-party individuals. Furthermore, there clearly is an issue which questions the basis and validity of the content of the subject personal diary. Counsel for Lt. Daley has pronounced to the Court that the notes have been revised on numerous occasions with the intent of someday adapting them to be published as a work of fiction. This statement begs the questions of what is actual fact versus fiction or speculation. At a minimum, to allow dissemination of the content prior to an examination of Lt. Daley by all the parties to this

litigation regarding the content of the diary and his basis of knowledge, would serve no legitimate interests. Furthermore, there are sufficient grounds at this time to issue a blanket protective order for all of Lt. Daley's personal diary.

### III. CONCLUSION

WHREFORE, for the above-stated reasons, the Defendants, Richard Walsh, Timothy Callahan, Francis M. Roache, and Patricia Murphy, *as Executrix of the Estate of* Paul Murphy, request this Court issue an Order that the complete personal diary of Retired Boston Police Lieutenant John Daley be subject to the Protective Order.

**Respectfully submitted,**

| | |
|---|---|
| **Defendant Richard Walsh,** Through His Attorneys, | **Defendant, Patricia Murphy,** *as Executrix of the Estate of Paul Murphy,* Through her Attorneys, |
| *[signature]* Hugh R. Curran (BBO# 552623) Bonner, Kiernan, Trebach & Crociata, LLP One Liberty Square, 6th Floor Boston, Massachusetts 02109 (617) 426-3900 (617) 426-0380 fax | /s/ William White, Esq. William White, Esq Davis, Robinson & White, LLP One Faneuil Hall Marketplace South Market Building Boston, MA 02109 (617) 723 7339 (617) 723 7731 fax |
| **Defendant, Francis M. Roache** Through his Attorneys, | **Defendant, Timothy Callahan** Through his Attorneys, |
| /s/ John P. Roache John P. Roache, Esq. Patrick J. Donnelly, Esq. Hogan, Roache & Malone 66 Long Wharf Boston, MA 02110 (617) 367 0330 | /s/ MaryJo Harris, Esq. MaryJo Harris, Esq. Morgan, Brown & Joy 200 State Street, 11th Floor Boston, MA 02109 (617) 523 6666 (617) 367 3125 fax (617) 367 0172 fax |

## CERTIFICATE OF SERVICE

I, Hugh R. Curran, hereby certify that a copy of the foregoing document was mailed, this 13th day of February, 2007 to all counsel of record:

Michael W. Reilly, Esq.
Tommassino & Tommasino
Two Center Plaza
Boston, MA 02108-1904

Rosemary Curran Scapicchio, Esq.
Four Longfellow Place, Suite 3703
Boston, MA 02114

Susan Weise, Esq.
Chief of Litigation
Assistant Corporate Counsel
City of Boston/Law Department
City Hall, Room 615
Boston, MA 02201

William White, Esq.
Davis, Robinson & White, LLP
One Faneuil Hall Marketplace
South Market Building
Boston, MA 02109

John P. Roache, Esq.
Hogan, Roache, & Malone
66 Long Wharf
Boston, MA 02110

MaryJo Harris, Esq.
Morgan, Brown & Joy
200 State Street, 11th Floor
Boston, MA 02109

Hugh R. Curran