UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHAWN DRUMGOLD,<br>    Plaintiff | )<br>)<br>) | C.A. NO. 04-11193NG |
| v | )<br>) | |
| TIMOTHY CALLAHAN, ET AL.<br>    Defendant(s) | )<br>)<br>) | |

**MOTION FOR IN CAMERA REVIEW AND**
**PRODUCTION OF NOTES OF JOHN DALEY**

    Now comes the Plaintiff Shawn Drumgold and moves this court to review the notes produced in camera by John Daley and to release to counsel any portions of the notes that are relevant to this matter. In support thereof, the Plaintiff says:

1.    Pursuant to this court's order on John Daley's Motion for Protective Order, Mr. Daley has produced certain records to counsel.

2.    Pursuant to this court's order on Mr. Daley's Motion for Protective Order, other records, primarily concerning the time period before Mr. Daley was the head of the Homicide Unit of the Boston Police Department, the period after Mr. Daley was the head of the Homicide Unit and information concerning personal matters of Mr. Daley, were produced in camera.

3.    A review of the documents produced to counsel suggests that there is substantial reason to believe that additional relevant materials are contained in the documents produced in camera. Likely areas of relevancy include but are not limited to the following:

    A.    Racism in the Boston Police Department.

The documents produced by former Lt. Daley include his claim that the Boston Police Department was "getting the bottom of the barrel" in order to recruit black police officers (Exhibit 206, Page 191); his claim that Dept. Celester, one of the few black superior officers in the Boston Police Department at the time, was the cause of court allowing Motion to Suppress in connection with Mr. Drumgold's case (Exhibit 206, Page 250); and his claim that Officers Walsh and Murphy, Defendants in this case, were found responsible for unconstitutionally questioning Mr. Drumgold "as a sacrifice to the black community" (Exhibit 206, Page 251).

Mr. Daley's almost obsessive cataloging of any charges brought against black officers in the Boston Police Department is another example of his belief that the problems in the Boston Police Department arose because black officers were being improperly promoted by the Boston Police Department and are another symptom of racism at the supervisory level of the Boston Police Department (e.g. Exhibit 206, Pages 191, 192, Exhibit 207, Page 231, 241, January 24, 1987, 291)

Pervasive racism and the Boston Police Department's failure to address or attempt to remedy that racism, particularly on the part of Superior Officers, is potentially relevant evidence on the issue of whether the targeting of Shawn Drumgold, a young black male, and the intimidation of young black witnesses was a result of a policy or procedure sponsored or allowed to continue by the City of Boston.

  B.    Patronage Driven Promotions

Portions of the Daley diary produced to counsel repeatedly claim that promotions to management level positions in the Boston Police Department were based on patronage and

politically connections rather than on merit. In reference to his promotion to head of the Homicide Unit Mr. Daley noted "it does not hurt to be a friend of the commissioner either" (Exhibit 206, Page 185). In reference to promotions to Superintendent, Mr. Daley claims "politics is behind all these moves" (Exhibit 206, Page 196). In reference to selection of homicide detectives, Daley claims "politics plays a role" (Exhibit 206, Page 206) and appointments are "strictly political" (Exhibit 206, Page 219) and "our own department will do some crazy maneuvering " in promotion of homicide detectives (Exhibit 207, Page 251) and "individuals with inside contacts can move at will from job to job" (Exhibit 207, Page 270).

Evidence that the management of the Boston Police Department was based not upon merit but upon political patronage is relevant or likely to lead to relevant evidence on the question of whether the policies and procedures of the Boston Police Department were the proximate cause of the denial of civil rights to Shawn Drumgold. The Plaintiff is entitled to argue that one of the reasons for the failure to properly supervise homicide detectives was the failure of the Boston Police Department to properly manage those detectives because of patronage appointments. Unproduced portions of Mr. Daley's diary which are relevant to that issue should be produced to Plaintiff's counsel.

C.  Failure of the Boston Police Department Supervisors to Address Known Discipline Issues and Potential Illegal Acts by Boston Police Officers

Mr. Daley in his notes produced to counsel discusses a series of situations where he, as a supervisor of the Boston Police Department, was aware of serious misconduct and took no

efforts to address it. For example,

- Daley noted in his diary that one of the named Defendants in this case, who Daley was directly responsible for supervising, "has some drinking problems" (Exhibit 206). At his deposition, Daley admitted that he did nothing about those problems.

- Daley discusses conspiring to complete a search warrant affidavit after the search was conducted and using information discovered in the search to retroactively complete the affidavit (Exhibit 206, Page 195). Not only does Daley not stop or report this illegal activity, he complains because an Assistant District Attorney will not go along with it.

The willingness of the supervisor of the Homicide Unit to ignore police officers who had personal problems which were likely to affect their performance or officers who violate legal and constitutional requirements and the failure of supervisory officers to make any effort to report or address these issues is relevant or likely to lead to relevant evidence or the question of whether the City of Boston's policy or procedures proximately caused the denial of civil rights to the Plaintiff, Shawn Drumgold.

4.      The Plaintiff, of course, is not aware of the substance of the unproduced Daley diaries. It is entirely possible that there are other areas of relevancy which this court may discover during an in camera review.

Wherefore the Plaintiff moves this court to review in camera the Daley diaries that have

not been produced and to order production of those portions which are relevant or likely to lead to relevant evidence in this matter.

                                                 Respectfully submitted,
                                                 Plaintiff, By His Attorney,

                                               /s/ Michael Reilly

                                               Michael W. Reilly, Esq.
                                               Tommasino & Tommasino
                                               Two Center Plaza
                                               Boston, MA   02108
                                               617 723 1720
                                               BBO 415900