UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11193-NG

SHAWN DRUMGOLD,
    Plaintiff

v.

TIMOTHY CALLAHAN, FRANCIS M. ROACHE,
PAUL MURPHY, RICHARD WALSH, and THE
CITY OF BOSTON,
    Defendants

**JOHN DALEY'S RESPONSE TO PLAINTIFF'S MOTION FOR IN CAMERA REVIEW AND PRODUCTION OF NOTES OF JOHN DALEY AND FOR RECONSIDERATION OF THIS COURT'S ORDER**

Now comes retired Boston Police Lt. Det. John Daley ("Lt. Daley") in the above-referenced action and hereby files this response to Plaintiff's Motion for In Camera Review and Production of Notes of John Daley ("Motion"). In response, Lt. Daley further moves this Court for reconsideration of its Order of January 22, 2007 requiring in camera production of the diary kept by Lt. Daley during the remainder of his entire career.

**I.    ARGUMENT**

**A.    Factual Background**

1.    Lt. Daley was served with a deposition subpoena *duces tecum*, requesting all notes he wrote during his forty-one (41) year career as a Boston police officer that referenced the Homicide Unit or homicide investigations.

2.     On January 17, 2007 Lt. Daley moved for a protective order pursuant to Fed. R. Civ. P. 26(c) that would preclude production of his personal diary.  Document #65.  This Court denied Lt. Daley's motion on January 22, 2007, and ordered production not only of the notes made while Lt. Daley was Commander of the Homicide Unit, but also all diary entries Lt. Daley made during the remainder of his entire career.

3.     Thereafter, pursuant to this Court's Order and the Protective Order signed by the parties, Lt. Daley produced all diary notes he wrote from 1985-1989, the time he was Commander of the Boston Police Department's Homicide Unit ("Homicide Unit").  A copy of the Protective Order is attached hereto as Exhibit A; see also Plaintiff's Opposition to Lt. Daley's Motion for Protective Order (Document # ___).

4.     Until Plaintiff's Motion was filed on February 28, 2007, Plaintiff, through counsel, had represented that Plaintiff was only interested in the personal notes kept by Lt. Daley during the time he was Commander of the Homicide Unit.  Correspondence dated February 5, 2007 attached hereto as Exhibit B.

5.     As a result, after producing the diary notes made by Lt. Daley during the time he was Commander of the Homicide Unit, counsel for Lt. Daley requested Plaintiff's assent to a motion to amend this Court's order to reflect the parties' agreement and understanding that the notes requested by Plaintiff were notes Lt. Daley made during the time he was Commander of the Homicide Unit.  Exhibit B.

6.     Plaintiff did not respond to Lt. Daley's request for assent to amend this Court's order, but instead filed a Motion without notice to and without conferring with the parties or counsel for Lt. Daley.

7. Presumably because Plaintiff failed to confer with counsel in a good faith attempt to narrow or resolve the matters raised by his Motion, Plaintiff does not include the requisite Local Rule 7.1 Certification that the parties conferred on the Motion. By the very terms of Local Rule 7.1, the Plaintiff's motion should be denied. L.R. 7.1(A)(2).

8. Finally, in setting forth the allegations and basis for filing Plaintiff's Motion, Plaintiff repeatedly and systemically violates the terms of the Protective Order, and consistently mischaracterizes the import and nature of Lt. Daley's testimony.

**B.     Plaintiff's Allegations of Racism in the Boston Police Department**

In his Motion, Plaintiff asserts potentially relevant areas that he believes are "likely" to appear in the notes Lt. Daley authored before and after his time in the Homicide Unit. Plaintiff alleges certain statements made by Lt. Daley in his personal diary evidence racism at the supervisory level of the BPD.

In so alleging, Plaintiff fails to acknowledge that the notes kept by Lt. Daley were not kept in Lt. Daley's official capacity or for an official purpose, but were his personal and private opinions. Plaintiff singles out some of the most inflammatory of Lt. Daley's generalized, personal thoughts and conclusions written and rewritten in 1992 and 1995 (after Lt. Daley retired from the BPD), expressly excludes Lt. Daley's explanation or context for these statements, and omits any mitigating or clarifying deposition testimony by Lt. Daley.[1] It was in anticipation of and precisely for these reasons that Lt. Daley initially moved for a protective order in the first instance.

---

[1] Because Lt. Daley's deposition was marked as "Confidential" by the Court, Plaintiff's quotations from both the notes and the deposition are improper, and subject to a motion for sanctions for violation of the Protective Order. However, Lt. Daley would be prejudiced by failing to rebut these claims made by Plaintiff, and therefore offers generalized statements and testimony in rebuttal, in an effort to prevent Lt. Daley from also violating the terms Protective Order. Lt. Daley intends to file a motion for violation of the protective order in this case.

Plaintiff quotes certain segments of Lt. Daley's diary about some minority police officers. Contrary to Plaintiff's assertions of racism at the BPD, Lt. Daley has testified that he was always looking for qualified minority detectives and detectives that spoke languages other than English to serve in the Homicide Unit. Lt. Daley's diary contains complimentary evaluations of minority officers assigned to the Homicide Unit, and praised the ability of minority officers, yet these statements are intentionally omitted by Plaintiff. When asked about the basis for some of the comments about minority officers made in his personal diary, Lt. Daley was unable to articulate any facts upon which many of his comments or conclusions were based, but testified that these comments were "guard room gossip" or unverified rumors and stories that Lt. Daley had heard from others.

Plaintiff wrongfully intimates that Lt. Daley blamed Deputy Celester for the Court's allowance of a motion to suppress statements made in Plaintiff's underlying criminal case because Dep. Celester was one of a few minority superior officers in the BPD. Plaintiff leads the Court to believe that this is evidence of widespread racism by supervisory authorities, mischaracterizes Lt. Daley's diary, and omits Lt. Daley's testimony to the contrary. Lt. Daley's diary never indicates the evidence of widespread racism in the BPD.

Lt. Daley was not present in the for the criminal proceedings in the state district court for the events that formed the basis for the district court's decision to suppress statements made in the criminal case against Plaintiff. He based his diary entries on stories he heard from others about what caused the district court to suppress incriminating statements. Based upon these hearsay and unverified stories, Lt. Daley wrote notes about

4

the events in his diary.  Lt. Daley never cited Dep. Celester's minority status as the reason for suppression.  Instead, Lt. Daley opined that because Dep. Celester was the commanding officer at the time the district court issued conditions of Plaintiff's release to Homicide Unit detectives for booking, and because Lt. Daley thought Dep. Celester failed to communicate those conditions to the detectives, that responsibility for the suppression fell to Dep. Celester rather than to the individual detectives.  Lt. Daley also testified that he formed an opinion after-the-fact, based upon what he was told by others happened at the district court, and that he could have been wrong about that opinion.  That opinion cannot fairly be said to blame Dep. Celester because he was a minority officer, and is clearly not evidence of pervasive racism by the BPD.

While Plaintiff alleges that Lt. Daley had an "almost obsessive cataloging" of charges brought against black officers in the BPD, a reading of the diary does not support Plaintiff's characterization of an "obsession" by Lt. Daley.  In an effort to appeal to this Court and to unfairly cast Lt. Daley and the entire BPD as racist, Plaintiff fails to acknowledge and does not include the hundreds of diary entries about many different events that allegedly occurred in homicide over a number of years, involving all races and genders of officers in the BPD.  If Lt. Daley found a story he heard or some gossip he was told to be interesting, he wrote it in his personal diary, revised it, and rewrote over the years.  When asked about his personal knowledge or the facts underlying many of these entries, Lt. Daley was unable to testify from personal knowledge, as he was recording anecdotes and stories that he had heard from others throughout the years.

Lt. Daley's diary is not evidence of widespread racism at the BPD, and personal notes he made decades before the Tiffany Moore murder are neither relevant nor likely to lead to the discovery of admissible evidence in this case.

C.     **Patronage Driven Promotions**

Plaintiff quotes extensively from Lt. Daley's confidential deposition about Lt. Daley's personal opinions about "political" promotions at the BPD. Plaintiff surmises that Lt. Daley's opinions about politics in the BPD "were the proximate cause of the denial of civil rights to Shawn Drumgold". While these opinions were Lt. Daley's personal opinions, Lt. Daley was not responsible for promotions at the BPD and was not part of the BPD's decision making process.

Further, even if promotions at the BPD were at one time based upon patronage rather than merit, Lt. Daley never testified to any causation between alleged patronage appointments and Plaintiff's conviction for the murder of Tiffany Moore. Lt. Daley was unable to articulate a reason for his conclusions and opinions about most of his entries regarding political appointments. Lt. Daley's diary is bereft of any fact that would support Plaintiff's conclusion that alleged political appointments had any bearing on Plaintiff's civil rights.

Despite Plaintiff's allegations in his Motion, there is absolutely no evidence that could be adduced from either Lt. Daley's deposition testimony or Lt. Daley's diary that would support Plaintiff's claims that the BPD somehow failed to properly manage detectives because of political appointments, or that Plaintiff was harmed as a result. Lt. Daley's diary does not contain any entries suggesting such a conclusion, Lt. Daley never

6

testified to this, and Lt. Daley's personal opinions written in an unofficial diary are not evidence of any policy or practice of the BPD.

**D.     Alleged Failure of the BPD to Address Known Discipline Issues and Potential Illegal Acts**

Plaintiff again cites extensively from Lt. Daley's confidential deposition, and includes testimony exempt from disclosure by the Protective Order, in alleging that Lt. Daley was aware of serious misconduct by officers and failed to take any action. Plaintiff mischaracterizes or omits Lt. Daley's testimony on this issue.

While choosing the more salacious of Lt. Daley's personal writings, Plaintiff excludes Lt. Daley's sworn testimony that his diary entries were based upon "guard room gossip" and not personally observed by Lt. Daley himself. Despite hearing the "rumors" about personal problems one of the officers under his supervision was having, Lt. Daley never personally observed the personal or substance abuse problems, and never saw the officer's work in Homicide affected as a result. Plaintiff further omits Lt. Daley's testimony that the particular officer identified by Plaintiff as having "drinking problems" was a detective upon whom Lt. Daley relied upon and trusted. Not only did Lt. Daley never observe these problems with the officer, Lt. Daley's opinion of the officer was that he was a solid performer, and therefore there was nothing that Lt. Daley "ignored".

While Plaintiff requests this Court draw the unsupported conclusion that Lt. Daley ignored officers who had personal problems "likely" to affect their performance, this was not the case. Lt. Daley did not personally observe the problems of an officer under his command, Lt. Daley did not have personal knowledge of these problems, nor did Lt. Daley see it affecting the officer's performance. Lt. Daley did not "ignore" these problems, and did not fail to take action.

7

**E.     Lt. Daley's Motion for Reconsideration**[2]

Lt. Daley respectfully requests this Honorable Court review the *in camera* production submitted by Lt. Daley on March 1, 2007. After *in camera* review, and after understanding the nature of, content and context by which these personal notes were authored, Lt. Daley moves this Court to reconsider its January 22, 2007 Order requiring production of diary entries encompassing the remaining thirty-seven (37) years of Lt. Daley's career.

Plaintiff, by his deposition subpoena *duces tecum*, requested portions of Lt. Daley's personal diary that "referenced" the BPD's Homicide Unit or homicide investigations. Plaintiff's deposition subpoena attached hereto as Exhibit C. It was not until this Court ordered production of all of Lt. Daley's notes for the remaining 37 years of Lt. Daley's career for *in camera* review that Plaintiff insisted upon and moved for in camera review of those remaining years by filing his Motion. In fact, Plaintiff had affirmatively made specific representations that Plaintiff was requesting only the notes made by Lt. Daley while Lt. Daley was Commander of the Homicide Unit, representations relied upon by Lt. Daley with regard to his production of documents.

It can be said that, based upon the diary entries made during the time that Lt. Daley was Commander of the Homicide Unit, Lt. Daley's diary entries spanning the remainder of his career are his personal opinions, conclusions, and "guard room gossip" noted and embellished by Lt. Daley for later incorporation into a work of fiction. Personal diary entries that span 37 years before the Tiffany Moore homicide and

---

[2] Lt. Daley incorporates as though fully set forth herein the arguments and case law set forth in his original Motion for Protective Order.

8

Plaintiff's criminal conviction are neither relevant nor likely to lead to the discovery of admissible evidence in this case.

For these 37 years, upon information and belief, Lt. Daley's personal diary chronicled his life as a police officer, recounting rumors, hearsay and gossip. The notes were not part of Lt. Daley official business, and were written, edited and revised many times over the years with the hope of further editing it to become a work of fiction. Much like the pocket calendar analyzed in In re Grand Jury Subpoena Duces Tecum Dated April 23, 1981, 522 F.Supp. 977 (S.D.N.Y. 1981), Lt. Daley's diary is private, "made no less private because it contains material relating to an officer's corporate employment." Id., at 984. The City of Boston did not rely upon Lt. Daley's diary for information, and production of the diary will "intrude on many aspects of what [Lt. Daley] expected to be his…private life or thoughts". Id. Lt. Daley was not a policy maker for the BPD, and Lt. Daley expected his diary to be kept private.

Plaintiff's Motion now requesting Lt. Daley's personal thoughts, opinions, or notes about any topic, case or person that he cared to write upon years before he was Commander of the BPD Homicide Unit and on topics other than the Tiffany Moore homicide appears directed to simply annoy or cause embarrassment to a now-retired member of the BPD. Lt. Daley's diary contains very personal information and beliefs or opinions he may have formed at the time. Lt. Daley wrote his diary, and it was not maintained or written by anyone else. No one had access to Lt. Daley's diary. The City of Boston did not require Lt. Daley to keep a diary. Lt. Daley's diary entries were "purely private notations". As the diary serves no official purpose, and is personal to Lt. Daley, this Court should exempt its further disclosure, particularly in light of Plaintiff's

9

extensive quotation and distribution of its contents despite the existence of a Protective Order prohibiting disclosure of same. In re Grand Jury Subpoena Duces Tecum Dated April 23, 1981, 522 F. Supp. at 984-985.

Lt. Daley has a reasonable expectation of personal privacy in his diary. Doe v. Town of Plymouth, 825 F.Supp. 1102, 1107 (D. Mass. 1993) (the Constitution protects an individual interest in avoiding disclosure of personal matters, and the constitutional right to privacy is implicated by the disclosure of a broad range of information). His expectation of privacy "encompasses an interest in avoiding disclosure of personal matters." Borucki v. Ryan, 827 F.2d 836, 839 (1st Cir. 1987). The very purpose of a diary is to note private and "personal matters", opinions or feelings that are not expected to be disclosed to others. The personal diary kept by Lt. Daley, intended by Lt. Daley to be kept out of other's view, is clearly a personal matter to Lt. Daley, and one that implicates his constitutional right to privacy.

The diary entries also contain the personal and private information of victims, case details, and names of witnesses, all third parties who are not party to this action and who also hold a right of privacy, reasons for which this Court ordered that a Protective Order be entered into by the parties. Yet, despite the Protective Order, Plaintiff quoted extensively from protected material in his Motion, not only violating the terms of the Protective Order, but disclosing the existence and nature of information about third parties not a party to this litigation, causing Lt. Daley's personal privacy to be violated, disclosing Lt. Daley's personal thoughts and opinions, and causing Lt. Daley undue anxiety, embarrassment and annoyance, and subjecting him to calls at his home from the press about the contents of his diary.

### B.    CONCLUSION

Lt. Daley has produced all of the notes he kept during his years as Commander of the Homicide Unit under a Protective Order, redacting personal information about himself or his family. Lt. Daley has produced to this Court, for *in camera* review, redacted portions of those notes, a redaction log, and an unredacted copy of both sets (1992 and 1995) of Lt. Daley's personal notes.

As represented in Lt. Daley's Motion for a Protective Order, these notes span a period of time from 1951 - 1985, up to 37 years before the Tiffany Moore homicide. Counsel for Lt. Daley is in the process of reviewing the hundreds of pages of notes to determine whether Lt. Daley must assert a privilege that would otherwise preclude production of these notes and for which he must object to preserve his privilege, and whether the notes themselves reference the Homicide Unit or homicide investigations as requested by Plaintiff.

For the above-stated reasons, Lt. Daley moves for reconsideration of this Court's Order of January 22, 2007 requiring *in camera* production of diary entries made during the remainder of Lt. Daley's career. Incidents or events recounted in Lt. Daley's personal notes 37 years prior to the Tiffany Moore homicide and the events that form the basis of the Plaintiff's complaint are neither relevant nor likely to lead to the discovery of admissible evidence in this case. Lt. Daley therefore should not be required to produce these notes and requests this Court reconsider its previous Order requiring production.

Rule 7.1 Certification

Counsel for Lt. Daley attempted to confer with Plaintiff's counsel on this matter, but did not receive any response to his request for assent to amend the Court's Order. Instead, Plaintiff file the Motion to which Lt. Daley now files this response and motion for reconsideration.

**WHEREFORE**:  Lt. Daley respectfully requests this Honorable Court enter an Order:

(1) Denying Plaintiff's Motion for In Camera Review and Production of Lt. Daley's Notes; and

(2) Amending its Order of January 22, 2007, not requiring Lt. Daley to produce for *in camera* review the diary notes written during the remainder of his career as an officer with the BPD.

 

Respectfully submitted,
**JOHN DALEY**
By his attorney,

/s/ Eve A. Piemonte Stacey
Eve A. Piemonte Stacey – BBO# 628883
ROACH & CARPENTER, P.C.
24 School Street
Boston, Massachusetts 02108
(617) 720-1800

Dated:  March 6, 2007

**CERTIFICATE OF SERVICE**

I, Eve Piemonte Stacey, hereby certify that this document was filed through the ECF system on March 5, 2007, and that a true paper copy of this document will be sent to those indicated as non registered participants on the Notice of Electronic Filing on March 6, 2007 by first class mail.

/s/ Eve A. Piemonte Stacey