**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                           )
SHAWN DRUMGOLD,                            )
          Plaintiff                        )
                                           )
v.                                         )          CIVIL ACTION NO. 04-11193-NG
                                           )
TIMOTHY CALLAHAN, et. al.,                 )
          Defendants                       )
_____)

**DEFENDANTS' THE CITY OF BOSTON AND FRANCIS M.**
**ROACHE MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION FOR SUMMARY JUDGMENT**

## I.     STATEMENT OF THE CASE

The Plaintiff, Shawn Drumgold (hereinafter "Drumgold"), in this civil action alleges

claims arising under both Federal law and Massachusetts law, respectively 42 U.S.C. §1983 and

M.G.L. c. 12, §11I, for alleged violations of Drumgold 's civil rights protected by the Fifth, Sixth

and Fourteenth Amendments.  According to Drumgold, the City of Boston allegedly "maintains

policies, customs or practices exhibiting deliberate indifference to the constitutional rights of

persons in Boston, which caused the violation of the plaintiff's rights."  (Exhibit A, Plaintiff's

Complaint, ¶ 25).

Drumgold further alleges that Francis M. Roache, both individually and in his official

capacity as Commissioner of the Boston Police Department during the period of time relevant to

this lawsuit, did nothing to increase the credibility of the internal affairs procedures and

continued to maintain the custom, policy or procedure that Drumgold alleges brought about the

alleged abuses of the individual defendant officers in the case-at-bar and thus deprived

Drumgold of due process and his right to a fair trial, in violation of 42 U.S.C. § 1983 and the

Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and through the

use of threats, intimidation and coercion deprived Drumgold of his civil rights secured by the

Constitutions of the United States and the Commonwealth of Massachusetts, in violation of G.L.

c. 12, § 11I.

## II.     ARGUMENT

### A.     Legal Standard For Summary Judgment.

A motion for summary judgment pursuant to Fed. R. Civ. P. 56(c) must be granted

"forthwith if the pleadings, depositions…together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Santiago Hodge v. Parke Davis & Co., 909 F.2d 628, 633-34 (1st Cir. 1990);

Celotex v. Catrett, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(c) (1996). "Once a motion for

summary judgment is made, the court must look at the record in the light most favorable to the

party opposing the motion and must indulge all inferences favorable to that party." Stepanischen

v. Merchants Dispatch Transportation Corp., 722 F.2d 922, 928 (1st Cir. 1983); see also Griggs-

Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). In conjunction, however, the role of summary

judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a

genuine need for trial." Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). When

requesting summary judgment, the moving party "must put the ball in play, averring 'an absence

of evidence to support the non-moving party's case.'" Id. at 48, quoting Celotex Corp. v. Catrett,

477 U.S. 317, 325 (1986). Once the moving party makes this affirmative showing, the opposing

party may not merely rest on the submission of admissible evidence to show a genuine, material

issue of fact, but rather must produce evidence "upon which a jury could properly proceed to

find a verdict in that party's favor." DeArteaga v. Pall Ultrafine Filtration Corp., 862 F.2d 940,

941 (1st Cir. 1988); also see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Fed. R.

Civ. P. 56(e) (1996).  The evidence offered by the non-moving party must be "substantial;"

"[p]romises that evidence would be forthcoming" are not sufficient.  Hahn v. Sargent, 523 F.2d

461, 467 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976).  While the party opposing summary

judgment is entitled to all favorable inferences, "it is not entitled to build a case on the gossamer

threads of whims, speculation and conjecture."  Manganaro v. Delaval Separator Co., 309 F.2d

389, 393 (1st Cir. 1962).  Ultimately, the question "is not whether there is literally *no* evidence

favoring the non-movant, but whether there is any upon which a jury could properly proceed" to

find for the non-moving party.  De Arteaga, 862 F.2d at 941. There can be no trial-worthy issue

unless the non-moving party can produce enough competent evidence to enable a favorable

finding for the non-moving party.  Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116

(1st Cir. 1993).

**B.**     **Drumgold's §1983 Claims Against The City of Boston and Roache Should Be**
           **Dismissed Because Drumgold Cannot Establish A Prima Facie Case, And There Is**
           **No Evidence Of A §1983 Civil Rights Violation**.

There are two essential elements that must be satisfied to establish a claim under §1983:

"(i) that the conduct complained of has been committed under color of state law, and (ii) that this

conduct worked a denial of rights secured by the Constitution or laws of the United States."

Grant v. John Hancock Mutual, Life Insurance Co., et al., 183 F.Supp.2d 344, 355 (2002) (Citing

Martinez v. Colon, 54 F.3d 980, 984 (1st Cir.1995) (Citing Chongris v. Board of Appeals, 811

F.2d 36, 40 (1st Cir.), cert. denied, 483 U.S. 1021 (1988); accord West v. Atkins, 487 U.S. 42, 48,

101 L. Ed. 2d 40, 108 S. Ct. 2250 (1988); Daniel v. Williams, 474 U.S. 327, 330-31, 88 L. Ed.

2d 662, 106 S. Ct. 662 (1986).  The Supreme Court held in Albright v. Oliver that §1983 is not a

source of substantive rights, "but merely provides 'a method for vindicating federal rights

elsewhere conferred.'" (Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v.

McCollan, 443 U.S. 137, 144, n.3, 61 L. Ed. 2d 433, 99 S. Ct. 2689 (1979))).

The Albright Court instructs that "the first step in such a claim is to identify the specific

constitutional right allegedly infringed." Id.  Drumgold in the instant case alleges violations of

his constitutional rights, specifically those secured by the Fifth, Sixth and Fourteenth

Amendments protecting his right to due process and his right to a fair trial.  (Exhibit A,

Plaintiff's Complaint, ¶ 20).

Plaintiff has alleged several constitutional violations against several Boston Police

Officers that were driven by a policy of the City.  (See generally Exhibit A, Plaintiff's

Complaint).  However, unless the Plaintiff can first prove that a constitutional violation has

occurred, his claims must fail.   A municipality cannot be held liable under Section 1983 unless

the Plaintiff proves that the municipality's policy or custom caused the resulting injury or

deprivation of rights.  See Judge v. City of Lowell, 160 F.3d 67, 78 (1st Cir. 1998) (citing Monell

v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)).   The Plaintiff must

demonstrate that through its deliberate conduct, the City was the moving force behind the alleged

injury.  See Harris, 489 U.S. at 397 (citing Monell, 436 U.S. at 694).  The City cannot be liable

to the Plaintiff for having a policy that causes constitutional violations unless such a

constitutional violation has occurred.  To that end, the City and Roache hereby adopt and

incorporate by reference herein those supporting memoranda in support of motions for summary

judgment filed by those individual officers who are named defendants in the case-at-bar.

C.    **The City of Boston**

1.    **The Plaintiff's Claim of § 1983 Civil Rights Violation Should Be Dismissed as a Matter of Law Because the Plaintiff Has Failed to Identify a City Policy or Custom of Failing to Reasonably Train and Supervise Its Police Officers or Failing to Adopt And Implement Reasonable Internal Affairs Department Procedures to Prevent Abuse of Police Authority**.

a)    The Plaintiff Has Failed to Identify a City Policy or Custom of Failing to Reasonably Train and Supervise Its Police Officers.

The Plaintiff alleges that the City "had a policy, custom, or practice of failure to train its police officers adequately in the laws regarding exculpatory evidence, perjury, and other laws, rules, and regulations relating to the rights of a citizen charged with a crime." (Exhibit A, Plaintiff's Complaint, ¶ 1). The Plaintiff further alleges that "[t]hese policies, customs, or practices resulted in implicit tolerance and authorization of continuing misconduct and caused the plaintiff's improper deprivation of his constitutional rights." (Exhibit A, Plaintiff's Complaint, ¶ 1).

A municipality cannot be held liable under Section 1983 unless the Plaintiff proves that the municipality's policy or custom caused the resulting injury or deprivation of rights. See Judge v. City of Lowell, 160 F.3d 67, 78 (1st Cir. 1998) (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)). The custom "must be unambiguously established by official policy makers' conduct, and may not be simply suggested by isolated actions of some employees." Woodley v. Town of Nantucket, 645 F.Supp. 1364, 1378 (D.Mass 1986). In *City of Oklahoma City v. Tuttle*, the Supreme Court held that a jury could not be permitted to infer a "policy" of inadequate training from a single incident of police misconduct but rather that substantial evidence of a policy of custom may be required to establish liability against a municipal defendant:

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker. Otherwise the existence of the unconstitutional policy and its origin, must be separately proved. *But where the policy relied upon is not itself unconstitutional, considerably more proof that the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality and the causal connection between the "policy" and the constitutional deprivation*." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). [Emphasis added.]

Callahan, Walsh and Murphy all participated in substantial training as members of the Boston Police Department, and specifically the Homicide Unit. Roache's sworn deposition testimony establishes that the department was constantly training its personnel and recognized the need for detectives, especially the critical need for those investigating homicides, to receive state of the art training. (Exhibit C, Roache Depo, pp. 45, 47-49). As Commissioner, Roache delegated the responsibility of training homicide detectives to the superintendent in charge of the Bureau of Investigative Services. (Exhibit C, Roache Depo, p. 46). In addition to attending the Boston Police Academy, all three defendant officers had college degrees in criminal justice from area universities. (Exhibit D, Callahan Depo, p. 5; Exhibit E, Callahan Personnel Information, pp. cob0086, cob0092; Exhibit F, Walsh Depo, pp. 18-19; Exhibit G, Walsh Personnel Information, pp. cob0586-0590; Exhibit I, Murphy Personnel Information, pp. cob0318, cob-0322-0323). In fact, Callahan had post-graduate degrees in public/urban affairs and a law degree while Murphy had a law degree himself. (Exhibit D, Callahan Depo, p. 7-8; Exhibit E, Callahan Personnel Information, pp. cob0086, cob0088; Exhibit I, Murphy Personnel Information, pp. cob0318, cob0320-0321).

By the time all three officers were assigned to the Homicide Unit, each had at least ten

years of experience as police officers.  All three officers were appointed as police officers for the

City of Boston on October 7, 1970.  (Exhibit E, Callahan Personnel Information, p. cob0015;

Exhibit G, Walsh Personnel Information, p. cob0540; Exhibit I, Murphy Personnel Information,

p. cob0265).  Murphy and Walsh were assigned to the Homicide Unit in 1980, and Callahan was

assigned to the same unit in August 1988.  (Exhibit D, Callahan Depo, p. 20; Exhibit F, Walsh

Depo, p. 16-17).

Though as detectives, and ultimately as homicide detectives, a substantial amount of their

training was acquired on the job (Exhibit D, Callahan Depo, p. 12; Exhibit F, Walsh Depo, pp.

17-18), all three defendant officers participated in additional training beyond the academy.

Annual in-service training at the Boston Police Academy where officers received updated

information on laws and criminal procedure was mandatory.  (Exhibit F, Walsh Depo, pp. 18-19;

Exhibit D, Callahan Depo, pp. 13-14).  It, also, was mandatory for all investigatory personnel in

the Homicide Unit to attend a course regarding homicide investigations.  (Exhibit D, Callahan

Depo, pp. 34, 84).

Shortly after his assignment to the Homicide Unit, Callahan attended a homicide school

or program in Poughkeepsie, New York where he received additional training in investigations,

forensics, crime labs and interviewing techniques.  (Exhibit D, Callahan Depo, pp. 22, 31-32).

Callahan also attended a variety of other training programs over the course of his career.  In

December 1978, he attended a two day seminar on search and seizure sponsored by the

Massachusetts Criminal Justice Training Council at Suffolk University.  (Exhibit E, Callahan

Personnel Information, p. cob0232).  When he became a detective in the mid-1970's,

Callahan attended a "gambling school" offered by the Federal Bureau of Investigation. (Exhibit D, Callahan Depo, pp. 21-25). Upon his promotion to sergeant in the Boston Police Department, Callahan attended a training program for sergeants at the Boston Police Academy that lasted several weeks and provided instruction in criminal law, constitutional law, administrative procedures, first aid and investigations. (Exhibit D, Callahan Depo, pp. 21-25).

Walsh participated in various seminars for law enforcement personnel as well. He attended a program at the University of Massachusetts in forensic science and another program at Babson College. (Exhibit F, Walsh Depo, pp. 19-20; Exhibit G, Walsh Personnel Information, p. cob0661). Like Callahan, Walsh also attended a "homicide school" by participating in a homicide seminar offered at the University of Delaware from July 14-16, 1986. (Exhibit F, Walsh Depo, pp. 19-20; Exhibit G, Walsh Personnel Information, p. cob0661). This seminar was conducted by Vernon J. Geberth, formerly of the New York Police Department. In fact, Walsh returned to the Homicide Unit with a textbook he received in attending the seminar which he offered to Lt. John Daley the head of the unit suggesting it be distributed to other members of the unit and praising the program he had attended. (Exhibit F, Walsh Depo, pp. 20-22; Exhibit H, Daley Depo, pp. 10-12). Lt. Daley was impressed by the materials and deeming it to be of value decided to send others to attend the same program. (Exhibit H, Daley Depo, pp. 10-12).

It appears Murphy participated in even more training programs than the other defendant officers. From November 1978 through March 1979, Murphy attended five separate courses offered by the Massachusetts Criminal Justice Training Council in K-9 drug detection and dog handling. (Exhibit I, Murphy Personnel Information, pp. cob0422-0428.) While in the Homicide Unit, Murphy attended from December 2-4, 1985 the same program offered by the University of Delaware taught by Vernon J. Geberth in practical homicide investigation that

Walsh attended in July 1986.  (Exhibit I, Murphy Personnel Information, p. cob0411; See also,

Exhibit G, Walsh Personnel Information, p. cob0661.)    In August 1986, he attended a two day

seminar on homicide investigations offered by the National Law Enforcement Institute and the

Federal Bureau of Investigations.  (Exhibit I, Murphy Personnel Information, p. cob0391.)  In

addition to the above, Murphy attended a course on the collection and preservation of physical

evidence offered by the Federal Bureau of Investigation from October 6-10, 1986.    (Exhibit I,

Murphy Personnel Information, p. cob0390.)

        The performance of the defendant officers was closely scrutinized by their superiors on a

daily basis.  In line with numerous other responsibilities in his position as Commissioner of the

Boston Police Department, Roache delegated all responsibility for performance appraisals to his

bureau chiefs demanding that the department constantly appraise the performance of its

personnel and to hold them accountable.  (Exhibit C, Roache Depo, pp. 10, 36, 43-44).  In his

deposition testimony, Walsh asserts that superior officers on a daily basis would review the

performance of the officers under their command.  (Exhibit F, Walsh Depo, pp. 22-23).  The

very structure of the Homicide Unit supports Walsh's sworn testimony.  The Unit was comprised

of six squads of detectives, three squads for days and the other three for nights.  (Exhibit D,

Callahan Depo, p. 29-30).  Each squad was comprised of two detectives who would report to the

sergeant detective in their squad.  (Exhibit D, Callahan Depo, p. 30).  In turn, each sergeant

detective would report to the lieutenant in charge of the Unit.  (Exhibit D, Callahan Depo, p. 31).

Lt. Daley would, as a matter of routine and a small office, confer with the detectives of the

Homicide Unit on a daily basis.  (Exhibit H, Daley Depo, p. 18).

        The testimony of the above officers and supporting information from the defendant

officers' personnel files clearly establishes that the City does not maintain a policy or custom of

failing to reasonably train and supervise its police officers, as alleged in the Plaintiff's

Complaint.  Rather, the City of Boston Police Department took active steps prior to and during

Roache's tenure as Commissioner, to ensure that its officers were adequately trained in the

proper performance of their assigned duties so as not to violate the constitutional rights of the

citizens of Boston, as well as being adequately supervised throughout.  The training supplied to

these defendant officers and the supervision of the performance of their duties certainly did not

cause any alleged constitutional violation of the Plaintiff's rights.

The isolated incidents from which the Plaintiff tries to create an unambiguous policy are

inadequate to prove such a policy.  "A single incident of misconduct, without other evidence,

cannot provide the basis for municipal liability under [Section] 1983."  See Bordanaro v.

McLeod, 871 F.2d 1151, 1161 n.8 (1st Cir. 1989) (emphasis added); See also, Armstrong v.

Lamy, 938 F.Supp. 1018 (D. Mass 1996).  "[M]unicipal liability under Section 1983 attaches

where—and only where—a deliberate choice to follow a course of action is made from among

various alternatives" by city policymakers.  Harris, 489 U.S. 378, 389 (1989).  See also,

Oklahoma City v. Tuttle, 471 U.S. at 823.

The Plaintiff simply cannot prove that the City maintained a policy or custom of failing

to reasonably train and supervise its police officers or that it made a deliberate choice that cause

any alleged constitutional violations.  The sworn deposition testimony of Callahan, Walsh,

Roache and Daley and supported by the materials from the defendant officers personnel files

clearly shows that not only was there adequate training and constant supervision of the defendant

officers, but there was an obvious realization on the part of the Boston Police Department from

the Commissioner down to the members of the Homicide Unit that homicide investigators had to

be properly trained due to the specialized nature of their work.  Count III of the Complaint

alleges vague and conclusory allegations with no evidentiary support.  Therefore, the City is

entitled to summary judgment as a matter of law.

        b)      <u>The Plaintiff Has Failed to Identify a City Policy, Practice or Custom of Failing to Adopt and Implement Reasonable Internal Affairs Department Procedures to Prevent Abuse of Police Authority</u>.

"It is only when the 'execution of the government's policy or custom ... inflicts the

injury'" that a municipality may be held liable under Section 1983.  <u>See</u> <u>Springfield v. Kibbe</u>,

480 U.s. 257, 267 (1987).  The burden is on the Plaintiff to identify a municipal policy or custom

that caused his injury.  <u>See</u> <u>Bd. Of County Comm'rs v. Brown</u>, 520 U.S. 397, 403 (1997).

"Locating a 'policy' ensures that a municipality is held liable only for those deprivations

resulting from the decisions of its duly constituted legislative body or of those officials whose

acts may fairly be said to be those of the municipality." <u>Brown</u>, 520 U.S. at 403-404.  "A

'policy' giving rise to liability cannot be established merely by identifying a policymaker's

conduct that is properly attributable to the municipality."  <u>Id</u>. at 397.

    The Plaintiff relies in Count III of his complaint on two separate classes of information

to support his allegation that the City has maintained policies, practices or customs whereby

officers could violate citizen's constitutionally protected rights without fear of being disciplined

by the Boston Police Department.  The first class of information upon which the Plaintiff relies is

the "St. Clair Report."  (Exhibit A, Plaintiff's Complaint, ¶¶ 28-31).  The second class of

information is made up of eight (8) vignettes of instances described by the Plaintiff where certain

officers of the Boston Police Department are alleged to have committed some type of misconduct

and for which they were not disciplined.  (Exhibit A, Plaintiff's Complaint, ¶¶ 27 and 32, a-g).

    In his complaint, the Plaintiff improperly relies on the St. Clair Report in support of his

allegations with regard to policies, customs or procedures maintained by the City for failure to

reasonably train and supervise/discipline its officers because this document is inadmissible as evidence.  In 1991, Boston Mayor Raymond Flynn requested called for the creation of a special commission comprised of private citizens to review the practices of the Boston Police Department, and produced a report of their findings on January 14, 1992.  (Exhibit A, Plaintiff's Complaint, ¶ 28).

The St. Clair Report is hearsay.  Jude Mazzone in an unpublished Memorandum and Order, dated November 2, 1993, in the case Curran, et al. v. City of Boston, et al, 90-11594-MA (D.Mass.) in ruling on the admissibility of the St. Clair Report states:

> "The St. Clair Report is an out-of-court statement which the Plaintiff would offer for the truth of its conclusions.  As such, it constitutes hearsay under Fed. R. Evid. 801.  Moreover, it bases its conclusions on out-of-court statements by various anonymous sources, the Report actually represents hearsay within hearsay. See Fed. R. Evid. 805.  Under the Federal Rules of Evidence, hearsay is not admissible unless it qualifies as "nonhearsay" under Rule 801 or fits within on of the exceptions to the hearsay rule listed in Rules 803 and 804.  Fed. R. Evid. 802."

Judge Mazzone continues by examining the various exceptions to Fed. R. Evid. 801 and certain public policy concerns raised by the allowing the report into evidence finding that it could not be offered in support of the plaintiff's case.  A copy of this Memorandum and Order is attached hereto as Exhibit J, pp. 15-25.

Nevertheless, evidence that would not be admissible at trial may not play into a court's consideration of a summary judgment motion.  Horta v. Sullivan, No. 92-1962, slip op. at 8 (D.Mass. Aug. 31, 1993).  Instead, in order to retain the right to proceed to trial, the plaintiff must set forth specific, competent evidence from which a jury reasonably could find in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Garside v. Osco Drug, Inc., 895 F.2d

46, 48 (1st Cir. 1990).  Rule 56 mandates the entry of summary judgment against a party who fails to meet this burden.  Celotex Corp., 477 U.S. at 322.

The Plaintiff has failed to identify a municipal policy, practice or custom that caused his injury.  Though the Plaintiff cites in his complaint eight instances where he alleges a pattern of misconduct on the part of the City of Boston in disciplining its officers (See Exhibit A, Plaintiff's Complaint, ¶¶ 27, 32 a-g).  With the exception of one out of all the alleged illustrations in the Plaintiff's Complaint on which he relies to support his claim that the City maintained policies, practices or customs which caused the Plaintiff's violation of his constitutional rights, they all occurred at or after the time of the Plaintiff's conviction for the murder of Tiffany Moore.  (Exhibit A, Plaintiff's Complaint, ¶¶ 27, 32 a-g).

In paragraph 32 (a) – (g), the Plaintiff recites seven instances of alleged police misconduct in which the Plaintiff asserts that the alleged failure of the City to discipline such alleged misconduct constitutes a *Monell* claim against the City for "tolerating unlawful police practices including suppression of exculpatory evidence and perjury"  and that, as a result, "Boston police officers thus believed they could violate with impunity the constitutional rights of defendants."  (Exhibit A, Plaintiff's Complaint, ¶¶ 16, 32 a-g).

Six of the seven (7) cited instances of alleged police misconduct occurred after the arrest of Drumgold and ensuing investigation of Tiffany Moore's murder.  (Exhibit A, Plaintiff's Complaint, ¶ 32 a, b, d, e, f and g).[1]  These isolated incidents do not involve any of the Defendants in this action.  Therefore, these cited allegations of police misconduct occurring after the arrest of the Plaintiff and investigation of the death of Tiffany Moore are not evidence of a

---

[1] Plaintiff cites in Paragraph 32 (g) allegations of police misconduct (perjury) on the part of Boston Police detectives with regard to the arrest and prosecution of Donnell Johnson for the murder of Jermaine Goffigan.  It should be noted that the First Circuit Court of Appeals affirmed the dismissal of Johnson's Section 1983 action against the named defendant detectives in that case.  See Johnson v. Mahoney, et al., 424 F.3d 83 (1st Cir. 2005).

City custom, policy or practice that resulted in the violation of Drumgold's rights as they could not have been the motivation for the Defendants' alleged misconduct resulting in Drumgold's conviction.  See Rizzo v. Goode, 423 U.S. 362, 373-374 (1976) and City of Springfield, Massachusetts v. Kibbe, 480 U.S. 257, 268-270 (1987).

The remaining instance, paragraph 32 (c), of alleged police misconduct as cited by the Plaintiff occurred in or around 1982.  This incident involved allegations of rape against the named defendant, whose conviction was ultimately vacated through DNA testing, according to the Plaintiff.  As stated above, this insolated incident involving allegations of misconduct committed by none of the Defendants in this case cannot be used as a basis for proving a *Monell* claim against the City as the alleged incident is too remote in time from the arrest and prosecution to prove that the City's customs, policies or practices motivated the Defendants' alleged improper action resulting in the Plaintiff's conviction.[2]

The Plaintiff alleges in Paragraph 27 of his Complaint an illustration of alleging a failure to discipline with regard to a 1981 case in which a Boston Police detective allegedly lied before the grand jury but was not disciplined.  This case occurred more than seven (7) years before the Plaintiff's arrest and prosecution.  As such, this 1981 case (like the one cited by the Plaintiff in Paragraph 32 (c) of his Complaint) is too far remote from the instant action and must not be used as a basis for attempting to establish a *Monell* claim against the City.  (Exhibit A, Plaintiff's Complaint ¶ 27).  See also Bordanaro v. McLeod, 871 F.2d 1151, 1161 n.8 (1st Cir. 1989) and Armstrong v. Lamy, 938 F.Supp. 1018 (D. Mass 1996).   In addition, the Plaintiff never pursued

---

[2] In Paragraph 17 of the Complaint, Plaintiff alleges the "[d]efendant Evans was Police Commissioner through the period of time relevant to this lawsuit..."  Roache was Commissioner for the Boston Police Department from 1985 to June 1993.  (See Defendants' Uncontested Statement of Facts, ¶ 13).  The allegations contained in Paragraphs 27, and 32 (c), must not be used to impute an unconstitutional custom, policy or practice against Roache or the City as these incidents preceded Roache's tenure as Police Commissioner.

any discovery of documents from the City to substantiate those allegations of failing to discipline its officers.

In fact, during discovery the City produced to the Plaintiff numerous documents demonstrating that the City did have in place an adequate policy to prevent abuse of police authority.  Among those documents produced was Rule 109 of the Boston Police Department Rules and Procedures.  (Exhibit B, Rule 109).  Rule 109 outlines the "discipline procedure" of the Boston Police Department.  (Exhibit B, Rule 109).  Specifically, Rule 109 outlines the procedure of the Boston Police Department when a written complaint is filed, including notification of the Internal Affairs Division.  (Exhibit B, Rule 109).  Further, Rule 109 provides a detailed account of how investigations regarding complaints should be carried out.  (Exhibit B, Rule 109).  Accordingly, the Plaintiff has failed to meet the burden of identifying a policy, custom or procedure of the Boston Police Department that caused his injuries or how the policy in effect is not actively followed.

The Plaintiff's failure to articulate a policy supporting his claim of failure to adopt and follow a disciplinary procedure by the Boston Police Department is fatal to his claim.  See McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (plaintiff must affirmatively point to specific facts that demonstrate the existence of an authentic dispute).  For this reason, the City of Boston is entitled to judgment as a matter of law and summary judgment should be entered.

     c)    The Plaintiff Has Failed to Establish That the Actions of the City Were the Moving Force Behind the Plaintiff's Alleged Injuries.

The Plaintiff must also demonstrate that through its deliberate conduct, the City was the moving force behind any alleged injury.  See Harris, 489 U.S. at 397 (citing Monell, 436 U.S. at 694).  To prove that a custom or policy is the "moving force" behind the alleged injury, a

plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the injury.  See Brown, 520 U.S. at 406-407.  Thus, the Plaintiff here must show that the City's actions were culpably taken and the they demonstrate a direct causal link between that action and the Plaintiff's injury.

The Plaintiff has not met this burden.  Based on the testimony of the defendant officers, Roache and Lt. Daley, it is clear that the City was not, through its deliberate conduct, the "moving force" behind the Plaintiff's alleged injury.  Moreover, the Supreme Court "is very sensitive to the requirement of proving a 'causal link' between the town's policy and the alleged deprivation."  Woodley, 645 F. Supp. At 1379-1380 (citing e.g., Tuttle, 471 U.S. 808 (1985)).  "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held solely for the actions of its employee."  Brown, 520 U.S. at 404 (citation omitted).  To permit a lesser standard of fault "would result in de facto respondeat superior liability on municipalities...a result...rejected in Monell."  Harris, 489 U.S. at 392 (citing Monell, 436 U.S. at 693-694),

Here, the only evidence that the Plaintiff has put forth regarding his allegations are unsubstantiated claims that there was a policy that led to his injury.  He has not produced any evidence as to the existence of any policy, let alone that it was the moving force behind his injury.  This lack of evidence hardly meets the rigorous standard of culpability and causation envisioned by the Supreme Court.  The Plaintiff has failed to prove and cannot prove that the City was the moving force behind any injury.  For this reason, the City is entitled to judgment as a matter of law and summary judgment should be entered in its favor.

D.    **Francis M. Roache**

    1.    Plaintiff's Section 1983 Claim Against Roache In His Official Capacity Is Not Viable.

Plaintiff's claim under Section 1983 against Roache in his official capacity is not viable because it is merely duplicative of claims the Plaintiff has already asserted against the municipal defendant, the City of Boston in Count III of his Complaint.  It is well-established that when an individual files a claim against a public official in his or her official capacity based upon a violation of 42 U.S.C. § 1983, this constitutes "only another way of pleading" an action against the public entity that the official represents.  See Monell, 436 U.S. at 690, n.55; Stratton v. City of Boston, 731 F.Supp. 42, 46 (D. Mass. 1989) ("suit against a public official in his or her official capacity actually a suit against entity he or she represents").  Accordingly, any claim against Roache in his official capacity serves as the functional equivalent of claims against the City of Boston.  See Hafer v. Melo, 502 U.S. 21, 25 (1991); Stratton, 731 F. Supp. 42, 46 (D. Mass. 1989).  Therefore, the Plaintiff's claim against Roache in his official capacity fails and summary judgment granted as a matter of law.

    2.    Plaintiff Fails To Adduce Facts To Hold Roache Liable In His Individual Capacity Under A Theory of Supervisory Liability Under Section 1983.

Plaintiff claims Roache should be liable to him because he insufficiently supervised, trained, and/or disciplined other police officers before Callahan, Murphy and/or Walsh, such that these individual defendant officers believed they could commit unlawful practices including perjury, and the withholding of exculpatory evidence.  (Exhibit A, Plaintiff's Complaint, ¶ 1).  The U.S. Supreme Court has held that respondeat superior cannot serve as a basis for supervisor liability.  Board of County Comm'rs of Bryan Co. v. Brown, 520 U.S. 397, 403 (1997, nor can a simple failure to exercise proper supervisory control.  Daniels v. Williams, 474 U.S. 327, 331

(1986).  Therefore, under Section 1983, a supervisor may only be found liable for conduct

resulting from his own acts or omissions.  Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562

(1st Cir. 1989); Figueroa v. Aponte-Rogue, 864 F.2d 947, 953 (1st Cir. 1989).

    In order for Roache to be held liable under a claim of supervisory liability, Plaintiff must

prove that Roache's conduct or inaction was intentional, grossly negligent, or must have

"amounted to a reckless or callous indifference to the constitutional rights of others."  Gutierrez-

Rodriguez, 882 F.2d at 562.  Courts have traditionally required a showing that the superior was

either a primary actor involved or a prime mover behind the underlying alleged violation.

Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999).  See Delaney v. Dias, 415 F. Supp.

1351, 1353-54 (1st Cir. 1976) (many abuse of police power cases have held offending officers

liable while dismissing complaints against superiors who had no personal involvement in alleged

misconduct).  Moreover, the First Circuit has held that the supervisor's knowledge of his

subordinate's activities is central to the determination of "whether the former ought to be liable

(or immune from suit) for the latter's unconstitutional acts."  Camilo-Robles, 175 F.3d at 46.

    Here, Plaintiff cannot adduce evidence to establish that Roache had any knowledge or

played any role in the unconstitutional acts alleged by Plaintiff.  Accordingly, Plaintiff cannot

prove that Roache's alleged conduct or inaction was intentional, grossly negligent, or amounted

to a reckless or callous indifference to the constitutional rights of the Plaintiff.  Furthermore,

Plaintiff cannot show that Roache was a prime mover behind the alleged constitutional

violations.  Moreover, Plaintiff cannot offer any evidence that Roache had personal knowledge

beforehand of any of the officers' intention, thereby imposing upon him a duty to investigate the

situation or to prevent the officers' conduct.  See O'Malley v. Sheriff of Worcester County, 415

Mass. at 143, 612 N.E.2d 641 (1993).  Finally, Plaintiff may not simply allege that there was a

weakness in training or supervision to establish that the supervisor was deliberately indifferent to his constitutional rights.  See Burns v. Loranger, 907 F.2d 233, 239 (1st Cir. 1990) (stating that weakness in police training or supervision does not amount to deliberate indifference to citizen's constitutional rights.)  In fact, as stated above, all the defendant officers had attended the academy, possessed college degrees or higher, attended annual in-service training, and participated in training programs outside the department to enhance the skill set necessary to perform their duties as homicide detectives.  (See Defendants' Statement of Uncontested Facts.)

3. Plaintiff Cannot Adduce Evidence to Establish An Affirmative Link Between the Alleged Conduct of the Officers and Roache.

Plaintiff cannot offer evidence that there is an affirmative link between Roache and the alleged conduct of Walsh, Murphy and Callahan.  In order for Roache to be held liable for supervisory liability, Plaintiff must "prove an "affirmative link' between the street-level misconduct and the action or inaction of supervisory officials."  Gutierrez-Rodriguez, 882 F.2d at 562.  The First Circuit has held that a state official may be liable under Section 1983 for the unconstitutional behavior of subordinates if the official's actions were affirmatively linked to the subordinates unconstitutional behavior such that it could be characterized as "supervisory encouragement, condonation, or acquiescence or 'gross negligence amounting to deliberate indifference'."  Muniz Souffront v. Alvarado, 115 F. Supp.2d 237, 245 (1st Cir. 2000) quoting Tuttle, 471 U.S. 808, 823 (1985).  Case law demand a showing of an affirmative link either through direct participation or conduct that amounts to condonation or tacit authorization.  Camilo-Robles, 175 F.3d at 44;  see also, Rogan v. Menino, 175 F.3d 75, 78 (1st Cir. 1999).  In order to demonstrate this, Plaintiff must prove "distinct acts or omissions that are a proximate cause" of the constitutional violation.  Figuero, 864 F.2d at953.

Here, Plaintiff cannot causally connect any acts of Roache to the alleged misconduct of his subordinates. Plaintiff cannot put forth any evidence suggesting there is an affirmative (or any) link between Roache's conduct and the alleged constitutional violations. Furthermore, there is no evidence that any acts or omissions on the part of Roache contributed to the alleged constitutional violations. Accordingly, Count I of Plaintiff's Complaint fails and summary judgment must be granted as a matter of law.

    4.    <u>The Plaintiff Has Failed To Demonstrate With Regard to His Claims Under M.G.L. C. 12 §11I A Prima Facie Case Against Roache In Either His Official Or Individual Capacities.</u>

Drumgold offers no evidence to support his claim under Count IV of the Complaint that Commissioner Roache interfered with or attempted to interfere with his rights by way of threats, intimidation or coercion. As Commissioner Roache has been "sued in his individual as well as his official capacity" (Exhibit , Plaintiff's Complaint, ¶ 4), it will be assumed for the sake of argument that Plaintiff intended Count IV of his complaint to be asserted against Roache in both capacities.

The Massachusetts Civil Rights Act (MCRA) states that "[a]ny person whose exercise or enjoyment of rights secured by the constitution or laws of the United State, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecuted in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section." MGLA c.12 §11I (in part). To establish a claim under the MCRA, a plaintiff must prove that "any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or

laws of the United States, or of rights secured by the constitution or laws of the commonwealth" MGL c.12§11H (2002); see also Appleton v. Town of Hudson, 397 Mass. 812, 817 (1986).

Drumgold's claim against Roache in his official capacity as commissioner of the Boston Police Department pursuant to M.G.L. c. 12, § 11I fails because it constitutes a claim against the City of Boston and therefore is barred.  See Chaabouni v. City of Boston, 133 F.Supp.2d 93, 102 (D. Mass. 2001) and McCarthy v. Szostkiewiecz, 188 F.Supp.2d 64, 71 (D. Mass. 2002) (a municipality cannot be sued under the MCRA).  Therefore, a claim against Roache in his official capacity is clearly a claim against the City and so barred.  See Fletcher v. Szostkiewicz, 190 F.Supp.2d 217, 230 (D. Mass. 2002).

Drumgold fails to support the allegation in Count IV of his complaint that Commissioner Roache may have "personally engaged in any acts that constituted threats, intimidation or coercion, and therefore, [he has] not stated a MCRA claim."  Martinez v. Wolferseder, 997 F.Supp. 192, 195 (D.Mass.1998).  Roache categorically denies being involved with the homicide investigation of Tiffany Moore and prosecution of Drumgold in any way.  (Exhibit C, Roache Depo, pp. 14-15  Aside from Drumgold's unsubstantiated and conclusory allegations, there are no material facts at issue with respect to Count IV of Drumgold 's Complaint, and this Honorable Court should grant summary judgment to Commissioner Roache with regard to Count IV of the Plaintiff's Complaint as a matter of law.

### III.    CONCLUSION

WHEREFORE, the Defendants, the City of Boston and Francis M. Roache, respectfully moves this Honorable Court to grant summary judgment in favor of the above defendants and on all counts of the Plaintiff's Complaint against them, with prejudice.

**DEFENDANTS REQUEST AN ORAL ARGUMENT FOR THIS MOTION.**

Respectfully submitted,
**Defendants, the City of Boston and**
**Francis M. Roache,**
By their attorneys,

_/s/ John P. Roache_____
John P. Roache (BBO# 421680)
Patrick J. Donnelly (BBO# 651113)
Roache & Associates, P.C.
66 Long Wharf
Boston, Massachusetts 02110
Dated: October 1, 2007                  Tel.: (617) 367-0330

<u>CERTIFICATE OF SERVICE</u>

I, John P. Roache, hereby certify that on October 1, 2007, I served a copy of the above document upon counsel of record by filing with the ECF/Pacer Case Management System.

/s/ John P. Roache_____
John P. Roache