<div align="center">

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

</div>

_____

| | |
|---|---|
| **SHAWN DRUMGOLD** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **TIMOTHY CALLAHAN, FRANCIS M.** | ) |
| **ROACHE, PAUL MURPHY, RICHARD** | ) |
| **WALSH, and THE CITY OF BOSTON,** | ) |
| **Defendants.** | ) |

_____ )

**C.A. NO.: 04-11193NG**

<div align="center">

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**RICHARD WALSH'S MOTION FOR SUMMARY JUDGMENT**

</div>

**I.    INTRODUCTION**

In this civil action, the Plaintiff, Shawn Drumgold ("Drumgold"), asserts claims pursuant to 42 U.S.C. § 1983 (Counts I and II) and the Massachusetts Civil Rights Act ("MCRA") (Count IV) against the Defendant, Richard Walsh ("Walsh"). *See* Complaint.  Specifically, Drumgold asserts that Walsh withheld exculpatory evidence and engaged in conduct which deprived him of his right to a fair trial. *See id.* at ¶ 1.  Walsh now moves pursuant to Fed. R. Civ. P. 56(c), that this Honorable Court grant summary judgment in his favor as to Counts I, II and IV of Drumgold's Complaint because there is no evidence that Walsh withheld any exculpatory evidence or engaged in any conduct which impaired Drumgold's right to a fair trial.  Thus, there are no material issues of fact and Walsh is entitled to judgment as a matter of law.

First, in support of his civil rights Counts against Walsh, Drumgold claims that Walsh willfully disregarded a district court order not to interrogate Drumgold by speaking to him and taking his recorded statement. Complaint ¶ 15.  Summary judgment is appropriate as to this claim because: (1) the recorded statement was suppressed and hence Drumgold cannot sustain a due process claim based on the interview; (2) Drumgold has already litigated this issue and the

Supreme Judicial Court ("SJC") has already held that Walsh's conduct in taking Drumgold's recorded statement did not infringe upon his right to a fair trial; (3) there is no evidence that Walsh knew of the district court's order prior to completing the recorded statement; (4) the § 1983 and MCRA claims are time barred; and (5) Walsh is entitled to qualified immunity.

Second, Drumgold claims that the defendants secured an indictment against him with false and misleading information. Complaint ¶ 15.  Summary judgment is appropriate as to this claim because: (1) Walsh is absolutely immune from liability for his testimony before the grand jury (and at trial); (2) Drumgold has already litigated this issue and the SJC has already held that Walsh's testimony before the grand jury did not infringe upon Drumgold's right to a fair trial; and (3) the § 1983 and MCRA claims are time barred.

Third, Drumgold claims that Walsh pressured Commonwealth witness Tracie Peaks ("Tracie") to identify Drumgold by performing a suggestive identification procedure and that Walsh threatened to arrest Tracie and put her in jail if she did not cooperate. Complaint ¶ 14(h)(i).  Summary judgment is appropriate as to these claims because: (1) there is no evidence that the identification procedure infringed upon Drumgold's right to a fair trial; (2) there is no evidence that Walsh threatened to arrest Tracie if she "did not cooperate;" (3) there is no evidence of any threats, intimidation or coercion by Walsh; (4) the MCRA claim is time barred; and (5) Walsh is entitled to qualified immunity.

Fourth, Drumgold claims that the defendants knew, but did not disclose, that Commonwealth witness Mary Alexander ("Mary") suffered from a rare form of brain cancer that can affect a person's memory, perception and cognitive function. Complaint ¶ 14(a)(b). Summary judgment is appropriate as to this claim because: (1) there is no evidence that Walsh was aware of Mary's condition or that she had any problems with memory, perception or cognitive function; (2) nor is there any evidence that Mary suffered from any memory,

perception or cognitive problems prior to or at the time of Drumgold's criminal trial; and (3) Walsh is entitled to qualified immunity.

Fifth, Drumgold claims that the defendants: (i) pressured purported alibi witness Antonio Anthony a/k/a Country ("Anthony") into claiming that he was not with Drumgold on the night of the Moore homicide, despite his initial claim that he was; (ii) threatened to charge Anthony with murder if he supported Drumgold's alibi; and (iii) paid for Anthony to stay at a hotel for several days in exchange for his statement that he was not with Drumgold at the time of the murder. Complaint ¶ 14(j). Summary judgment is appropriate as to the claims with respect to Anthony, who did not testify before the grand jury or at Drumgold's criminal trial, because: (1) there is no credible evidence to support any of the claims; (2) the uncontroverted evidence is that the police did not threaten to indict Anthony; (3) there is no evidence that Walsh engaged in any conduct with respect to Anthony which infringed upon Drumgold's right to a fair trial or to receive exculpatory evidence; (4) there is no evidence of any threats, intimidation or coercion by Walsh; (5) the MCRA claim is time barred; and (6) Walsh is entitled to qualified immunity.

Sixth, Drumgold claims that the defendants badgered and intimidated Commonwealth witnesses Vantrell McPherson ("McPherson") and Eric Johnson ("Johnson") into identifying Drumgold when they initially stated that they could not make an identification. Complaint ¶ 14(j). Summary judgment is appropriate as to these claims because: (1) there is no evidence that Walsh had any contact with McPherson; (2) the uncontroverted evidence is that Walsh interviewed Johnson on only one occasion on August 24, 1988 at which time Johnson did not identify Drumgold; (3) there is no evidence of any threats, intimidation or coercion by Walsh with respect to McPherson or Johnson; and (4) the MCRA claim is time barred.

Seventh, Drumgold claims that: (1) the defendants intimidated purported alibi witness Olisa Graham ("Graham"); and (2) Graham did not testify at his criminal trial because an

unknown male warned her that she would be arrested on an outstanding warrant if she went to court to testify. Complaint ¶ 14(k). Summary judgment is appropriate as to these claims because: (1) there is no evidence that Walsh had any contact with Graham; (2) there is no evidence of any threats, intimidation or coercion by Walsh with respect to Graham; (4) the MCRA claim is time barred.

Finally, in Count II, Drumgold sets forth a § 1983 conspiracy claim. In addition to the reasons set forth above, summary judgment is appropriate as to Count II because there is no evidence that Walsh (or any other defendants) entered into an agreement or a common plan to deprive Drumgold of his right to receive exculpatory evidence and/or his right to a fair trial.[1]

## II.    RELEVANT PRINCIPLES OF LAW

### A.    <u>Summary judgment standard</u>

Summary judgment is appropriate when "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party shows "that there is an absence of evidence to support the nonmoving party's position," "the burden shifts to the nonmoving party to establish the existence of at least one factual issue that is both genuine and material." *Mitchell v. City of Boston*, 130 F. Supp. 2d 201, 208 (D. Mass. 2001) (citations and internal quotation marks omitted). "On issues where the nonmovant bears the ultimate burden of proof, he must present *definite, competent evidence* to rebut the motion." *Mesnick v. General Electric Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (emphasis added). "Not every discrepancy in the proof is enough to forestall a properly supported motion for summary

---

[1]    Walsh notes that Drumgold does not claim that Walsh engaged in any misconduct with respect to Commonwealth witness Ricky Evans ("Evans"). Complaint ¶ 14 (c)–(g). Nonetheless, in the event that Drumgold belatedly does so, summary judgment would be appropriate as to Counts I, II and IV because: (1) Walsh did not participate in any interviews of Evans; (2) nor did he arrange for Evans to stay at a hotel or receive money for food or expenses. Statement of Material Facts ¶¶ 204-209, 211-212. Indeed, Evans has testified that he does not know Walsh and does not recall having any contact with Walsh. *Id.* at 210. Furthermore, co-defendant Timothy Callahan clearly states that Walsh had no knowledge or information regarding Evans. *See id.* at ¶¶ 205, 207, 211-212.

judgment." *Id.*  Further, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Mitchell v. City of Boston*, 130 F. Supp. 2d at 208.

### B.    Collateral Estoppel

Under the doctrine of collateral estoppel, "when an issue of law or fact is actually litigated and determined by a final and valid judgment and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or different claim." *Willhauk v. Halpen*, 953 F.2d 689, 705 (1st Cir. 1992) (citing *Martin v. Ring*, 401 Mass. 59, 62 (1987)); *Miles v. Aetna Casualty & Surety Co.,* 412 Mass. 424, 427, 589 N.E.2d 314, 317 (1992) (in Massachusetts, collateral estoppel is appropriate where there is "an identity of issues, a finding adverse to the party against whom it is being asserted, and a judgment by a court or tribunal of competent jurisdiction").  Mutuality of estoppel and identity of parties is not required for the defensive use of collateral estoppel. *See Kyricopoulos v. Town of Orleans*, 967 F.2d 14, 16 (1992).  Further, "[i]t is well-established that the doctrine of collateral estoppel applies in civil rights actions brought pursuant to 42 U.S.C. § 1983." *Johnson v. Mahoney*, 424 F.3d 83, 93 (1st Cir. 2005) (citing *Allen v. McCurry*, 449 U.S. 90, 103 (1980)).

### C.    Burden of proof under 42 U.S.C. § 1983 and MCRA

In order to survive summary judgment as to Counts I and II pursuant to 42 U.S.C. § 1983, Drumgold must establish that: "(1) the challenged conduct was attributable to [Walsh]; and (2) the conduct deprived [Drumgold] of a right secured by the Constitution or the laws of the United States." *See Johnson v. Mahoney*, 424 F.3d 83, 89 (1st Cir. 2005); *see also Baker v. McCollan*, 443 U.S. 137 (1979).  Similarly, to overcome summary judgment as to Count IV pursuant to MCRA, Drumgold must establish that his exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of the Commonwealth, (1) has been interfered with, or attempted to be interfered with and (2) that the

interference or attempted interference was by threat, intimidation or coercion. *Appleton v. Town of Hudson*, 397 Mass. 812, 817 (1986). Because § 1983 and MCRA are not sources of substantive rights in and of themselves, summary judgment is appropriate where Drumgold fails to identify the deprivation of a specific constitutional right. *See Martineau v. Kurland*, 36 F. Supp. 2d 39, 42 (D. Mass. 1999); *Jiles v. Department of Corrections*, 55 Mass.App.Ct. 658, 661-662 (2002). Moreover, the second element requires that Drumgold establish that Walsh's conduct was "a cause of the alleged deprivation." *Johnson v. Mahoney*, 424 F. 3d at 89. *See also Brum v. Town of Dartmouth*, 428 Mass. 684, 708 (1999) and *Martinez v. Wolferseder*, 997 F. Supp. 192, 195 (D. Mass. 1998) (liability pursuant to MCRA may only be imposed if a defendant "personally engaged in acts that constituted threats, intimidation or coercion").

## III.   ARGUMENT

### A.   <u>Summary judgment is appropriate as to Drumgold's claim in support of Counts I, II and IV that Walsh engaged in misconduct in interviewing Drumgold and taking Drumgold's recorded statement.</u>

First, summary judgment is appropriate as to Drumgold's claim in support of Counts I, II and IV that Walsh willfully disregarded a district court order not to interrogate Drumgold because Drumgold's recorded statement was suppressed at trial. *See* Complaint ¶ 15. Hence, Drumgold cannot establish that the statement impeded upon his due process right to a fair trial in any way. *See Commonwealth v. Drumgold*, 423 Mass. 230, 240-246 (1996).

Second, Drumgold's claim that he was deprived of his right to a fair trial based on his in-custody recorded statement was already raised and fully litigated by Drumgold and decided upon in the underlying criminal proceedings. *See Commonwealth v. Drumgold*, 423 Mass. at 240-246; *see also* Statement of Material Facts ("SMF") ¶¶ 39-44. Specifically, the Supreme Judicial Court ("SJC") addressed this very issue, finding that there was no misconduct of a constitutional magnitude to warrant reversal of Drumgold's conviction or the lower court's denial of

Drumgold's motions for a new trial. *Commonwealth v. Drumgold*, 423 Mass. at 240-246. Indeed, the SJC found that Drumgold's right to a fair trial was not impaired as a result of the recorded statement. *Id.* Consequently, summary judgment is appropriate as to Counts I, II and IV because Drumgold's claim is barred by the doctrine of collateral estoppel. *Willhauk v. Halpen*, 953 F.2d 689, 705 (1st Cir. 1992); *Johnson v. Mahoney*, 424 F.3d 83, 93 (1st Cir. 2005).

Finally, summary judgment is appropriate as to Counts I, II and IV because there is no evidence that Walsh knew about the court order. SMF ¶ 38. Indeed, the uncontroverted testimony is that Walsh did not receive any information about the order until after Drumgold's recorded statement had been taken. *Id.* Nor is there any evidence that the recorded statement resulted in an unfair trial. *See Commonwealth v. Drumgold*, 423 Mass. at 240-246; *see also* SMF ¶¶ 39-44. Rather, the statement was suppressed from evidence at Drumgold's criminal trial and both the Superior Court and the SJC found that the statement did not impair Drumgold's right to a fair trial. *See id.* Of interest, in his motion for a new trial, Drumgold argued that Attorney Rappaport failed to introduce into evidence Drumgold's "highly exculpatory, in-custody, taped statement … and failed to advise [Drumgold] of this viable option."

**B.** **Summary judgment is appropriate as to Drumgold's claim in support of Counts I, II and IV that Walsh engaged in misconduct in testifying before the grand jury.**

First, summary judgment is appropriate as to Counts I, II and IV because Walsh is absolutely immune from liability for his testimony before the grand jury (and at trial). Absolute immunity extends to conduct that is "inextricably tied" to participation in the judicial process. *Mitchell v. City of Boston*, 130 F. Supp. 2d 201 (D. Mass. 2001). Thus, "all witness at judicial proceedings[, including police officers,] are immune from any damages liability stemming from their testimony." *See Batiste v. Fleming*, 923 F. 2d 839 (1st Cir. 1990) (citing *Briscoe v. LaHue*, 460 U.S. 325, 329, 341 (1982). Consequently, summary judgment is appropriate as to Counts I,

II and IV to the extent that Drumgold seeks recovery with respect to Walsh's testimony before the grand jury and/or at Drumgold's criminal trial. *See Jackson v. City of Cambridge*, No. 03-1616, 2003 WL 23095391 (1st Cir. Dec. 31, 2003) (affirming dismissal of § 1983 claims as detective was entitled to absolute immunity as to his grand jury testimony).

Second, summary judgment is appropriate as to Counts I, II and IV because Drumgold's claim that Walsh secured an indictment against him with false and misleading information was already raised and fully litigated by Drumgold and decided upon in the underlying criminal proceedings. *See Commonwealth v. Drumgold*, 423 Mass. at 235-241; *see also* SMF ¶¶ 47-51. Again, the SJC addressed this very issue, finding that there was no misconduct of a constitutional magnitude to warrant reversal of Drumgold's conviction or the lower court's denial of Drumgold's motions for a new trial. *Commonwealth v. Drumgold*, 423 Mass. at 235-241. In doing so, the SJC held that: (i) there is no evidence that Walsh knowingly made any false statement to the grand jury; (ii) there is no evidence that any purportedly false evidence influenced the grand jury's determination; (iii) nor did Walsh's presentation of an edited version of Drumgold's statement have any tendency to convert Drumgold's exculpatory recorded statement into an inculpatory statement. *Id.* Hence, Drumgold's claim is barred by the doctrine of collateral estoppel. *Willhauk v. Halpen*, 953 F.2d 689, 705 (1st Cir. 1992); *Johnson v. Mahoney*, 424 F.3d 83, 93 (1st Cir. 2005).

Finally, summary judgment is appropriate as to Counts I, II and IV because Drumgold has failed to establish that he was deprived of his right to a fair trial as a result of Walsh's grand jury testimony. *See supra* Section II (C). Nor can he for the same reasons set forth by the SJC in *Commonwealth v. Drumgold*, 423 Mass. at 235-241.

C.    **Drumgold's § 1983 claims that Walsh engaged in misconduct in taking Drumgold's recorded statement and in testifying before the grand jury are**

**time barred under *Wallace v. Kato*.  Thus, summary judgment is appropriate as to Counts I and II.**

In Counts I and II, Drumgold claims that Walsh engaged in misconduct in taking Drumgold's recorded statement and in testifying before the grand jury. *See* Complaint ¶ 15. Summary judgment is appropriate because these claims are time barred under *Wallace v. Kato*.

"[T]he accrual date of a § 1983 cause of action is a question of federal law." *Wallace v. Kato*, 127 S. Ct. 1091, 1095 (2007).  In *Wallace v. Kato*, the Supreme Court held "that the statute of limitations upon a § 1983 claim seeking damages for false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Id.* at 1100.  In accordance with *Wallace v. Kato*: (1) the limitations period with respect to Drumgold's in-custody recorded statement began to run on May 18, 1989, when the Superior Court allowed Drumgold's motion to suppress the statement at trial; and (2) the limitations period with respect to Walsh's grand jury testimony began to run after an indictment was returned against Drumgold in September 1988 or no later than October 13, 1989 when the jury returned a verdict of guilty for first-degree murder.  This is because Drumgold's recorded statement and the grand jury proceedings were subsequently superseded by, and/or played no role in, Drumgold's separate and independent criminal trial and conviction.

This result does not conflict with *Heck v. Humphrey*, wherein the Supreme Court held:

> in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal …." 512 U.S. 477, 486-487 (1994).

This is because Walsh's alleged conduct with respect to the grand jury proceedings and Drumgold's recorded statement would not, and in fact did not, render his conviction invalid. *See supra* Section IV (A) and (B).  And, indeed, Drumgold was aware of all circumstances relevant

to these claims in 1988/1989. *See Commonwealth v. Drumgold*, 423 Mass. 230.  As such, this Court should grant summary judgment because Counts I and II are time barred.

      **D.**    **Drumgold's claim pursuant to MCRA is time barred under Massachusetts law.  Thus, summary judgment is appropriate as to Count IV.**

In Count IV, Drumgold sets forth a claim pursuant to MCRA, alleging wrongdoing with respect to Drumgold's recorded statement, Walsh's testimony before the grand jury and Walsh's contact with witnesses Tracie Peaks, Mary Alexander, Antonio Anthony, Vantrell McPherson, Eric Johnson, Ricky Evans and Olisa Graham. *See* Complaint at ¶¶ 14-15.  This Court should grant summary judgment against Count IV in its entirety because it is time barred under Massachusetts law.

Specifically, in Massachusetts, claims pursuant to MCRA accrue when a plaintiff "knew or should have known of the alleged" conduct supporting the claim, "rather than upon the termination of criminal proceedings in his favor." *Mitchell v. City of Boston*, 130 F. Supp. 2d 201, 214 (D. Mass. 2001).  In accordance with Massachusetts law, Count IV "is barred by the three-year statute of limitations because [Drumgold's] criminal trial, conviction and incarceration put [him] on notice of the alleged wrongs for purposes of determining when the cause of action accrued." *See id.*; *Messere v. Murphy*, 32 Mass. App. Ct. 917, 918 (1992).  Thus, this Court should grant summary judgment as to Count IV in its entirety.

      **E.**    **To the extent that Counts I, II and IV are supported by allegations as to Commonwealth witnesses and purported alibi witnesses, summary judgment is appropriate because Drumgold has failed to adduce evidence sufficient to create any issue of material fact with respect to his claims pursuant § 1983 and MCRA.**

      1.    Commonwealth witness Tracie Peaks

Tracie was interviewed by Walsh and co-defendant Paul Murphy ("Murphy") on August 26, 1988 – just 7 days after the Moore homicide – at which time she positively identified

Drumgold's photo from an array. SMF ¶ 73.  This is the only time that Tracie recalls speaking to the police regarding the incident. *Id.* at ¶ 74.  Tracie then appeared and testified under oath before the grand jury on September 8, 1988 – just 19 days after the incident. *Id.* at ¶¶ 78-79.  On October 3, 1989, Tracie testified under oath on direct and cross-examination at the underlying criminal trial. *Id.* at ¶¶ 80-81.  Drumgold now claims that Walsh pressured Tracie to identify Drumgold by performing a suggestive identification procedure and that Walsh threatened to arrest Tracie and put her in jail if she did not cooperate. Complaint ¶ 14(h)(i).

First, summary judgment is appropriate as to Counts I, II and IV because there is no evidence that Walsh engaged in any conduct which caused Drumgold to suffer a deprivation of his right to a fair trial.  Indeed, there is no evidence that Tracie would have testified any differently before the grand jury or at trial had she not been shown the photo array.  This is evidenced by Tracie's unequivocal testimony before the grand jury and at trial.  Specifically, Tracie testified that when she spoke to Walsh and Murphy about a week after the shooting, they asked if she saw anyone coming from the area of Humboldt Avenue. SMF ¶¶ 89-90.  Tracie testified that she responded that she saw Drumgold walking down the street. Tracie testified that: (i) this discussion took place <u>before</u> she was shown the photo array; (ii) she knew who Drumgold was before she saw any photos of him; and (iii) she had no problem selecting Drumgold's photo from the array. *Id.* at ¶¶ 83, 89-92.  Indeed, Attorney Rappaport testified that there was no need to show Tracie the photo of Drumgold because she knew him before the incident. *Id.* at ¶ 97.  Thus, even if there were an issue of fact as to whether Walsh specifically asked Tracie about Drumgold's photo, such issue would be immaterial as Tracie had already identified Drumgold and knew Drumgold from the neighborhood. *See id.* at ¶ 83, 89-92, 97.  Consequently, Drumgold cannot show that Walsh, by way of the identification procedure, caused him any constitutional harm.

Second, summary judgment is appropriate because there is no evidence of any threats, intimidation or coercion by Walsh with respect to Tracie.  In conjunction with this civil action as well as Drumgold's new trial hearing, Tracie has testified that she answered questions before the grand jury and at trial to the best of her ability. SMF ¶¶ 78-81.  Tracie has further testified that: (i) she had no reason to be upset with the police officers who showed her the photo array; (ii) no one threatened or intimidated her; (iii) nor did anyone suggest what she should say when called as a witness. *Id.* at ¶¶ 82, 103.  Thus, summary judgment is appropriate as to Counts I, II and IV because there is no evidence that Tracie was "pressured" or otherwise threatened or intimidated by Walsh with respect to her testimony before the grand jury or at trial.  Nor is there any evidence that Tracie's testimony at the underlying criminal trial was anything but truthful.[2]

Third, summary judgment is appropriate because there is no evidence that Walsh (or any other police official) threatened to arrest Tracie if she did not cooperate.  To the contrary, Tracie testified that she only spoke with police on one occasion regarding the Moore homicide. SMF ¶ 74.  Moreover, the uncontroverted evidence is that it was allegedly an assistant district attorney who told Tracie's mother, Betty Peaks, that Tracie would be taken out of school and locked up if she did not cooperate. *Id.* at ¶¶ 108-111.

2.    Commonwealth witness Mary Alexander

Summary judgment is appropriate as to Counts I, II and IV to the extent that Drumgold claims that the defendants knew, but did not disclose, that Mary suffered from a rare form of

---

[2]     Nonetheless, *see Santos v. Murdock*, 243 F.3d 681 (2d Cir. 2001), wherein the Second Circuit affirmed summary judgment against the plaintiff's § 1983 claims, holding that the affidavit of a non-party witness which contradicted his probable cause hearing testimony was insufficient to create a factual issue precluding summary judgment. *See also Bader v. Warden, N.H.*, which notes that "[r]ecantations of trial testimony are viewed with skepticism and suspicion" and that "[r]ecantations that are inconsistent with other trial testimony, when the original testimony was consistent are particularly unreliable"). No. 02-CV-508-JD, 2005 WL 1528761 (D. N.H. June 29, 2005) (citing *Hysler v. Florida*, 315 U.S. 411, 413 (1942), *U.S. v. Rouse*, 410 F.3d 1005, 1009 (8th Cir. 2005), *Mendiola v. Schomig*, 224 F.3d 589, 593 (7th Cir. 2000), *U.S. v. DiPaolo*, 835 F.2d 46, 48 (2d Cir. 1987), and *Allen v. Woodford*, 395 F.3d 979, 994 (9th Cir. 2005).

brain cancer that can affect a person's memory, perception and cognitive function. *See* Complaint ¶ 14(a)(b). This is because there is absolutely no evidence that Walsh knew that Mary had any problems with memory, perception or cognitive function prior to Drumgold's criminal trial. *See* SMF ¶¶ 113, 115-119. Of significance, Walsh only met with Mary on one occasion, on August 26, 1988, before Callahan took over the investigation. *Id.* at ¶ 113. And, it was not until over 5 months later in February 1989 that Mary, as indicated by her medical records, suffered from a seizure and underwent surgery to remove a malignant brain tumor. *Id.* at ¶¶ 115-118. Indeed, Mary's medical records dated prior to Drumgold's criminal trial do not indicate any memory, perception or cognitive dysfunction.

Moreover, although Walsh accompanied Callahan to briefly speak with Mary on May 31, 1989 at the request of Assistant District Attorney Phil Beauchesne ("ADA Beauchesne"), to have Mary call ADA Beauchesne, Callahan had already taken over the investigation of the Moore homicide. *See* SMF ¶¶ 30, 114. Walsh had no further contact with Alexander after that date. Moreover, there is simply no evidence which suggests that Mary appeared to have any health issues with respect to her memory, perception and/or cognitive functioning in May 1989 or that Walsh knew of the same. *See id.* at ¶¶ 113-119.

Further, there is no credible evidence that Mary had any problems with memory, perception or cognitive function prior to or at the time of Drumgold's criminal trial. *See* SMF ¶¶ 113-119, 122-128. Indeed, there is no indication in any of Mary's medical records dated prior to Drumgold's criminal trial that she suffered any memory, perception or cognitive impairments. *See id.* at ¶¶ 115-118. Moreover, in conjunction with this civil action, Mary's mother, Lola Alexander ("Lola"), testified that Mary did not have any health problems other than headaches and that she (Lola) does not recall if Mary had memory problems at any time. *Id.* at ¶¶ 122-125. Further, Tracie Peaks, who saw Mary on a regular basis prior to 1990 and prior to Drumgold's

trial, testified that she had no knowledge that Mary was sick until August or September 1990 and that after learning that Mary was sick, Tracie observed that Mary was the normal Mary that she was used to speaking to. *Id.* at ¶¶ 126-128.

Also of import, it is clear that at the time of Drumgold's criminal trial, Attorney Rappaport was aware that Mary had an operation in February 1989 and that she was not feeling too well at that time. SMF ¶¶ 120-121. This is evidenced by Attorney Rappaport's cross-examination of Alexander at the underlying criminal trial:

> Q: Okay, people come by. And actually there was a period of time last year when you were ill?
> A: Excuse me?
> Q: There was a period of time last year when you were ill?
> A: Yes.
> Q: You had an operation in February, right?
> A: Yes.
> Q: And you weren't feeling too well at that time?
> A: Yes.
> Q: And the police would come by and they'd say – the detective would come by to see how you're doing?
> A: Yes. And I told them I don't care if I'm dying, I'll still go and tell them what I saw.

*Id.* at ¶ 121.

### 3. Purported alibi witness Antonio Anthony

In support of Counts I, II and IV, Drumgold claims that the defendants: (i) pressured Anthony into claiming that he was not with Drumgold on the night of the Moore homicide, despite his initial claim that he was; (ii) threatened to charge Anthony with murder if he supported Drumgold's alibi; and (iii) paid for Anthony to stay at a hotel for several days in exchange for his statement that he was not with Drumgold at the time of the murder. Complaint ¶ 14(j). Of significant import: (a) Anthony did not testify before the grand jury; (b) when called as a witness at Drumgold's criminal trial, Anthony pleaded the Fifth Amendment and did not

testify; and (c) the defendants have been unable to locate Anthony to depose him in conjunction with this civil action. SMF ¶ 171.

First, summary judgment is appropriate as to Counts I, II and IV because there is no evidence that Walsh (or any other police official) threatened to charge Anthony with murder if he supported Drumgold's alibi. *See* SMF ¶ 174.   Rather, Keller, Drumgold's investigator, testified that Anthony unequivocally stated that police did <u>not</u> threaten to indict him if he did not help them. *Id.*

Second, summary judgment is appropriate because there is absolutely no evidence that Anthony pleaded the Fifth Amendment at Drumgold's criminal trial as a result of any conduct by Walsh.  Rather, Anthony was represented by counsel, James Mahaney, Esq., at Drumgold's trial. SMF ¶ 170.  And, according to Anthony, he was also represented by counsel at the grand jury stage. *Id.* at 168.  With the advice of counsel, Anthony invoked his 5th Amendment Right against Self-Incrimination. *Id.* at 168, 170.  The only reasonable inference is that Anthony was in fear that his testimony would subject him to criminal charges. Consequently, there is no evidence that Walsh engaged in any conduct which infringed upon Drumgold's right to a fair trial.

Third, although it appears that Anthony may have been put up at a hotel from September 2 through 6, 1988, there is no evidence or reasonable inference that it infringed upon Drumgold's right to a fair trial. *See* **SMF** ¶ 165.  Whether or not Anthony was put up in a hotel before his grand jury appearance is of no impact because he did not testify at trial.  Furthermore, his alleged alibi testimony was redundant as Paul Durand, Terrence Taylor and the Reverend Sadberry provided similar, if not identical testimony and therefore Anthony's testimony would have been duplicative.

Fourth, there is no credible evidence that Drumgold's right to a fair trial was in any way affected due to Walsh's conduct in taking Anthony's August 31, 1988 recorded statement.

Specifically, on August 31, 1988, Anthony provided a recorded statement that: (i) although he had been with Drumgold on August 19, 1988, Anthony was dropped off and went his separate way shortly after 7:00 or 7:30 p.m. – approximately two hours prior to the shooting; (ii) on August 19, 1988 Anthony observed Drumgold and Taylor with guns and Drumgold wearing wearing a black Adidas sweat suit; and (iii) when he went with Drumgold to New York shortly after the Moore homicide, Drumgold took the two guns that Anthony had observed Drumgold and Taylor with on August 19, 1988. SMF at ¶¶ 152-162.  Afterwards, the recorded statement was played for Anthony. *Id.* at ¶ 163.  Anthony then went back on the record and stated that he had had an opportunity to listen to the tape, that it was a true statement, that nobody forced him to make the statement and that he gave the statement of his own free will. *Id.* at ¶ 164. Significantly, in July 2003 at Drumgold's new trial hearing, Anthony claimed that if there was a recorded statement of his interview, it was fabricated by the Boston Police.  When confronted with the audiotape, he authenticated his voice and claimed that he was smoking an ounce of crack cocaine daily and sniffing heroin in 1988, and could not recall making any of the statements above or that the statements were recorded. *Id.* at ¶ 173, 175-176, 178.  Moreover, prior to hearing his recorded statement, Anthony unequivocally testified that he told the police the truth and that Walsh never made any personal threats against him. *Id.* at ¶¶ 172, 177. Consequently, there is no credible evidence that Anthony's statement was untrue or was procured against his will. *See supra* note 2.  In addition, it is clear from his testimony that Walsh did not do anything wrong, nor did he intimidate or threaten Anthony as Drumgold claims.

4.     Commonwealth Witnesses Vantrell McPherson and Eric Johnson

Drumgold claims that the police defendants badgered and intimidated Commonwealth witnesses McPherson and Johnson into identifying Drumgold when they initially stated they could not make an identification.  Summary judgment is appropriate as to Counts I, II and IV

because there is no evidence that Walsh engaged in any conduct with respect to McPherson or Johnson which caused Drumgold to suffer an unfair trial.

First, McPherson has provided uncontroverted testimony that she does not know and has never heard of Walsh and the uncontroverted evidence is that Walsh did not have any interaction with McPherson during the investigation. SMF ¶¶ 180-182, 189-193.  And, there is absolutely no evidence that Walsh was the "fat guy" which purportedly yelled at McPherson. *Id.* at ¶¶ 189-193.  Nor is there evidence that the "fat guy" was a police officer. *Id.*  Moreover, in conjunction with this case, McPherson has testified that she testified truthfully at Drumgold's criminal trial, that no one forced or threatened her regarding her testimony, and that no one told her what to say during her testimony. *Id.* at ¶ 193.

Second, Walsh only spoke with Johnson on one occasion, on August 24, 1988. SMF ¶ 196-197.  At that time, Johnson did not identify Drumgold and Walsh did not show Johnson any photos of Drumgold. *Id.* at ¶¶ 198-199.  Moreover, Johnson does not know who Walsh is. *Id.* at ¶ 195.  And, Walsh did not assist in any preparation of witnesses for trial. *Id.* at ¶ 32.  Thus, there is no evidence that Walsh badgered, intimidated or pressured Johnson for any duration of time. Nor is there any evidence that Walsh coached Johnson regarding his trial testimony.  In fact, on cross-examination by Attorney Rappaport, Walsh testified that Eric Johnson never identified Drumgold during his August 24, 1988 interview. *Id.* at ¶199.

5.    Purported alibi witness Olisa Graham

Drumgold claims that the police defendants intimidated alibi witness Olisa Graham ("Graham") and that Graham did not testify at his criminal trial because an unknown male warned her that if she came to court to testify she would be arrested because she had open cases in Suffolk County. Complaint at ¶ 14(k).

First, summary judgment is appropriate as to Counts I, II and IV because there is no evidence that Walsh had any contact with Graham. *See* SMF ¶¶ 217-223, 226-234.  Of significance, it was not until July 1, 1989 that Graham first spoke to police regarding the Moore homicide. *Id.* at ¶ 219.  At that time, she provided a recorded statement to Callahan – Walsh was not present. SMF ¶¶ 217-218.  Further, there is no evidence that Walsh was the male who warned Graham that she could be arrested if she appeared to testify at Drumgold's trial. *Id.* at ¶¶ 226-232.  To the contrary, Keller, Drumgold's investigator, testified that Graham unequivocally told him that it was an assistant district attorney who called her. *Id.* at ¶¶ 226-229.  Of note, it is uncontroverted that Graham did in fact have an outstanding warrant for shoplifting at the time of Drumgold's trial and that Graham did not view the phone call as threatening. *See id.* at ¶¶ 221-222.  Thus, there is no evidence that Walsh engaged in any conduct which deprived Drumgold of his right to a fair trial.

Also of significance, Graham's July 1, 1989 recorded statement was provided to Drumgold via Attorney Rappaport prior to trial. SMF ¶ 224.  However, Graham was never contacted by Drumgold's attorney or any investigator assisting with Drumgold's defense prior to trial. *Id.* at 225.  Indeed, at trial, Attorney Rappaport made a strategic decision not to call Graham as an alibi witness. *Id.* at ¶ 234.

**F.    Summary judgment is appropriate as to Count II because there is a complete lack of evidentiary support that Walsh engaged in a conspiracy to deprive Drumgold of his constitutional rights.**

A civil rights conspiracy is defined as "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988) (citations omitted). *See also Kurker v. Hill*, 44 Mass. App. Ct. 184 (1998) (pendent state

18

law conspiracy claim requires "a common plan to commit a tortious act). Moreover, "for a conspiracy claim to be actionable under [§] 1983, the plaintiff has to prove that there has been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws." *Earle v. Benoit*, 850 F.2d at 844 (citations omitted). Here, summary judgment is appropriate as to Count II because there is simply no evidence that Walsh entered into an agreement or common plan for the specific purpose of depriving Drumgold of his right to exculpatory evidence and/or his right to a fair trial. In fact, it is irrefutable that Callahan replaced Walsh in the investigation of the Moore homicide in May 1989 and started fresh. In addition, Walsh did not play any further role in the investigation or trial preparation. The record is devoid of any evidence that Walsh assisted Callahan or continued to be involved in this matter other than being called as a witness at trial.

### G. Summary judgment is appropriate as to Counts I, II and IV because Walsh is entitled to qualified immunity.

Under the doctrine of qualified immunity, "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mihos v. Swift*, 358 F.3d 91, 101-02 (1st Cir. 2004) (citations omitted). *See Kelley v. LaForce*, 288 F.3d 1, 6 (1st Cir. 2002) (qualified immunity doctrine available as defense to §1983 civil liability claims). The doctrine protects such public officials so that they may act freely "without fear of retributive suit for damages except when they should have understood that particular conduct was unlawful." *Limone v. Condon*, 372 F.3d 39, 44 (1st Cir. 2004) (citations omitted). The question of whether qualified immunity applies is always one for the judge to decide. *See Singh v. Blue Cross/Blue Shield of Mass., Inc.*, 308 F.3d 25, 34-35 (1st Cir. 2002).

In this case, as illustrated *supra* Section III (A), (B), (E) and (F), there is no evidence that Walsh withheld any exculpatory evidence or engaged in any conduct which impaired Drumgold's right to a fair trial. Thus, because there is no evidence of any conduct by Walsh which caused Drumgold to be deprive of a constitutional right, summary judgment is appropriate as to Counts I, II and IV because Walsh is entitled to qualified immunity. Moreover, in light of this, Drumgold has not established, nor can he, that Walsh infringed upon any constitutional right which was clearly established at the time of the alleged violation(s) or that a reasonable officer would have understood the challenged conduct to contravene Drumgold's right to exculpatory evidence and to a fair trial.[3]

## IV.    CONCLUSION

WHEREFORE, for all of the foregoing reasons, Defendant Richard Walsh requests that this Honorable Court enter summary judgment in his favor as to Counts I, II and IV of Plaintiff Shawn Drumgold's Complaint, and grant any further relief deemed appropriate and just.

<div style="margin-left:50%">

**Defendant,**
**RICHARD WALSH,**
By its attorney,

</div>

DATED:  October 1, 2007                    /s/ Hugh R. Curran_____
                                                                 Hugh R. Curran (BBO# 552623)
                                                                 Bonner, Kiernan, Trebach & Crociata, LLP
                                                                 One Liberty Square, 6th Floor
                                                                 Boston, Massachusetts 02109
                                                                 (617) 426-3900
                                                                 (617) 426-0380 fax

---

[3]    *See Limone v. Condon*, 372 F.3d at 44 (noting that to determine whether a public official is entitled to qualified immunity, the Court must consider, sequentially: "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right").

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document has been mailed, this 1st day of October, 2007 to all counsel of record:

Michael W. Reilly, Esq.
Tommassino & Tommasino
Two Center Plaza
Boston, MA 02108-1904

Rosemary Curran Scapicchio, Esq.
Four Longfellow Place, Suite 3703
Boston, MA 02114

Susan Weise, Esq.
Chief of Litigation
Assistant Corporate Counsel
City of Boston/Law Department
City Hall, Room 615
Boston, MA 02201

John P. Roache, Esq.
Hogan, Roache, & Malone
66 Long Wharf
Boston, MA 02110

MaryJo Harris, Esq.
Morgan, Brown & Joy
200 State Street, 11th Floor
Boston, MA 02109

/s/ Hugh R. Curran_____