# CALLAHAN EXHIBIT E

TO:      Laura Scherz, Victim Witness Advocate

FROM:    Paul F. Connolly, Assistant District Attorney

RE:      Commonwealth v. Treas Carter, aka Chilly

DATE:    January 30, 1990


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

    As per our telephone conversations I am enclosing a memo
for your files.

    As you are aware there were two victims in this case, one
being a homicide, the second being extrememly fortunate. The
locus of the homicide was a "crack house" operated by the
defendant and administered by his girlfriend's family, the
Claytons. Cheri Clayton was the "girlfriend" of Chilly. Prior
to the murder Chilly was arrested in NYC on an assault charge
and served a short sentence at Riker's Island.

    Upon his return the accounts of the "crack operation" were
askew. It is the belief of myself and the homicide police that
the Claytons had consumed the product and proceeds of the
business. When Chilly returned to Boston Cheri and her sister
and mother diverted the issue at hand by suggesting that there
were two men "down the street who are going to take you off."
The defendant marched Ricky Evans and his uncle at gunpoint up
to the Clayton apartment. In the apartment Ricky's uncle was
shot dead and Ricky himself narrowly escaped death. During
this incident the defendant was accompanied by two of his
friends who have remained unknown. Their involvment only
entailed their presence. They did not engage in any overt acts
until the actual shooting occurred at which time they attempted
to flee the apartment and the deceased body on the floor jammed
the exit door.

    This case was assigned to me just prior to the presentment
to the Grand Jury. Prior to making the presentment I had the
homicide detectives bring Ricky Evans to my office. During my
interview with him I discovered that he was the son of Esau
Evans. As you will recall I prosecuted Esau Evans on a
manslaughter case which resulted in conviction after jury
trial. During Esau Evans' trial, I came into contact with most
of Mr. Evans' family. For a variety of reasons the defendant's
family in that trial spoke with me more regularly than they did
the defense lawyer. Not all of these conversations were
"friendly." Among the family members was Lili Mae Evans, who
is the mother of the deceased that Chilly killed.

    Perhaps you will remember that our witness Ricky Evans was
in need of housing. Given the Evans family prior experience
with me personally, Ricky became the liaison for the family.
He kept the family updated on all aspects of the case.



In my conversations with you I had forgotten to apprise you of this arrangement and the "small world" nature of our victim/witness milieau.

From the outset of my involvement of this case it was the assessment of the homicide police, Franny O'Meara, Ricky Evans, and myself that the only offer for a change of plea that was acceptable to all was a plea to second degree murder.

On December 19, 1989 at 4:00 P.M. Mr. Carter's attorney called me and advised that he would plead guilty to second degree murder. Due to the late hour of the call I rushed to have him brought to court the following day to consemate the plea. The homicide detectives were not available so I apprised Franny O'Meara and Lt. McNelly of the plea. In fact the defendant did plead guilty on December 20, 1989. That day I did attempt to contact you and you were not available. It should be noted that the plea was not concluded until close to 6:00 P.M. due to Judge Sweeney's busy schedule.

At some time prior to the holidays I had advised you of the plea. Last week I spoke with the deceased's mother who in fact not only remembered me from Esau's trial but was in fact advised by Ricky that I was the prosecutor on this case. She also stated that indeed Ricky had kept her informed of the activity on this case. She also stated her wonderment as to why Carter finally pled guilty. I shared with her my belief that the defendant thought Ricky Evans was not available to testify. Since we had in effect relocated him to a hotel his family had gotten repeated inquiry from his "friends" wondering where he was. I believe some of them were reporting Ricky's unknown whereabouts back to Carter. Carter's defense lawyer in candor wanted assurances from me that if this were a trial Ricky would in fact be available to testify. When Carter was advised of this on December 19, 1989 he finally accepted the inevitable. Mrs. Evans was fully satisfied with the results, and understood the need to expedite this plea before Carter changed his mind.

I had an extended chat on the phone with Mrs. Evans who concurred with the result and also admitted that the Evans family did have residual hostility towards me for prosecuting Esau. The line of communication with the family was for her the best. She did say however, that since the Christmas holidays the family had not heard from Ricky. Her level of apprehension for Ricky was of paramount importance to her. She was grateful that Ricky did not have to testify against Chilly. All in all, my chat with Mrs. Evans was both friendly and satisfying to her. She thanked us for our efforts and laughingly said she's going to give Ricky "what for" for not keeping in touch with her.

SCDA0445