UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-CV-11193-NG

|  |  |
|---|---|
| SHAWN DRUMGOLD, | ) |
| Plaintiff | ) |
| vs. | ) |
| CITY OF BOSTON, ET AL., | ) |
| Defendants | ) |

## DEFENDANT TIMOTHY CALLAHAN'S CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant Timothy Callahan ("Callahan") respectfully submits the following statement of facts in support of his Partial Motion for Summary Judgment. Callahan also specifically incorporates the statement of facts submitted by co-defendants Richard Walsh and the Estate of Paul Murphy. Callahan references his exhibits by letter, instead of number, to avoid confusion with the submissions of Walsh and Murphy.

1. Timothy Callahan was assigned to the BPD Homicide Unit in August 1988, but was not assigned to the Tiffany Moore investigation until the following summer. Exhibit A, Deposition of Timothy Callahan, at pgs. 20, 61.

2. In December 1988, Callahan was assigned to investigate the murder of Willie Evans and the wounding of Ricky Evans, which had occurred on Elm Hill Avenue. A suspect had been identified in that case, one Treas Carter (also known as "Chili"). During the course of his investigation of the Willie Evans murder, Callahan met with Evans on a number of occasions. Ex. A, pp. 122 – 124.

3. On June 21, 1989, while speaking to Evans regarding the Willie Evans murder, Callahan asked Evans if he had any information regarding the murder of Tiffany Moore. Evans said that he did, and Callahan drafted a report of that conversation. Ex. A, p. 124-125.

4. That report was disclosed to Drumgold's counsel at trial, but none of the parties to this litigation have been able to locate the report. Exhibit B, Affidavit of Counsel.

5.      On August 6, 1989, Callahan interviewed Evans and taped his statement. WMSMF ¶ 209.

6.      On September 12, 1989, Evans contacted Callahan and told him that a private investigator had contacted him at his brother's house, where he was living at the time. Evans told Callahan that the investigator told him that he did not have to testify, and that it was not too late to refuse to testify. Exhibit C, BPD Report dated 9/12/89.

7.      Evans told Callahan that his brother threw him out of the house as a result of the investigator coming to speak to Evans and because Evans was cooperating with the police. Callahan asked Evans where he intended to go, and how he would be able to contact him. Evans told Callahan that he did not know. Ex. A, p. 142- 43.

8.      Callahan was aware that Evans was a witness in the Moore trial, which was scheduled to begin later in September. Callahan was also aware that there were two suspects in the Willie Evans case who had not been apprehended. Callahan was concerned about ensuring Evans's appearance at trial, and his safety. Ex. A, p. 142- 143.

9.      Based on these concerns, Callahan brought Evans to the Howard Johnsons's. Callahan chose this location because it was closest to the Homicide Unit office. Ex. A, p. 144.

10.     Paul Connolly was the Assistant District Attorney assigned to prosecute Treas Carter for the murder of Willie Evans and the wounding of Ricky Evans. Connolly believed that the shooting of Willie Evans was an "execution," and was concerned about the safety of Ricky Evans as he survived the shooting and was prepared to testify against Carter. Exhibit D, Deposition of Paul Connolly, at pgs. 27 – 40.

11.     Connolly testified that it was the ADAs and not the police who determined whether something was a promise, reward or inducement, and it was the ADA who had the obligation to disclose such promises, rewards or inducements to defense counsel. Ex. D, pgs. 54 – 56.

12.     Connolly wrote a memorandum to the victim-witness advocate, Laura Scherz, regarding the Willie Evans prosecution, and stated to her that "[p]erhaps you'll remember that our witness, Ricky Evans, is in need of housing. … we had, in effect, relocated him to a hotel… his family had gotten repeated inquiry from his 'friends' wondering where he was …" Ex. D, pgs. 26 – 28, 47 – 48. Ex. E, Memo dated 1/30/90.

13.     At the motion for new trial in 2003, Phil Beauschesme testified that, as the Moore case was approaching trial, witnesses became uncooperative. He also testified that, after hearing about the allegations that Evans was housed at the Howard Johnson's during the Moore trial, he believed he remembered that this was so. His memory was that Evans was housed for a few months. Exhibit F, Beauschesme testimony, pages 146 – 151.

14.     Callahan spoke with Mary Alexander to arrange for her to meet with Beauchesme on May 31, 1989. Then, just prior to trial, Callahan heard on the police radio that a person was injured at Alexander's address. Callahan went to the house and found that Mary had fallen through the porch. She was taken by ambulance to Carney Hospital, and

2

Callahan drove her mother to the hospital.  Callahan did not speak to any medical personnel about Mary's condition.  Callahan did not know that Mary had a brain tumor.  Ex. A, pgs. 74 – 77.

15. In documents produced by the Suffolk County District Attorney's Office, reference is made to her "seizure disorder."  On November 30, 1989, the notes reflect that, in the process of assisting Mary Alexander with housing, she said that "she almost had a seizure on Sunday, 11/26, and the doctors in Alabama are not so good and are apprehensive about treating."  The notes of December 15, 1989 reflect that Mary was concerned about "inadequate treatment for her seizure disorder."  Exhibit G, Suffolk County District Attorney's Office notes.

16. At deposition, Ricky Evans testified that he was never forced to do anything by any police officer, including Callahan.  Exhibit H, Evans testimony at pgs. 512 – 514.

> Respectfully submitted,
> Defendant Timothy Callahan
> By his attorney,
>
>
> __/s/ Mary Jo Harris_____
> Mary Jo Harris, BBO # 561484
> Morgan, Brown & Joy, LLP
> 200 State Street
> Boston, MA 02109-2605
> (617) 523-6666