UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAWN DRUMGOLD,<br>    PLAINTIFF<br><br>VS.<br><br>TIMOTHY CALLAHAN, FRANCIS M. ROACHE, PAUL MURPHY, RICHARD WALSH, AND THE CITY OF BOSTON,<br>    DEFENDANTS | C.A. NO. 04-11193NG |

DEFENDANT PATRICIA MURPHY,
AS EXECUTRIX OF THE ESTATE OF PAUL MURHY'S
MEMORANDUM OF MOTION FOR SUMMARY JUDGMENT

## I. RULE 56 STANDARD

As this Court is undoubtedly aware, summary judgment is appropriate where the undisputed facts of the case, as found in the relevant pleadings, deposition testimony and admissions in the record demonstrate that a party is entitled to judgment in their favor as a matter of law.  See Federal Rule of Civil Procedure 56[c}.

It is appropriate to grant summary judgment where the prosecution of the case against the plaintiff was commenced beyond a statute of limitations.

It is appropriate to grant summary judgment in section 1983 cases, (1) where a statute of limitations has been breached, and (2) where public officials are defendants and it appears clear from the record that one of the many qualified immunity defenses applies to the facts of the case as developed. Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806 (1985); Anderson v. Creighton, 483 U.S. 635, n.6, 107 S. Ct. 3034 (1987).

In the instant case, Defendant Patricia Murphy, as Executrix of the Estate of Paul Murphy (hereafter: "DEFENDANT MURPHY") not only has grounds for summary judgment based upon statutes of limitations, but also upon the well-established qualified immunity doctrine.

## II. <u>STATUTE OF LIMITATIONS – ESTATE GROUNDS</u>

Under Massachusetts law, ordinarily the statute of limitations for commencing a lawsuit in a personal injury tort action is three years. Massachusetts General Laws Chapter 260, Section 2A states that all tort actions shall be commenced "only within three years next after the cause of action accrues."

With regards to personal injury actions rooted in a federal claim, federal courts will borrow the requisite state statute of limitation period. *Nieves v. McSweeney*, 241 F.3d 46, 51 (2001). *See also Casanova v. DuBois*, 304 F.3d 75, 78, n.4 *citing Wilson v. Garcia*, 471 U.S. 261, 266-67, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985)("When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so."). *But see Wallace v. Kato*, 127 U.S. 1091, 1100 (2007) *infra*.

Notwithstanding the three-year statute of limitations, *Massachusetts General Laws Chapter 197, Section 9(a)*, however, provides a shorter limitation period where the action is commenced against the estate of an individual. *Section 9(a)* in relevant part states:

> **§ 9. Commencement of action; service of process; action against trustee**
>
> (a) Except as provided in this chapter, an executor

> or administrator shall not be held to answer to an action by a creditor of the deceased *unless such action is commenced within one year after the date of death of the deceased* and unless, before the expiration of such period, the process in such action has been served by delivery in hand upon such executor or administrator or service thereof accepted by him or a notice stating the name of the estate, the name and address of the creditor, the amount of the claim and the court in which the action has been brought has been filed in the proper registry of probate.

*M.G.L. Chapter 197, Section 9(a)*(emphasis supplied).

The Massachusetts Supreme Judicial Court has addressed the statute of limitations aspects of Chapter 197 Section 9 in *Mulligan v. Hilton,* 305 Mass. 5 (1940). The case involved a claim brought more than a year after the death of the decedent within the otherwise authorized limitation period for bring such actions. Unbeknownst to the plaintiff creditor, the decedent had died more than two years after plaintiff had brought suit. The decedent's lawyer filed a suggestion of death more than two years after the decedent's death and then sought to rely on *Section 9* as an absolute defense.

The Supreme Judicial Court held:

"though a new action as to the property damage may not have been barred by the general statute of limitations, *G.L. (Ter.Ed.) c. 260, §2(2), 4*, a new action for either bodily injury or property damage was barred by the special statute of limitations requiring a creditor of a decedent to commence his action against the executor or administrator within one year after giving of bond for the performance of the trust. . . One who has a cause of action in tort that survives is a "creditor" within that statute. . . No citation could be issued . . . to bring the executor into the pending action as the defendant, because more than a year had elapsed since [the executor] gave his bond. The fact that the plaintiff was ignorant of the death did not extend the time limited by the statute.

*Id.* 305 Mass. 5, 6-7.

In *Cross v. Hewitt*, 52 Mass. App. Ct. 538 (2001), the Massachusetts Appeals Court noted, "The main design of this statute [G.L. c. 197 §9], as disclosed by its words and arrangement, was not to make it easier for plaintiffs to institute actions but to prevent harm to defendants arising from actions delayed by plaintiffs within limits previously permitted by statutes." *Id. citing Parker v. Rich*, 297 Mass. 111, 114 (1937). Thus, *Section 9* operates to expedite the resolution of claims and to preclude claims beyond the one-year period.

The clear public policy in expediting the resolution of estates tells creditors to make their claims or be forever foreclosed. The policy is clearly necessary so that executors, administrators and trustees can settle estate claims within a reasonable timeframe and without fear of personal liability for disbursing the estate inventory prematurely. *See Parker v. Rich*, 297 Mass. 111, 8 N.E.2d 345 (1937); *Stebbins v. Scott*, 172 Mass. 356, 52 N.E. 535 (1899). *See also Hanna v. Plummer*, 380 U.S. 460 (1965).

The First Circuit has addressed the issue and said that the clear purpose of the statute,

is to expedite the settlement of decedents' estate by requiring
creditors with disputed claims to bring suit thereon within one
year from the time an executor or administrator qualifies for his
post.

*United States v. Saxe*, 261 F.2d 316, 319-320 (1958). The First Circuit's position is clearly consistent with the Supreme Judicial Court.

Thus, Defendant Murphy is entitled to summary judgment on all counts of the Complaint.

### III. STATUTE OF LIMITATIONS – *WALLACE v. KATO* GROUNDS

**Plaintiff's §1983 Claims Must be Dismissed on Statute of Limitations Grounds**

> We hold that the statute of limitations upon a §1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process.

*Wallace v. Kato*, 127 U.S. 1091, 1100 (2007)(hereafter: *Wallace*").

*Wallace* addressed the application of a state statute of limitations in a §1983 case premised on a false arrest claim, reaffirming that the question of federal law is subject to a federal calculation of the limitation period without resort to the state law.

Traditionally, the limitation period for commencing a § 1983 action had been achieved by borrowing from state law. *Johnson v. Rodriguez*, 943 F.2d 104 (1st Cir. 1991), rehearing denied 502 U.S. 1063, 112 S.Ct. 948; *Street v. Vose*, 936 F.2d 38, *cert*. *denied* 502 U.S. 106.  (The question of when a cause of action accrued is a matter of federal law. *Rodriguez Navarez v. Nazaria*, 895 F.2d 38, 41 n. 5 (1st Cir. 1990).  See *Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001)[1].

---

[1] Section 1983 does not contain a built-in statute of limitations. *McIntosh v. Antonino*, 71 F.3d 29, 33 (1st Cir. 1995). Thus, a federal court called upon to adjudicate a section 1983 claim ordinarily must borrow the forum state's limitation period governing personal injury causes of action. *Wilson v. Garcia*, 471 U.S. 261, 276-80, 105 S.Ct. 1938, 85 L.Ed. 254 (1985).

Previously, the limitation period could be trumped by *Heck v. Humphrey*, 512 U.S. 477; 114 S. Ct. 2364 (1994) (the "*Heck* Rule"), which held that a plaintiff could not commence a § 1983 action until the state action giving rise to the claim was terminated favorably to the plaintiff, but *Wallace* held otherwise. *Wallace v. Kato,* supra at 1099 – 1100.

The *Heck* rule served to toll the statute of limitations until the conclusion of all criminal proceedings and the release of a plaintiff from custody. The plaintiff was then freely permitted to file a § 1983 action.

But that approach subjected potential defendants to disadvantage. For, as the Court observed,

> Defendants need to be on notice to preserve beyond
> the normal limitations period evidence that will be
> needed for their defense; and a statute that
> becomes retroactively extended, by the action of
> the plaintiff in crafting a conviction-impugning cause
> of action, is hardly a statute of repose.

*Wallace*, supra at 1099.

The determination of when the cause of action accrues is critical to the statute of limitations determination. In *Heck* supra, the cause of action for wrongful imprisonment was part and parcel to the plaintiff's § 1983 claim. The wrongful imprisonment continued until the prisoner's release, at which point, the prisoner's cause of action accrued.

In *Wallace*, supra, plaintiff's § 1983 cause of action was based on an unlawful arrest claim. The *Wallace* Court held that plaintiff's cause of action had accrued

---

Massachusetts prescribes a three-year statute of limitations for personal injury actions. *See* Mass. Gen. Laws ch. 260, §2A.

"when he appeared before the examining magistrate and was bound over for trial." *Wallace,* supa at 1097

In the present case, Plaintiff's Fifth Amendment Claims were addressed when Plaintiff's motion to suppress his statements was allowed.  Thus, as to Plaintiff's claims that Defendant Murphy violated his civil rights under §1983, *Wallace* is directly on point and required Plaintiff to file his action within three years of the May 18, 1989 Superior Court ruling.

Plaintiff's Fair Trial claims accrued upon his conviction.  In much the same manner as the wrongful arrest claim that supported the plaintiff's § 1983 action in *Wallace*, the Plaintiff in the instant matter was surely on notice as to the Fair Trial Claims.  As a result, and as to Counts I and II, Defendant Murphy is entitled to summary judgment.

## IV. MASS CIVIL RIGHTS STATUTE

Because the Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11H, 11I ("MCRA"), determines that Plaintiff's cause of action accrued when he "knew or should have known of the alleged" conduct supporting the claim, "rather than upon the termination of criminal proceedings in his favor," his failure to advance his claims within the three year statute of limitations period is fatal.  *Mitchell v. City of Boston*, 130 F. Supp. 2d 201, 214 (D. Mass. 2001).

Thus, Count IV "is barred by the three year statute of limitations because [Plaintiff's] criminal trial, conviction and incarceration put [him] on notice of the alleged wrongs for purposes of determining when the cause of action accrued." *See*

---

*Nieves v. Sweeney,* 241 F.3d at 51

*id.*; *Messere v. Murphy*, 32 Mass. App. Ct. 917, 918 (1992) (in civil rights action for conspiracy to conceal evidence, give false testimony and intimidate witnesses, plaintiff's criminal trial, conviction, and incarceration put him on notice of the alleged wrongdoings).

The MCRA creates a cause of action for "[a]ny person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or ... of the commonwealth has been interfered with by threats, intimidation or coercion." *Rogan v. Menino*, 175 F. 3d 75 (1st Cir. 1999).

There is no evidence to support Plaintiff's contentions as mentioned above and this Court should therefore grant summary judgment as to Count IV.

## V.  QUALIFIED IMMUNITY

For the past quarter century, public officials have been deemed immune from suit under section 1983 for action undertaken in the performance of discretionary functions insofar as their conduct does not violate "clearly established" statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 2727 (1981). An examination of Plaintiff's claim against Murphy in this context reveals that it cannot be sustained.

### A.  Plaintiff Has Failed to Make Out a Due Process Claim Under Section 1983.

Essentially, Plaintiff claims that his substantive due process rights were violated when Defendant Murphy (1) was present for the photograph arrays displayed to Ms. Peaks and Ms. Alexander (and writing a report about it); (2) interrogating Plaintiff while making and preserving a tape recording of that conversation, (3) failing to disclose exculpatory evidence to Plaintiff, and, 4) intimidating witnesses.

In *Briscoe v. LaHue*, 460 U.S. 325 (1983), the Petitioner had brought suit against a member of the Bloomington, Indiana Police Department named LaHue for his wrongful conviction for burglarizing a house trailer. LaHue testified that the petitioner was one of a small group of people whose fingerprint matched a partial print lifted from a piece of glass found at the scene of the break-in.

The petitioner claimed that later testing by the FBI demonstrated that the print was not a match as it was too incomplete to be of any evidentiary value. The Supreme Court held that LaHue was absolutely immune from suit under section 1983:

> 'As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance, it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.' In short, the rationale of our prior absolute immunity governs the disposition of this case. In 1871, common-law immunity for witnesses was well settled. The principles set forth in *Pierson v. Ray* to protect judges and in *Imbler v. Pachtman* to protect prosecutors also apply to witnesses, who perform a somewhat different function in the trial process but whose participation in bringing the litigation to a just -or possibly unjust conclusion is equally indispensable.

*Briscoe v. LaHue*, 460 U.S. 325 at 345-346 (1983) citing *Gregoire v. Bidles*, 177 F.2d 579,581 (2d Cir. 1949), (Hand, J.) cert. denied, 339 U.S. 949 (1950).

The record establishes that Defendant Murphy's entire contribution to the allegedly erroneous conviction of the Plaintiff was (1) his presence at the showing of photograph arrays to Tracy Peaks and Mary Alexander, (2) his participation in the

statement taken of the Plaintiff, which was tape recorded and preserved, and, 3) his trial testimony.

**PHOTO IDENTIFICATIONS:** Tracy Peaks testified that she was not intimidated by any actions of the police, but that it was her youth and the daunting nature of the proceedings. She said that no police detectives tried to tell her what to say. Without anyone to suggest what she should say at trial, the misgivings and wavering on her testimony fifteen later should not substitute for the precision with which the witness testified at trial.

In the presence of Detectives Murphy and Walsh, Tracy Peaks identified Plaintiff's photograph. Before the grand jury, Tracy Peaks testified that it was Plaintiff that she recognized. At trial, Tracy Peaks affirmed what she had previously said.

Fifteen years later, with a faltering recollection of what she had told police, prosecutors, the grand jury and the petit jury, her story began to change. Yet the clarity of her position in 1988 and 1989 is clear in the manner that she refused to allow others to speak for her. It is clear, that Mary Alexander felt no pressure to make an identification while in the presence of Tracy Peaks, who did make an identification.

It is equally clear that Plaintiff's trial counsel furnished an independent basis for Mary Alexander to identify Plaintiff whose photograph had circulated through the media. She also saw Plaintiff on the jury view. Thus, there was an independent basis for Mary Alexander to identify Plaintiff. The actions of trial counsel may well have

reinforced the identification beyond any action by any police officer associated by the photograph identification.

Even assuming Tracy Peaks' testimony from fifteen years later to be true, she does not suggest that Detective Murphy or any other police officer tried to threaten her or speak for her. At best, as described in substance, that she felt overwhelmed by the circumstances of being so young and being questioned seriously by so many seasoned adult prosecutors and policemen.

Mary Alexander's trial testimony is clear. She agreed to participate in the identification procedure and she did not suggest that police had done anything to threaten or coerce her identification. In fact, her testimony was that police told her and Tracy Peaks "to be one hundred percent honest."

In order to make out a claim under the Due Process Clause of the Fourteenth Amendment, Plaintiff is required to produce far more:

> Due Process Clause does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm, (nor does it guarantee due care by government
> officials.) 'This is as it should be; were the law otherwise, the Constitution would be downgraded to a font of tort law'... It is, therefore, readily apparent that negligent conduct, simpliciter, is categorically insufficient to shock the conscience.

*Depoutot v. Raffaeloly*, 424 F.3d 112 at 119 (lst Cir.200S) citing *County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998) and quoting *Paul v. Davis*, 424 U.S. 693,701 (1976).

Plaintiff has not demonstrated that, but for the identifications of Tracy Peaks and/or Mary Alexander that neither would have had a separate basis for identifying

Plaintiff. The feelings that Tracy Peaks had of some type of outside pressure did not come from police by her own testimony.

Plaintiff is required to allege and prove conduct that, "shocks the conscience … (the) action must be stunning, evidencing more than humdrum legal error." *Depoutot*, supra., at 119 quoting *Amsden v. Moran*, 904 F.2d 748, 754 n.5 (lst Cir. 1990).

Thus, Plaintiff's allegation of an "erroneous" identification procedure fails to sustain a claim under sec. 1983 as a matter of law.

The alleged transgressions associated with the photograph arrays displayed to Tracy Peaks and Mary Alexander likewise were documented by Defendant Murphy and subject to cross-examination at trial.

At trial, Tracy Peaks did not waver in her testimony. In fact, she acknowledged correcting the police version of her description of the assailants when she went before the grand jury. She was not forced, compelled or influenced in her testimony by Defendant Murphy.

Mary Alexander never selected a photograph in Defendant Murphy's presence, although she gave consideration to Plaintiff's photograph. Mary Alexander testified that Plaintiff's 1989 trial lawyer had shown her a large photograph of Plaintiff just before trial and that she had seen Plaintiff when he had accompanied the jury on the view of the scene in the case. Mary Alexander never attributed any effort to suggest to her who to identify to police. Her testimony was that the police officer wanted her to be one hundred percent sure and that she tried to be. Mary Alexander was firm on what she saw and her reasons for not making any identification prior to trial.

Defendant Murphy's participation in the display of photographs to two witnesses is absolutely protected and his actions are immune from Plaintiff's claims.

**PLAINTIFF'S RECORDED STATEMENT.** The statement obtained from Plaintiff was suppressed. Thereafter, at his trial, Plaintiff testified in his own defense. Plaintiff's lawyer did not offer the suppressed statement. Plaintiff's lawyer called Defendant Murphy to testify in support of Plaintiff's defense on the subject of Mary Alexander's failure to identify Plaintiff's photograph within weeks of the Tiffany Moore murder.

Plaintiff asserts that he was prejudiced at trial. Represented by counsel, Plaintiff was able to cross-examine all witnesses and issues by way of his Sixth Amendment right to counsel. More significantly, Plaintiff was able to testify at trial, fully exercising his Sixth Amendment rights without encroachment on his Fifth Amendment rights.

No where does Plaintiff allege that he was prevented from exercising his trial rights. Plaintiff does not claim that he lost or was unable to present a defense as a result of giving the statement to the police. Nowhere does Plaintiff even attempt to explain that but for giving the officers his statement witnesses would not have identified him and he would not have been convicted.

Although Plaintiff's statement was never played at Plaintiff's trial, the recording was made for future trial purposes and is contradictory of Plaintiff's claims of an effort to deny his rights to exculpatory evidence and a fair trial. Thus, the recording of Plaintiff's statement is covered by the immunity afforded public officials for activities associated with the trial process. See *Bums v. Reed*, 500 U.S. 345-346

(1991); *Watterson v. Page*, 987 F.2d 1, 7 (1st Cir. 1993); *Frazier v. Bailey*, 957 F.2d 920, 931 n.12 (1st Cir. 1992) citing *Millspaugh v. County Dept. of Pub. Welfare*, 937 F.2d 1172, 1176 (7th Cir. 1991).

Plaintiff's trial lawyer had a copy of the taped statement and chose not to use it at trial. Moreover, Plaintiff testified himself at trial. There was no harm.

**WITHHOLDING EXCULPATORY EVIDENCE.** It is clear that Defendant Murphy did not withhold exculpatory evidence from Plaintiff. To the contrary, Defendant Murphy documented his actions. He wrote police reports 1) about the photograph array that was shown to Tracy Peaks and Mary Alexander and 2) about Antonio Anthony being placed at the Howard Johnson's Motor Lodge. He also participated in the tape recording of Plaintiff's statement to police, which memorialized the substance and manner in which the interview was conducted.

While Plaintiff complained that Defendant Murphy was involved in taking witness Rickey Evans to clear up outstanding warrants, he is clearly in error, as the testimony of Detective Paul McDonough revealed. It was Detective McDonough who transported Rickey Evans to the Roxbury District Court. Defendant Murphy did not withhold evidence.

**INTIMIDATION OF WITNESSES.** There is no evidence that Defendant Murphy threatened, intimidated or coerced any witness in the case. To the contrary, the evidence from Tracy Peaks and Mary Alexander in particular is that the police did not intimidate them.

Plaintiff's claims of witness intimidation, coercion and threats falters and cannot be sustained. At trial, Plaintiff testified and called witnesses in his own

behalf, including Defendant Murphy. Simply put, the jury rejected his testimony and his claim in the face of other compelling evidence.

Significantly, Plaintiff's 1989 trial counsel, Attorney Rappaport, candidly testified in his deposition that it was Attorney George who was responsible for securing the alibi witnesses. According to Attorney Rappaport, he lost confidence in the reliability of the alibi witnesses delegated to Attorney George when co-defendant Taylor invoked his Fifth Amendment Privilege.

The alibi that would have been supported by Olisa Graham and Gemini Hullum was not presented, according to Attorney Rappaport, for two reasons. First, Olisa Graham was not called for strategic purposes. Whatever the reason, counsel had a tactical decision to make and he exercised his best judgment on behalf of his client.

Second, despite having all of the police reports and statements before trial, Gemini Hullum was not called to support Plaintiff's alibi because Plaintiff failed to tell Attorney Rappaport that she had important information about his whereabouts on the night of the murder.

Trial counsel's tactical decision not to call a witness certainly cannot be attributed to Defendant Murphy. Nor can Plaintiff's failure to identify an important witness to his lawyer. An allegedly important witness to whom Plaintiff had access at the time of trial must be viewed with skepticism when she suddenly appears fifteen years later.

As for Tracy Peaks, her recollections were not that Defendant Murphy had intimidated her, but that she felt intimidated by the circumstances.

**TRIAL TESTIMONY.**  Police conduct that is necessarily entwined with the judicial process is protected. *See Bums v. Reed*, supra; *Watterson v. Page*, supra; *Frazier v. Bailey*, supra.  See also *Batiste v. Fleming*, 923 F. 2d 839 (1st Cir. 1990) (citing *Briscoe v. LaHue*, 460 U.S. 325, 329, 341 (1982); *Mitchell v. City of Boston*, 130 F. Supp. 2d 201 (D. Mass. 2001).

As a result, Defendant Murphy is entitled to summary judgment on Counts I, II and IV inasmuch as Plaintiff's claims relate to Defendant Murphy's testimony at Plaintiff's criminal trial.

## VI.    CIVIL CONSPIRACY

"It is axiomatic that the liability of persons sued in their individual capacities under S*ection 1983* must be gauged in terms of their own actions. *SeeMalley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L.Ed 2d 271 (1986); *Camilo-Robles v. Zapata*, 973 F. Supp. 72, 77 (D. Mass. 1997)(*Camilo-Robles II*)." *Rogan v. Menino*, 175 F.3d 75, 78 (1st Cir. 1999).

Under Massachusetts law, a civil conspiracy may be committed in either of two ways: [1] by committing a tortious act together with another person or pursuant to a common design with him, or [2] by knowing that another's conduct constitutes a breach of duty and rendering substantial assistance or encouragement to that individual. *Kyte v. Philip Morris, Inc.*, 408 Mass. 162, 166 n.5 (1990) (quoting Restatement (Second) of Torts §876(a) and (b) (1979).

There is no evidence whatsoever of a conspiracy between Defendant Murphy and Detective Walsh or anyone else for that matter.  To the extent that Count Two

alleges a conspiracy and co-conspirator liability, Defendant Murphy is entitled to summary judgment.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Defendant Patricia Murphy *as Executrix of the Estate of* Paul Murphy requests that this Honorable Court enter summary judgment in her favor as to Counts I, II and IV of the Complaint, and to grant such further relief as this Court shall allow in the interests of justice.

PATRICIA MURPHY, *AS EXECUTRIX OF THE ESTATE OF* PAUL MURPHY,

By her Attorney,

/S/ William M. White, Jr.
William M. White, Jr., Esq.
BBO#:  546283
William M. White, Jr., and ASSOCIATES, LLC
One Faneuil Hall Marketplace, Third Floor
Boston, MA 02109
 (617) 720-2002