UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAWN DRUMGOLD,<br>    Plaintiff<br><br>v<br><br>TIMOTHY CALLAHAN, ET AL.<br>    Defendant(s) | C.A. NO. 04-11193NG |

## Plaintiff's Memorandum in
## Opposition to Defendant's Motion for Sanctions or Jury Instructions

### Introduction

The Defendants, in this Motion, continue their tactic of attempting to put Attorney Rosemary Scapicchio on trial, rather than address the merits of Shawn Drumgold's claims. The Defendants have previously attempted to depose Ms. Scapicchio without good cause and have attempted to falsely accuse of her of obstructing justice in connection with Madeline Hamilton. The Defendants now attempt to accuse Ms. Scapicchio of intentionally destroying relevant evidence. In each instance the accusations made against Ms. Scapicchio have been without foundation.

There is no sound factual basis for presuming that the notes of Stephen Rappaport, which the Defendants seek, were ever in existence, or if they were in existence, were turned over to Ms.

1

Scapicchio. In addition, the Defendants have failed to establish the relevancy of these hypothetical documents to any issues at trial.

### I. THERE IS NO EVIDENCE THAT THE NOTES SOUGHT, IN FACT, EXIST.

Mr. Rappaport was deposed in detail about whether or not he kept notes while he was representing Mr. Drumgold. His testimony did not establish that, in fact, he took notes of any significance. Mr. Rappaport's testimony (See Attached Exhibit 1) included the following:

- When Rapport met with witnesses, "occasionally I would take notes" (Rappaport p. 34)

- Rappaport "sometimes" reduced substantive interviews with witnesses to writing (Vol. 1, p. 35)

- When asked whether, in relationship to his representation of Shawn Drumgold, he reduced to writing the substance of any interviews with any witnesses he conducted, his answer was "I don't have a distinct memory" (Vol. I, p. 35)

- When asked specifically whether he took any notes when he talked to Mary Alexander, Rappaport answered, "I have no memory of whether I did or I didn't, but I don't think I did" (Vol. 1, p. 39)

- Rappaport testified, "I just don't have a memory of reducing any statements to writing (p. 39)

2

- Rappaport was pressed specifically whether he turned his notes over to Ms. Scapicchio. He testified that there would have been no reason for him not to, but he did not have a memory, one way or the other (p. 45).

- When asked specifically whether he turned over his notes he answered, "I just don't remember" (p. 46).

- Rappaport testified, "I don't have any memory of specifically what I turned to over to Ms. Scapicchio, but I thought I had turned over what I had" (p. 48).

- Rappaport did not take notes of interviews he had with "gang kids" in connection with this case (p. 86).

- Rappaport did not keep a trial notebook (p. 89).

- Rappaport has no memory of taking any notes in regards to his interviews of Tracie Peaks, Mary Alexander, and Mr. Simms (p. 22).

- Rappaport doesn't know if he took notes of interviews with Christopher Chaney (p. 118).

- Rappaport has no notes regarding where he obtained the information that Mary Alexander had an operation (Vol. 2, p. 295).

Set against Mr. Rappaport's equivocal statements, most of which suggests it is unlikely that he in fact had any notes of interviews of witnesses, is Ms. Scapicchio's unequivocal statement, as set out in her affidavit attached hereto as Exhibit 2.

- She produced to the Defendants all documents she received from Mr. Rappaport

- She requested all additional documents, including notes, that might exist from Mr. Rappaport on several occasions
- Rappaport did not produce any other documents to her
- She did not destroy any notes

It should also be noted that Mr. Rappaport testified that he keeps his old homicide files either in his office or in the basement of his house and that he had a flood seven years ago in his basement (Rappaport Vol. I, p. 7) and although he did not think that he lost anything from the Drumgold case, he was unable to say for sure (Rappaport Vol. 2, p. 326).

All of the cases cited by the Defendants dealing with spoliation of evidence start from the premise that it is agreed that the evidence being discussed in fact, existed, e.g.; Blinzler v. Marion Intern, Inc. 81 F.3d 1148, 1158 (1st Cir. 1996) (No issue that the documents, in fact, existed and were destroyed) Testa v. Wal-Mart 144 F.3d 173 (1st Cir. 1998) (No issue that the Wal-Mart documents in fact existed, and then were destroyed)  In this case there is no evidentiary basis for assuming that the documents being sought, i.e. the notes of Stephen Rappaport's interviews with witnesses Olisa Graham and Mary Alexander, ever in fact existed. In fact, the clear state of the evidence is that they did not exist because Ms. Scapicchio delivered to the Defendants all documents she received from Mr. Rappaport and she did not receive any notes from Mr. Rappaport.  The premise of a spoliation argument, that documents existed at one point and no longer exist, is not present in this case, since there is no clear evidence that the documents sought by the Defendants, in fact, existed.

4

II.   **THE DEFENDANTS HAVE NOT ESTABLISHED THE RELEVANCE OF THE HYPOTHETICAL DOCUMENTS.**

This court has significant discretion in determining whether or not it is appropriate to give an instruction on spoliation of evidence. The central issue for the court to consider in exercise of its discretion is the importance of the evidence allegedly destroyed. <u>Blinzler v. Marion Intern, Inc.</u> (Id at 1158). (Court has considerable discretion "in determining whether jury instruction is appropriate") In this case the Defendants make two arguments to support their claim that the hypothetical notes may be relevant.

A.   <u>Olisa Graham</u>

They first argue that because Mr. Rappaport was mistaken in his belief that he did not receive a recorded statement of Olisa Graham at trial, his notes may be relevant. This argument is not persuasive for several reasons. First, as set out in the Defendant's Motion, Rappaport has admitted that he received the Olisa Graham recorded statement and that he was mistaken when he testified that he did not. Rappaport so testified at the Motion for New Trial and at his Deposition. There is no dispute as to the issue the Defendants wish to prove and they do not need notes from Mr. Rappaport to prove it.

Secondly, there are no notes of Mr. Rappaport talking to Olisa Graham. Mr. Rappaport did not interview Olisa Graham (Rappaport Vol. I, p. 121). As the Defendants point out in their Motion, Ms. Graham's portion of the case was handled by co-counsel Robert George. The testimony of Mr. Rappaport was that he never interviewed Olisa Graham. There is no reason to

5

believe that any notes of Rappaport would be relevant to whatever issue the Defendants wish to raise in regards to Olisa Graham since there is no dispute that Rappaport received Olisa Graham's report and there are no notes concerning an interview of Rappaport with Graham, because such an interview never took place.

B. <u>Mary Alexander</u>

The Defendants argue that Rappaport's cross-examination of Ms. Alexander at the murder trial establishes that he had some knowledge of Ms. Alexander's illness and notes of his interview with Mary Alexander would establish what he knew about Mary Alexander's illness.

As an initial matter Rappaport is certain that he took no notes when he interviewed Mary Alexander (Vol. I, p.36, 108). The premise of the Defendant's argument, that notes of an interview of Mary Alexander exist, is not supported by the record. Secondly, Rappaport has testified in detail that although he knew that Mary Alexander had an operation in February of 1989, he had no knowledge that the operation was on a brain tumor or was of the type that would affect Ms. Alexander's competency as a witness. Rappaport explained, "if I had known of Mary Alexander's diminishing mental faculties. I would have conducted an examination to what her abilities were to see and remember" (Rappaport Vol. II, pgs. 245-275).

The premise of the Defendant's argument in regards to Rappaport and Mary Alexander is self-contradictory. The Defendants appear to be arguing that Rappaport knew that Mary Alexander had memory problems and brain cancer when he cross-examined her. The Defendants offer no explanation as to why an experienced criminal defense lawyer would ask Ms. Alexander about her operation in February of 1989 and not mention to the jury that the

6

operation was on a brain tumor which could affect her memory. The hypothesis of the Defendant's Motion, that Rappaport knew of Ms. Alexander's memory problems and brain cancer and failed to use it in cross-examination of Mary Alexander, is an inherently incredible argument built upon hypothesis as to non-existent documents. The argument does not support the Defendant's request for a jury instruction on spoliation.

### C. Gatewood West

Allegations concerning Gatewood West are insubstantial. Gatewood West was a friend and supporter of Mr. Drumgold. Ms. West had no involvement with this case until she met Shawn Drumgold in 2000 or 2001 (Exhibit 3, Gatewood West Deposition, p. 21). Ms. West testified that she had a memory of talking to two individuals during the Motion for New Trial (West Depo, p. 79). She had a memory of asking those witnesses three or four questions which she described as "just basic background information" (Ex 3, p. 82). She testified that she had no memory of preparing any affidavits and no memory of asking the witnesses to review her notes (Ex 3, pgs. 105-106). She testified that Ms. Scapicchio asked her to ask some questions and Ms. West wrote down the questions. She had no idea whether the witnesses had prepared an affidavit or not (Ex 3, p. 121).

Ms. Scapicchio, in her affidavit, indicates that she has no memory of Ms. West providing her with any notes. She is certain that she did not read or utilize any such notes and that she has searched her file and is unable to locate any such notes.

All of the witnesses who testified at the Motion for New Trial were cross-examined at length and were then subjected to lengthy depositions, in most cases over two days. The

7

Defendants have no basis to claim that any relevant evidence would be contained in the short notes of a friend of Mr. Drumgold concerning basic background information that was not obtained in the hundreds of pages of cross-examination conducted by the Defendants of all of the witnesses in this case. The Defendant's argument as to Ms. West is again premised on the existence of notes, the existence of which are dubious, and the Defendant's have provided no reason to believe there to any significance in any of the hypothetical notes.

## Conclusion

This court should deny the Defendant's Motion.

Respectfully submitted,

By His Attorneys,

/s/ Michael Reilly

Michael W. Reilly, Esq.
Tommasino & Tommasino
Two Center Plaza
Boston, MA   02108
617 723 1720
BBO 415900

/s/ Rosemary Curran Scapicchio

Rosemary Curran Scapicchio, Esq.
Four Longfellow Place
Boston MA 02114
617 263 7400
BBO 558312

8