# EXHIBIT 15(E)

ERRATA SHEET

Name: RICHARD WALSH         Date: 3-19-07

Docket No: 04-11193NG

Day/Date of Deposition: FEB. 19, 2007

PAGE    LINE    CORRECTION

183   10+11   I believe it was sometime during or just prior to the motion for new trial.

184   7-11   I was aware at some point in time just prior or during the motion for a new trial that someone I did not know was put up as a witness.

184   16   I believe it was just prior to or during the motion for new trial.

1  Excerpt from Rule 30(e):

2  Submission to Witness; Changes; Signing.

3     When the testimony is fully transcribed, the
   deposition shall be submitted to the witness for
4  examination and shall be read to or by him/her, unless
   such examination and reading are waived by the witness
5  and by the parties. Any changes in form or substance
   which the witness desires to make shall be entered upon
6  the deposition by the officer with a statement of the
   reasons given by the witness for making them.

7          *************************************

8     I, RICHARD WALSH, have examined the above transcript
   of my testimony and it is true and correct to the best of
9  my knowledge, information and belief. Any corrections
   are noted on the errata sheet.
10
      Signed under the pains and penalties of perjury
11 this  19  day of  MARCH       , 2007.

12

13                              _____
                                   RICHARD WALSH
14

15

16

17

18

19

20

21

22

23

24

# EXHIBIT 17(B)

1           friendly like.
2     Q     He wasn't known as a violent person?
3     A     No.
4                 MR. RAPPAPORT:  I have no further
5           questions, Your Honor.
6
7                    CROSS EXAMINATION
8     (by Mr. George)
9     Q     Do you remember the date that the police officers
10          came to your home and showed you the pictures that
11          you talked about earlier?
12    A     No.
13    Q     Was it shortly after the shooting of Tiffany Moore,
14          August of '88?
15    A     Yes.
16    Q     And did they come to your home?
17    A     Yes.
18    Q     Do you remember the names of the police officers
19          that came?
20    A     Richie Walsh and I don't remember the other guy's
21          name, but I think it's Murphy.
22    Q     Did they show you some photographs at that time?
23    A     Yes.
24    Q     Did you pick one out?

# EXHIBIT 17(C)

```
 1   Q    And do you remember where you were when that took
 2        place?
 3   A    In my dining room.
 4   Q    Okay.  And that would have been at 72 Homestead
 5        Street?
 6   A    Yes.
 7   Q    Okay.  Do you remember, was there any
 8        conversation with you prior to the police
 9        officers showing you the photos?
10   A    I don't remember.  I don't think so but I don't
11        remember.
12   Q    Okay.  And how many police officers were present
13        when you looked at the photos, do you remember?
14   A    I don't know if it was two or three.
15   Q    Two or three.  Okay.  Were you there by yourself
16        or were you with someone when you looked at the
17        photos?
18   A    My mother was in the room.
19   Q    Okay.  And what was your mother's name?
20   A    Betty.
21   Q    Okay.  And how many photos do you remember the
22        police showing you?
23   A    I don't know how many.
24   Q    Okay.  And do you remember if the police did
```

| | | |
|---|---|---|
| 1 | Q | Okay. And you remember being asked a series of |
| 2 | | questions? |
| 3 | A | Yes. |
| 4 | Q | Okay. And have you had an opportunity to review |
| 5 | | your trial transcript at all? |
| 6 | A | Yes. |
| 7 | Q | Okay. And are you aware, based on your trial |
| 8 | | transcript, that at the trial you said that the |
| 9 | | person that you saw walking by your house right |
| 10 | | after the homicide was Shawn Drumgold? |
| 11 | A | Yes. |
| 12 | Q | Okay. Can you tell the Court why you said that? |
| 13 | A | It was -- it was a lot of pressure. I mean, they |
| 14 | | made me felt like I had to, you know. |
| 15 | Q | When you say they made me feel like I had to, |
| 16 | | what do you mean by that? |
| 17 | A | I never wanted to come to court or be involved in |
| 18 | | any of this and they told my mother that if I |
| 19 | | didn't come to court, they were going to come to |
| 20 | | my school and arrest me. |
| 21 | Q | Okay. Did they ever make -- did they ever say |
| 22 | | anything directly to you about what would happen |
| 23 | | to you? |
| 24 | A | No. They talked to my mother. |

# EXHIBIT 21(B)

180

1          weren't you?
2 A    Yes, sir.
3 Q    And I believe at one of the banks in town here?
4 A    No, I was right there on Dorchester Avenue.
5 Q    And at that time you would get the Herald every day,
6          would you not?
7 A    Yeah, we'd get the paper come in every day and the
8          Globe.
9 Q    And the Globe. And there's no question that you
10         were reading about this particular case in the
11         Herald and the Globe.
12 A   Yes, because it happened right at the corner of the
13         house.
14 Q   And you remember, do you not, that just a couple of
15         days after the police came to your house there was
16         an arrest made in this case, was there not?
17 A   Yeah, that's right.
18 Q   There was an arrest, right?
19 A   Yes.
20 Q   And you told me last week, did you not, that you saw
21         Shawn Drumgold's picture on the T.V. at that time?
22 A   Yeah, he always was on there.
23 Q   And it's fair to say that you also saw Shawn
24         Drumgold's picture in the newspaper at that

181

|    |   |   |
|----|---|---|
| 1  |   | particular time, did you not? |
| 2  | A | Excuse me? |
| 3  | Q | You also saw his picture in the newspaper. |
| 4  | A | Yeah. Oh, God, the boy was standing like those |
| 5  |   | people over there, that's why them bust them into |
| 6  |   | court. Everybody knows that. I mean, they read the |
| 7  |   | paper and they're concerned about that bad area, you |
| 8  |   | know. |
| 9  |   | THE COURT: Ms. Alexander, please, just |
| 10 |   | answer the question. |
| 11 |   | THE WITNESS: I am. |
| 12 |   | THE COURT: I know, but you're going beyond |
| 13 |   | the question. Just listen and answer only the |
| 14 |   | question. Go ahead, sir. |
| 15 | Q | Very quickly, you did see Shawn Drumgold's picture |
| 16 |   | in the Herald -- |
| 17 | A | Yes. |
| 18 | Q | -- at the time he was arrested; correct? |
| 19 | A | Yes. |
| 20 | Q | And I show you this picture, ma'am. Is this not the |
| 21 |   | picture that you saw in the newspaper? |
| 22 | A | Yes, that's the picture they had in the newspaper. |
| 23 | Q | Excuse me, I didn't mean to cut you off. |
| 24 | A | Just after they had gotten him when they had seen |

182

1             him in --
2     Q       After he was arrested?
3     A       Yes, sir.
4     Q       And that's the picture you saw in the newspaper,
5             right?
6     A       Yes, sir.
7     Q       I want you to take a look at the photo that you
8             identified last week. Is Shawn Drumgold not wearing
9             the exact same clothing in the photograph you
10            identified as he was wearing in that newspaper
11            photograph?
12    A       Yeah, a Boston T-shirt on.
13    Q       The exact same T-shirt, isn't it?
14    A       Yes, sir.
15                    MR. RAPPAPORT: Your Honor, I ask that the
16            newspaper clipping be marked as an exhibit.
17                    MR. BEAUCHESNE: No objection. I asked
18            that it be passed along to the jury.
19                    THE COURT: Certainly. This would be
20            Exhibit 8. A newspaper of what date, Mr. Parsons?
21                    THE CLERK: Tuesday, August 30th.
22                    THE COURT: August 30?
23                    THE CLERK: August 30, 1988.
24

| | |
|---|---|
| 1 | (Exhibit No. 8, marked; |
| 2 | Newspaper clipping of August |
| 3 | 30, 1988). |
| 4 | |
| 5 | MR. GEORGE: Your Honor? |
| 6 | THE COURT: Sir? |
| 7 | MR. GEORGE: May we approach the sidebar? |
| 8 | |

9  SIDEBAR CONFERENCE

10

11  THE COURT: This is the exhibit -- the
12  Boston Herald of August 30, 1988 headline, "Tiffany
13  Killer Jailed". There's a photograph of Shawn
14  Drumgold and a police officer.
15  MR. GEORGE: My objection is, Your Honor,
16  to the headline in the exhibit offered by
17  co-counsel. I feel it's inflammatory in the
18  spill-over effect of the inflammation that would
19  affect the case against Mr. Taylor. If you're going
20  to let it in as is, I'd ask for a limiting
21  instruction.
22  MR. BEAUCHESNE: I have no objection to a
23  limiting instruction.
24  MR. GEORGE: My first position is that it

1  should be redacted or sanitized. If Mr. Rappaport
2  is going to press it, I still don't. I withdraw my
3  objection, but if you're going to overrule my
4  objection because of that I ask for a limiting
5  instruction.
6      MR. RAPPAPORT: If I may be heard?
7      THE COURT: Are you through?
8      MR. GEORGE: I am, Your Honor.
9      MR. RAPPAPORT: I agree with Mr. George
10 that it's an extremely inflammatory headline with a
11 photo of Shawn Drumgold. That's precisely the
12 reason why I want it entered, Your Honor. The woman
13 has stated that she has seen no photos between the
14 time that the officers came to her house and last
15 week when I showed her a photograph of Shawn
16 Drumgold wearing the same clothes depicted in that
17 picture. I'm certainly not saying, and I was very
18 careful to say that there was no police suggestion
19 in this particular case, but human nature being what
20 it is, it's my theory that this is why she was able
21 to identify the photo.
22     THE COURT: You're doing all you can as far
23 as cross examination. You're doing the best job you
24 possibly can and I would agree that from your point

1    of view this is helpful. I'll be glad to give a
2    short limiting instruction again.
3         MR. RAPPAPORT: Fair enough.
4
5    END OF SIDEBAR CONFERENCE
6
7         THE COURT: Ladies and gentlemen, once
8    again this photo that is marked Exhibit 9 and the
9    copy of the face sheet of the -- a portion of the
10   face sheet of the Boston Herald is admissible as
11   against Shawn Drumgold only and not as against Mr.
12   Taylor.
13        You may publish it and pass it among them.
14        MR. RAPPAPORT: If I may, Your Honor, I'd
15   like to publish that along with I believe it's
16   Exhibit 6.
17        THE COURT: Sure. It's been passed once
18   but you may pass it again.
19        Go ahead, Mr. Rappaport.
20 Q  Now again, Ms. Alexander, the sequence of events on
21   that day, the order of the events with regard to an
22   identification that you've made in this case are as
23   follows: No. 1, a week after the incident, the
24   police came to your house with a group of

```
 1         photographs; correct?
 2   A     Yes.
 3   Q     And included within that group of photographs was
 4         the photograph of Shawn Drumgold?
 5   A     Yes, sir.
 6   Q     At that time you noticed a resemblance at least but
 7         could not identify that photograph as the man you
 8         saw.
 9   A     Yes, sir.
10   Q     This was a case that was of some concern to you;
11         correct?
12   A     Yes, sir.
13   Q     And within days of, and when I say "within days,"
14         within three to four days of your looking at this
15         photograph of Shawn Drumgold, the police photograph,
16         you saw on T.V. as well as in the Herald a
17         photograph of Shawn Drumgold, did you not?
18   A     Yes, sir.
19   Q     And there were actually headlines on that
20         photograph, were there not?
21   A     Yes, sir.
22   Q     That this was the killer of Tiffany Moore?
23   A     Yes, sir.
24   Q     At least this is what the newspapers were saying.
```