# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

SHAWN DRUMGOLD                        )
       **Plaintiff,**                     )
                                         )
**v.**                                 )      **C.A. NO.: 04-11193NG**
                                         )
**TIMOTHY CALLAHAN, FRANCIS M.**      )
**ROACHE, PAUL MURPHY, RICHARD**      )
**WALSH, and THE CITY OF BOSTON,**    )
       **Defendants.**                    )
_____)

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RICHARD WALSH'S MOTION TO STRIKE PLAINTIFF'S RESPONSE TO CONSOLIDATED STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

Defendant Richard Walsh ("Walsh"), respectfully submits this Memorandum of Law in support of his motion to strike Plaintiff Shawn Drumgold's ("Plaintiff"), Response to the Consolidate Statement of Undisputed Material Facts ("Response"), and requests that the Court deem the Consolidated Statement of Undisputed Material Facts ("Consolidated Statement" or "Walsh's statement"), admitted for purposes of Walsh's motion for summary judgment.[1]

As grounds, Walsh states that Plaintiff's Response does not comply with the requirements of Fed. R. Civ. P. 56 and Local Rule 56.1 for a party opposing summary judgment. Moreover, Plaintiff has failed to provide competent and admissible evidence sufficient to controvert Walsh's statements of fact. Consequently, it is appropriate for the court to strike Plaintiff's responses and deem admitted Walsh's statements.[2]

---

[1]      Walsh notes that there appears to be a typographical error in his response to ¶¶ 154-163 which should say "Plaintiff," not Defendants, "agrees that the statement provided by the Commonwealth contains these statements."

[2]      *See Stonkus v. City of Brockton Sch'l Dist.*, 322 F.3d 97, 102 (1st Cir. 2003); *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 12 (1st Cir. 2003); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49-51 (1st Cir. 1990); *Rodio v. R.J. Reynolds Tobacco Co.*, 416 F. Supp. 2d 224 (D. Mass. 2006).

**A.   Plaintiff's Response to ¶¶ 75-76, 79, 81-82, 86-92, 94, 101, 123, 133, 136-137, 144, 146, 152, 172, 180, 184, 186, 191, 193, 197, 201, 208 , 223, 236 and 241 should be stricken because they are not supported by admissible evidence.**

For the reasons set forth in Section A of Walsh's separate *Motion to Strike Plaintiff's Exhibits and Concise Statement of Undisputed Material Issues of Fact*, Plaintiff's responses to ¶¶ 75-76, 79, 81-82, 86-92, 94, 101, 123, 133, 136-137, 144, 146, 152, 172, 180, 184, 186, 191, 193, 197, 201, 208, 223, 236 and 241 of the Consolidated Statement should be stricken to the extent that said responses are supported by Plaintiff's Exhibits 1-7, 13, 15, 18, 22, 25 and 27.

**B.   Plaintiff's responses to paragraphs 10-18, 26-28 and 231-233 that the Exhibits in support thereof do not satisfy the requirements of Fed. R. Civ. P. 56 or 56(e) is without merit and must be stricken.**

Plaintiff responds to paragraphs 10-18 and 26-28 of the Consolidated Statement of in support of Walsh's motion for summary judgment as follows: "Not agreed.  Exhibit[s cited] are not sworn statements.  They do not satisfy the requirements of Fed. R. Civ. P. 56(e) as to affidavits in support of undisputed material facts."  In response to ¶¶ 231-233, Plaintiff states: "Not agreed.  Exhibit 30 is a police report, not verified under oath, which is not a valid basis for establishing a material fact pursuant to the Federal Rules of Civil Procedure 56."

These responses must be stricken and the facts in support of paragraphs 10-18, 26-28 and 231-233 must be deemed admitted because the reason set forth for Plaintiff's disagreement is without merit.  This is because Fed. R. Civ. P. 56(c) and Local Rule 56.1 clearly allow for a wide variety of materials and documentary evidence to be submitted in support of a motion for summary judgment.[3]  *See* 5 AMJUR TRIALS 105, § 10 (2007) (under governing rule, "a wide variety of material may be tendered as 'proof' in support of a motion for summary judgment").  Moreover, these Rules do not limit a moving party to "affidavits" as suggested by Plaintiff. *See*

---

[3]       Rule 56(e) merely provides that affidavits in support of or opposition to summary judgment "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Fed. R. Civ. P. 56(c); Local Rule 56.1.  Thus, Plaintiff's responses to ¶¶ 10-18, 26-28 and 231-233 of the Consolidated Statement make no sense, are without merit and should be stricken.

Of note, Exhibits 3-6, 8, 12(A) and 29(A) are recorded statements taken by police during the investigation of the Moore murder.  Exhibits 7, 9 and 30 are police reports regarding the investigation.  These documents sufficiently meet the requirements set forth in Rule 56(c) and Local Rule 56.1 and are admissible at trial. *See Brown v. Town of Weymouth*, No. 95-1693, 76 F.3d 370, 1996 WL 55703, *1 (1st Cir. Feb 9, 1996).  Moreover, these recorded statements and investigative reports are critical to Walsh's defense against Plaintiff's claims as they set forth the information that Walsh had before him in investigating Plaintiff as a suspect.

**C.     Plaintiff's responses to ¶¶ 24, 67-68, 79, 81-83, 94, 97, 99, 103, 107, 119, 123-125, 141, 174-175, 177 and 234 of the Consolidated Statement must be stricken because they contain self-serving allegations which are not supported by the summary judgment record and/or which misrepresent the record.**

Plaintiff's responses to ¶¶ 24, 67-68, 79, 81-83, 94, 97, 99, 103, 107, 119, 123-125, 141, 174-175, 177 and 234 of the Consolidated Statement should be stricken as more fully set forth below because they contain self-serving allegations which are not supported by the summary judgment record and/or which misrepresent the record:

<u>Response ¶ 24</u>:  Plaintiff's entire response to ¶ 24.  First, Plaintiff fabricates his own testimony – Plaintiff did <u>not</u> testify that "he did not have guns in New York" as he states in response to ¶ 24. *See* **Plaintiff's Ex. 26(B)** at 258-259.  Rather, he testified:

> Q:     Did you go to New York **to dispose of some guns?**
> A:     **No.** *Id.* (emphasis added)

Moreover, Plaintiff's fabricated statement fails to controvert Walsh's statement that witness Madelyn Powell Hamilton observed Plaintiff and Anthony with guns and/or the fact that Walsh received information that Plaintiff was observed with a gun or guns in New York.

Responses ¶¶ 67-68, 234:  Plaintiff agrees with Walsh's statements in ¶¶ 67-68.  The additional statements in ¶¶ 67-68 and 234 must be stricken because they are based on Plaintiff's self-serving, fabricated allegations with respect to witnesses Ricky Evans, Olisa Graham, Antonio Anthony, Mary Alexander and Tracie Peaks which are not supported by the summary judgment record.[4]  Moreover, Plaintiff cites to no testimony by Attorney Rappaport to support his self-serving opinion that Rappaport would have made a different strategic decision with respect to the Sonoma Street alibi defense (¶¶ 67-68) and/or calling Olisa Graham as a witness (¶¶ 67-68, 234) if he was aware of any conduct as alleged with respect to these witnesses.

Responses ¶¶ 79, 81, 82:  Plaintiff's responses to ¶¶ 79, 81-82 in their entirety because they fail to controvert Walsh's statements as to Tracie's testimony.  Moreover, Plaintiff distorts and omits Tracie's complete testimony which clarifies that Tracie's testimony is merely indicative of her strong desire not to have to be involved in any way with the investigation or prosecution relative to the Moore homicide. **Consol. Ex.** at 40-42.  It does not however, change or otherwise undermine her observation of Plaintiff coming from the Edison building after she heard gunshots on the night of the Moore homicide.  Finally, in support of his allegation that Tracie's grand jury testimony was not truthful and a lie, Plaintiff relies solely on Tracie's response to Attorney Scapicchio's leading and highly suggesting questioning at the new trial motion hearing. *See* **Plaintiff's Ex. 3** at 142.

Response ¶ 83:  Plaintiff's entire response to ¶ 83 because it fails to controvert Walsh's statement as to Tracie's unequivocal testimony before the grand jury that prior to the Moore homicide she had known Plaintiff from the neighborhood, and at trial that prior to the homicide

---

[4]     *See supra* and *infra*.  Walsh also refers the Court to, and incorporates herein by reference, Walsh's (1) Motion for Summary Judgment and supporting Memorandum of Law; (2) Reply to Plaintiff's Opposition to Walsh's Motion for Summary Judgment; and (3) Walsh's Motion to Strike Plaintiff's Exhibits and Concise Statement of Disputed Material Issues of Fact and supporting Memorandum of Law.

she knew him from the neighborhood for "like a year" and would often see him around August of 1988. **Consol. Ex. 17(A)** at 127-128; **17(B)** at 205, 208-209. Significantly, Plaintiff had the opportunity to cross-examine Tracie regarding this testimony at trial, but did not.

Response ¶ 94: Plaintiff's entire response to ¶ 94 because it is a blatant misrepresentation of the testimony cited by Plaintiff. Contrary to Plaintiff's response, Tracie did <u>not</u> testify that she "did recall" saying that she had seen. **Plaintiff's Ex. 3** at 142. Consequently, Plaintiff fails to controvert Walsh's statement as to Tracie's unequivocal new trial motion testimony that she did not recall making certain statements to the jury. Moreover, the testimony cited by Plaintiff is Tracie's prompted response to Attorney Scapicchio's leading and highly suggestive questioning, Tracie testified as to the f that she was "fed." *See id. See also supra* Section A.

Response ¶ 97: Plaintiff's entire response to ¶ 97 because there is absolutely no record support for this self-serving response. Viewed in the proper context, Rappaport's unequivocal testimony was that there would have been no need for <u>the police</u> to show Tracie a photograph of Plaintiff because she knew him before the incident. **Consol. Ex. 14(A)** at 173. Indeed, at trial, Tracie unequivocally testified that she identified Plaintiff as the male she had seen coming from the direction of the Edison building after hearing gunshots <u>before</u> being shown the photo array. **Consol. Exs. 17(B)** at 202-209, 211-216. In fact, Attorney Rappaport, in his defense of Plaintiff, specifically questioned Tracie to ensure that she had told police that she observed Plaintiff <u>before</u> she saw the photo array. **Consol. Ex. 17(B)** at 209, lns. 14-24.

Response ¶ 99: Plaintiff's entire response to ¶ 99 **because it is a blatant falsehood, is <u>not</u> supported by the testimony cited and is a complete misrepresentation of Tracie's testimony.** First, contrary to Plaintiff's response, Tracie <u>never</u> testified that Walsh, "police officers," "the detectives who were dealing with her" or "Boston Police Detectives" told her that she had to point to Plaintiff when testifying at his criminal trial. *See* **Plaintiff's Ex. 8(A)** at 160-

162.  In fact, Tracie testified that she did not know who told her to point at Plaintiff during the criminal trial. **Consol. Exs. 17(D)** at 176, 186-187; **17(E)** at 77-78.  Second, Plaintiff states that Tracie "testified that she never met any District Attorneys in connection with the case."  **Tracie did <u>not</u> so testify.**  Rather, Tracie testified that: (i) She does not remember, but does not think that, she met Assistant District Attorney Phil Beauchesne; (ii) She does not believe that he ever went to her house to interview her; and (iii) She does not believe that anyone from the DA's office or law enforcement ever took her to meet ADA Beauchesne at his office. *See* **Plaintiff's Ex. 8(A) 160-162**, *cited in* Plaintiff's Statement ¶¶ 8, 9.

<u>Response ¶ 103</u>:  Plaintiff's entire response to ¶ 103 because it does not controvert Walsh's statement in ¶ 103 and/or the testimony cited in support of ¶ 103.  Moreover, the response is not supported by, and instead misrepresents, Tracie Peaks' deposition testimony. Viewed in proper context, Tracie Peaks' testimony reflects her general desire not to be involved in any way whatsoever with the investigation of the Moore homicide despite her civic duty to report any information she had which could be relevant to the investigation.  Indeed, that Tracie did not want to report what she saw does not change her observation of Plaintiff coming from the direction of the Edison building after she heard gunshots – an observation which she reported to the police on August 26, 1988 and which she testified as to before the grand jury on September 8, 1988 at trial on October 3, 1989. *See* Consolidated Statement ¶¶ 19, 73-74, 78-81, 83-92 and supporting exhibits.

<u>Response ¶ 107</u>:  Plaintiff's entire response to ¶ 107 because it is a misrepresentation of Betty Peak's testimony and fails to controvert Walsh's statement in ¶ 107.  Betty testified:

> Q:    Why did you feel intimidated?
> A:    Because I didn't have any knowledge of what was going on.
> Q:    Is it fair to say that they didn't raise their voice to you?
> A:    I don't remember.
> Q:    Did they raise their voice to your daughter?

| | |
|---|---|
| A: | I don't remember. |
| | … |
| Q: | So the only reason you felt intimidated was because you just didn't have the knowledge of the Tiffany Moore murder and your daughter's involvement, is that correct? |
| A: | Correct. *See* **Plaintiff's Ex. 16** at 76-77. |

Moreover, Betty only "vaguely" remembers such a statement being made. *Id.* at 78-79. Regardless, Betty's testimony regarding the photo array is entirely irrelevant and insufficient to create a triable issue of fact as Tracie unequivocally testified before the grand jury on September 8, 1988 and at trial on October 3, 1989 that she observed Plaintiff coming from the direction of the Edison plant after hearing gunshots and that she told police about this observation prior to viewing the photo array. *See* **Consol. Exs. 17(A)** at 125-128; **17(B)** at 202-209, 211-216. In fact, Attorney Rappaport, Plaintiff's defense counsel, specifically questioned Tracie to ensure that she had told police that she observed Plaintiff before she saw the photos. **Consol. Ex. 17(B)** at 209.

Responses ¶¶ 119, 123-125: Plaintiff's entire responses to ¶¶ 119 and 123-125. In said responses, Plaintiff blatantly misrepresents Lola's testimony, relies solely on Lola's unreliable new trial motion affidavit and testimony, and essentially asks the court to disregard Mary's medical records and detailed trial testimony. First, contrary to response to ¶ 123, Lola did not testify that she informed Walsh of any health issues of Mary. **Plaintiff's Ex. 2** at 7-8, 11-12.

Second, Lola's testimony as to Mary's memory is clearly unreliable when compared to Mary's medical records. There is absolutely no support in Mary's medical records that she had memory loss prior to being diagnosed with a malignant brain tumor in February 1989. In fact, it is clear that Mary had no memory problems as of February 1989. Indeed, Mary's February 1989 medical records note that Mary only reported blurred vision and headaches, that she denied any other neurological deficits, and that she was in excellent health until her seizure in February 1989. **Consol. Ex. 21(A)** at 1, 3. Moreover, there is only one 1989 record which indicates that

Mary had a single episode of amnesia where she forgot her son's name and where she was. There are no other records dated prior Plaintiff's criminal trial that indicate any other memory problems and even the aforementioned record is without a legible month.

Plaintiff cites to Lola's testimony that she told "them when they first started questioning [Mary] that [Mary's] memory wasn't good because she had malignant cancer at the brain." **Plaintiff's Ex. 2** at 15. Assuming that Lola is referring to the first time that Walsh and Murphy interviewed Mary in August 1988, this testimony is clearly unreliable as there would have been no basis for Lola to tell anyone that Mary had brain cancer prior to February 1989 when Mary had a seizure and was first diagnosed as having a brain tumor. **Consol. Ex. 21(A)**.

Third, it is also clear that Lola's testimony regarding Mary's condition is unreliable because it is replete with inconsistencies with respect to what, if anything, she told persons involved in the investigation, prosecution or defense of the Moore homicide regarding Mary's condition, when such statements were made and to whom such statements were made. Contrary to the testimony cited by Plaintiff, in conjunction with this action, Lola has testified that: (1) Mary remembered the circumstances surrounding the Moore homicide; (2) Mary did not have any health problems other than headaches; and (3) Lola does not recall Mary having any memory problems before her first seizure and does not know if Mary had memory problems at any time. **Consol. Ex. 22(A)** at 60, 184-185, 193-194, 210-214.

Finally, Walsh again notes that the Court called Attorney Scapicchio to sidebar regarding her leading questions and suggesting answers to Lola. **Plaintiff's Ex. 2** at 13-14.

Response ¶ 141: Plaintiff agrees with ¶ 141. The remainder of the response "However, Rappaport was not aware that Mary was suffering from a brain injury that affected her memory at that time," should be stricken because there is no competent evidence that Mary had any memory problems and/or other cognitive dysfunction which affected her ability to recall and

testify regarding her observations on the night of the homicide and her identification of Plaintiff. This is particularly so in light of Mary's detailed trial testimony. *See* **Consol. Ex. 21(B).**

Response ¶ 174:  Plaintiff's entire response to ¶ 174 because it misrepresents the record and does not controvert Keller's unequivocal testimony that Anthony told him that police did <u>not</u> threaten to indict Anthony if Anthony did not help the police.  Specifically, in reviewing an affidavit drafted on Anthony's behalf which contained Keller's handwritten notes regarding his meeting with Anthony, Keller testified:

> Q:    Okay.  Then they threatened to indict me if I did not help them is crossed out, is that correct?
> A:    Correct.
> Q:    And why did you cross that out?
> A:    He did not admit to that being done.
> Q:    Okay.  He did not make that statement?
> A:    I don't' recall what he said about this particular line, but if I have it crossed out, he told me that they did not threaten to indict him. **Consol. Ex. 19(A)** at 174.

Response ¶ 175:  Plaintiff agrees with Walsh's statement in ¶ 175.  The remainder of the response must be stricken because it is a blatant falsity – contrary to Plaintiff's additional statement, Anthony did <u>not</u> testify that he was with Plaintiff "at the time of the Tiffany Moore Shooting." *See* **Consol. Ex. 12(C)** at 135-136, *cited by* Plaintiff.  Rather, Anthony merely testified: "We was together [that night] – I don't remember the exact hours that we was together but we was together for a long time, you know." *Id.* at 105-106.

Response ¶ 177:  Plaintiff's entire response to ¶ 177 must be stricken because Plaintiff falsely represents Anthony's testimony – Anthony did <u>not</u> testify that "Walsh was aggressive," or that Walsh "made it clear that 'something very well could happen to me, you know what I mean. If I didn't cooperate or tell them what they wanted to hear." *See* **Consol. Ex. 12(C)** at 107 (referencing Callahan, <u>not</u> Walsh).  Further, Plaintiff's false allegation fails to controvert

Walsh's statement as to Anthony's unequivocal testimony that <u>Walsh</u> never made any person threats against Anthony or his family. *Id.* at 134-135, 137-138.

**D.    Plaintiff's responses to the Consolidated Statement should be stricken as indicated below because Plaintiff has failed to support said responses with competent and admissible evidence sufficient to controvert Walsh's statements of facts and/or sufficient to create a genuine issue of material fact.**

Plaintiff's responses should also be stricken as indicated below as these responses are insufficient to controvert the corresponding statements of fact in support of Walsh's motion for summary judgment and are insufficient to create any issue of material fact.  Indeed, in opposing Walsh's motion for summary judgment, Plaintiff "cannot content himself with unsupported allegations; rather, he must set forth specific facts, in suitable evidentiary form, in order to establish the existence of a genuine issue for trial." *See Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, a Partnership v. Medfit International, Inc.*, 982 F.2d 686, 689 (1st Cir. 1993) (quoting *Rivera-Muritent v. Agosto-Alicea*, 959 F.2d 349, 352 (1st Cir. 1992)).[5]  Here, the statements of fact in support of Walsh's motion for summary judgment should "be deemed for purposes of the motion to be admitted by [Plaintiff]" for the reasons set forth below.

In general, Plaintiff's responses contain inaccuracies and misrepresentations of the evidence and summary judgment record.  Often, Plaintiff (1) agrees with Walsh's statement of fact, but then in an effort to create an issue of fact where none exists makes additional statements which are more appropriate for Plaintiff's own Statement of facts; (2) disagrees with Walsh's statement of fact, but then does nothing more than repeat the same fact in different words to create the illusion of an issue of fact where none exists; (3) disagrees with Walsh's statement of fact, but then does nothing more than add additional facts which do not controvert Walsh's

---

[5]    *See also In re Hale*, 289 B.R. at 792 ("Creating a genuine issue of material fact requires hard proof rather than spongy rhetoric.") (citing *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)); *Am. Towers, Inc. v. Town of Falmouth, Maine*, 217 F. Supp. 2d 154, 157, n. 3 (D. Me. Aug. 7, 2002) (noting that denials in opposition to statements of material facts must "be supported by a record citation in the manner prescribed by the [the Local Rule]; a bare denial followed by a qualification is insufficient")

statement of fact; (4) fails to provide record support for his responses; (5) distorts the record by citing only to self-serving portions of a witness's testimony in a manner that is clearly out of context and inaccurate in light of the witness's complete testimony; and (6) omits testimony and/or transcript pages which would place a witness's testimony in its proper context. Finally, Walsh notes that many of Plaintiff's responses and/or the additional statements therein are immaterial and irrelevant in deciding Walsh's motion for summary judgment.

More specifically, Walsh moves to strike the following responses for the reasons below:

Response ¶ 16: Plaintiff's response that "In addition, the testimony cited is simply Reese's opinion as to street gossip" because it does not controvert the fact that Walsh received information that the shooting happened because Plaintiff and/or Taylor thought Reese, Cheney and Troy Jenkins shot Holiday. *See also supra* Section A.

Responses ¶¶ 17-18: Plaintiff's entire responses to ¶¶ 17-18 should be stricken. First, Plaintiff's deposition testimony is irrelevant and insufficient to create an issue of fact that there was evidence in the form of Cousins' recorded statement that Cousins observed Plaintiff and Taylor in Holiday's hospital room and that he overheard a conversation regarding "who did it, and if they [were going] to get them" and retaliate. *See* **Consol. Ex. 3** at 5-6. Second, Plaintiff misrepresents Holiday's complete testimony. Contrary to Plaintiff's responses, Holiday did <u>not</u> explicitly testify "that he did not talk to anyone in the hospital about who shot him and that only family visited him." Rather, read properly, Holiday *does not remember* who visited him or what was discussed during a portion of his hospital stay – likely because he was sedated and in and out of consciousness for 3 or 4 days. *See* **Plaintiff's Ex. 6** at 258-261, 267-268.

Response ¶ 19: Plaintiff's entire response to ¶ 19 because, citing only to Tracie Peaks' 2006 deposition testimony, Plaintiff fails to controvert Walsh's statement that Tracie identified Plaintiff as the male that she observed coming from the direction of Edison building after hearing

gunshots to the police on August 26, 1988, before the grand jury on September 8, 1988, and at trial on October 3, 1989. *See* **Consol. Ex. 17(A)** at 41-42, 125-128; **17(B)** at 202-216.

Response ¶ 20:   Plaintiff's entire response to ¶ 20 because, citing only to Tracie's deposition testimony, Plaintiff fails to controvert Walsh's statement as to the number of photographs that were in the photo array shown to Tracie.   Moreover, Tracie did <u>not</u> "suggest" that she was shown 10 photos as Plaintiff states.   Rather, Tracie testified that she could not recall how many photos were in the array, but there were 2 rows. **Plaintiff's Ex. 8(A)** at 142-143.

Response ¶ 22:   Plaintiff's response to ¶ 22 that "Mary Alexander did not testify that she picked up the photo" because Plaintiff fails to controvert the fact that Walsh and Murphy observed Mary pick up Plaintiff's photo several times.   Moreover, contrary to Plaintiff's response, Mary testified:

> Q:      And when you looked at them, did you pick out a picture of the man that you saw putting a gun in his belt?
> A:      Not really, sir.  The guy told us to be one hundred percent honest and that's what I was trying to be.  I looked at the picture.  I went back to the same picture more than three times, you know, but I told the police officer I wanted to be honest, one hundred percent honest.

**Consol. Ex. 21(B)** at 160-161, *cited in* Plaintiff's Response ¶22.

Responses ¶¶ 25, 27-28, 152, 164, 172, 173:   Plaintiff's responses to ¶¶ 25, 27-28, 152, 164 and 172-173 in their entirety because they fail to controvert the fact that Anthony provided a recorded statement to police August 31, 1988.   Indeed, after hearing the tape at Plaintiff's new trial motion hearing, Anthony recognized his voice and the voices of the officers, but had no memory of the conversation that took place. **Consol. Ex. 12(C)** at 164.   Also of significance, Anthony was represented by counsel, Attorney Mahaney, with respect to pleading the Fifth Amendment at Plaintiff's criminal trial.   And, Attorney Mahaney stated to the Court:

> Your Honor, this was a statement not under oath at the time and he was not represented by counsel.  **Now, I've had considerable conversations with Mr.**

> **Antonio Anthony regarding the nature of the statements and where and when they were made.** Your Honor, in conversations with him, I feel at this time that the statements made by Mr. Anthony could incriminate himself in this case. … Therefore your Honor, after instructing him of his options, he informs me that he wishes not to testify. **Consol. Ex. 12(D)** at 11 (emphasis added).

Consequently, Plaintiff cannot seriously expect to rely on Anthony's new trial motion testimony that there was no recording or that police fabricated his recorded statement and that it was someone else talking on the tape. *See* **Consol. Ex. 12(C)** at 112-114.

Response ¶ 26: Plaintiff's response "Not agreed" for the reasons set forth *supra* Section A and because Plaintiff fails to controvert Walsh's statement that in his August 31, 1988 recorded statement, Anthony stated that he observed Plaintiff and Taylor with guns on August 19, 1988. **Consol. Ex. 12(A)** at 1-3.

Response ¶ 29: Plaintiff's entire response to ¶ 29 because it fails to controvert Walsh's statement and is not supported by, and misrepresents, the cited testimony. Contrary to Plaintiff's response, Walsh testified that he received "information" and described this "information" as being "information that I did not have that was given to me." **Consol. Ex. 15(D)** at 104.

Response ¶ 30: Plaintiff's entire response to ¶ 30, because though in the form of a denial, the response merely restates that Callahan took over the investigation of the Moore homicide, and thus admits the facts in ¶ 30.

Responses ¶¶ 30-32: Plaintiff's entire responses to ¶¶ 30-32 because they fail to controvert Walsh's statements and are not supported by, and misrepresent, the cited testimony. First, in support of his disagreement, Plaintiff states that (i) Walsh and Murphy reviewed the record with Callahan when Callahan took over the investigation; and (ii) Walsh served as a witness on behalf of the Commonwealth. These purported facts, however, do not controvert Walsh's statements in ¶¶ 30-32. *See* **Plaintiff's Ex. 9(B)** at 191. Second, Walsh merely accompanied Callahan on visits to Marvin Reese and Tyrone Brewer, during which Callahan, as

lead investigator, conducted the interviews. *Id.* at 101-102, 192-193, 204. Third, Murphy's involvement with respect to Ricky Evans is irrelevant to Walsh's motion for summary judgment.

<u>Response ¶ 34</u>: Plaintiff's entire response to ¶ 34 because it is not supported by and misrepresents the record.

<u>Response ¶ 36</u>: Plaintiff's entire response to ¶ 36 because it fails to create an issue of material fact as Plaintiff merely restates, and thus admits, the facts set forth in ¶ 36 – that <u>Plaintiff</u> gave an accurate and truthful recorded statement.

<u>Response ¶ 38</u>: Plaintiff's entire response to ¶ 38 because it is not supported by any record evidence to controvert Walsh's statement in ¶ 38 that Walsh had no knowledge that there was an order not to interrogate Plaintiff. Contrary to Plaintiff's response, Judge Volterra made <u>no</u> findings of fact with respect to Walsh's knowledge, or lack thereof, of the district court's order not to interrogate Plaintiff. *See generally* **Consol. Ex. 24**.

<u>Response ¶ 42</u>: Plaintiff's entire response to ¶ 42 because there is no record support to controvert Walsh's statement in ¶ 42 that Judge Volterra made no findings of fact as to Walsh's knowledge, or lack thereof, of the order not to interrogate. *See generally* **Consol. Ex. 24**.

<u>Response ¶ 48</u>: Plaintiff agreed with the Walsh's statement in ¶ 48. The remainder of the response should be stricken because it misrepresents the SJC's decision – the SJC did not "find" that Walsh's version of Plaintiff's statement was incorrect or that Walsh intentionally misrepresented Plaintiff's statement, rather the SJC "accepted," for purposes of the appeal, that Walsh's version of Plaintiff's statement was incorrect.

<u>Response ¶¶ 63-65</u>: Plaintiff's response to ¶ 63 "Not agreed" because the remainder of the responses do <u>not</u> controvert Attorney Rappaport's testimony that: (i) his emphasis at trial was a third-party culprit defense (¶ 63); (ii) he was not as prepared with respect to Plaintiff's alibi defense as he would have been had Attorney George not been involved (¶ 64); and (iii) Attorney

George took primary responsibility for the alibi defense (¶ 65). **Consol. Exs. 14(C)** 65-67, 95, 130-131, 133; **14(D)** at 187-191, 209-210.  Moreover, the additional statements by Plaintiff in response to ¶¶ 63-65 do not create any issue of material fact.

Response ¶ 74:  Plaintiff's response to ¶ 74 "Not agreed" because the remainder of the response fails to controvert Walsh's statement in ¶ 74 that Tracie Peaks only recalls "speaking to" police or law enforcement on one occasion.  That police may have visited her house on more than one occasion does not mean that she spoke to them on more than one occasion or that she recalled speaking to them on more than one occasion.

Responses ¶¶ 75, 76:  Plaintiff's entire responses to ¶¶ 75 and 76 because they fail to controvert Walsh's statements in ¶¶ 75 and 76 and/or to create any triable issue of fact. Moreover, citing only to Tracie Peaks' 2006 deposition testimony, Plaintiff fails to controvert Walsh's statement as to the number of photographs that were in the photo array shown to Tracie as Tracie testified that she could not remember how many photos there were. **Plaintiff's Ex. 8(A)** at 142.  Finally, the last sentence in responses to ¶¶ 75 and 76 should be stricken because they fail to create any issue of material fact because Tracie unequivocally testified before the grand jury on September 8, 1988 and at trial on October 3, 1989 that she observed Plaintiff coming from the direction of the Edison plant after hearing gunshots and that she told police about this observation prior to viewing the photo array. *See* **Consol. Exs. 17(A)** at 125-128; **17(B)** at 202-209, 211-216.  Indeed, Attorney Rappaport, Plaintiff's defense counsel, specifically questioned Tracie to ensure that she had told police that she observed Plaintiff before she saw the photo array. **Consol. Ex. 17(B)** at 209, lns. 14-24.

Responses ¶¶ 86-92:  Plaintiff agrees with Walsh's statements in ¶¶ 86-92.  Plaintiff's additional statement that "She then recanted her identification of Drumgold" should be stricken from responses to ¶¶ 86-92 as Plaintiff's sole support for this response is Tracie's

unreliable/inadmissible affidavit which was prepared in support of Plaintiff's new trial motion. *See supra* Section A.

<u>Response ¶ 95</u>:  Plaintiff's entire response to ¶ 95 because, though in the form of a denial, it merely restates in different words Walsh's statement in ¶ 95 and/or the testimony cited by Walsh in ¶ 95, and thus admits the facts in ¶ 95.

<u>Response ¶ 96</u>:  Plaintiff agreed with Walsh's statement in ¶ 96.  The last sentence of Plaintiff's response to ¶ 96 must be stricken because there is <u>no</u> record support for Plaintiff's self-serving opinion that Rappaport was incorrect in his belief that nobody could put words into Tracie Peaks' mouth.

<u>Response ¶ 100</u>:  Plaintiff's entire response to ¶ 100 because it does not controvert Walsh's statement that <u>Tracie testified that</u> officers were polite and cordial to her mother. Moreover, Plaintiff misrepresents Betty's complete testimony – Betty testified:

> Q:  Why did you feel intimidated?
> A:  Because I didn't have any knowledge of what was going on.
> Q:  Is it fair to say that they didn't raise their voice to you?
> A:  I don't remember.
> Q:  Did they raise their voice to your daughter?
> A:  I don't remember.
>         …
> Q:  So the only reason you felt intimidated was because you just didn't have the knowledge of the Tiffany Moore murder and your daughter's involvement, is that correct?
> A:  Correct. *See* **Plaintiff's Ex. 16** at 76-77.

Moreover, Betty did <u>not</u> testify that police threatened her. *See id.* at 76-79.  Moreover, Betty has no memory of being told that Tracie would be arrested if she did not appear to testify at trial:

> Q:  If any member of the Boston Police Department had told you that your daughter would be arrested for not going to court, you would remember that, would you not?
> A:  Possibly.
> Q:  Do you remember that happening?
> A:  Vaguely remember it.
> Q:  What do you remember vaguely?

> A:     Police were coming bringing these pictures to my house.
> Q:     … At that time was Tracie told that she would be arrested if she didn't go to court?
> A:     **I don't remember that.  Consol. Ex.** 18 at 128-130 (emphasis added).

<u>Response ¶ 101</u>:  Plaintiff's response to ¶ 101 "Not agreed" because the remainder of the response does not controvert Walsh's statement that <u>Tracie testified that</u> the officer who showed her the photo array did not throw anything at her and did not put the photos up to her face. Further, citing only to Tracie Peaks' 2006 deposition testimony, Plaintiff fails to create a material issue of fact as to the number of photographs that were in the photo array shown to Tracie as Tracie testified that she could not remember how many photos there were. **Plaintiff's Ex. 8(A)** at 142.  Finally, the last two sentences in responses to ¶ 101 should be stricken because they fail to create any issue of material fact because Tracie unequivocally testified before the grand jury on September 8, 1988 and at trial on October 3, 1989 that she observed Plaintiff coming from the direction of the Edison plant after hearing gunshots and that she told police about this observation <u>prior to</u> viewing the photo array. *See* **Consol. Exs. 17(A)** at 125-128; **17(B)** at 202-209, 211-216.  Indeed, Attorney Rappaport, Plaintiff's defense counsel, specifically questioned Tracie to ensure that she had told police that she observed Plaintiff <u>before</u> she saw the photo array. **Consol. Ex. 17(B)** at 209, lns. 14-24.

<u>Response ¶ 102</u>:  Plaintiff's entire response to ¶ 102 because it fails to controvert Walsh's statement as to Tracie's testimony and because it fails to create a material issue of fact.

<u>Response ¶ 105</u>:  Plaintiff's response to ¶ 105 "Disagreed" because the remainder of the response does not controvert Walsh's statement in ¶ 105 which <u>is</u> supported by Betty's testimony. *See* **Consol. Ex. 18** at 27, 29, 74-75, 121-122.  Further, Plaintiff's additional statements with respect to Betty's signing the affidavit should be stricken because they are irrelevant and do not create any triable issue of fact.

<u>Response ¶ 106</u>:   Plaintiff's response to ¶ 106 "Not agreed" because it does not controvert Walsh's statement in ¶ 106 that Betty Peaks testified that she only <u>recalled</u> one occasion that police came to her house.

<u>Response ¶ 110</u>:   Plaintiff's response to ¶ 110 "Not agreed," to the extent that Keller <u>did</u> testify that Betty did not reference Boston police officials and rather stated that it was ADA Phil Beauchesne who stated that Tracie could be arrested if she did not appear to testify at trial. **Consol. Ex. 19(B)** at 341-343, 345-347.  Walsh notes that Tracie was never told by any person other than Betty that she could be arrested if she did not appear to testify at trial.  Consequently, where it was ADA Beauchesne who told Betty that Tracie could be arrested for failing to comply with a trial subpoena, it is irrelevant if Tracie believed some other person said this to Betty.

<u>Response ¶ 111</u>:   Plaintiff's entire response to ¶ 111 because Plaintiff cites solely to Lola's unreliable and inadmissible 2003 affidavit in support of his "disagreement."   Indeed, contrary to the affidavit, Lola unequivocally testified that she had no memory of any member of the Boston Police Department threatening Tracie with arrest:

Q:    If any member of the Boston Police Department had told you that your daughter would be arrested for not going to court, you would remember that, would you not?
A:    Possibly.
Q:    Do you remember that happening?
A:    Vaguely remember it.
Q:    What do you remember vaguely?
A:    Police were coming bringing these pictures to my house.
Q:    … At that time was Tracie told that she would be arrested if she didn't go to court?
A:    **I don't remember that.  Consol. Ex. 18** at 128-130 (emphasis added).

<u>Response ¶ 116</u>:   Plaintiff's response to ¶ 116 "Not agreed" because Plaintiff does not and cannot controvert the fact that the February 4, 1989 medical record referenced by Walsh indicates that Mary had a 2-3 month history of severe headaches and that Mary complained of some blurring of vision. **Consol. Ex. 21(A)** at 1.

<u>Response ¶ 128</u>:  Plaintiff agrees with Walsh's statement in ¶ 128.  The remainder of the response should be stricken because it fails to create any issue of material fact.  Moreover, the remainder of the response includes statements which are immaterial and impertinent and which misrepresent Tracie's complete testimony in a blatant attempt to create confusion and create an issue of fact where none exists.  Specifically, Plaintiff suggests that Tracie had little to no interaction with Mary in an effort to undermine her testimony as to Mary's condition.  However, this is a misrepresentation of the record as Tracie testified that after the murder of Tiffany Moore, she saw Mary often and that she never had any problems understanding, or communicating with, her. **Plaintiff's Ex. 8(A)** at 107.

<u>Response ¶ 133</u>:  Plaintiff's entire response to ¶ 133 because it fails to controvert Walsh's statement as to <u>Mary's</u> unequivocal testimony at the underlying criminal trial that she saw a picture of the lighter skinned gunman on the first night that the police came to her house and showed her a group of photos. **Consol. Ex. 21(B)** at 159-160.  Moreover, citing only to Lola's unreliable testimony, Plaintiff fails to create an issue of material fact in light of <u>Mary's</u> unequivocal trial testimony as to (i) her observations on the night of the Moore homicide, (ii) police conduct in showing her the photographs, and (iii) her identification of Plaintiff. **Consol. Ex. 21(B)**.  Indeed, Mary, who was 22 years old and a mother at the time of trial, testified:

> Q:      (by ADA Beauchesne) When is the first time that you saw a picture of the light-skinned man who was tucking the gun in his belt?
> A:      The first night that the police came over to our house.
> Q:      … Were you shown a group of photos.
> A:      Yes, sir.
> Q:      And can you give us an idea of how many [photos] there were?  More than ten?
> A:      Yes, it was a lot of pictures.
> Q:      And when you looked at them, did you pick out a picture of the man that you saw putting a gun in his belt?
> A:      Not really, sir.  **The guy told us to be one hundred percent honest** and that's what I was trying to be.  I looked at the picture.  I went back to the same picture more than three times, you know, but I told the police officer I wanted to be honest, …."

Q:      At sometime did you have another opportunity to see a picture of the man  that you saw putting the gun in his belt?

A:      Yes, sir.

Q:      Would you tell us who showed you the picture and when and where that was?

A:      It was in front of our house.  A guy came out – I forget his name, but he was a – I don't know if he was a police officer or not.  I thought he was.  I think it was that man right there [– identifying Plaintiff's defense counsel, Attorney Rappaport]. **Consol. Ex. 21(B)** at 160-161 (emphasis added).

Q:      (by Attorney Rappaport) Now, during the period of time from the day that we came to your house, about a week after the incident, until the time that you spoke to me a week ago, did anybody show you – did any police show you any photographs of Shawn Drumgold?

A:      No, sir.

Q:      Is it fair to say, though, is it not, that you had seen Shawn Drumgold's picture independent of any police showing?

A:      Everybody did, in the paper.

Q:      It's fair to say, ma'am, that you saw Shawn Drumgold on T.V. as well?

A:      Yes.  **Consol. Ex. 21(B)** at 178-182. *See also id.* at 185-186.

Q:      [by Attorney Rappaport] Now, when I came to speak to you last week, that was the very next time anybody either showed you Mr. Drumgold or showed you a photograph of Mr. Drumgold, right?

A:      Right. **Consol. Ex. 21(B)** at 187.

Of significance, when addressing the Court at sidebar regarding admission of a news article with Plaintiff's photograph, Attorney Rappaport pointed out to the court that:

> [Mary] has stated that she has seen no photos between the time that the officers came to her house and last week when I showed her a photograph of Shawn Drumgold wearing the same clothes depicted in that picture.  **I'm certainly not saying, and I was very careful to say that there was no police suggestion in this particular case,** but human nature being what it is, it's my theory that this is why she was able to identify the photo. **Consol. Ex. 21(B)** at 184 (discussing theory that Mary identified Plaintiff because she had seen his photograph numerous times in on T.V. and in newspapers) (emphasis added).

Responses ¶¶ 136, 137:  Plaintiff agrees with Walsh's statements of facts in ¶¶ 136 and 137.  The additional statements in responses to ¶¶ 136 and 137 should be stricken as they are based on Lola's unreliable testimony and are insufficient to create an issue of material fact in light of Mary's detailed testimony at Plaintiff's trial, which is discussed *supra* with respect to Plaintiff's response to ¶ 133.  Further, Plaintiff's additional statements have nothing to do with

Walsh and cite only to Lola's unreliable responses to Attorney Scapicchio's leading and highly suggestive questions. *See* **Plaintiff's Ex. 2** at 10-11 and at 13-14 (wherein the Court chastises Attorney Scapicchio for suggesting answers to witnesses). *See also supra* Section A.

Response ¶ 140:  Plaintiff's response to ¶ 140 "Not agreed" should be stricken because the remainder of the response fail to controvert Walsh's statement in ¶ 140.  In fact, the remainder of the response merely rewords that which is said in ¶ 140 of the Consolidated Statement in a blatant attempt to cause confusion and create an issue of material fact where none exists. *See* **Consol. Ex. 21(B)** at 156-159, 178-179, 187-188, 196.

Response ¶ 145:  Plaintiff's entire response to ¶ 145 should be stricken.  First, "Not agreed" should be stricken because the remainder of the response does not controvert Lola's testimony that she did not read the second page of the affidavit before signing it.  Moreover, the circumstances of Lola signing the affidavit is irrelevant and immaterial to summary judgment.

Response ¶ 146:  Plaintiff's entire response to ¶ 146 should be stricken.  First, the additional statements in the response fail to controvert Lola's testimony that she has no knowledge whether Mary was pressured or threatened. **Consol. Ex. 22** at 193-194, 213-214.  Second, the additional statements are insufficient to create an issue of material fact in light of Mary's medical history and Mary's detailed testimony at Plaintiff's trial (discussed *supra* regarding response to ¶ 133.  Moreover, the additional statements have nothing to do with Walsh and cite only to Lola's unreliable responses to Attorney Scapicchio's leading and highly suggestive questions as to what she told police regarding Mary's condition. *See* **Plaintiff's Ex. 2** at 10-11 and at 13-14 (wherein the Court chastises Attorney Scapicchio for suggesting answers to witnesses). *See also supra* Section A.

Indeed, there is absolutely no support in Mary's medical records that she had memory loss prior to February 1989.  *See* **Consol. Ex. 21(A)**; **Plaintiff's Ex. 17**.  While there is one 1989

record which indicates that Mary had a single episode of amnesia where she forgot her son's name, there are <u>no other</u> records dated prior Plaintiff's criminal trial that indicate any other memory problems.   Moreover, Lola testified that: (1) Mary remembered the circumstances surrounding the Moore homicide; (2) Mary did not have any health problems other than headaches; and (3) Lola does not recall Mary having any memory problems before her first seizure and does not know if Mary had memory problems at any time. **Consol. Ex. 22(A)** at 60, 184-185, 193-194, 210-214.   Finally, Lola's testimony is clearly unreliable to any extent it suggests that she told police that Mary had brain cancer at any time prior to February 1989 as there would have been no basis to tell anyone that Mary had brain cancer prior to February 1989 when Mary was first diagnosed as having a brain tumor. **Consol. Ex. 21(A); Plaintiff's Ex. 17**.

    <u>Response ¶ 165</u>:  Plaintiff's response to ¶ 165 "Not agreed" should be stricken because it does not controvert Walsh's statement in ¶ 165 and does not create any issue of material fact.

    <u>Responses ¶¶ 166, 167</u>:  Plaintiff's entire responses to ¶ 166-167 should be stricken. First, Plaintiff's additional statements fail to controvert Walsh's statements regarding his testimony in ¶¶ 166 and 167.   Second, there is no record support for Plaintiff's statement that Murphy's report was "produced by the Boston Police Department for the first time on Day Five of" the new trial motion hearing.   Third, when Walsh's complete testimony is considered, there are no inconsistencies and Plaintiff is clearly trying to cause confusion and create an issue of material fact where none exists.  Walsh testified, in relevant part, as follows:

> Q:      Would it have been in your police file?
> A:      Yes, ma'am.
> Q:      Would it have been turned over to the District Attorney's office in conjunction with any investigation in this case?
> A:      It should have been in our file.  If it was in our file, it was turned over.
> …
> A:      If it wasn't in our file, it didn't exist because everything went into the file. **Plaintiff's Ex. 5** at 179-180.

> Q:     Do you have a memory of seeing [Murphy's report] in the file?
> A:     Again, I have no memory of seeing it in the file.  **Plaintiff's Ex. 5** at 186.

There is no inconsistency here.  Further, at his February 2007 deposition, Walsh merely testified:

> Q:     When do you **first remember seeing** [Murphy's report]?
> A:     First remember seeing it?
> Q:     Yes.
> A:     Probably a month or two ago. **Plaintiff's Ex. 9(B)** at 177-178 (emphasis added).

This testimony hardly creates an issue of material fact despite his 2003 testimony (which Plaintiff conveniently misrepresents) that "I'm sure I've seen it before.  I just don't have a memory to it." **Plaintiff's Ex. 5** at 179.

Response ¶ 169:  Plaintiff's entire response to ¶ 169 because it fails to controvert ¶ 169 as to Callahan's testimony and fails to create any triable.  Callahan testified, in relevant part:

> A:     Yes.  I believe we went to talk to [Anthony] and my recollection was he didn't cooperate, he didn't give us any information, and we never – I don't recall writing a report on that occasion.  **Consol. Ex. 13(B)** at 36

> A:     I can't – I have a memory of [Anthony] not being very cooperative.  That's my best recollection. *Id.* at 42.

> Q:     And to the best of your recollection, you only interviewed him once?
> A:     I think we only talked to him once, yes. *Id.* at 43.

Response ¶ 172:  Plaintiff's entire response to ¶ 172 because it is self-serving and is based solely on Anthony's unreliable 2003 new trial motion testimony.  At the 2003 new trial hearing, Anthony unequivocally testified that he told police the truth. **Consol. Ex. 12(C)** at 106-107, 138, 142.  It is highly significant that Anthony's attempt to recant this testimony did not occur until <u>after</u> Anthony listened to the recorded statement at the hearing.  Notably, when asked "But assume for the sake of my questioning that there is a taped statement that exists, even if you didn't see it.  How do you explain –" Anthony could only explain, "If it's a taped statement, it ain't me talking.  It ain't me saying that.  It ain't me.  It's somebody else." **Consol. Ex. 12(C)** at 113.  Anthony goes so far to claim that police fabricated the recorded statement and that he never

told police the things that were in the recorded statement. **Consol. Ex. 12(C)** at 113-114.  Also of

significance, Attorney Mahaney, who represented Anthony's interests with respect to pleading

the Fifth Amendment at the criminal trial, stated to the Court:

> Your Honor, this was a statement not under oath at the time and he was not
> represented by counsel.  **Now, I've had considerable conversations with Mr.
> Antonio Anthony regarding the nature of the statements and where and
> when they were made.**  Your Honor, in conversations with him, I feel at this time
> that the statements made by Mr. Anthony could incriminate himself in this case.
> … Therefore your Honor, after instructing him of his options, he informs me that
> he wishes not to testify.  **Consol. Ex. 12(D)** at 11.

Based on the foregoing, Plaintiff cannot seriously expect to rely on any portion of Anthony's

2003 testimony.  Of note, Anthony also claimed that had he known about the recorded statement,

he would have come forward – however, he clearly knew about the statement, but did not come

forward. *See* **Consol. Exs. 12(C)** at 112-113; **12(D)** at 11.

Response ¶ 180:  Plaintiff's entire response to ¶ 180 because it does not controvert

McPherson's unequivocal testimony that she does not know and has never heard of Walsh.

Moreover, Plaintiff misrepresents that McPherson testified that she had contact with the

"investigating officer."  This is false.  McPherson merely testified that "police" came to her

house right after the Moore homicide. *See* P Ex. 1 at 177. *See also supra* Section A.

Response ¶ 181:  Plaintiff's entire response to ¶ 181 because that McPherson does not

recall providing a recorded statement on June 10, 1989 does not controvert the fact that she <u>did</u>.

Response ¶ 184:  Plaintiff's entire response to ¶ 184 because it does not create an issue of

material fact as to ¶ 184 which is made for foundational purposes with regard to McPherson's

testimony as what she observed Plaintiff wearing at 6:00 p.m. on the day of the murder.

Response ¶ 185:  Plaintiff's entire response to ¶ 185 because ¶ 185 says nothing about

stripes and as such, Plaintiff's response does not controvert McPherson's testimony that she

observed Plaintiff in a black and white Adidas suit. **Consol. Exs. 26(A)** at 5-6; **26(B)** at 64-65.

<u>Responses ¶¶ 186, 193</u>:  Plaintiff's entire responses to ¶¶ 186 and 193 because they do not controvert Walsh's statement as to McPherson's unequivocal testimony at his criminal trial:

> A:    It was me and Tiffany.  Shawn hugged me and Tiffany and kissed us on our cheek.
> Q:    And at that time did Mr. Taylor say anything in your presence to the defendant Shawn Drumgold?
> A:    He said, "Come on, Shawn, you know we got to go do this."
> Q:    Say that again slowly.
> A:    "Come on Shawn, you know we got to go do this." **Consol. Ex. 26(B)** at 65.

Moreover, McPherson's testimony over 14 and more years later does not reliably controvert her October 3, 1989 trial testimony. *See supra* Section A.

<u>Responses ¶¶ 187, 188</u>:  Plaintiff's entire responses to ¶¶ 187 and 188 because Plaintiff fails to cite any record support for his disagreement with Walsh's statements in ¶¶ 187 and 188 as to McPherson's unequivocal testimony with respect to the affidavit.  Contrary to Plaintiff's response to ¶ 188, McPherson testified:

> Q:    Well if you disagreed with the affidavit or any portion of it, would you tell someone?
> A:    I don't know.  I was so nervous.  This whole thing just got me – I don't know.  I don't know.  During that time I probably wouldn't have. **Consol. Ex. 26(C)** at 49.

Moreover, the last sentence of the response to ¶ 187 does not controvert any statement in ¶ 187 as Walsh does not state in ¶ 187 that McPherson disagreed with the contents of the affidavit.  And, the last sentence of ¶ 188 is irrelevant to the statement.

<u>Responses ¶¶ 189, 190, 191, 192</u>:  Plaintiff's entire responses to ¶¶ 189-192 as Plaintiff conveniently omits from his Exhibits McPherson's testimony wherein she clarifies that she only recalls being yelled at on one occasion by an unknown "fat guy" and that this was at the courthouse during Plaintiff's criminal trial. *See* **Consol. Ex. 26(C)** at 135-138, 149.

<u>Responses ¶¶ 195, 198</u>  The second and third sentences of response to ¶ 195 and the entire response to ¶ 198 should be stricken.  First, the responses fail to controvert Walsh's

statements regarding Johnson's trial testimony.  Second, in his response to ¶ 196, Plaintiff admits that Johnson testified at trial that he did not mention Plaintiff's name to Walsh and that the only reason that he thought the shooter was Plaintiff was because the shooter had bow legs.  Finally, Plaintiff omits Johnson's trial testimony wherein clarifies that he only spoke to Walsh on one occasion and that Walsh did not show him any photographs. *See* Consolidated Statement ¶¶ 196-198, 200-202 and supporting exhibits.

Response ¶ 197:  Plaintiff's entire response to ¶ 197 because Plaintiff omits Johnson's criminal trial testimony wherein he clarifies that he only spoke to Walsh on one occasion and that he thereafter began speaking to Callahan and McDonough. *See* Consolidated Statement ¶¶ 196-198, 200-202 and supporting exhibits.  The last sentence must be stricken because its sole support is the inadmissible Boston Globe news article. *See supra* Section A.

Response ¶ 201:  Plaintiff's entire response to ¶ 201 because its sole support is the inadmissible Boston Globe new article. *See supra* Section A.  Moreover, Plaintiff's response does not controvert that Johnson provided a recorded statement to Callahan on August 16, 1989.

Responses ¶¶ 203-204, 211, 212:  Plaintiff's entire responses to ¶¶ 203-204, 211-212 because Plaintiff's response and self-serving allegation that "Walsh was aware that Evans was being housed at the Howard Johnson's and did not disclose that fact to either the District Attorney or the defense" is not supported by the record. *See* **Exhibit 1**, Errata Sheet for Walsh's February 19, 2007 (correcting page 183, lines 10-11, Walsh states that he did not become aware that Evans was put up in a hotel until "just prior to the motion for new trial").    The uncontroverted evidence is that Walsh: (i) never had any contact with Evans; (ii) never spoke to Evans about the Moore homicide; (iii) did not arrange for Evans to stay at a hotel; and (iv) did not provide Evans with money for food or expenses. *See* Consolidated Statement ¶¶ 203-212 and supporting exhibits.

Response ¶ 208:  Plaintiff agrees with Walsh's statement in ¶ 208.  The remainder of the response should be stricken from the record on Walsh's motion for summary judgment because it does not involve Walsh and is thus insufficient to create an issue of material fact as to Walsh.

Response ¶ 216:  Plaintiff's entire response to ¶ 216 because it fails to controvert Walsh's statement in ¶ 216 as to Plaintiff's own testimony that he did not tell Attorney Rappaport that Graham had information relevant to where he was at the time of the Moore murder.

Response ¶ 223:  Plaintiff's entire response to ¶ 223 because Plaintiff omits testimony wherein Graham clarifies that she does not know if the male who called her was a police officer or a prosecutor and wherein she states that the male merely told her that she had an outstanding warrant and that if she testified at trial she could be arrested on that warrant after getting off of the stand. Consolidated Statement ¶¶ 217-225 and supporting exhibits.

Responses ¶¶ 227, 228, 229:  Plaintiff's entire responses to ¶¶ 227-229 because they do not controvert Walsh's statement as to Keller's testimony and because Plaintiff omits reference to testimony wherein Keller clarifies that at no time did Graham indicate to him that the men were police officers.  **Consol. Ex. 19(B)** at 285-287, 301-305.

Response ¶ 236:  Plaintiff's entire response to ¶ 236 because it is based solely on Hullum's inadmissible affidavit in support of Plaintiff's new trial motion and it fails to controvert Walsh's statements as to Hullum's testimony. *See supra* Section A.

Response ¶ 243:  Plaintiff's entire response to ¶ 243 because Plaintiff misrepresents Walsh's statement – Walsh does <u>not</u> state that "Hullum saw Drumgold at the time of the Tiffany Moore murder."  Walsh merely states that Hullum was identified as a "possible witness" in the recorded statement of Graham (as Graham stated Hullum was with her on the day of the murder).

Response ¶ 247:  Plaintiff's entire response to ¶ 247 because Plaintiff misrepresents Walsh's statement – Walsh does <u>not</u> state that Plaintiff "was aware that Hullum had seen him on

the night of the murder."  Walsh merely states, citing to Plaintiff's own testimony, that Plaintiff did not tell Attorney Rappaport that Hullum had information relevant to where he was at the time of the Moore murder.

WHEREFORE, for the above stated reasons, Defendant Richard Walsh, respectfully requests that his Motion to Strike Plaintiff Shawn Drumgold's Response to the Consolidate Statement of Undisputed Material Facts in support of Walsh's motion for summary judgment be GRANTED.

**Defendant,**
**RICHARD WALSH,**
By his attorney,

DATED:  December 26, 2007                    /s/ Hugh R. Curran_____
                                            Hugh R. Curran (BBO# 552623)
                                            Bonner, Kiernan, Trebach & Crociata, LLP
                                            200 Portland Street, Suite 400
                                            Boston, Massachusetts 02114
                                            (617) 426-3900
                                            (617) 426-0380 fax

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on the 26th day of December, 2007, I electronically filed with within document with the Clerk of the United States District Court for the District of Massachusetts, using the CM/ECF System.  The following participants have received notice electronically:

**For Plaintiff Shawn Drumgold,**
Michael W. Reilly, Esq.
Tommassino & Tommasino
Two Center Plaza
Boston, MA 02108-1904

**For Plaintiff Shawn Drumgold,**
Rosemary Curran Scapicchio, Esq.
Four Longfellow Place, Suite 3703
Boston, MA 02114

**For Defendant, City of Boston**
Susan Weise, Esq.
Chief of Litigation
Assistant Corporate Counsel
City of Boston/Law Department
City Hall, Room 615
Boston, MA 02201

**For Defendants City of Boston and Francis M. Roache,**
John P. Roache, Esq.
Hogan, Roache, & Malone
66 Long Wharf
Boston, MA 02110

**For Defendant Timothy Callahan,**
MaryJo Harris, Esq.
Morgan, Brown & Joy
200 State Street, 11th Floor
Boston, MA 02109

**For Defendant Paul Murphy,**
William White, Esq.
One Faneuil Hall Marketplace, 3rd Floor
Boston, MA 02109

/s/ Hugh R. Curran_____