UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO.  04-CV-11193-NG

_____
SHAWN DRUMGOLD,              )
                             )
    Plaintiff               )
                             )
vs.                          )
                             )
CITY OF BOSTON, ET AL.,      )
                             )
    Defendants              )
_____)

**DEFENDANT TIMOTHY CALLAHAN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO STRIKE PLAINTIFF'S EXHIBITS AND CONCISE STATEMENT OF DISPUTED MATERIAL ISSUES OF FACT**

Defendant Callahan joins the Motion of Richard Walsh to Strike Plaintiff's Exhibits and Statement of Disputed Material Facts, and further moves to strike additional Statements offered by the Plaintiff in his opposition to Callahan's Motion for Summary Judgment.

As grounds, Callahan states that the statements offered by Plaintiff do not comport with the requirements of Fed.R.Civ.P. 56 and Local Rule 56.1, in that the statements are mischaracterizations of the statements of witnesses, and in that the Plaintiff submits conclusions of fact, unsupported by any competent evidence whatsoever, in support of his opposition.  These deficiencies are such that the offered statements should be stricken and disregarded at summary judgment.  *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49-51 (1st Cir. 1990).  Callahan specifically moves to strike the following:

A.     **Plaintiff's Statement at ¶¶ 42, 47, 49, 51, 53, 54** relative to Ricky Evans.

Because the Plaintiff's Statement mischaracterizes the testimony alluded to in these paragraphs, it should be stricken:

In Plaintiff's statement at ¶ 42, he claims that Ricky Evans testified that Callahan "pushed Apple's photo away," "drew [Evans's] attention to the pictures of Drumgold and Taylor and said 'these are the two…'" This statement is a wholly incorrect recitation of the deposition testimony. In fact, Evans showed a decided disinclination to directly accuse Callahan of doing anything other than ask Evans to review photographs:

> Q:   [Callahan] comes and he shows you a series of three photographs?
>
> A:   Mm-hmm.
>
> Q:   Okay.
>
> A:   I don't remember what the conversation was after, but I remember – I remember sitting there, and I remember pointing – I remember pointing to – to Apple. I remember pointing to Apple, and it was like whenever I – when I – you know, I'd point to Apple, and it was like he didn't – he didn't want to hear – he didn't want to hear that it was Apple. He always like – he just wanted me to sit there and just say, you know, these are the two, these are the two pictures that I'm showing you here, and these are the two people that – it was like he was possessed. It was like these people that was on these two pictures here side by side. Apple's picture was up here. He wanted to know about these two people here. He didn't want to know nothing about that person there. (Plaintiff's Ex. 12 A at p. 160).

No where in the cited deposition pages does Callahan "push" Apple's picture away; nor does Evans ever allege that Callahan said anything to him about how he, Evans, should testify. At most, Evans testified about what he thought Callahan wanted him to do. Evans' opinions are inadmissible, and are not competent to create a material issue of fact.

Plaintiff also mischaracterizes the deposition testimony of retired detective Paul McDonough. In Plaintiff's Statement at ¶ 50, he reports that McDonough removed defaults for Evans "by falsely telling the court that he had been arrested." McDonough in fact testified that he turned Evans over to the custody of the court officer, who then processed the default warrant:

> Q: And when you indicate the Defendant [Evans] has been arrested as ordered by the court, had you arrested Ricky Evans?
> A: No.
>
> Q: Do you know if anyone else had arrested Ricky Evans?
>
> A: A court officer came in very shortly afterwards and brought him into court.
>
> Q: Did you understand that that was an arrest by the court officer?
>
> A: Yes.

(P's Ex. 28, p. 38)

Plaintiff also suggests, at Statement ¶¶ 51 and 53, that McDonough testified he informed Callahan that he had cleared up Evans' warrants. The record reflects that at most, McDonough testified to having brought Evans to the Roxbury court on one occasion, and that McDonough was far from certain that he had shared this information with Callahan, but rather "assumed" he did, despite his general lack of recollection:

> Q: When you got back [from court], did you talk to Tim Callahan?
>
> A: I don't remember talking with anybody the rest of that day. I have no recall.
>
> Q: At some point, did you tell Tim Callahan that you had gone with Ricky Evans to the Roxbury District Court?
>
> A: I believe I did because I did – he knew everything that I did.

>   …
>
>   Q:   What's your best memory of when you told him you had gone to the Roxbury District Court with Ricky Evans?
>
>   A:   I would assume that day …
>
>   …
>
>   Q:   Do you remember him saying anything to you when you told him that you had taken Ricky Evans to the Roxbury district court?
>
>   A:   I don't recall.
>
>   Q:   Do you remember having any conversation with him around the time that you took Ricky Evans to the Roxbury district court about the fact that Ricky Evans was potentially involved in a case that the two of you were investigating?
>
>   A:   I don't recall any conversation.

(P's Ex. 28, pp. 40 – 42).

Likewise, at Plaintiff's Statement, ¶ 54, he alleges that former ADA Connolly "denied" ever asking McDonough to clear up warrants for Evans. Connolly did not "deny" having done so; he claimed a lack of memory. He also had no memory of Evans having a criminal record at all (and the fact that he did, of course, is not in dispute in this case) :

>   Q:   Do you remember instructing Detective Paul McDonough to take Ricky Evans to the Roxbury District Court to remove default warrants?
>
>   A:   No, I don't have a specific memory of it.
>
>   …
>
>   Q:   Did you know what, if any, criminal record Ricky Evans had?
>
>   During the time you were prosecuting the Treas Carter case?
>
>   A:   I don't have a memory of whether he had any record frankly, but no.

(P's Ex. 30, pp. 16-17).

Finally, to the extent the Plaintiff's Statement relies on testimony elicited at the Motion for New Trial, those statements should be stricken since Callahan had no opportunity to cross examine the witnesses during that proceeding. *See Biggers v. Southern Railway Co.*, 820 F.Supp. 1409, 145.   Thus, Plaintiff's Statement at ¶ 47 (in which Evans allegedly testified that "they" fed him information) should be stricken.

**B.     Plaintiff's Statement at ¶¶ 56 – 61** relative to Olisa Graham.

Callahan moves to strike the averments that relate to Olisa Graham, since those statements are culled from the transcript on Plaintiff's Motion for a New Trial, are again misstatements of the actual testimony offered by Graham, and consist of assumptions unsupported by the record.

As noted in Walsh's Motion to Strike, the testimony at issue on this very point – the alleged threats to Olisa Graham in a telephone call made by an anonymous male – was elicited by Plaintiff's counsel at the hearing on the Motion for New Trial and was subject to reprimand by the Court:

> I'm going to caution you about several things.  You are going to have to follow the rules of evidence.  The rules of evidence require that testimony be elicited upon the competent and personal knowledge of the witness.  You are asking leading questions.  You have not identified how she knew it was a police officer on the telephone call <u>and I will not be able to consider any of this testimony unless it comes in competent form.</u>  (Consol. Ex. 29(B)).

Plaintiff has never cured the deficiency that the court explicitly pointed out at the 2003 hearing.  There is no evidence that any police officer made a telephone call to Graham.

Further, as already outlined in the Defendants' Motions for Summary Judgment, the fact that Graham allegedly received a telephone call from anyone is immaterial:  Her

allegedly exculpatory statement (taken by Callahan) was disclosed to Plaintiff's counsel, who never attempted to speak to her or intended to call her as a witness. Thus, regardless of whether Graham felt herself threatened or not, she was never going to testify at Plaintiff's trial. His counsel decided against calling her as a witness. Thus, the "statement of fact" by Plaintiff that Graham "was planning to testify before she received that telephone call" is wholly irrelevant and cannot be considered at summary judgment.

## CONCLUSION

For the reasons stated herein, and for the reasons set forth in Walsh's Motion to Strike, Callahan respectfully requests that the Court grant his Motion to Strike.

>Respectfully submitted,
>Defendant Timothy Callahan
>By his attorney,
>
>  /s/ Mary Jo Harris
>Mary Jo Harris, BBO # 561484
>Morgan, Brown & Joy, LLP
>200 State Street
>Boston, MA 02109-2605
>(617) 523-6666

Dated: December 26, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I served a copy of the within pleading via filing with the ECF system on all counsel of record.