UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
SHAWN DRUMGOLD,                     )
        Plaintiff                   )
                                    )
v.                                  )   CIVIL ACTION NO. 04-11193-NG
                                    )
TIMOTHY CALLAHAN, et. al.,          )
        Defendants                  )
_____)

**DEFENDANTS THE CITY OF BOSTON AND FRANCIS M. ROACHE'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STRIKE PLAINTIFF'S EXHIBITS AND CONCISE STATEMENT OF DISPUTED MATERIAL ISSUES OF FACT**

Defendants, the City of Boston and Francis M. Roache, join the Motion to Strike Plaintiff's Exhibits and Concise Statement of Material Facts filed separately by both Richard Walsh and Timothy Callahan, and further moves to strike additional Statements offered by the Plaintiff in his opposition to the City of Boston and Francis M. Roache's Motion for Summary Judgment

As grounds therefore, the City of Boston and Francis M. Roache state that the statements offered by Plaintiff do not comport with the requirements of Fed.R.Civ.P. 56 and Local Rule 56.1, in that the statements are not supported by competent evidence from the record.  "Oppositions to motions for summary judgment shall include a concise statement of **the material facts of record** as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."  Local Rule 56.1 [Emphasis added.]  Only evidence that would be admissible at trial may be considered by the court on summary judgment.  Garside v. Osco Drug, Inc., 895 F.2d 46, 49-51, (1st Cir.1990).

A motion to strike is the proper vehicle for challenging the admissibility of evidence offered at summary judgment. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 682 (1st Cir.1994). The moving party must specify the objectionable portions of the opposing party's summary judgment materials along with the grounds for the objection. Id. The Court should disregard only those facts that are inadmissible and consider the rest of the parties' evidence. Id.

The City of Boston and Francis M. Roache specifically move to strike the following from Plaintiff's Concise Statement of Disputed Material Issues of Fact:

**1.      Plaintiff's Statement at ¶ 62 relative to the Boston Police Department appraising the performance of its officers.**

As the Plaintiff's Statement is based on evidence inadmissible at trial and mischaracterizes the testimony cited in these paragraphs, it should be stricken.

In Plaintiff's statement at ¶ 62, he states "In 1988 and 1989 there was no formal Boston Police Department system to gauge the performance of police officers or hold supervisors, patrol officers, or detectives accountable for their actions and performances." It should be noted that the Plaintiff makes two separate assertions under the guise of one: that there was no formal system in place to gauge the performance of officers and no formal system in place to hold those officers "accountable." This statement, in all its parts, is not supported by the record as cited.

First, the Plaintiff relies on the Report of the Boston Police Department Management Review Committee (P. Ex. 31, p. 7). This document, also known as "The St. Clair Report, is hearsay and relies on hearsay. Therefore, it is not evidence that would

be admissible at trial and may not be considered by the court on summary judgment. See Garside, 895 F.2d at 49-51.

The Plaintiff further relies on the 30 Day St. Clair Implementation Report generated by the Boston Police Department. (P. Ex. 32, pp. 22-24.) This document does not support the Plaintiff's statement that there was no appraisal system in place, but rather adopts one of several recommendations made by the St. Clair committee to institute a performance appraisal system "consistent with the department's new strategic plan." (P.Ex. 32, pp. 22-23). As cited by the Plaintiff, it does not support the assertion that the Boston Police Department had no formal process or framework for evaluating the performance of its officers.

The Plaintiff further cites to the testimony of John Daley and Edward McNelley in support of his statement in ¶ 62. These two men were the supervisors for the Boston Police Department's Homicide Unit respectively during 1988 through 1989. The testimony of these officers to which the Plaintiff refers does offer support that there was no formal evaluation procedure for detectives in the Homicide Unit during this period of time though both of these supervising officers describe the type of daily, regular supervision of the detectives performing their duties under their respective commands. (P. Ex. 34A, pp. 14-18; P. Ex. 35, pp. 128-128). However, the Plaintiff, in combination with the St. Clair Report and the 30 Day Implementation Report, offers this deposition testimony to encompass, quite improperly, the entire Boston Police Department. The statement in ¶ 62 is not supported by the record and should be stricken.

**2.      Plaintiff's Statement at ¶ 63 relative to homicide investigative policies.**

As the Plaintiff's Statement is not supported by the record and mischaracterizes the testimony cited in this paragraph, it should be stricken.

In Plaintiff's statement at ¶ 63, he states "There were no written homicide investigative policies known to homicide detectives in 1988-1989." This statement is not supported by the record as cited.

The Plaintiff cites to the deposition testimony of Timothy Callahan and John Daley in support of his statement. (See P. Ex. 29, p. 35 and P.Ex. 34A, p. 13 respectively.) Callahan states that he does not recall a written policy though there were regulations about assigned duties in a homicide investigation. Daley's testimony is corroborative of Callahan on this issue.

The Plaintiff also relies on the sworn report of his expert, Michael Lyman. (See P. Ex. 36, pp. 24-25.) As cited, Mr. Lyman's report does not support the statement that the Plaintiff attributes to it. Moreover, Mr. Lyman has no factual knowledge on which to even assert such a claim. A copy of Rule 205 of the Boston Police Department which pertains to death investigations was produced to the Plaintiff during discovery. It does not appear that Mr. Lyman was given a copy of this rule by the Plaintiff as he did not list it in the appendix to his report. Therefore, in light of the above, the statement in ¶ 63 is not supported by the record and should be stricken.

**3.      Plaintiff's Statement at ¶ 64 relative to training of homicide investigators.**

As the Plaintiff's Statement is not supported by the record and mischaracterizes the testimony cited in this paragraph, it should be stricken.

4

In Plaintiff's statement at ¶ 64, he states "The Boston Police Department did not provide any particularized training for homicide detectives." This statement is not supported by the record as cited.

The Plaintiff cites to the St. Clair Report in support of this statement as if it were a source of facts. As discussed above, the St. Clair Report is hearsay and inadmissible as evidence and should not be considered by this court for summary judgment.

The Plaintiff cites to the deposition testimony of John Daley in support of his statement. (P.Ex. 34A, p. 13.) However, the Plaintiff mischaracterizes Daley's testimony. Daley testified among other things that he did not keep training records or that the Boston Police Department had regulations pertaining to training for homicide detectives. This does not support Plaintiff's statement that the Boston Police Department did not provide particularized training for homicide detectives. Defendants the City of Boston and Francis M. Roache in their motion for summary judgment catalog at length the various training programs the defendant officers participated in prior to and during their service as detectives with the homicide unit, including their participation in a private homicide investigation training program. (See Defendants City of Boston and Roache's Statement of Uncontested Facts.) Callahan's deposition testimony to which the Plaintiff cites in support of his statement in ¶ 64 actually contradicts Plaintiff's statement and Daley's testimony by stating that he attended that above-described homicide program. (See P.Ex. 29, pp. 31-32.)

The Plaintiff also relies once more on the report of his expert, Michael Lyman. (See P. Ex. 36, pp. 24-25.) As cited, Mr. Lyman's report again does not support the statement that the Plaintiff attributes to it. Moreover, Mr. Lyman has no factual

5

knowledge on which to even assert such a claim.  In fact, the pages of Mr. Lyman's report to which the Plaintiff cites do not even pertain to the training of homicide detectives in the Boston Police Department.  Therefore, in light of the above, the statement in ¶ 64 is not supported by the record and should be stricken.

4.     **Plaintiff's Statement at ¶ 66 relative to in-service training.**

As the Plaintiff's Statement is not supported by the record cited in this paragraph, it should be stricken.

In Plaintiff's statement at ¶ 66, he states "The in-service training provided by the Boston Police Department was considered a joke.  Many officers stopped going to in-service training and many officers patrolling the streets of Boston did not know the recent changes in the law."  This statement is not supported by the record as cited.

The Plaintiff's statement is lifted almost word-for-word from the pages of the St. Clair Report.  (See P. Ex. 31, p. 73.) .  The Plaintiff cites to the St. Clair Report again as if it were a source for facts.  As discussed above, the St. Clair Report is hearsay, the facts which the Plaintiff seeks to prove are presented as hearsay, and inadmissible as evidence and should not be considered by this court for summary judgment.  Therefore, in light of the above, the statement in ¶ 66 is not supported by the record and should be stricken.

5.     **Plaintiff's Statement at ¶ 67 relative to oversight of the Boston Police Department of allegations of officer misconduct in state trial proceedings.**

As the Plaintiff's Statement is not supported by the record cited in this paragraph, it should be stricken.

In Plaintiff's statement at ¶ 67, he states "The City of Boston had no formal monitoring or method of learning of findings by state judges that Boston Police officers

had engaged in illegal or unconstitutional behavior in criminal cases." This statement is not supported by the record as cited.

The Plaintiff's statement relies on the deposition testimony of Roache, Walsh and Daley. Former Commissioner Roache's cited testimony contradicts the Plaintiff's Statement in ¶ 67 in that Roache relied on the legal advisor's office of the Boston Police Department and the city's corporation counsel to keep him aware of any allegations of misconduct of officers in criminal proceedings. (See P. Ex. 37, pp. 22-23.)

Walsh's deposition testimony does not support the Plaintiff's statement either. (See P. Ex. 9A, Vol. I, pp. 85-86.) Plaintiff's counsel inquired whether the Boston Police Department would investigate the actions of an officer if a statement taken by a police officer was suppressed by the court. Id. Walsh testified that such a matter was simply regarded as a mistake. (See P. Ex. 9A, Vol. I, p. 86.)

The Plaintiff also relies on the deposition testimony of John Daley. (See P. Ex. 34B, pp. 90-94.), but the testimony to which the Plaintiff cites in ¶ 67 concerns Judge Volterra's order to suppress the Plaintiff's statement and that Daley was not aware of that court's specific findings of "egregious misconduct." The cited testimony of Daley does not support Plaintiff's assertion that the Boston Police Department lacked any formal monitoring system of criminal proceedings. Therefore, in light of the above, the statement in ¶ 67 is not supported by the record and should be stricken.

**6.      Plaintiff's Statement at ¶ 68 relative to Daley and Judge Volterra's order suppressing the Plaintiff's statement.**

As the Plaintiff's Statement is not supported by the record cited in this paragraph and cites to inadmissible evidence barred by the doctrine of res judicata, it should be stricken.

In Plaintiff's statement at ¶ 68 he states in the first of four sentences "Lt. Daly (sic), the head of the homicide unit in 1988 and 1989, was aware of Judge Volterra's findings suppressing Drumgold's statement." In support, the Plaintiff cites to Daley's deposition testimony. (See P. Ex. 34B, pp. 114-115.)[1] Daley states that he was aware that the statement taken by Walsh and Murphy of the Plaintiff was suppressed, but he denies ever seeing the actual "the actual findings from Judge Volterra." Id. This testimony contradicts that Plaintiff's assertion indicated above. In Plaintiff's Statement at ¶ 70, further confuses the matter as it contradicts Plaintiff's Statement made in ¶ 68: "Although Daly (sic) learned that Drumgold's statement was suppressed because of the actions of Walsh and Murphy he never saw the actual findings from Judge Volterra (P Ex 34B, Daly (sic) Deposition Vol II, pgs. 114-115)." As this first sentence in ¶ 68 is not supported by the record, it should be stricken.

With regard to the remaining three sentences of Plaintiff's Statement in ¶ 68, the Plaintiff recounts some of Judge Volterra's findings in rendering his twenty-eight (28) page "Consolidated Memorandum on Defendant Shawn Drumgold's Motion to Dismiss for Prosecutorial Misconduct; Defendants' Motions to Suppress Statements; Defendants' Motions to Dismiss for Insufficient Evidence Before Grand Jury and Impairment of

---

[1] Plaintiff incorrectly cites to his supporting exhibits as "P. Ex 34A, Daley Deposition Vol 3, pgs. 114-115".

8

Grand Jury Proceedings." (See Walsh Exhibit 24 generally and pp. 21-25.) Though the City of Boston and Roache do not contest that Judge Volterra's consolidated memorandum as anything other than what it purports to be, these defendants would direct the court's attention to Judge Volterra's ultimate finding that "suppression is sufficient to cure any prejudice occasioned by the deliberate misconduct of the authorities; therefore, dismissal of the indictment is unwarranted." (See Walsh, Exhibit 24, p. 24-26.)

The Supreme Judicial Court further dealt with these specific issues in the Plaintiff's appeal. See Commonwealth v. Drumgold, 423 Mass. 230, 240-246, 668 N.E.2d 300, 309-312 (1996).[2] Under the doctrine of collateral estoppel and res judicata, the Plaintiff must be estopped from relitigating issues previously decided and, thus barred from introducing into evidence the above described consolidated memorandum of Judge Volterra. Therefore, in light of the above, the statement in ¶ 68 is not supported by the competent record and should be stricken.

7. **Plaintiff's Statement at ¶ 71 relative to supervision of Murphy and Walsh and the suppression of Drumgold's statement.**

As the second sentence of Plaintiff's Statement is not supported by the record cited in this paragraph, it should be stricken.

In Plaintiff's statement at ¶ 71, he states "No disciplinary action was ever brought against Walsh or Murphy in connection with their taking of Drumgold's statement (P Ex 34B, Daly (sic) Deposition Vol II, pgs. 97-98). Supervisors never talked to Walsh or

---

[2] " 'The only reason to dismiss criminal charges because of nonprejudicial but egregious police misconduct would be to create a climate adverse to repetition of that misconduct that would not otherwise exist.' 'Nothing in the record suggests, nor is there good reason to suppose, that, unless this court provides a prophylactic remedy, police officers are likely to repeat the type of conduct that occurred in this case. In the absence of a demonstrated need for deterrence, a prophylactic remedy is inappropriate.' Therefore, we conclude that the judge correctly denied the defendant's motion to dismiss the indictment on account of prosecutorial misconduct." Drumgold, 423 Mass. at 246. [Internal citations omitted.]

Murphy about the suppression of the Drumgold and Talylor statements (P Ex 9A, Walsh Deposition, pgs. 84-87)." This statement is not supported by the record as cited.

The second sentence of Plaintiff's statement relies on the deposition testimony of Walsh. However, that testimony only encompasses whether any supervisors spoke with <u>Walsh</u> about <u>Taylor's</u> statement being suppressed.

> Q.   Did any of your supervisors ever come to you and talk to you about why it was that a statement of Terrence Taylor was suppressed?
>
>       MR. ROACHE: Objection.
>
> A.   No, sir.
> (P. Ex. 9A, pp. 84-85.)

The Plaintiff improperly tries to broaden the scope of Walsh's cited testimony to include Drumgold and Murphy.

The second sentence of Plaintiff's Statement ¶ 71 is contradicted by the Plaintiff's preceding statements at ¶¶ 69 and 70. Daley was the head of the Homicide Unit and the commanding officer, i.e. supervisor, of Walsh and Murphy when Judge Volterra rendered his decision to suppress Drumgold and Taylor's statements. (See Defendants the City of Boston and Roache's Statement of Uncontested Facts.) Plaintiff's statements at ¶¶ 69 and 70 clearly indicate that Daley spoke to Murphy and Walsh regarding the suppression. (See P. Ex. 34C, p. 194.) Therefore, in light of the above, the second sentence of Plaintiff's Statement ¶ 71 is not supported by the record and should be stricken.

8.  **Plaintiff's Statement at ¶ 72 relative to the causal nexus of Plaintiff's *Monell* claim against the City of Boston.**

    As the Plaintiff's Statement is not supported by the record, it should be stricken.

In Plaintiff's statement at ¶ 72, he states "The failure to establish written policies relating to homicide investigations that were consistent with nationally recognized management principles resulted in the wrongful investigation and conviction of Shawn Drumgold and was directly responsible for the failure of the Department to capture the person or persons truly responsible for the crime." This statement is not supported by the record as cited.

The Plaintiff entirely relies on the sworn report of his expert, Michael Lyman. (See P. Ex. 36, p. 25.) Mr. Lyman has no factual knowledge on which to even assert such a claim. A copy of Rule 205 of the Boston Police Department which pertains to death investigations was produced to the Plaintiff during discovery. It does not appear that Mr. Lyman was given a copy of this rule by the Plaintiff as he did not list it in the appendix to his report. Therefore, in light of the above, the statement in ¶ 72 is not supported by the record and should be stricken.

9. **Plaintiff's Statement at ¶ 75 relative to the validation of alleged misconduct by way of failure to discipline officers.**

As the Plaintiff's Statement is not supported by the record, it should be stricken.

In Plaintiff's statement at ¶ 75, he states "By ignoring the obvious inappropriate behaviors and failing to discipline officers for indiscretions, administrators of the Boston Police Department effectively validated and ratified their conduct. Doing so demonstrates that misconduct within the Boston Police Department was deliberate, systematic, and pervasive." This statement is conclusory and not supported by the record.

11

The Plaintiff quotes almost verbatim from the report of his expert, Michael Lyman. (See P. Ex. 36, p. 26.) Again, Mr. Lyman has no factual knowledge on which to even assert such a claim. This statement is an opinion of the Plaintiff's expert and not fact. Therefore, in light of the above, the statement in ¶ 75 is not supported by the record and should be stricken.

10.     **Plaintiff's Statement at ¶ 76 relative to the validation of alleged misconduct by Boston Police Department administrators.**

As the Plaintiff's Statement is not supported by the record, it should be stricken.

In Plaintiff's statement at ¶ 76, he states "The problem with policemen's (sic) conduct was pervasive and systematic in the Boston Police Department because administrators of the highest rank within the Boston Police Department, who were aware of the inappropriate conduct by the Defendant officers, failed to prevent it. Doing so is an egregious violation of professional conduct and police practices." This statement is conclusory and not supported by the record.

The Plaintiff, again, quotes almost verbatim from the report of his expert, Michael Lyman. (See P. Ex. 36, p. 26-27.) Again, Mr. Lyman has no factual knowledge on which to even assert such a claim. This statement is an opinion of the Plaintiff's expert and not fact. Therefore, in light of the above, the statement in ¶ 76 is not supported by the record and should be stricken.

11.     **Plaintiff's Statement at ¶ 77 relative to Lt. Daley's supervision of Walsh and Murphy.**

As the third and fourth sentence of Plaintiff's Statement mischaracterizes the testimony cited and is not supported by the record, it should be stricken.

In the third and fourth sentences of Plaintiff's statement at ¶ 77, he states "Lt. Daly's (sic) monitoring of Walsh and Murphy's investigation of the Tiffany Moore Case consisted of having two conversations with them, the first one on the morning after the murder (P Ex 34A, Daly (sic) Deposition Vol I, pgs. 20-21) and the second was sometime afterwards. Daly (sic) could not give an approximate date ( P Ex 34A, Daly (sic) Deposition Vol I, p. 29)." This statement mischaracterizes the cited testimony and is not supported by the record.

The third and fourth sentences together in Plaintiff's Statement ¶ 77 imply that Daley spoke with Murphy and Walsh regarding the investigation of the homicide of Tiffany Moore on <u>only</u> two separate occasions. It is clear from the testimony the Plaintiff cites that Daley's memory was faulty, and he needed to rely on his diary or notes to refresh his memory. (See P.Ex. 34A, pp. 20-21 and 29.) Specifically, when asked by Plaintiff's counsel how frequently did he speak with Murphy and Walsh about the Tiffany Moore case, Daley responds, "At least twice." (See P.Ex. 34A, p. 20.) The cited testimony does not indicate that these were the only times that Daley spoke with Murphy and Walsh. In fact, elsewhere in various statements and exhibits cited by the Plaintiff in support of his Statement of Disputed Material Issues of Fact, the record indicates that Daley spoke with Murphy and Walsh with regard to the suppression of the Plaintiff's statement. (See Plaintiff's Statements at ¶¶ 69 and 70 indicating that Daley spoke to Murphy and Walsh regarding the suppression and P. Ex. 34C, p. 194.) Therefore, in light of the above, the third and fourth sentences of ¶ 77 are not supported by the record and should be stricken.

12. **Plaintiff's Statement at ¶ 78 relative to written policies on photo identifications.**

As the Plaintiff's Statement is not supported by the record cited in this paragraph, it should be stricken.

In Plaintiff's statement at ¶ 78, he states "The police officers who investigated the Tiffany Moore case were not aware of any written policies concerning photo identifications." This statement is not supported by the record as cited.

The Plaintiff's statement relies on the deposition testimony of Walsh and Callahan. Walsh does in fact testify that he was "not aware of a written procedure" regarding photo identifications. (See P.Ex. 9A, p. 65.) Callahan could not remember a written policy on how to conduct a photo identification. (See P.Ex. 29, p. 36.) However, Walsh testified to receiving training early on in his career (See P.Ex. 9A, p. 65) and Callahan recalled his training though could not cite its source. (See P.Ex. 29, p. 36.) In fact, the City of Boston produced a manual on criminal investigative procedures to the Plaintiff (numbered COB2775-2870) which contains various procedures on photo identification (cob2856-2859). Therefore, in light of the above, the statement in ¶ 78 is not supported by the record and should be stricken.

13. **Plaintiff's Statement at ¶ 79 relative to report of Ann Marie Doherty regarding the St. Clair Report.**

As the Plaintiff's Statement is not supported by the record cited in this paragraph, it should be stricken.

In Plaintiff's statement at ¶ 79, he states "Roache delegated the responsibility for outlining any opposition or disagreements which he had with the St. Clair Report to

14

Superintendent Ann-Marie (sic) Doherty (P Ex 37, Roache Deposition 32). After concluding her review, Ann-Marie (sic) Doherty never produced any criticisms or disagreement with the report (P Ex 42). A fact finder could reasonably infer that Roache had no criticisms or disagreements with the report." This statement is not supported by the record as cited.

The Plaintiff's statement principally relies on the deposition testimony of Roache. (P.Ex. 37, p. 32.) Roache's cited testimony relative to his office's response to the St. Clair Report states:

> Q.  Did you ever prepare or have prepared on your behalf any criticism or disagreements with the report?
>
> A.  Delegated to Superintendent Ann Marie Doherty and her staff to review the St. Clair Report.
>
> Q.  For what purpose?
>
> A.  To respond to every issue that might have appeared in that document, if that is the document.

Based on this testimony standing alone, the Plaintiff jumps to the conclusion that Doherty a) conducted a review and b) never produced any report outlining criticisms or disagreements with the St. Clair Report based on the Plaintiff's reference to his Exhibit 42. This exhibit is accompanied by the Affidavit of Michael W. Reilly Re: Doherty Documents, the Defendant City of Boston's Response to Plaintiff, Shawn Drumgold's Fourth Request for Production of Documents, correspondence between Attorney Reilly and Attorney John Roache, and those responsive documents produced by the City of Boston pursuant to the Plaintiff's fourth request for documents. In that production, it was noted that the only documents responsive to Request Number 3 regarding Ann Marie

15

Doherty were pages COB2771-2773, an affidavit in support of her request for the grand jury minutes in Bennett case. She states in the first page of her affidavit that she has had "major responsibilities regarding implementation of recommendations concerning the St. Clair report." (P.Ex. 42C, p. COB2771.)

      Plaintiff's counsel continued to question Roache regarding the activities of Doherty relative to the St. Clair Report:

> Q. Did she get back to you?
>
> A. Yes, in a document.
>
> Q. Did she give you a written response?
>
> A. A typed response, yes, a booklet.
>
> Q. There's an, and we'll talk about it in a moment, there's a 30-day response that you submitted, correct?
>
> A. I'm not sure.
>
> Q. Is the document that you're talking about that Ann Marie Doherty prepared different from the 30-day response to the report that was prepared by the Commissioner's office?
>
> A. I can't say.
>
> Q. Do you remember Ann Marie Doherty telling you she had disagreements with the findings made by Mr. St. Clair's committee?
>
> A. I don't remember.
> (P.Ex. 37, pp. 32-33.)

It is clear that Roache does not recall whether Doherty authored the 30-Day Implementation Report or another document. Doherty's affidavit clearly indicates that she was actively participating in the implementation of the St. Clair recommendations.

(P.Ex. 42C, COB2771-2773.) The City of Boston produced and the Plaintiff has offered as exhibits the St. Clair Report (P.Ex. 31), the 30-Day Implementation Report (P.Ex. 32) and "Neighborhood Policing: A Plan of Action for the Boston Police Department (September 1992)" (P.Ex. 33.). Nevertheless Roache's further deposition testimony clearly indicates that he did not agree with a number of the negative assessments the St. Clair Committee had of the Boston Police Department. (See P.Ex. 37, pp. 35-37, and generally.) Therefore, in light of the above, Plaintiff's Statement ¶ 79 is not supported by the record and should be stricken.

**14.     Plaintiff's Statement at ¶ 80 relative to a custom and practice of the City of Boston to employ unconstitutional methods to convict black males of felonies.**

As the Plaintiff's Statement is not supported by competent evidence from the record which would be admissible at trial, it may not be considered by the court on summary judgment. Local Rule 56.1 and <u>Garside</u>, 895 F.2d at 49-51.

The Plaintiff begins his statement at ¶ 80 with the following preface: "From 1982 through at least 1994 the City of Boston had a custom and practice of using threats, intimidation, perjured evidence and withholding of exculpatory evidence in order to convict black males of felonies. The custom or practice was known or should have been known to administrators of the City of the (sic) Boston since the details were available in publicly available records and court filings." The Plaintiff then details five (5) separate instances (ordered "a" through "e") in support of the contention outlined in his preface to ¶ 80.

First, no where in the Plaintiff's complaint does he allege against any party a claim involving racial animus, racially motivated conduct or a cause of action involving

race under 42 U.S.C. § 1981. In fact, the matter of anyone's racial background is never mentioned in the complaint, including that of the Plaintiff. The Plaintiff's novel assertion regarding race is not material and is not supported by competent evidence from the record and should be stricken relative to the race issue and for the additional reasons set forth below.

In support of the Plaintiff's preface to ¶ 80, he offers five (5) "examples" of publicly available records to document a now alleged policy or practice of the Boston Police Department's officers and supervisors to use threats, intimidation, perjured evidence or the withholding of exculpatory evidence to convict black males spanning from 1982 through 1991 (not 1994). Assuming arguendo that race is not a factor to be considered, the Plaintiff offers nothing more than the same examples he cites in his complaint. (Plaintiff's Complaint, ¶¶ 27 and 32.) The only difference being some additional "window dressing." The Plaintiff now cites and quotes the decisions of the various courts, concerning Keith Salmon, Albert Lewin, Tarahn Harris and Christopher Harding rather than rely solely on the unsupported paragraphs from his complaint. (See Plaintiff's Statement ¶ 80(a), (b), (d) and (e).) He provides copies of the court's decisions with regard to Tarahn Harris and Christopher Harding. (See P.Exs. 44 and 45.) With regard to Willie Bennett, the Plaintiff refers the court to the press release of the U.S. Attorney for the District of Massachusetts dated July 10, 1991 summarizing that office's investigation while very briefly noting similarities between the Bennett matter and the case-at-bar. (See P.Ex. 43 and Plaintiff's Statement ¶ 80(c).) None of these examples offered by the Plaintiff has been developed on the record to prove the elements of a custom, policy or practice (or even statistical support for racially motivated conduct) such

18

that any one of them could be deemed admissible for trial. Therefore, in light of the above, ¶ 80 is not supported by competent evidence from the record and should be stricken.

15. **Plaintiff's Statement at ¶¶ 83-84 relative to Daley's diary commenting on his life as a police officer and commander of the Homicide Unit.**

As the Plaintiff's Statements in ¶¶ 83-84 rely on the diary of John Daley which is hearsay and barred admission by F.R.E. 801(c) and contains hearsay within hearsay, barred by F.R.E. 805 and is not subject to any exception under the Federal Rules of Evidence, the diary is inadmissible. Therefore, in light of the above, ¶¶ 83-84 are not supported by competent evidence from the record and should be stricken.

CONCLUSION

For the reasons stated herein, and for the reasons set forth in Walsh's and Callahan's respective Motions to Strike, the City of Boston and Roache respectfully request that the Court grant their Motion to Strike.

    Respectfully submitted,
    **Defendants, The City of Boston**
    **and Francis M. Roache**
    By their attorneys,

    _/s/ John P. Roache_
    John P. Roache (BBO# 421680)
    Patrick J. Donnelly (BBO# 651113)
    Roache & Associates, P.C.
    66 Long Wharf
    Boston, Massachusetts 02110
    Tel.: (617) 367-0330

Dated: January 4, 2008

## CERTIFICATE OF SERVICE

  I, John P. Roache, hereby certify that on January 4, 2008, I served a copy of the above document upon counsel of record by filing with the ECF/Pacer Case Management System.

                /s/ John P. Roache_____
                John P. Roache