UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAWN DRUMGOLD, )<br>    Plaintiff )<br> )<br>v. )<br> )<br>TIMOTHY CALLAHAN, FRANCIS )<br>M. ROACHE, RICHARD WALSH and )<br>THE CITY OF BOSTON, )<br>    Defendants )  | 04-CV-11193-NG |

### DEFENDANTS FRANCIS M. ROACHE AND THE CITY OF BOSTON'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO BIFURCATE TRIAL

STATEMENT OF THE CASE

This is a civil rights action brought pursuant to 42 U.S.C. §1983 and M.G.L. C. 12, §11I against former Boston police officers Timothy Callahan, Paul Murphy and Richard Walsh[1] in which the plaintiff, Shawn Drumgold (hereinafter "Drumgold") alleges violations of his civil rights, as a result of his being allegedly wrongfully convicted of murdering Darlene Tiffany Moore, and against the City of Boston (hereinafter "the City") and former Boston police commissioner Francis M. Roache (hereinafter "Roache"), individually and in his official capacity, alleging improper hiring, supervision, training and disciplining of Boston police officers.

ISSUE

Should the action against the individual officers be bifurcated from the municipal and supervisory liability portion of the suit during trial?

---

[1] Plaintiff's claims against the late Paul Murphy have been dismissed on summary judgment.

FACTS

Drumgold brings this civil action against the above-captioned defendants for alleged violations of his civil rights. He alleges that during his criminal trial for the murder of Moore the individual officers 1) withheld exculpatory evidence and 2) knowingly allowed at least one witness to commit perjury before the jury. Drumgold asserts that these alleged acts resulted in his conviction of first-degree murder for which he was sentenced to life in prison without parole in October 1989. Drumgold alleges that these acts caused his resulting imprisonment and therefore violated his rights under the Massachusetts Constitution and the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

Drumgold further alleges that the City violated his civil rights on two fronts. In the first, he alleges that his civil rights were violated by the City maintaining "a policy, custom or practice of improper and inadequate investigation and discipline of acts of misconduct committed by Boston police officers." Complaint, p.1  He continues by alleging the existence of a policy, custom or practice of the City of Boston in failing "to train its police officers adequately in the laws regarding exculpatory evidence, perjury, and other laws, rules, and regulations relating to the rights of a citizen charged with a crime." Complaint, pp.1-2. Drumgold alleges that former Commissioner Roache is responsible relative to the above-described allegations for his alleged failure to change the above-described policies and supervise the officers. Complaint, p. 2.

In support of his claims against the City, Drumgold cites in Count III of his Complaint nine examples of the alleged policy, custom or practice going back "many

years." The following are the "examples" offered by Drumgold in support of his claim against the City:

- 1981, alleged perjury of Boston Police Det. Arthur Linsky before grand jury (Commonwealth v. Salmon);

- 1989, alleged perjury and suppression of exculpatory evidence by three Boston police officers, Terrance O'Neill, Michael Stratton and an Officer Mitchell (Commonwealth v. Christopher Harding);

- 1989, unnamed Boston police officer alleged to have falsely arrested defendant and perjured himself before the grand jury (Commonwealth v. Willoughby);

- 1989, alleged perjury and subornation of perjury by Boston police officers, Robin DeMarco and Trent Holland (Commonwealth v. Marvin Mitchell); and

- 1989, alleged perjury of Boston police officer, Trent Holland re: guilty verdict on drug charges against unnamed defendant.

Drumgold cites three other incidences in support of his claim against the City beginning shortly after his conviction and very generally through to the present. The following cases were cited by Drumgold and occurred after his conviction:

- 10/23/89, unnamed Boston police officers investigating the death of Carol Stuart and the shooting of her husband, Charles Stuart, alleged to have intimidated witnesses or individuals selected to be witnesses and attempted to suborn perjury of said witness through threats or inducements to incriminate William Bennett;

3

- 1991, Boston police officer, Herbert Spellman, alleged to have perjured himself before the grand jury and/or failed to produce exculpatory evidence (Commonwealth v. Tarahn Harris); and

- 1995, Boston Police Det. William Mahoney alleged to have committed perjury and failed to produce exculpatory evidence Commonwealth v. Donnell Johnson).

The plaintiff further alleges without citing any specific occurrences that the said policy, custom or practice remains in effect today. None of the above examples cited by Drumgold in support of his claim that the City had a policy, custom or practice in place involve any of the individual officers named as defendants in the case-at-bar.

## ARGUMENT

A.  STANDARD OF LAW

Fed. R.Civ. P. R. 42(b) provides, "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ..."[2] Only one of the criteria set forth in Rule 42(b) need be present for the Court to order a separate trial. *See* Ricciuti v. New York City Transit Auth'y, 796 F.Supp. 84, 86 (S.D.N.Y. 1992) (it is "established that bifurcation requires the presence of only one of these conditions"). Of course, a fair trial must be the Court's paramount consideration. *See* Payton v. Abbot Labs, 83 F.R.D. 382, 394 (D. Mass. 1979) ("[e]nsuring a fair trial must take precedence over economy and convenience").

---

[2] It is well settled that the decision to grant a motion under Rule 42(b) is committed to the sound discretion of the Court. *E.g.,* Gonzales-Marin v. Equitable Life Assurance Society, 845 F.2d 678, 684 (1st. Cir. 1975).

4

In the present case, the defendants' motion does not merely satisfy one of the conditions of Rule 42(b). Rather, an order for a separate trial is consistent with <u>all</u> the goals of Rule 42(b): it avoids prejudice to the individual defendants, it is convenient, and it is expeditious and economical. Furthermore, and above all else, it ensures a fair trial.

B.   <u>BIFURCATION OF TRIAL</u>

Settled principles of municipal and supervisory liability under 42 U.S.C. 1983, and the character of the evidence the plaintiff will therefore offer against the defendants makes this a compelling case to order bifurcation of the issues. Under <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658 (1978), <u>Voutour v. Vitale</u>, 761 F.2d 812 (1st. Cir. 1985) and <u>City of Los Angeles v. Heller</u>, 475 U.S. 378 (1989), the city may be held liable *only* if the individual officers are found to have violated the plaintiff's rights, since a municipality may not be held liable on a respondeat superior theory. See also, <u>City of Canton v. Harris</u>, 109 S.Ct. 1197 (1989) and <u>Bordanaro v. McLeod</u>, 871 F.2d 1151 (1st Cir. 1989).

Thus, the plaintiff must first establish that defendants Callahan and Walsh[3] violated his constitutionally protected civil rights before proceeding against the City. Since liability first must be determined under these principles, the City and Roache seek bifurcation of the trial regarding the municipality from the individual officers for two reasons: (1) the tremendous expense the City would incur in proceeding to trial when its own liability would be measured by the outcome of the trial of Officers Callahan and Walsh; and (2) for reasons of fairness, because Officers Callahan and Walsh would be

---

[3] If another police officer not named as a defendant and acting under the color of law were found to have violated the plaintiff's civil rights, but the named defendant officers were not found liable, the plaintiff having met the threshold of proving that his constitutional rights were violated could still proceed against the municipal defendant in his <u>Monell</u> claim.

5

exposed to great prejudice by the admission of evidence which may be admissible only as to the City, i.e. the Internal Affairs records of other officers, and any other such evidence the plaintiff would seek to introduce at trial against the City.

    1.    <u>THE RISK OF PREJUDICE TO THE DEFENDANT OFFICERS</u>

The question of whether evidence of misconduct by other officers would be admissible against the defendant officers at trial is readily resolved. There is simply no basis for such highly prejudicial evidence to be admitted against them. Such evidence is arguably admissible against the City in an effort to establish that the City maintained policies or customs of deliberate indifference to the rights of citizens. <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658, 691-94 (1978). There is no basis, however, upon which such evidence may be admitted against the individual officers. *See, e.g.,* <u>Carter v. District of Columbia</u>, 795 F.2d 116, 126-27 (D.C. Cir. 1986) (the reading of inflammatory newspaper accounts of incidents involving other officers exposed defendant officers to unfair prejudice); <u>Ricciuti</u>, 796 F.Supp. at 86 (defendant officers would be unfairly prejudiced by evidence of incidents involving other officers); <u>Marryshow v. Town of Bladensburg</u>, 139 F.R.D. 318, 320 (D. Md. 1991) (evidence of prior incidents involving other officers offered to prove a custom or policy of the municipality is inadmissible against the defendant officers).

Given the incidents of misconduct from other cases cited by the plaintiff in his complaint, no matter how brief and pertaining to officers not involved in the underlying criminal proceedings, in support of his case against the City, it is clear that bifurcation of the trial is the only way of assuring all the defendants of a fair trial. <u>Carter v. District of Columbia,</u> 795 F.2d at 126-132 is instructive in this regard. In <u>Carter</u>, the lower court

admitted evidence of other bad acts of the defendant officers, as well as evidence of misconduct by police officers other than the defendants.  Although this evidence was ostensibly admitted to prove that the City maintained a policy or custom of permitting officers to violate citizens' civil rights, the *Carter* Court nevertheless ruled that it was an abuse of discretion to admit such evidence in an action involving the individual officers.  *Id*. In *Carter*, the evidence of misconduct by other police officers took the form of inflammatory and sensational newspaper articles.  The court concluded that specific accounts of allegations contained in newspaper articles were themselves of no probative value and the judge's decision to permit such accounts to be read verbatim constituted a conspicuous failure to exercise proper control, amounting to an abuse of discretion.  *Id*. at 128.  The lower court also admitted into evidence the personnel files of the defendant officers.  The Appeals Court concluded that this too was an abuse of discretion because there was a significant risk that the jury would conclude that the evidence established the bad character of the defendants and that the defendants were likely to have acted the same way on the night in question.  *Id*. at 131.  Finally, the court ruled that the limiting instructions given the jury "were insufficient to guard against the danger of unfair prejudice."  *Id*. at 126.

In the present case, as in *Carter*, this Court should recognize that limiting instructions will not suffice.  Indeed, without a bifurcation, the sheer volume of limiting instructions that will need to be given will prejudice these defendants. Moreover, the number of limiting instructions necessary would create a risk that the jury would be

unable to compartmentalize properly all of the evidence and, consequently, the individual officers will be prejudiced.[4]

        2.        THE RISK OF PREJUDICE TO THE CITY AND ROACHE

The substantial risk of prejudice to the City and Roache necessitates not just the bifurcation of the trial, but substantially supports a basis for conducting of two separate trials with different juries. A jury, after finding a civil rights violation on the part of the named defendant officers or some other governmental actor would then be asked, relative to the claim against the municipality, to review additional evidence, much of it likely previously inadmissible against the defendant officers, concerning the bad acts of other officers in unrelated matters. The new and previously inadmissible evidence would very likely be an incendiary revelation to the jurors. Ultimately, the jury's natural inclination after assigning liability to one defendant would be to assign some degree of blame to the municipality regardless the content and/or quality of any limiting instructions made by the court. This is very important because after establishing an actionable violation of the plaintiff's civil rights, to succeed in his municipal liability claim the plaintiff must show (1) that the municipality created or maintained a policy, practice or custom in violation of a constitutional standard, (2) that the municipality's policymaking officials, who were on notice of the misconduct, remained deliberately indifferent to or tacitly authorized continuation of the misconduct, and (3) the policy, practice or custom caused the violation of the plaintiff's civil rights. Jonielunas v. City of Worcester Police Department, et al., 338 F.Supp.2d 173, 177 (D. Mass 2004). After finding liability on the

---

[4] In *United States v. Garcia-Rosa*, 876 F.2d 209, 222 (1st Cir. 1989), the First Circuit ruled that the prejudice caused the defendant by "other bad act" evidence "was so severe and unfair that it cannot be remedied merely through a limiting instruction." The same is true in this case.

part of an individual officer, the likelihood that a jury presented with evidence indicating the bad acts of other officers could overcome its predisposition to the plaintiff's case and pay proper attention to the causal nexus required for a finding of municipal liability is too much of a risk to the defendant municipality's right to a fair trial.  Part and parcel to that right is the presumption of an unbiased finder of fact.

       3.      BIFURCATION PROMOTES JUDICIAL ECONOMY

The considerations of prejudice discussed above mandate bifurcation without regard to considerations of convenience, expedition or judicial economy.  However, the argument for bifurcation is strengthened further by the fact that bifurcation promotes judicial economy.

One of the explicit goals of Rule 42(b) is to promote expedition and economy.  This is not always accomplished, however, by means of a single trial.  *E.g.,* Reiner Distributors, Inc. v. Admiral Corp., 257 F.Supp. 619, 620 (S.D.N.Y. 1965)("[w]hen there is a possibility, however, of shortening the trial considerably by holding a separate trial on an issue, the court should exercise its discretion ... and try the issue separately if such a procedure will not prejudice either side").  This is particularly true where the possibility exists that, if claims are bifurcated, there will never even be a second trial.  In that event, there can be no denying that bifurcation promotes expedition and economy.  Ricciuti, 796 F.Supp. at 87 (ordering bifurcation where "the potential benefit of avoiding a second trial ... outweighs the potential cost of conducting one large trial").

In the present case, if the Court were to allow defendants' motion for a separate trial, the claims against Walsh and Callahan will, of necessity, be tried first.  Once the claims against the defendant officers are tried, there is a likelihood that there will be no

9

need for a second trial. First, the jury considering the claims against defendants could well return a verdict in the individual defendants' favor. This would likely obviate the need for a second trial of the claims against the City.[5] *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Second, the jury could return a verdict in plaintiffs' favor that is then satisfied by defendants (or by the City indemnifying defendants) prior to any second trial. It is axiomatic that a plaintiff is entitled to but one recovery. *Marryshow,* 193 F.R.D. at 320 ("[i]f Plaintiff's judgment were satisfied by payment, or secured by a bond pending appeal, there might be no practical reason to proceed against the [City]").

Third, the jury could return a verdict in plaintiffs' favor and the entire case could then settle before the trial of plaintiffs' claims against the City. In fact, the City had offered to indemnify each individual defendant officer[6] in return for the plaintiff dismissing his municipal liability claim, but the plaintiff refused that offer.

A second trial is necessary only where (1) the jury returns a verdict in plaintiffs' favor on the claims against defendants; (2) the judgment in plaintiffs' favor is not satisfied, and (3) the plaintiffs remain unable to reach a settlement with the City. The simple possibility (not likelihood) that two trials will ultimately be required does not, however, outweigh the significant potential benefits accompanying a bifurcation.[7]

---

[5]Plaintiff's claims against the City could survive a jury verdict in the defendant officers' favor only if the verdict were based upon defendants' qualified immunity. *See, Ricciuti*, 796 F.Supp at 86 ("[t]his is true because the qualified immunity defense is available to individuals but not to government bodies"). The Court can determine whether the jury relied upon defendants' qualified immunity in reading its verdict through the use of special questions to the jury.

[6] The City's offer to indemnify the individually named officers is subject to the maximum amounts that the City is able to indemnify under G.L. c. 258, §9.

[7]There are creative measures available to the Court to minimize further the duplication of effort caused by two trials. For example, the Court could try the two cases back-to-back to the same jury, thereby obviating the need to repeat evidence.

Accordingly, judicial economy would be well-served by separate trials of the claims against Officers Callahan and Walsh, and the claims against the City and Roache, since a trial against the City and Roache would be mooted by verdicts for the individual defendant officers.  Also, the type of evidence to be used against and for the City and Roache would be relevant as to what was and what was not the policy and custom of the City of Boston Police Department at the relevant time, and not relevant to trial on the facts.

The evidence that the Plaintiff will likely introduce in his case against Roache will substantially be the same evidence that will be introduced to present a *Monell* claim against the City, since the Plaintiff is alleging that Roache failed to adequately train, supervise or discipline police officers, including Walsh and Callahan, and that as a result of such failure(s), the Plaintiff's fifth and sixth amendment rights were violated.  In light of this, to promote judicial economy and prevent prejudice to Walsh and Callahan, the trial against Roache and the City should be bifurcated as to the issue of liability.

If the trial is not bifurcated, the City anticipates the individual liability claims will require four to six (4 to 6) weeks of trial and the municipal liability claim an additional three to four (3 to 4) weeks of trial.  Therefore, in the interests of judicial economy the City respectfully requests this Honorable Court bifurcate the trial of the municipal liability claims from those against the individual defendants.

## CONCLUSION

Plaintiff's claims against defendants are serious ones.  Defendants seek a separate trial so that the propriety of the individual defendant officers' conduct will be judged by their actions vis-à-vis the plaintiff.  All of the defendants are undeniably entitled to be

11

judged in this manner and only be means of a separate trial may they be assured of being so judged.  Accordingly, in order to avoid unfair prejudice and to promote expedition and economy, defendants' motion for a separate trial should be allowed.

                                        Respectfully submitted
                                        Defendants The City
                                        of Boston and Francis M. Roache,
                                        by their attorneys,

                                          //s// John P. Roache
                                        John P. Roache BBO#421680
                                        Patrick J. Donnelly BBO#651113
                                        Roache & Associates, P.C.
                                        66 Long Wharf
                                        Boston, Massachusetts 02110
                                        (617) 367-0330

Dated: January 7, 2008

## CERTIFICATE OF SERVICE

     I, John P. Roache, hereby certify that on January 7, 2008, I served a copy of the above document upon counsel of record by filing with the ECF/Pacer Case Management System.

                                        /s/ John P. Roache
                                        John P. Roache