# EXHIBIT 4

COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.                          Superior Court
Nos. 071882-83                        Volterra, J
      073128

COMMONWEALTH OF MASSACHUSETTS

vs.

SHAWN DRUMGOLD and TERRANCE TAYLOR

APPEARANCES:

    Philip T. Beauchesne, Esq., Assistant District
        Attorney, on behalf of the Commonwealth.

    Steven J. Rappaport, Esq., on behalf of the Defendant
        Shawn Drumgold.

    Robert George, Esq., on behalf of the Defendant,
        Terrance Taylor.

                        Suffolk Superior Courthouse
                        Boston, Massachusetts
                        Friday, March 3, 1989

MOTION TO DISMISS

VOLUME II

Pages 1 - 94

ANN M. DONNELLY
OFFICIAL COURT REPORTER

II-2

1                         I N D E X

2   Witnesses:            Direct    Cross    Redirect    Recross

3   William Celester         3         8        32

4   John A. Canavan, III    35        53

5   Francis O'Meara         69        78

6

7                       E X H I B I T S

8   No.                                      For Identification

9   8    Subpoena (William Celester)               21

10  9    Murder complaint                          66

11  10   Tape of Shawn Drumgold at Area B          68

12

13

14

15

16

17

18

19

20

21

22

23

24   (Chalk 2 - Transcript of District Court proceedings -

25    page 50)

P R O C E E D I N G S                    II-3

MR. BEAUCHESNE:  May I proceed, your

Honor?

THE COURT:  Yes.

MR. BEAUCHESNE:  The Commonwealth calls

Deputy Superintendent Celester, please.

WILLIAM CELESTER, Sworn

Direct Examination

BY MR. BEAUCHESNE:

Q       Will you identify yourself for the record, sir?

A       Deputy Superintendent William Celester, Commander

of Area B.

Q       Back on August 29, 1988 what was your duty assign-

ment on that day?

A       Commander of Area B.

Q       At some time were you requested to go to the

First Session of the Roxbury District Court?

A       Yes, I was.

Q       Approximately -- if you can remember, what time

approximately did you receive that request?

A       I don't know.  It was some time in the afternoon.

Q       By what means did you receive a request to go

to the First Session?

A       By telephone.

II-4

Q    I presume you walked over there?

A    Yes, I did.

Q    When you got into the courtroom what -- if
     anything -- did you do?

A    Judge Martin wanted a ranking officer to request
     of him -- to assure him that if Mr. Drumgold was
     booked that he'd be back at a certain time.

Q    When you went into the courtroom did you go up
     to the bench?

A    Yes, I did.

Q    And did you have some conversation with the Judge?

A    Yes, I did.

Q    Were there any other people involved at that bench
     conference, in that conversation?

A    As I recall, I think Detective Murphy from Homicide.
     And there was an Assistant DA, I'm pretty sure.
     I don't know who -- there was a court officer.  I
     don't know -- I don't recollect who was there.

Q    Could you help us with the DA's name, if you recall?

A    No, I can't.

Q    Does the name Canavan ring a bell?

A    I really don't remember.

Q    But at any event up at the bench there were the
     three of you, at least for some portion of the

II-5

1
2          time?

3    A     Yes.

4    Q     Can you tell us, as best you presently now

5          recall, the conversation between the Court and

6          yourself, or any other person who was up at

7          that bench conference?

8    A     I requested of Judge Martin to allow the homicide

9          officers----

10               MR. RAPPAPORT:  Objection.  I thought

11   you just asked whether anybody else was present.

12               MR. BEAUCHESNE:  I did.  Do you want

13   me to do it again?

14               MR. RAPPAPORT:  I didn't think that question

15   was answered.  Maybe I'm wrong.

16               MR. BEAUCHESNE:  It was.

17               MR. RAPPAPORT:  I withdraw the objecti-n,

18   then.

19               MR. BEAUCHESNE:  Just to clarify the

20   situation for counsel, I believe the question was -- I

21   asked him to repeat the entire conversation between the

22   Court, himself, and any other person at the bench

23   conference.

24               MR. RAPPAPORT:  I'm sorry.  I withdraw

25   the objection.

II-6

THE COURT: You requested. Right? That's what you said?

THE WITNESS: Yes, your Honor.

THE COURT: You requested what?

THE WITNESS: I requested that the Judge allow the officers from Homicide to take Mr. Drumgold for booking, for booking process. Judge Martin said to me could I have him back by 2:30. I said that would be impossible. He said: Well, I want him back here by 3:30 at the latest.

BY MR. BEAUCHESNE:

Q    What happened then? What was the next thing that was said or done?

A    The detectives then left.

Q    When you say the detectives, that's the Homicide detectives?

A    The Homicide detectives then left. I left. I was leaving, and then the Judge called me back, to the best of my recollection.

Q    Now, after he called you back was there any other person up at the bench with you and the Judge at that time?

A    There might have been a court officer. It was a long time ago. There might have been a court

II-7

1

2    officer.  I'm not sure, but----

3    Q    Tell us any further conversation that was had

4         between you and the Judge?

5    A    The Judge said, "You're not going to question

6         him, are you?" -- talking to me.

7    Q    Yes?

8    A    And I said, "No, I'm not."

9    Q    Was there any further question -- any further

10        discussion?

11   A    No, there wasn't.

12   Q    Now, at any time after you left -- I presume

13        you left the courtroom at that time?

14   A    Yes, I did.

15   Q    After you left the courtroom did you have any

16        further communications with either Officer Paul

17        Murphy or Officer Walsh from the Homicide Unit

18        that day?

19   A    No, I did not.

20   Q    So, you didn't communicate with him in any way?

21   A    Not in any way.

22   Q    And----

23              MR. BEAUCHESNE:   May I have just one

24   moment, please?

25              (Pause.)

II-14

THE COURT:    The answer may stand.

You infer that it had.

BY MR. RAPPAPORT:

Q    You had a conversation with Judge Martin -- and this is approximately what time?

A    I don't know.  I know it was in the afternoon.

Q    One o'clock?

A    Could have been.

Q    Well, it was certainly before he was actually brought over to the police station and processed in any way that you processed him.

Correct?

A    Yes.

Q    So, assume for purposes of this discussion, sir, that there's a document in evidence which indicates that Mr. Drumgold was over at Area B that afternoon by 1:15.  Just assume that for the purposes of this question.

A    Okay.

Q    Therefore, your conversation with Judge Martin occurred some time before 1:15.

Correct?

A    Yes.

Q    Now, was it your understanding that Mr. Drumgold

II-28

1

2     the bench.  I remember -- I left with them, and

3     I think I was called back.

4    Q   Okay.  You're called back, and you have a distinct

5     memory of returning alone to the area where Judge

6     Martin was?

7    A   Yes.

8    Q   So Detective Murphy was no longer with you?

9    A   No, he wasn't.

10    Q   And at this point you say Judge Martin now, for

11     the first time, said something with regard to

12     interrogation?

13    A   Yes.

14    Q   And he said to you: You're not going to interrogate

15     him, are you?

16    A   He said: You're not going to question him, are

17     you?  I believe that's what he said.  That was a

18     long time ago.  I believe that's what he said.

19    Q   And your response was: Hey, I'm not; or I'm not?

20    A   I said: No, I'm not, your Honor.

21    Q   Now, when you said: No, I'm not, your Honor, did

22     you mean that: No, I -- Deputy Superintendent

23     William Celester -- am not going to, or---

24    A   Yes, that's what I meant.

25    Q   Or the Boston Police are not going to?

II-29

1

2    A    No.  I said: No, I'm not.

3    Q    So you were only speaking for yourself?

4    A    That's correct.

5    Q    You were there, sir -- you were aware when you

6         were called before the Court that he wanted a

7         ranking official of the Boston Police

8         Department?

9    A    Yes.

10   Q    To talk about this Drumgold matter.   Correct?

11   A    Yes.  Yes.

12   Q    And, sir, didn't you think, or didn't it dawn

13        on you at that particular time that he wanted

14        a ranking official who would be acting in his

15        official, as opposed to personal, capacity?

16   A    Yes.

17   Q    So, when you responded to the Court, you were

18        responding in your official capacity as a

19        ranking official of the Boston Police Department,

20        or as William Celester, when you said: No, I'm

21        not?

22   A    As a ranking official of the Boston Police

23        Department.

24   Q    Having made that representation to the Court,

25        as a ranking official of the Boston Police

II-30

1  Department, you did not in any way indicate to

2  subordinate officers the representation you had

3  just made?

4  A    I don't -- what do you mean "the representation

5  I just made"?

6

7  Q    Well, you -- as a ranking official of the Boston

8  Police Department -- had just represented to the

9  Court that you would not be questioning Mr.

10  Drumgold?

11  A    Yes.

12  Q    Did you communicate that to any of your subordinate

13  officers?

14  A    No, I did not.

15  Q    Or any other Boston police officers?

16  A    No, I did not.

17          THE COURT:  Now, sir, I take it -- I

18  mean this is from my own ignorance, from being a PFC

19  in the Army of the United States -- that if you're a

20  Deputy Superintendent that you're essentially a division

21  commander, are you not?

22          THE WITNESS:  An area commander.  Yes.

23          THE COURT:  So at least you're like a

24  batallion commander, aren't you?

25          THE WITNESS:  Thank you.

II-31

1

2          THE COURT:  Probably even more than that,

3    like a division commander.  Right?

4          THE WITNESS:  Yes.

5          THE COURT:  And as a division commander

6    when folks come into your sector you have command

7    authority over these people, don't you?

8          THE WITNESS:  Yes, I do.

9          THE COURT:  So, it was within your power,

10   was it not, to issue an order to Detective Murphy that

11   he was not to interrogate Drumgold, wasn't it?

12          THE WITNESS:  It was in my power.  Yes,

13   it was, your Honor.

14          THE COURT:  Thank you, sir.

15    BY MR. RAPPAPORT:

16   Q    Sir, if it was impossible to do that type of identi-

17        fication procedure that you were requesting Mr.

18        Drumgold's body for -- if it was impossible to do

19        that at Area B, why wasn't Mr. Drumgold brought

20        downtown initially?

21   A    I can't answer that.

22          MR. RAPPAPORT:  I have no further questions.

23          MR. BEAUCHESNE:  If I may, just briefly,

24   your Honor.

25          THE COURT: Certainly.