UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHAWN DRUMGOLD,<br>    Plaintiff | ) <br> ) <br> ) | C.A. NO. 04-11193NG |
| v | ) <br> ) | |
| TIMOTHY CALLAHAN, ET AL.<br>    Defendant(s) | ) <br> ) <br> ) | |

**MOTION IN LIMINE RE: TESTIMONY OF MADELYNE HAMILTON
CONCERNING CONVERSATIONS WITH ATTORNEY SCAPICCHIO**

Now comes the Plaintiff and moves this Court to order the Defendants not to argue, introduce testimony or suggest that Madelyne Hamilton had conversations with Attorney Rosemary Scapicchio concerning whether Ms. Hamilton would be able to appear at her deposition or concerning whether Ms. Hamilton would receive a doctor's note concerning her deposition. In support thereof, the Plaintiff says the following:

1.  Madelyne Hamilton testified at her deposition that she was contacted by the Defendants about her deposition and that she told the woman who called her that she was sick (Attached Ex 1, Hamilton Deposition, Volume II, page 358). At the time Ms. Hamilton's deposition was noticed, she was suffering from osteoarthritis, neuropathy, heart problem including panic palpitations, edema and diabetes (Hamilton, pages 361-364). She also had been diagnosed with colon cancer which she says she was treating with Christian Science treatment (Hamilton, pages 366-367).

2.	Ms. Hamilton called the defense investigator John Gamel and told him that she was sick and that she did not want to go to the deposition because of her health problems. She testified: "I told him that my getting upset and all that is not going to do me any good." (Hamilton, page 375)

3.	She called her brother and told her brother that one of the reasons she did not want to be deposed is because she was sick (Hamilton, pages 378-379).

4.	Her brother referred her to Attorney Jeffrey Denner of Boston. She told an attorney at that office that she did not want to be deposed because she was too sick to be deposed. She testified that the person at Mr. Denner's office referred her to Ms. Scapicchio who, she says, she did not know represented Shawn Drumgold. The person at Mr. Denner's office said that she would talk to Ms. Scapicchio about the situation (Hamilton, page 387).

5.	Ms. Hamilton says that she talked to Ms. Scapicchio and she told Ms. Scapicchio that she was sick. Ms. Scapicchio told her that if she was sick, she would not be excused from the deposition unless she had a letter from a doctor (Hamilton, Page 388).

6.	Ms. Hamilton claims that Ms. Scapicchio suggested that she had a health problem connected with her memory and that was not based on anything that Ms. Hamilton said.

However, Ms. Hamilton's testimony makes it clear that she discussed both her health problems and memory problems with Ms. Scapicchio at the same time. Ms. Hamilton testified that she said to Ms. Scapicchio "I have a lot of medical problems and I don't want to—I can't go to Boston because I am sick. I said it has been 18 years and she said does that affect -- she said, well, If you can get a note from your doctor about your memory problem, it's been a long time, I realized that. It's been a long time. Call me back."

7.  When Ms. Hamilton was asked about the conversation she testified:

>   Q:  And so she just out of the blue said you needed to have a letter referring to your memory?
>   A:  No. What I said was, it's been … I remember the conversation. It's been 18 years or something to that effect, and she said, do you have a problem with your memory. She said, if you get me a doctor's note, call me back. (Hamilton, page 388)

8.  Several things are clear from the testimony of Ms. Hamilton. First, she told everybody she talked to that she did not believe she should be deposed because of her health problems. She explained that to the Defendant's paralegal, to her brother, to the Defendant's investigator, John Gamel, to Jeffrey Denner's office and to Rosemary Scapicchio. Secondly, she discussed her memory problem and her health problem together. She told Ms. Scapicchio that she had serious health problems and complained about the fact that the events that she was being asked about occurred 18 years ago. Third, Ms. Scapicchio accurately and correctly told her that she could not be excused from this deposition unless and until she had a doctor's note concerning her health problems.

9.      The Defendants, as set out in their Motion for Protective Order previously filed in this matter (Docket No. 88), make it clear that they wish to argue that the jury can infer from the testimony of Ms. Hamilton that there was some improper attempt by Ms. Scapicchio to affect Ms. Hamilton's testimony. The Defendants should be not allowed to present that argument for several reasons.

10.     The testimony of Ms. Hamilton does not support the inference that the Defendants wish to put on it. The fair reading of Ms. Hamilton's testimony is that she called Ms. Scapicchio and told her, as she told many other people, that she had health problems and she did not want to be deposed and that in the same process of explaining her health problems, she explained that she was concerned about her memory. Ms. Scapicchio told her she would need a doctor's note, otherwise she would have to appear for the deposition. The malevolent inference sought by the Defendants is not supported by the evidence.

11.     Secondly, there is a substantial factual dispute concerning Ms. Hamilton's claims. Adam Foss, a third year law student at Suffolk University Law School who worked at Ms. Scapicchio's office and an attorney at Jeffrey Denner's office both talked to Ms. Hamilton and are all available to dispute Ms. Hamilton's testimony. Both witnesses will testify, if necessary, that Ms. Hamilton, despite her claim to the contrary, absolutely knew that Ms. Scapicchio represented Shawn Drumgold. Secondly, the testimony from the associate from Jeffrey Denner's office would be that she informed Ms. Scapicchio concerning claims by Madelyne Hamilton

that she was in ill health. The testimony of additional witnesses including a law student for trial counsel and an attorney who appears to have had an attorney/client relation with Ms. Hamilton would be excessive and inappropriate on what is, at best, a tangential issue to this trial. Ms. Hamilton will be available to testify and will be subject to cross examination concerning her observations in 1988. It would cause unnecessary and inappropriate jury confusion and would distract the jury from its core function in this case to allow what, in effect, would a mini trial concerning the alleged conversation between Ms. Hamilton and Ms. Scapicchio in 2007.

## CONCLUSION

This Court should find that the Defendants have no good faith basis for the proposed argument, that the evidence is not relevant pursuant to Fed.R.Evid. 401. In the alternative, this Court should exercise its discretion pursuant to Fed.R.Evid. 403 to keep the jury focused on the issues at trial and not allow the case to devolve into a character attack on Ms. Scapicchio.

Respectfully submitted,

By His Attorneys,

 /s/ Michael Reilly

Michael W. Reilly, Esq.
Tommasino & Tommasino
Two Center Plaza
Boston, MA   02108
617 723 1720

BBO 415900

/s/ Rosemary Curran Scapicchio

Rosemary Curran Scapicchio, Esq.
Four Longfellow Place
Boston MA 02114
617 723 2900
BBO 558312