UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          )
**SHAWN DRUMGOLD**                        )
              **Plaintiff,**              )
                                          )
      **v.**                              )          **C.A. NO.: 04-11193NG**
                                          )
**TIMOTHY CALLAHAN,**                     )
**FRANCIS M. ROACHE,**                    )
**PAUL MURPHY,**                          )
**RICHARD WALSH, and**                    )
**THE CITY OF BOSTON,**                   )
              **Defendants.**             )
_____)

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EVIDENCE OR EXAMINATION REGARDING PRIOR BAD ACTS

Defendants oppose herewith three Motions filed by Plaintiff, all of which seek to exclude evidence and examination of witnesses and Plaintiff himself with regard to prior bad acts. See Document Number 172 (prior bad acts of witnesses), Number 181 (prior bad acts and post-conviction bad acts of Plaintiff), and Number 182 (Ricky Evans' termination from employment). Because the arguments with regard to the three Motions overlap, Defendants answer and oppose all by way of this Opposition.

The involvement of all these witnesses, including Plaintiff, with illicit drugs, gang activities, and law enforcement are inextricably intertwined with the nature of these proceedings. While Defendants acknowledge that Plaintiff does not object to the use of criminal activities or drug use that supports Plaintiff's case (i.e., Ricky Evans' criminal history pre-trial; criminal charges or warrants outstanding against Olisa Graham and Michelle Payne pre-trial) or that plainly impact on the ability of percipient witnesses to testify as to their observations on the day

of the Moore murder (i.e., Gemini Hullum's[1] testimony that she smoked crack cocaine on the day of the murder), Defendants may also use prior bad acts to demonstrate witness bias, motivation, knowledge of relationships and activities of Plaintiff and those he argues were the actual perpetrators of the crime, and the like.  Further, since these activities and associations are threaded throughout the criminal trial transcript (indeed, Plaintiff was cross examined on his criminal record after he took the stand in his defense), the evidence must be before the jury as part of Plaintiff's prima facie case – that his rights to a fair trial were violated.  Likewise, since the credibility of the witnesses in this case is especially an object of inquiry (since many witnesses are now recanting their sworn testimony from the 1988 trial), Defendants should not be impeded from probing any witness on issues that involve credibility.

Plaintiff contends that the Court should exclude evidence of prior bad acts because such evidence would be unfairly prejudicial.  This argument is unavailing.  It is "axiomatic that `all evidence is meant to be prejudicial; else wise, the proponent would be unlikely to offer it.'" *Espeaignnette v. Gene Tierney Company, Inc.*, 43 F.3d 1, 7 (1st Cir. 1994).  Determining whether "unfair" prejudice exists requires an analysis of whether there will be "`an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Id.*

More importantly, "[w]hen proffered evidence relates to the central issue in a case, it is a difficult matter indeed to show that the prejudicial effect of that evidence substantially outweighs its highly probative nature, as Rule 403 requires."  *Rubert-Torres v. Hospital San Pablo, Inc. et al.*, 205 F.3d 472, 479 (1st Cir. 2000); *see also Espeaignnette*, 43 F.3d at 6.  Here, the credibility,

---

[1] Plaintiff's Memorandum states that another witness, Vantrell McPherson, testified to having used illegal drugs on the day of the murder, <u>see</u> Document 172, page 7.  Defendants believe that Plaintiff intended to refer to Ms. Hullum.

experience, and knowledge of the Plaintiff and his proffered witnesses is *crucial* to the outcome of this case. Evidence concerning these individuals' experience with law enforcement and knowledge of criminal activities of their peers at the time of the Moore shooting is necessary in order for the jury to determine the value that should be attached to their grossly belated claims of police intimidation. Further, if Plaintiff introduces evidence of his reputation as a person who was "dealing in peace," as is anticipated, the Defendants have the right to rebut that evidence with proofs of his arrests for drug dealing and firearm offenses. <u>See</u> F.R.Evid. Rule 405(b), allowing evidence of specific instances of conduct where the "character or trait of character of a person is an essential element of a charge, claim or defense."

Where credibility determinations are so vital to the case, the probative/prejudice balance weights in Defendants' favor. *See Rubert-Torres*, 205 F.3d at 479. For these reasons, there is no reason to exclude this evidence:

1. <u>Plaintiff's Prior Bad Acts – Pre-Conviction</u>

Plaintiff testified at the criminal trial in 1989 about his prior bad acts, after being examined by the trial judge, and with the full knowledge that if he took the stand he would be subject to impeachment with his prior criminal cases. <u>See</u> Ex. 1, Trial, Day 10, pages 3 – 11. This evidence was before the original jury, Plaintiff waived any right to object to its introduction, and therefore, this evidence is appropriate, indeed, necessary, for this jury to consider.

2. <u>Plaintiff's Prior Bad Acts – Post-Conviction</u>

Plaintiff's disciplinary history while incarcerated, and his post-release arrests, are relevant to the issue of Plaintiff's damages and for general impeachment purposes. Since the Court has, in essence, trifurcated the trial, evidence of Plaintiff's post-conviction acts will not affect the jury's consideration during the liability phase of this trial.

3. <u>Other Witnesses</u>

a. <u>Tracy Peaks</u>

At deposition, Tracy Peaks testified that after the criminal trial, in which she testified that she saw Plaintiff walking down Homestead Street away from the shooting scene, she "smoked weed" with Rana Roisten, the younger sister of Plaintiff's girlfriend.  <u>See</u> Ex. 2, Peaks Deposition, at pgs. 58 – 60.   This evidence is relevant to Peaks' credibility, not because it illustrates her involvement with drug use but because of her apparently comfortable, friendly relationship with a member of Plaintiff's extended family, even after she allegedly testified falsely against him.

b. <u>Vantrell McPherson</u>

McPherson was questioned at deposition as to whether she knew individuals who were significant to the Commonwealth's theory of the case at the trial below:  Romero Holiday (whose shooting in August 1988 allegedly triggered a retaliatory attack that left Tiffany Moore dead);  Chris Chaney (who allegedly was involved in the shooting of Holiday) and Mervin Reese (who was allegedly an associate of Chaney, and a leader of the Humboldt gang).  The inquiry into McPherson's knowledge of these individuals and the roles they played in the neighborhood is central to the case developed at trial in 1989, and challenged by Plaintiff now.  Likewise, McPherson's own drug use is relevant to whether she holds any law enforcement bias that would prompt her to testify falsely in a matter where the police are accused.

c. <u>Gemini Hullum</u>[2]

Hullum testified that she was a frequent user of crack cocaine in 1988, and that police used to "cuss us out about using drugs ... [one officer] said he knew we was selling; if he ever caught us, he would arrest us." She was "very much afraid" of the police as a consequence. <u>See</u> Ex. 3, Hullum deposition at 115. As with McPherson, Hullum's experiences as a drug user and seller, and her consequential "fear" of the police, are relevant not only to her potential bias (against the police, and in favor of Plaintiff) but also to her competency to testify truthfully about her observations during the relevant times (as she acknowledged, she was "cracked out" during the late 1980s and had gotten high the day of the Moore murder. <u>See</u> Ex. 3, at pages 62, 74 – 77).

The evidence of these witnesses' drug use, criminal involvement, and associations are relevant to the Plaintiff's claim that he was denied a fair trial due to the intimidation of these individuals by police officers.

d. <u>Ricky Evans</u>

Contrary to Plaintiff's assertion, Ricky Evans did not testify at deposition that his termination from employment occurred "shortly after being served with a subpoena to appear at deposition," <u>see</u> Plaintiff's Motion, introductory paragraph, but rather after a private investigator came to his place of employment in an attempt to interview him. Evans also testified that he was fired because someone "played a prank" on him, and attached a co-worker's vehicle plates to his

---

[2] Defendants did not ask Hullum whether "her father was a pimp" and the inflammatory – and false – implication to the contrary is emblematic of the selective manner in which Plaintiff seeks to use and limit the use of evidence in this case. Hullum offered that her father was a pimp in response to a question about his employment. Hullum also offered distasteful assessments of others in her immediate family and circle of associates. These comments were freely and aggressively made by a hostile witness, and were not elicited or suggested by counsel. <u>See</u> Hullum Deposition at pgs. 22, 26, 185, 189.

car.   Ex. 4, Evans' Deposition at pgs. 17 – 20.

Evans' credibility is particularly at issue in this case, as he has alleged that his extensive trial testimony (during which he was subject to cross examination before the jury and during two voir dire examinations) was entirely fabricated.  Defendants should not be precluded from inquiring into any matters in Evans' history which bear upon his ability to be truthful and his tendency to blame others for his own misdeeds, especially in situations where his personal conduct is called into question.

## CONCLUSION

WHEREFORE, the Defendants, Richard Walsh, Timothy Callahan, Francis M. Roache and the City of Boston, respectfully request that this Court <u>DENY</u> Plaintiff's Motion to exclude examination of witnesses, and Plaintiff, regarding prior bad acts.

**RICHARD WALSH,**
By his attorney,

/s/ Hugh R. Curran
Hugh R. Curran (BBO# 552623)
Bletzer & Bletzer, P.C.
300 Market Street
Brighton, MA 02135
(617) 254-8900

**TIMOTHY CALLAHAN,**
By his attorney,

/s/ Mary Jo Harris
Mary Jo Harris (BBO# 561484)
Morgan, Brown & Joy, LLP
200 State Street
Boston, MA 02109
(617) 523-6666

/s/ William M. White
William M. White (BBO#
William M. White & Associates
One Faneuil Hall Marketplace
Boston, MA 02109
(617) 720-2002

**Defendants,**
**FRANCIS M. ROACHE and**
**THE CITY OF BOSTON,**
By their attorneys,

/s/ John P. Roache
John P. Roache (BBO# 421680)
Patrick J. Donnelly (BBO# 651113)
The Law Offices of John Roache
66 Long Wharf
Boston, MA 02110
(617) 367-0330

DATED:  February 8, 2008

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on the 8th day of February, 2008, I electronically filed with within document with the Clerk of the United States District Court for the District of Massachusetts, using the CM/ECF System.  The following participants have received notice electronically:

**For Plaintiff Shawn Drumgold,**
Michael W. Reilly, Esq.
Tommassino & Tommasino
Two Center Plaza
Boston, MA 02108-1904

**For Plaintiff Shawn Drumgold,**
Rosemary Curran Scapicchio, Esq.
Four Longfellow Place, Suite 3703
Boston, MA 02114

**For Defendant, City of Boston**
Susan Weise, Esq.
Chief of Litigation
Assistant Corporate Counsel
City of Boston/Law Department
City Hall, Room 615
Boston, MA 02201

**For Defendants City of Boston and Francis M. Roache,**
John P. Roache, Esq.
The Law Offices of John P. Roache
66 Long Wharf
Boston, MA 02110

**For Defendant Richard Walsh,**
Hugh R. Curran, Esq.
Bletzer & Bletzer, P.C.
300 Market Street
Brighton, MA 02135

/s/ Mary Jo Harris_____