COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                    SUPERIOR COURT DEPARTMENT
                               CRIMINAL BUSINESS
                               No. 071882

* * * * * * * * * * * * * * * *
                               *
COMMONWEALTH OF MASSACHUSETTS  *
                               *
            VS                 *
                               *
SHAWN DRUMGOLD                 *
                               *
* * * * * * * * * * * * * * * *

BEFORE:  Alberti, J.
         Suffolk Superior Courthouse
         New Courthouse
         Room 914
         Boston, Massachusetts

DATE:    Trial Day 10
         October 11, 1989

---

PAULA PIETRELLA
Court Reporter
57 Quincy Way
Attleboro, Massachusetts  02703

I N D E X

WITNESSES:                                                          PAGE

TERRANCE TAYLOR

    direct examination by Mr. Rappaport                    18

    voir dire examination by Mr. Rappaport                 23

    direct examination (resumed)                           40
    cross examination by Mr. Beauchesne                    60
    redirect examination by Mr. Rappaport                 104

PAUL DURAND

    direct examination by Mr. Rappaport                   107
    cross examination by Mr. Beauchesne                   115
    redirect examination by Mr. Rappaport                 123

SHAWN DRUMGOLD

    direct examination by Mr. Rappaport                   128
    cross examination by Mr. Beauchesne                   145
    redirect examination by Mr. Rappaport                 162

RENA ROISTEN (rebuttal witness)

    direct examination by Mr. Beauchesne                  166
    cross examination by Mr. Rappaport                    172

THOMAS GOMPERTS (rebuttal witness)

    direct examination by Mr. Beauchesne                  175
    cross examination by Mr. Rappaport                    177

\* \* \* \* \* \*

EXHIBITS:

No. 17 - photocopied excerpt from Old Farmer's
    Almanac

   marked and admitted                                        165

P R O C E E D I N G S

LOBBY CONFERENCE

THE COURT: I have to ask you some questions for the record, so I'm going to ask you your name. Give me your name.

THE DEFENDANT: Shawn Drumgold.

THE COURT: You live in Roxbury?

THE DEFENDANT: Yes.

THE COURT: Mr. Rappaport, your attorney, tells me that it's your decision to take the stand.

THE DEFENDANT: Yes.

THE COURT: Which means you're going to testify in your own behalf.

THE DEFENDANT: Yes.

THE COURT: He's going to ask you the questions. And he'll direct you in areas he thinks are important.

A number of things I want to be sure you understand. I know you've been told, because with Mr. Rappaport as your attorney he tells you everything, communicates very well. I know you know, correct me if I'm wrong, that you don't have to take the stand unless you want to.

THE DEFENDANT: Yes.

EXHIBIT Rappaport 185 2/3/07

```
 1              THE COURT:  Okay.  You understand that.
 2              THE DEFENDANT:  Yes.
 3              THE COURT:  You understand also that the
 4   burden of proof in this case is on the government,
 5   the state to prove you guilty beyond a reasonable
 6   doubt.  You know that?
 7              THE DEFENDANT:  Yes.
 8              THE COURT:  To the unanimous verdict of
 9   the jury.
10              THE DEFENDANT:  Yes.
11              THE COURT:  You know that.  And you don't
12   have to provide for your own defense.  You don't
13   have to do a thing, do you understand that?
14              THE DEFENDANT:  Yes.
15              THE COURT:  Now, you have chosen to put
16   on witnesses.  That's fine.  That's your decision
17   with Mr. Rapapport, but as far as you personally
18   are concerned, you don't have to say a word, and
19   I would tell the jury that you don't have to say
20   a word and they're to draw no inferences from that.
21   Do you understand that?
22              THE DEFENDANT:  Yes.
23              THE COURT:  Okay.  Now, once you're on
24   the stand, you're subject to what's called cross
25   examination.  You've seen enough of it by your lawyer
```

1  and by Mr. Beauchesne so you know what it is. It's
2  an attempt to break down the testimony of the other
3  side. In your case, Mr. Beauchesne is going to
4  cross examine you. Do you understand that?
5      THE DEFENDANT: Yes.
6      THE COURT: And do you understand that
7  if you have a record, criminal record, he may use
8  that to impeach you?
9      THE DEFENDANT: Yes.
10     THE COURT: And impeach means to make
11 you look less believable. You understand that?
12     THE DEFENDANT: Yes.
13     THE COURT: Now, do you understand also
14 that in cross examination in this state, it's not
15 just limited to what he, Mr. Rapapport asks you,
16 but can go into other areas as long as they have
17 something to do with this case, and I decide if
18 they have something to do with this case. The fancy
19 words for that are relevant and material. Do you
20 understand that?
21     THE DEFENDANT: Yes, sir.
22     THE COURT: Okay. So that he's going
23 to be asking you a lot of questions. Mr. Rappaport
24 may object to them, but I may let them in. Now,
25 I don't know what they're going to be, but I can

imagine that they will have something to do to make you look less believable. That's the risk you run. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, have you talked about this with Mr. Rappaport?

THE DEFENDANT: Yes.

THE COURT: And your mind's clear?

THE DEFENDANT: Yes.

THE COURT: I'm going to ask you a couple of silly questions, but they're for a purpose. You have no mental illness, do you?

THE DEFENDANT: No.

THE COURT: You haven't taken any drugs, have you?

THE DEFENDANT: No.

THE COURT: Do you take any prescription medicine?

THE DEFENDANT: No.

THE COURT: Have you taken any alcohol today? It sounds silly but have you had any?

THE DEFENDANT: No.

THE COURT: Okay. Now, is the decision you made to take the stand your own decision?

THE DEFENDANT: Yes.

1  THE COURT: Have you talked about it with
2  your mom at all, your mother?
3  THE DEFENDANT: Yes.
4  THE COURT: Okay. She understands what
5  you're doing. You've talked about it with Mr. Rappaport?
6  THE DEFENDANT: Yes.
7  THE COURT: Okay. You want to do it?
8  THE DEFENDANT: Yes.
9  THE COURT: Anything else?
10  MR. RAPPAPORT: Nothing I can think of,
11  Your Honor.
12  THE COURT: I find that he's taking the
13  stand of his own free will, fully understanding
14  the - do you know the expression,"downside risk"?
15  That's an expression -- you use expressions around
16  here that we don't use at home, but we use an
17  expression called a "downside risk." That means
18  it's a risk to you, not a positive thing. It's
19  a risk you're taking. The expression is a downside
20  risk. You understand, there is a risk, that if
21  you take the stand on cross examination you won't
22  look good. I'm not saying you won't. I'm saying
23  there is that chance. You understand that? Is
24  that yes?
25  THE DEFENDANT: Yes.

```
 1              THE COURT:  Okay.  Anything else?  Any
 2  questions of me?
 3              MR. RAPPAPORT:  I just have one question
 4  outside of Mr. Drumgold's presence.
 5              THE COURT:   Fine.  Thank you.  We'll
 6  be ready in a minute.
 7              (Defendant left lobby.)
 8              MR. RAPPAPORT:  Judge, I had filed a motion
 9  in limine with regard to prior criminal record
10  in this case.  It's my understanding that
11  Mr. Beauchesne will be wide open on the convictions
12  of Mr. Drumgold pertaining to anything other than
13  crimes of violence or guns.
14              MR. BEAUCHESNE:  It seems to me that --
15              THE COURT:  Where's his record.
16              MR. BEAUCHESNE:  I've got a copy outside.
17              THE COURT: Go ahead.
18              MR. BEAUCHESNE:  He has a conviction,
19  possession of controlled substance, Class D with
20  intent to distribute.  He got a three months
21  House of Correction committed.  February 21, '84,
22  he had a charge in the BMC, he had a robbery which
23  was amended to larceny from a person.  He was
24  sentenced to a term of probation.  He also had assault
25  and battery with a dangerous weapon upon which he
```

got probation. October 2, '84, possession of controlled substance, Class B, with intent to distribute. He got a one year House of Correction committed on that in 7/10/85. He had another, in February 13, '85, he had possession of controlled substance A with intent to distribute. He got two and a half years in the House of Corrections, suspended with two years probation. And also at that time he had an unlawful possession of a firearm. He had one year House of Corrections suspended with that. And he also had, February 13, '85, out of Dorchester, defacing a serial number on a firearm. He got a House of Correction. Unlawful possession of ammunition and conspiracy.

THE COURT: Conspiracy to what?

MR. BEAUCHESNE: It just indicates conspiracy, and in each of those, those were three charges together and on each one he got two and a half in the House, suspended. And that's all the record I have on him.

THE COURT: The bottom line is, first, on any of these crimes of violence, no. But the drug and defacing, defacing a firearm is not a crime of violence.

MR. BEAUCHESNE: Correct, and even a

1  simple possession of a firearm or unlawful possession
2  of ammunition are not.
3          THE COURT:  The conspiracy, you know,
4  that could be anything.  It raises questions and
5  I don't want to get in the middle of whether it's
6  a conspiracy to deface a firearm, or --
7          MR. BEAUCHESNE:  Before we get him up
8  here, we could get those papers up.  It is a Superior
9  Court case, and could I ask the clerk to get those
10 papers up?  I'll give you the numbers on them.
11         MR. GEORGE:  Judge, I have a development
12 to report to the Court with regard to Mr. Taylor.
13         THE COURT:  Are we through with this?
14         MR. BEAUCHESNE:  That's all I have.
15         THE COURT:  Okay.
16         MR. BEAUCHESNE:  Your ruling is that
17 with regard to the robbery and the assault, the
18 robbery, it was amended to larceny from a person
19 so it seems to me that the violent aspect of it
20 went out of that.  We would simply mention that
21 he was convicted of larceny from a person.  I won't
22 mention the assault and battery with a DW.
23         THE COURT:  Good.
24         MR. RAPPAPORT:  I have a problem with
25 the defacing the firearm, Judge.

1    THE COURT: It has nothing to do with
2 violence. I understand. That, to me, is the toughest
3 one. All this other is nothing.
4    MR. RAPPAPORT: I understand the drug
5 offenses, and even the larceny, as long as you don't
6 say anything about the reduction.
7    MR. BEAUCHESNE: I won't.
8    MR. RAPPAPORT: I can understand larceny
9 but, quite frankly, I have problems with defacing
10 the firearm because it sounds like a guy who has
11 guns, and guns were used in this case.
12    THE COURT: I don't agree with that.
13    MR. BEAUCHESNE: Class D is grass, Class
14 B is cocaine, Class A is heroin. May I use those?
15    THE COURT: But they are not the only
16 ones. There are other B's.
17    MR. BEAUCHESNE: You're right. So I simply
18 will confine myself to Class A, B, and C.
19    THE COURT: And I will explain, if you
20 wish, that it can be a number of things.
21    MR. BEAUCHESNE: I would ask that you
22 explain. Now, the development.
23    THE COURT: What's new?
24    MR. GEORGE: Mr. Taylor was quite upset
25 yesterday after court, after Mr. Beauchesne's