UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHAWN DRUMGOLD,<br>    Plaintiff | ) <br>) <br>) | C.A. NO. 04-11193NG |
| v | ) <br>) | |
| TIMOTHY CALLAHAN, ET AL.<br>    Defendant(s) | ) <br>) <br>) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**<u>MOTION IN LIMINE TO EXCLUDE THE DIARY OF JOHN DALEY</u>**

**INTRODUCTION**

John Daley was the head of the Boston Police Department Homicide Unit from 1985 to August of 1989. He was in charge of the unit at the time of the Tiffany Moore murder in August of 1988 until the eve of the trial in September of 1989. For thirty years, Daley kept a journal about his police work. He generally made the notes every two or three days. In his journal, he "generally kept up to date on my life as a policeman". (Plaintiff's Exhibit in Support of Statement of Undisputed Material Facts in Connection with Motion for Summary Judgment 34A, page 30).

As head of the Homicide Unit, Daley concluded in his diary that despite the explicit ruling by Judge Volterra that Walsh and Murphy committed egregious misconduct. It was his belief that Walsh and Murphy were "incredibly scrupulous in their observation of the defendant's rights (Plaintiff's Exhibit 47, May 17, 1989) and that Walsh and Murphy "were offered as

1

sacrifice to the black community, and transferred from Homicide. It did not matter that they actually did a very good job in this case " (Plaintiff's Exhibit 48, page 251).

Daley also wrote in his diary a series of racist comments setting out his belief, as head of the Homicide Unit of the Boston Police Department, that the primary problem with the Boston Police Department was that it unfairly and improperly promoted black officers. Daley's diary also rebuts the Defendants' arguments that the District Attorney in fact controlled homicide investigation and is relevant on many other grounds.

The Defendants seek to exclude the Daley Diary on several grounds. First, they attempt to exclude the diaries as hearsay. The diaries are not hearsay because they are admissions by a party's agent or servant concerning a matter within the scope of the agency or employment made during the existence of relationship. (Fed.R.Evid. Rule 801(d)(2)(D)) Evidence is admissible pursuant to Fed.R.Evid. Rule 801(d)(2)(D) upon a showing by a preponderance of evidence that an agency relationship existed, that the statement is made during the course of relationship and that the statement is related to a matter within the scope of the agency or employment. Larch v. Mansfield Mun. Elec. Dept., 272 F.3d 63, 72 (1st 2001); Gomez v. Rivera Rodriguez, 344 F.3d 103, 116 (1st 2003).

All of those criteria are met in connection with the Daley diaries. The questions of whether Daley was an agent or servant is decided by applying the traditional meaning of those

terms as reflected in the federal common law of agency <u>Gomez v. Rivera Rodriguez</u> (Id. at 116). Daley, an employee of the City of Boston who was in charge of the Homicide Unit, qualifies as an agent or servant of the City of Boston.

Daley testified that the diary entries were made by him during the course of his employment. Daley's produced two copies of his diary. It appears that he retyped the diary at some point. The evidence from Daley's own testimony is that the diaries were created and made by him at the time he was employed for the City of Boston and accurately reflected his opinions and admissions during the time he was an employee of the City of Boston. Daley testified that "For 30 years I kept notes. I kept – and I kept a manuscript of my diary as a policeman and what occurred in the last – I would sometimes go two or three days without making entries, sometimes more than that. But I generally kept up-to-date on my life as a policeman through this journal". (Plaintiff's Exhibit 34A, p 307). The statements in the diary where originally made during the course of Daley's employment, even if he later retyped them.

Finally, the statements clearly relate to matters within the scope of Daley's agency since they deal directly with his duties and responsibilities as the head of the Boston Police Department Homicide Unit. The Plaintiff has attached as Exhibit I portions of the diary with highlighted relevant portions. The statements deal directly with the following relevant issues:

- Daley, as the head of the Homicide Unit, condoned Walsh's misconduct in taking

Drumgold's statement. (Exhibit 1, pages 9, 19-20)

- The promotions of Boston Police in general and promotions to the Homicide Unit in particular were made not on the basis of merit or proper supervision but on the basis of political connections. (Exhibit 1, page 1, 5, 8, 12, 15 and 18)

- Daley had no training in supervision and, in particular, had no training for proper supervision of homicide investigations. (Exhibit 1, page 1, 4 and 12)

- Daley, as the head of the Homicide Unit, held the opinion that the major problem faced by the Boston Police Department was its promotion of minority officers rather than any of the various problems outlined by Dr. Lyman in his expert report. (Exhibit 1, pages 2, 4, 7 and 13)

- Daley, as head of the Homicide Unit, had actual knowledge of the Boston Police Department practice of falsifying police reports and covering up misconduct by police officers and Daley actively condoned and approved of such falsifying and covering up. (Exhibit 1, pages 4, 7, 10 and 20)

- Despite the statutory authorization for the District Attorney to control homicide investigations, the Homicide Unit of the Boston Police Department actively resisted control by the District Attorney and insisted that they had control of the homicide investigations. (Exhibit 1, pages 4, 8, 11, 12, 18 and 21)

- Daley had actual knowledge that one of the Defendants had a drinking problem during the time he was a homicide detective for the Boston Police Department. Daley, as the

Defendant's supervisor, was of the opinion that the Boston Police Department should take no action in connection with that problem. (Exhibit 1, pages 6 and 16)

- Daley knew that the one homicide school that the Boston Police homicide detectives were sent to was a taught by a "so-called expert" and that it lacked credibility. (Exhibit 1, page 17)

- Daley's diaries also contained information received from Walsh and Murphy concerning substance of their investigation of the Tiffany Moore murder. (Exhibit 1, pages 10 and 19-20)

The Daley diary is also offered for the non hearsay purpose of showing that the City, through its Chief of Homicide, had actual knowledge of all of the items outlined above, including, for example, the accusations against Walsh and Murphy, the political nature of police appointments, the racism in high level supervisors and the alleged drinking problems of a homicide detective. Evidence admitted to prove knowledge is not hearsay. <u>Vazquez-Valentin v. Santiago-Diaz</u>, 459 F.3d 144, 151 (1st Cir. 2008). To the extent that some portions may contain some hearsay within hearsay, those statements are not offered for the truth of the embedded hearsay but rather are to prove Daley's knowledge of problems indicated therein.

There is no legitimate argument that this evidence should be excluded pursuant to Rule 403. The contemporaneous opinions of the head of the Boston Police Department Homicide Unit concerning the City condoning Walsh and Murphy's misconduct and insisting that the problems

with the Boston Police Department were not those which would be identified by Plaintiff's expert but rather were the fault of either African-American citizens of the City of Boston or African-American police officers is clearly relevant.

The Plaintiff also intends to call Daley as a witness at trial. It is likely that during examination of Daley the diaries will be used as personal statements by Daley which are admissible to impeach his trial testimony pursuant Fed.R.Evid. 801(d)(1).

          Respectfully submitted,

          By His Attorneys,

          /s/ Michael Reilly

          Michael W. Reilly, Esq.
          Tommasino & Tommasino
          Two Center Plaza
          Boston, MA   02108
          617 723 1720
          BBO 415900

          /s/ Rosemary Curran Scapicchio

          Rosemary Curran Scapicchio, Esq.
          Four Longfellow Place
          Boston MA 02114
          617 263 7400
          BBO 558312