UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAWN DRUMGOLD,    )<br>    Plaintiff    )<br>    )<br>v    )<br>    )<br>TIMOTHY CALLAHAN, ET AL.    )<br>    Defendant(s)    )<br>    ) | C.A. NO. 04-11193NG |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING RECORDED STATEMENTS, GRAND JURY TESTIMONY AND JUDICIAL DECISIONS**

The evidence sought to be excluded in this Motion is admissible for a variety of legitimate purposes at trial.

**A.    Plaintiff's Recorded Statement**

Walsh and Murphy took Drumgold's statement on the day of his arrest in direct violation of an order of Justice Martin of the Roxbury District Court and in direct violation of Drumgold's Sixth Amendment Right to Counsel. Walsh's actions in taking the statement was a violation of Drumgold's civil rights. The statement itself is the evidence of the violation of rights by Walsh. Plaintiff clearly has a right to prove a violation of civil rights which is at the core of this case. The statement is also relevant as evidence of an overt act in furtherance of the conspiracy to violate Drumgold's civil rights. U.S. v. Arboleda, 929 F.2d 858, 866 (1st Cir. 1991).

The statement is admissible for a variety of other reasons. As an initial matter, it establishes Walsh's knowledge of the Plaintiff's version of where he was and what he was doing

at the time of the murder of Tiffany Moore. Walsh's state of mind and knowledge is relevant in order to establish that his deliberate failure to investigate the information received from Drumgold was part of his plan to deny Drumgold's civil rights.

The statement is also admissible because the Defendants have made it clear that they intend to argue that that Drumgold's testimony that he was not at the scene of the crime and was on Sonoma Street at the time of the shooting, is a recent fabrication by Drumgold which he coordinated with the Sonoma Street witnesses. Evidence of a prior consistent statement is admissible to rebut an argument of recent fabrication. Fed.R.Evid. 801 (d)(1)(B). U.S. v. DeSimone, 488 F.3d 561, 572-576 (1st Cir. 2007).

**B.    Walsh's Grand Jury Testimony**

Walsh's testimony to the grand jury is admissible as an admission by Walsh. The Plaintiff is not alleging that Walsh is liable to the Plaintiff because of his grand jury testimony. On the other hand, Walsh's grand jury testimony is an admission by Walsh under oath concerning matters that are relevant to this case and is admissible against him pursuant to Fed.R.Evid. 801 (d)(2)(C).

Walsh is liable for his violating the civil rights of Plaintiff by intimidating witnesses, knowingly offered perjured testimony and failing to disclose exculpatory evidence, not for testifying before the grand jury. This Court explained the distinction in its Opinion in Charles v.

City of Boston, 365 F.Supp.2d 82, 90 (D. Mass. 2005), where it explained "where the wrongdoing extends beyond perjury, including extra-judicial acts, the conspiracy defendant cannot use Briscoe immunity as a shield to protect an entire course of unlawful conduct merely because at one point the defendant took the stand." The fact that Walsh cannot be held liable for civil rights violations solely based on his grand jury testimony is an entirely different argument than claiming that the grand jury testimony is somehow privileged and cannot be used against him. There is no basis in case law for that argument.

Plaintiff has set out below the reasons why Drumgold is not collaterally estopped from holding Walsh responsible for his various acts. As argued below, the reason the Supreme Judicial Court's Opinion. In Commonwealth v. Drumgold, 423 Mass. 230, 688 N.E.2d 300 (1996) does not collaterally estop Drumgold from arguing that Walsh violated his civil rights is that the Supreme Judicial Court was not aware of what Walsh had done at the time they reviewed his conduct.

**C.    Judge Volterra's Opinion and the Supreme Judicial Court's Opinion.**

    **1.    Collateral Estoppel**

The Defendants' first argue that Plaintiff is estopped from arguing that Walsh's conduct in taking Drumgold's statement violated Drumgold's civil rights because the Supreme Judicial Court held that any wrong from the illegal action was remedied by suppression. Drumgold is not

collaterally estopped from pursuing his rights in this case because the only remedy granted in the state proceedings was suppression of his statement.

As an initial matter, Walsh's actions in violating Drumgold's Sixth Amendment right and disobeying an order of Judge Martin are admissible to prove Walsh's intent to violate Drumgold's civil rights. Walsh will argue that he was "just doing his job" and had no personal animosity or animus against Drumgold and that any violations of Drumgold's rights was a mistake or accident. Evidence which establishes the absence of mistake or accident or which establishes the relevant intent of a Defendant is admissible. U.S. v. Donovan, 984 F.2d 507, 512, fn.6 (1st Cir. 1993). Walsh's actions are also admissible, as argued above, as proof of an overt act in furtherance of the conspiracy.

The Defendants note that the Supreme Judicial court in Com v. Drumgold, 423 Mass. 230 (1996) discussed whether dismissal was an appropriate remedy as a result of the Commonwealth's misconduct (Id. at 246)[1]. The Defendants argue that because the SJC found that Drumgold was not denied a fair trial if his statement was suppressed, Drumgold cannot argue here that he suffered additional prejudice. Collateral estoppel on that issue is not appropriate unless the prior court fully and fairly considered the issue to be estopped. The defensive use of collateral estoppel is not appropriate when the party against whom it is asserted "lacked a full and fair opportunity to litigate the issue in the first action or other circumstances

---

1 The Defendants' argument here is the same as his argument in support of Summary Judgment and therefore Plaintiff's response is repeated from Plaintiff's Opposition to Walsh's Motion for Summary Judgment.

justify affording him an opportunity to relitigate the issue" Martin v. Ring, 401 Mass. 59, 62, 514 N.E.2d 663, 665 (1985). As the court in Martin v. Ring explained, the first question to be answered when analyzing a collateral estoppel issue is; "was the issue decided in the prior adjudication identical with the one presented in the action in question?" (Id. at 62).

The Supreme Judicial Court did not fully and fairly consider the question of whether Drumgold suffered prejudice as the result of all of the misconduct by Murphy and Walsh. At the time the Supreme Judicial Court considered Drumgold's appeal in 1996 the Boston Police had yet to reveal the full extent of the denial of a fair trial to Drumgold. The Supreme Judicial Court was not aware, for example, that the Boston Police had provided undisclosed hotel rooms and cash to witnesses Antonio Anthony and Ricky Evans, had secretly fixed cases for Ricky Evans had failed to disclose the witness Mary Alexander was suffering from brain disease when she testified, or that the witnesses Tracie Peaks and Olisa Graham had been threatened and intimidated by the police. The Supreme Judicial Court's determination that dismissal was not necessary and that suppression was a sufficient remedy was based upon its finding that the Commonwealth's actions had not affected "the ability of the Defendant to obtain a fair trial after, and in light, of the impropriety" (423 Mass. at 246). The Supreme Judicial Court did not have significant material facts available to it to evaluate whether the Defendant was denied a fair trial because the Boston Police Department failed to disclose that information at trial. The issue of whether Drumgold was denied a fair trial by the Commonwealth's misconduct in illegally obtaining his statement has not been fully and fairly litigated in the state court. Drumgold is not

barred by collateral estoppel from litigating that issue in this case.

The First Circuit indicated, in the case cited by the Defendant, that the issue for collateral estoppel purposes is whether the party to be estopped had the opportunity to fully present the issue to the state court. Willhauk v. Halpin, 953 F.2d 689, 705 (1st Cir. 1991). In this case Drumgold did not have the opportunity to fully and fairly litigate the question of whether he received a fair trial after the unconstitutional actions of the Defendants.

The First Circuit in Johnson v. Mahoney, 424 F.3d 83 (1st Cir. 2005) outlined the type of record necessary to apply a state court finding of no prejudice to a federal § 1983 case. In the state proceeding reviewed in Johnson the Supreme Judicial Court had before it all of the withheld exculpatory evidence (Id. at 94). The SJC analyzed, at length, whether the Defendant was prejudiced when all of the withheld exculpatory evidence was considered (Id. at 94). On that record, the federal court held that collateral estoppell was appropriate. In this case the SJC did not know of the exculpatory evidence and, by definition, had no chance to analyze whether, in light of all the misconduct, the Defendant received a fair trial.

Because the SJC did not have access to the evidence developed in 2003 at the hearing on the Motion for New Trial it made a finding which is directly contradicted by the record in this case. The court held that dismissal was not appropriate because "nothing in this records suggests, nor is there good reason to suppose, that unless this court provides a prophylactic

remedy, police officers are likely to repeat the type of conduct that occurred in this case". Com v. Drumgold, 423 Mass. 230, 246, 668 N.E.2d 300, 313 (1996), (quoting Com v. King, 400 Mass. 283, 290, 508 N.E.2d 1382 (1987)). In fact Judge Volterra's decision not to dismiss the case encouraged Callahan, who inherited the case from Walsh and Murphy after Judge Volterra had suppressed the Defendant's statement, to continue to engage in police misconduct in order to wrongfully convict Drumgold. The Defendants, by the conduct discovered in 2003, proved that the SJC, working on a partial record in 1996, was wrong when it supposed that absent a prophylactic remedy the Boston Police would commit no further misconduct. The Supreme Judicial Court did not have a chance to fully and fairly consider whether Drumgold received a fair trial.

It should also be noted that the Supreme Judicial Court did not consider the issue of unfairness arising from the fact that the Commonwealth learned about a witness, Rena Roiston, who was a potentially very powerful rebuttal witness for the Commonwealth, from the unconstitutional interrogation of Shawn Drumgold. Ms. Roiston was called to rebut Drumgold's testimony that he was home with his girlfriend after the murder. Ms. Roiston is Drumgold's girlfriend's sister. The Commonwealth learned that Drumgold was at his girlfriend's house through the illegally obtained statement. The Defendant is prejudiced when the Commonwealth learns information helpful to its case by violating the Defendant's Sixth Amendment rights. Commonwealth v. Fontaine, 402 Mass 491, 496 (1988). Although the Supreme Judicial Court indicated that theoretically the Commonwealth could have learned the identity of Antonio

Anthony and Paul Durant by use of the Mass. R. Crim. Proc. Rule 14B obligation to disclose alibi witnesses (Id. at 245), information concerning Drumgold's whereabouts after the shooting was not alibi evidence. The Supreme Judicial Court mentioned Ms. Roiston but did not rule on the impact of the Commonwealth unfairly learning of her testimony (Id. at 245). Rena Roiston would not have been known to the Commonwealth even if disclosure of alibi information had been required. The Commonwealth learned of this information and received an unfair advantage over the Defendant by means of taking an illegal statement from him.

The First Circuit held that a plaintiff establishes constitutional harm when a government defendant impermissibly impedes his Sixth Amendment right and gathers information concerning a potential alibi witness which would not have otherwise been known to the government. Cinnelli v. City of Revere, 820 F.2d 474 (1st Cir. 1987). The Supreme Judicial Court has never considered the unfairness of obtaining that information, in light of the total picture of unfairness created by the Boston Police Department. This court has held that a Defendant is not entitled to collateral estoppell in a 1983 case when the state court opinion does not establish that the state court actually decided the issue which the Defendant seeks to estop Wade v. Brady, 460 F.Supp.2d 226, 241-43 (D.Mass. 2006). Drumgold is not estopped from trying that issue in this case.

    **2.**    **Statute of Limitations**

Walsh's conduct in taking Drumgold's illegal statement violated Drumgold's civil

rights. Plaintiff's claim is not barred by the applicable statute of limitations. The Plaintiff has argued that he was wrongfully convicted because of a variety of wrongful acts by Walsh and Callahan. One of the wrongful acts was Walsh's illegal procuring of a statement from Drumgold.

Defendants note in their Memorandum that the Massachusetts Supreme Judicial Court found that the actions by Walsh were illegal. As argued above, the Supreme Judicial Court was not aware of the scope of the illegal acts by Walsh and Callahan. As a result, the court only granted the relief of suppressing the statement and did not dismiss the Complaint. The Plaintiff in this case will establish to the jury that in light of all of the evidence now known, and which was unknown to the Supreme Judicial Court, the statement was not only taken unconstitutionally but was also part of a plan or purpose to wrongfully convict Drumgold.

The wrong which Drumgold complains of is his wrongful conviction. The United States Supreme Court has held that when a plaintiff brings an action under §1983 alleging an unconstitutional conviction or incarceration, the statute of limitations does not begin to run on that claim until the conviction has been invalidated. <u>Heck v. Humphrey</u>, 512 U.S 477, 486-487, 14 S.Ct. 2364, 129 L.Ed.2d 383 (1994). That is exactly the claim made in this case. If Walsh had taken an illegal statement from the Defendant, and the statement had been suppressed and the Defendant had been found <u>not</u> guilty, this particular 1983 action would not have been brought. The gravamen of this 1983 action is that the Defendant was wrongfully convicted. The statute of limitations as to that claim does not begin to run until the conviction is invalidated.

    **3.**    **There Is Ample Evidence From Which A Jury Can Find That Walsh's Conduct In Taking Drumgold's Statement Was Unconstitutional.**

As an initial matter, the Defendants ignore the fact that Walsh's taking of Drumgold's statement was unconstitutional not only because it was in direct violation of the Court's order but also because Walsh violated the Plaintiff's Sixth Amendment Right to Counsel.

Drumgold will testify in Plaintiff's case. Drumgold's expected testimony is set out in the Supreme Judicial Court Opinion in <u>Commonwealth v. Drumgold</u>, 423 Mass. 230, 688 N.E.2d 300, 341 (1996). The court explained when Walsh and Murphy approached Drumgold and asked him if he wanted to make a statement. Drumgold responded: "Ms. Leslie Walker (staff attorney for Roxbury Defendants) told me I didn't have to talk to nobody." Drumgold asked if a lawyer had been appointed to represent him. The officers responded: "No, not at the moment." When Drumgold was brought across the street to the area of the police station, he was told that he was to be questioned. He answered: "For what? There is supposed to be a lawyer representing me." When Drumgold asked whether a lawyer had been appointed to represent him, Walsh falsely responded that there was no one to represent him. (Id. at 232)

This jury will have ample evidence to conclude that Walsh took Drumgold's statement in direct violation of Drumgold's Sixth Amendment right to counsel despite repeated request by Drumgold for representation. The law in 1988 was clear. If a defendant "indicates in any manner and at any stage in the process that he wishes to consult with an attorney before speaking there can be no questions". <u>Commonwealth v. Murray</u>, 359 Mass 541, 546 (1971). A violation of the

Plaintiff's Sixth Amendment Right to counsel by refusing to honor a request for counsel is a violation of the Defendant's civil rights pursuant to §1983. Cinelli v. City of Revere, 820 F.2d 474 (1st Cir. 1987).

Secondly, there is evidence from which this jury could clearly infer that Walsh was aware that Judge Martin had ordered Boston Police detectives not to interrogate Drumgold. The Defendants concede that Superintendent Celester knew that Judge Martin had specifically ordered that Drumgold should not be interrogated by the Boston Police because the counsel who had been appointed for him was not yet present. Leslie Harris, Public Defender in Roxbury District Court, testified unequivocally that Detective Murphy was present when Judge Martin told Deputy Celester that Drumgold was to be removed from the courtroom for "identification purposes only". (Exhibit 1, Testimony of Leslie Harris, pages 28-31) Judge Harris can be called as a witness at trial, if necessary, on this issue.

Judge Martin testified that he had a conversation with Deputy Superintendent Celester and with a Boston Police detective (Exhibit 1, pages 7-9). Walsh's partner Murphy conceded that he was present with Deputy Celester before Judge Martin (pages 111-113). Based on Murphy's testimony, which is admissible as the prior testimony of a deceased person, Fed.R.Evid. 804(b)(1), there is a reasonable inference, confirming Judge Harris' testimony, that Judge Martin was referring to Detective Murphy. Judge Martin insisted that the detective was present during the conversation with Celester (Exhibit 1, page 18). Although Murphy denied that he heard

anything that Judge Martin said concerning interrogation (page 112), Murphy's testimony is contradicted by Judge Martin and Judge Harris' testimony. There is a clear basis on record before this Court that Judge Martin specifically told Celester and Murphy that Drumgold was to be taken from the courthouse for identification purposes only and not for interrogation. (Exhibit 1, 9-10)

Walsh and Murphy were acting jointly in the investigation of this murder. The jury can reasonably infer that Murphy relayed the instruction from Judge Martin to Walsh. The inference is particularly reasonable since the jury can find that Murphy has already testified untruthfully when he denied hearing the statement by Judge Martin. It would be incredible to find that Murphy was given specific instructions by Judge Martin not to interrogate Drumgold and did not mention that fact to his long time partner, Defendant Walsh. The jury is certainly entitled to make the inference of Walsh's knowledge based on evidence expected at trial.

4.   **The Judicial Decisions Entered In The Criminal Proceedings In The Massachusetts State Court Are Admissible At Trial.**

As an initial matter, the decision of Justice Volterra is admissible against the City of Boston because it put the City of Boston on notice that its officers, who were in charge of the investigation of Drumgold on this murder charge, committed egregious misconduct. The evidence will show that the head of the Homicide Division, Lieutenant Daley, was aware of Judge Volterra's Decision and made a conscious decision to ignore it and formed the opinion that

Walsh and Murphy had engaged in good police work. Commissioner Roach will testify that he made no effort to become aware of the details of this finding in connection with the case. This evidence is admissible to show that the City had a practice and policy of condoning and encouraging egregious misconduct by its homicide detectives at the time of this case.

The Opinion of Judge Volterra is also admissible against Defendant Callahan. Callahan will testify that he was aware that the Drumgold's statement had been suppressed by Judge Volterra. Callahan's knowledge that although the statement had been suppressed, the case against Drumgold had not been dismissed for egregious misconduct, is admissible. It bears on Callahan's state of mind when he engaged in similar misconduct. The Plaintiff is entitled to argue that Callahan knew that Walsh got away with egregious misconduct and thus knew that even if he engaged in similar egregious misconduct, Drumgold's conviction was unlikely to be overturned.

The Opinion of Judge Volterra and the Supreme Judicial Court is admissible substantively. The First Circuit has held that a judgment of a State Court is admissible as a public record pursuant to 803(8)(a). Olsen v. Correiro, 189 F.3d 52, 63 (1st Cir. 1999). The court in that case noted the Nipper v. Snipes, 7 F.3d 415 (4th Cir.1993) case cited by the Defendants and chose not to follow it. Even judicial opinions of foreign countries have been ruled admissible pursuant to 803(8)(c). The court in U.S. v. Garland, 991 F.2d 328, 334, 335 (6th Cir. 1993) held that an opinion of the National Public Tribunal of Ghana was admissible pursuant to Rule 803(8)(c). The court specifically held that the judgment in that case was admissible to prove not

just the fact of the judgment but also the substance of the rulings.

Courts have taken judicial notice of prior judicial decisions when they are introduced for a nonhearsay purpose.  See Gilchrist v. Citty, 71 Fed.Appx. 1, 3 (10th Cir. 2003) (opinions of courts to show parties were aware of them); Henson v. CSC Credit Services,  29 F.3d 280, 284 (7th Cir. 1994)  (effect on hearer); Commodity Futures Trading Commission v. Co Petro Marketing Group, Inc., 680 F.2d 573, 584 (9th Cir., 1982) (to show effect on hearer); Holsey v. Collins, 90 F.R.D. 122, 127 n. 12 (D.C. Md. 1981) (same); People v. Hill, 72 Cal.Rptr.2d 656, 682 (1988) (effect on hearer); City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 1998, 80 Cal.Rptr.2d 329, 339 n. 12 (1998) (legally operative conduct); Poole v. Poole, 701 So.2d 813, 817 (1997) (effect on hearer); Holste v. Burlington Northern R. Co., 592 N.W.2d 894, 911 (1999) (effect on hearer); Bryan v. Blue,  724 S.W.2d 400, 402 (Tex.App.1986) (legally operative conduct).

The Decision by Judge Volterra that Walsh's actions in taking the statement from Drumgold violated Drumgold's constitutional rights is also binding on Walsh pursuant to the doctrine of offensive collateral estoppel. The court in Acevedo-Garcia v. Monroig, 351 F.3d 547 (1st Cir. 2003) set out the four factors to be considered in determining whether to apply doctrine of non mutual offensive collateral estoppel.

(1) Identity of issues, that is, that issue sought to be precluded is same as that which was

involved in prior proceeding,

(2) Actuality of litigation, that is, that point was actually litigated in earlier proceeding,

(3) Finality of earlier resolution, that is, that issue was determined by valid and binding final judgment or order, and

(4) Centrality of adjudication, that is, that determination of issue in prior proceeding was essential to final judgment or order.

In this case, all those factors cut in favor of estopping Walsh from now denying that the statement he took from Drumgold was in violation of Drumgold's constitutional rights. First, the issue to be resolved here is the same as the issue before Judge Volterra and the Supreme Judicial Court. The question is whether Walsh violated Drumgold's rights when he obtained the statement. Justice Volterra, after a full evidentiary hearing, ruled that he did. The Supreme Judicial Court upheld that decision.

Clearly the issue was actually litigated in the State court since it was central to the murder prosecution of Drumgold. Third, the Motion to Suppress was finally affirmed by the Supreme Judicial Court in its Opinion. Fourth, the Motion to Suppress was central to Judge Volterra's Decision on Plaintiff's Motion. Thus the offensive collateral estoppel is appropriate in this case.

A second potential issue that could be raised by the Defendants is whether they had a mutuality of interest with the Commonwealth, that is, whether the Commonwealth fairly and

fully represented Walsh's interest when it defended and argued against Drumgold's Motion to Suppress. The First Circuit in Cardillo v. Zyla, 486 F.2d 473, 475 (1st Cir. 1973) held that an individual police defendant is in privity with the state prosecuting a criminal case such that the individual defendant can take advantage of collateral estoppel to defeat plaintiff's claim. In this case, Plaintiff argues the same privity between an individual police defendant and the state. The privity between an individual officer and the state should apply equally when the Plaintiff seeks collateral estoppel against the individual defendant.

**D.     Evidence Concerning Walsh's Conduct In Obtaining Drumgold's Statement Is Not Excludible Pursuant To Rule 404(b).**

The Plaintiff does not offer Walsh's conduct in obtaining an illegal statement from Drumgold as evidence of other bad acts by Walsh pursuant to Rule 404(b). Walsh's actions in connection with illegally taking Drumgold's statement are, in fact, part of the case against Walsh. The illegal statement is evidence of Walsh carrying out his plan to wrongfully convict the Plaintiff and admissible evidence of an overt act in furtherance of the conspiracy. U.S. v. Arboleda, 929 F.2d 858, 866 (1st Cir. 1991). As argued above, there is ample evidence from which the jury can find Walsh was aware that he was violating Drumgold's Sixth Amendment Rights in light of Drumgold's repeated requests for an attorney. Walsh ignored those requests. Walsh, as explained above, also had knowledge that Judge Martin had ordered him not to interrogate Drumgold. These actions are part of the conspiracy to wrongfully convict Drumgold and are not excludable pursuant to Rule 404(b).

**E.    Evidence Concerning Walsh's Action In Connection With Taking Illegal Statement From Drumgold Should Not Be Excluded Pursuant to Rule 403.**

As argued above, the Walsh's actions are direct evidence of his violating the Plaintiff's civil rights. There is no unfair prejudice that arises from establishing to the jury that Walsh violated Plaintiff's civil right. There is no right to exclude this evidence pursuant to Rule 403.

### CONCLUSION

The Defendants' Motion should be denied.

Respectfully submitted,

By His Attorneys,

 /s/ Michael Reilly

Michael W. Reilly, Esq.
Tommasino & Tommasino
Two Center Plaza
Boston, MA   02108
617 723 1720
BBO 415900

/s/ Rosemary Curran Scapicchio

Rosemary Curran Scapicchio, Esq.
Four Longfellow Place
Boston MA 02114
617 263 7400
BBO 558312