UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAWN DRUMGOLD,<br>　　　　Plaintiff<br><br>　　v.<br><br>TIMOTHY CALLAHAN,<br>FRANCIS M. ROACHE,<br>PAUL MURPHY, RICHARD WALSH,<br>and THE CITY OF BOSTON,<br>　　　　Defendant | C.A. NO.: 04-11193NG |

**DEFENDANTS' SUPPLEMENTAL BRIEF
REGARDING EXHIBITS, AND SCOPE OF TRIAL (PHASE I)**

Counsel met on Monday, February 11, 2008 in order to confer on those exhibits and witnesses that may be stipulated and agreed to, as directed by the Court's pretrial order. The meeting was unsuccessful in large part due to the parties' differences regarding the scope of the first phase of trial. Unfortunately, the parties remain unable to agree even following the Court's rulings on the various motions in limine during the pretrial conference of February 12. This disagreement stems from a dispute over the scope of the case to be tried during Phase I. Defendants respectfully suggest that resolution of this dispute is necessary in order for a joint exhibit list to be prepared.

The documents that remain in dispute essentially are: (1) police reports of interviews conducted with witnesses; (2) audio cassette recordings of witness interviews[1] and (3) transcripts

---

[1] Defendants submit that an independent ground exists for introduction of the audio cassette interviews, mainly, rebuttal. Since part of Plaintiff's case in chief is that the interviews were conducted in an intimidating, threatening or coercive manner, Defendants offer the audio cassettes as the best evidence by which this jury may assess Plaintiff's claims. The audio cassettes reflect interviews conducted respectfully, in conversational tone, and oftentimes in the presence of parents and other family members. Witnesses were given the opportunity to listen and correct the tape, and verbally gave their approval to the voluntariness of the recorded statement.

of the same.  Plaintiff has refused to stipulate to <u>some</u> of these materials, on the grounds that they are hearsay[2].

Defendants believe that Plaintiff intends to challenge the adequacy of the homicide investigation not only with regard to the witnesses identified in the Complaint at ¶¶ 14(a) – (k) (the allegedly intimidated/coached witnesses and withheld exculpatory issues),  but also intends to attack the entire investigation *in toto*, including challenging the evidence that was already presented to the criminal trial judge and jury (and to which no new claim of malfeasance is made).   If Plaintiff does so, Defendants must be permitted to rebut by demonstrating the investigatory steps that were taken by Walsh and Callahan.

Specifically, Defendants believe that Plaintiff proposes to introduce evidence of the following:

### 1. Wool caps recovered by BPD Officer Robert Merner

Attorney Rappaport called Officer Merner, who testified that he responded to a telephone call to recover wool caps, that he then turned over to Det. Walsh.  Judge Alberti held a voir dire, and asked "What's the point of all this?  It's a nonissue as far as I can see."  Attorney Rappaport concurred.  <u>Ex. 1</u>, Trial Transcript, Day 6.

### 2. Motor vehicle stop of white jeep by BPD Officers Tony Smith and Mark DeLuca

A white jeep was stopped by Smith and DeLuca minutes after the shooting, after a police broadcast announced that its occupants were wanted in connection with the shooting.  DeLuca and Smith were called by Attorney Rappaport on the issue, and Smith testified at trial that he identified the passenger as Theron "Apple" Davis.  <u>Ex. 2</u>, Trial Transcript, Days 7 and 8.

---

[2]  Immediately following the pretrial conference, counsel for Defendants asked counsel for Plaintiff if they intended to pursue a "shabby  (i.e., negligent as opposed to deliberately corrupt) investigation" theory at trial since if they did not, the dispute over the police reports, audio cassettes and transcripts would essentially become moot.  Plaintiff counsel did not reply.

### 3. Theron "Apple" Davis and London Williams

Plaintiff's theme at trial, and now, is that Defendants knew the "real" perpetrators were Davis and Williams, but consciously disregarded evidence that pointed to them throughout the investigation. Attorney Rappaport called Davis as a defense witness at trial, and Davis invoked his Fifth Amendment rights. During the colloquy that followed, Attorney Beauchesne informed the Court that the Commonwealth's theory was that "the white Suzuki was involved in this case and that London Williams was the driver, that my best information is that there were two shooters and I believe one of them is sitting right next to you [in the witness box]" and that had he sufficient evidence, he'd have presented a case against Davis to the grand jury. Ex. 3, Day 7 (pgs. 120, 125).

If Plaintiff does proceed to test the adequacy of the entire homicide investigation, including the red herring issues outlined above, Defendants must introduce in rebuttal all the evidence they gathered during that investigation, including reports of witness interviews, audio recordings of interviews, and the transcripts of same. Defendants submit that these materials should be admitted as proof of the investigation that was conducted and the information that was developed during the course thereof. Defendants do not offer these materials for the truth of the matter asserted therein and so a hearsay objection does not lie. Quite simply: if Plaintiff puts before the jury the adequacy of the criminal investigation, Defendants have the right to present the jury with their investigation in every respect[3].

Defendants respectfully request that the Court allow them to be briefly heard on this issue at the Court's earliest convenience.

---

[3] Defendants submit that there can be no good faith argument made that Attorney Rappaport would have tried the case differently had he known of the alleged misconduct raised in this case (as argued to salvage the "23 Sonoma Street" witnesses Graham and Hullum). He was defending his client on first degree murder charges, the defense theory was that the wrong man had been identified, and that Davis was the real shooter. He had every reason to probe each witness on whether they saw Davis at the scene.

3

|  |  |
|---|---|
|  | **Respectfully Submitted,** |
|  | **Defendant,** |
|  | **TIMOTHY CALLAHAN,** |
|  | By his attorneys, |
|  |  |
|  | /s/ Mary Jo Harris |
|  | Mary Jo Harris (BBO #561484) |
|  | Morgan, Brown & Joy LLP |
|  | 200 State Street |
|  | 11th Floor |
|  | Boston, MA  02109 |
|  | Phone:  (617) 523-6666 |
|  | Fax:  (617) 367-3125 |
|  |  |
|  | and |
|  |  |
|  | /s/ William M. White, Jr. |
|  | William M. White, Jr. (BBO #546283) |
|  | William M. White & Associates, LLC |
|  | One Faneuil Hall Marketplace |
|  | Third Floor |
|  | Boston, MA  02109 |
|  | Phone:  (617) 720-2002 |
|  | Fax:  (617) 723-5600 |
| **Defendants,** | **Defendant,** |
| **CITY OF BOSTON AND** | **RICHARD WALSH,** |
| **FRANCIS M. ROACHE,** | By his attorney, |
| By their attorney, |  |
|  | /s/ Hugh R. Curran |
| /s/ John P. Roache | Hugh R. Curran (BBO #552623) |
| John P. Roache, Esq. (BBO #421680) | Bletzer & Bletzer PC |
| Patrick J. Donnelly, Esq. (BBO #651113) | 300 Market Street |
| Roache & Associates P.C. | Brighton, MA  02135 |
| 66 Long Wharf | Phone:  (617) 254-8900 |
| 4th Floor | Fax:  (617) 254-5522 |
| Boston, MA  02110 |  |
| Phone:  (617) 367-0330 |  |
| Fax:  (617) 367-0172 |  |

Dated:  February 12, 2008