UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SHAWN DRUMGOLD<br>Plaintiff, | ) ) ) ) | |
| v. | ) ) | C.A. NO.: 04-11193NG |
| TIMOTHY CALLAHAN,<br>FRANCIS M. ROACHE,<br>PAUL MURPHY,<br>RICHARD WALSH, and<br>THE CITY OF BOSTON,<br>Defendants. | ) ) ) ) ) ) ) ) | |

**DEFENDANT CALLAHAN AND WALSH'S MOTION
FOR JUDGMENT AT THE CLOSE OF PLAINTIFF'S CASE**

Now come Defendants Timothy Callahan and Richard Walsh and, pursuant to Fed.R.Civ.P. Rule 50(a), request that the Court direct a verdict in their favor on all counts of the Plaintiff's Complaint, as follows:

**1.  Plaintiff has failed to adduce sufficient evidence that either Defendant engaged in a conspiracy to deprive the Plaintiff of his constitutionally protected rights.**

There has been no evidence at trial that would support a fact finder's conclusion that Defendants Walsh and / or Callahan engaged in a conspiracy to violate Plaintiff's rights. There is no express evidence of an "agreement," nor can it be inferred that such an agreement existed between these defendants, or between one or both of them and any other law enforcement officer. Nor is there evidence of any overt act undertaken in furtherance of any such conspiracy. *See Earle v. Benoit*, 850 F.2d 836 (1st Cir.1988).

As argued below, Defendant Walsh ceased his engagement in the investigation as of June 1989, when Defendant Callahan was assigned to the case. There is no evidence

1

that Walsh had any contact with Ricky Evans. And, for the reasons detailed below, there is no evidence that the interviews of Tracie Peaks or Mary Alexander were improper, nor is there evidence that either witness was coerced or led into testifying falsely. In the absence of a wrongful overt act, and in the absence of any agreement to violate Plaintiff's rights to a fair trial, there can be no finding of a conspiracy.

> **2.  Plaintiff has failed to adduce sufficient evidence that the interview of Tracie Peaks, and the conduct of showing of a photographic array to her, was violative of Plaintiff's constitutionally protected rights, or that her testimony was in any way suggested, forced, or coerced by the efforts of either Defendant.**

Tracie Peaks testified at trial that she knew Shawn Drumgold before August 19, 1989, and had in fact known him as the boyfriend of her friend, Rana Roisten's, sister. Tr. Transcript at Day 6, page 68. She testified that she "did not recall" whether anyone told her how to testify at the grand jury or at trial. Tr. Transcript at Day 6, page 82, and that she admitted at the Motion for New Trial hearing in 2003 "[she] thought [she] was being truthful" and that "no one gave [her] a script." Tr. Transcript at Day 6, page 85. She testified that she "[doesn't] remember" whether anyone ever told her what to say during her testimony. Tr. Transcript at Day 6, pg. 133.

Tracie Peaks testified that no detectives told her what to say, Tr. Transcript at Day 6, pg. 41; and she had no contact with the investigating detectives after they left her house after showing her the photo array. Tr. Transcript at Day 6, page 51.

Finally, Tracie Peaks has no knowledge as to who (if anyone) threatened her mother, Betty, that she (Tracie) would be arrested if she failed to appear in court.

> **3.  Plaintiff has failed to adduce sufficient evidence that either Defendant Callahan or Defendant Walsh were aware that Mary Alexander**

2

**suffered from any medical condition that affected or could affect her ability to perceive or testify truthfully.**

There is no evidence that Mary Alexander was aware that she had a brain tumor in August 1988, and in fact, the only medical evidence obtained during discovery in this case is that Mary Alexander was first diagnosed with a brain tumor in February 1989. There is no record of Mary Alexander obtaining treatment for any symptoms of this illness, or any other, prior to February 1989. There is no evidence that Defendant Walsh had any involvement or contact with Lola Alexander at any point following the August 26, 1989 interview with Mary Alexander (during which she failed to make an identification).

Lola Alexander, Mary's mother, testified that she did not recall telling Betty Peaks, her landlord, that Mary had cancer; she also did not recall telling her employer; nor did she inform her family. Tr. Transcript, Day 9, pages 42 – 45. She testified that she "doesn't remember things back then" due to the misfortunes in her family life. Tr. Transcript, Day 9, page 52.

Tracie Peaks testified that she lived in the same two-family house as Mary Alexander and her family during the time period 1988 – October 1990, and at no time during that period did Tracie learn from either Mary or her mother that Mary had been "sick," nor did she observe any behaviors by Mary that caused her to question her competency. Tr. Transcript at Day 6, pgs. 127 – 130.

Defendant Callahan respectfully suggests that there is no competent evidence that Lola Alexander informed him that Mary suffered from brain cancer. Lola Alexander testified that the detectives who first came to her house after the shooting, on August 19, 1989, were Callahan and another (perhaps Murphy). Tr. Transcript, Day 9, at p. 26. Lola

3

Alexander also testified that the photo array was conducted after Mary Alexander was discharged from the hospital following brain surgery.  It is undisputed that Callahan was not among the homicide detectives investigating the case, and was not one of the detectives engaged in showing the photo array to Tracie Peaks or Mary Alexander.  The <u>only</u> evidence that Defendant Callahan was aware of Mary Alexander's illness comes from the flawed and wholly unreliable testimony of Lola Alexander.  This evidence is insufficient to support a finding against Callahan on the claim that Mary Alexander's health condition was withheld.

Finally, there <u>is</u> evidence from the trial record that Plaintiff's trial counsel was aware that Mary Alexander had had surgery in February 1989.  Notwithstanding counsel's failure of memory as to what he was aware of, it is apparent that he had knowledge of a serious health issue with regard to Mary Alexander.  Defendants cannot be held liable for failing to turn over evidence of which Plaintiff was aware, or with the reasonable exercise of diligence could discover.

**4.    Plaintiff has failed to adduce sufficient evidence that either Defendant Callahan or Defendant Walsh "fed" information to Ricky Evans in an effort to suborn his perjurious testimony at the Plaintiff's criminal trial.**

Plaintiff has adduced no evidence that Defendant Richard Walsh had any contact with Ricky Evans at any time, and any claim that Walsh participated in a scheme to "feed" Evans details of the murder of Tiffany Moore fail for complete want of proof on this issue.

Plaintiff also fails to establish that Callahan elicited false testimony from Evans. The evidence at trial establishes that Evans in fact informed Callahan of information related to the Tiffany Moore murder (see Tr. Transcript, Day 4, page 94).

**5.     Plaintiff has failed to adduce sufficient evidence that either Defendant Callahan or Defendant Walsh deliberately withheld information concerning Ricky Evans' housing and/or furnishing of funds to him from the prosecution.**

Plaintiff has adduced no evidence that Defendant Richard Walsh had any contact with Ricky Evans at any time, and no evidence to suggest that Walsh had any knowledge concerning the circumstances of Evans' being placed in a hotel and/or being provided with money for food.  He is entitled to judgment as a matter of law on all claims that he withheld exculpatory information from the prosecution on these issues.

Plaintiff has adduced no evidence that Defendant Timothy Callahan's actions in regard to housing Ricky Evans were deliberately withheld from the prosecution, or that these actions were undertaken deliberately in order to violate Plaintiff's rights to a fair trial.  No constitutional deprivation occurs in the absence of culpable – that is, deliberate – conduct;  and even if a jury could conclude that Callahan failed to inform the prosecution of Evans' housing, if the conduct of the Defendant is accidental, careless, or merely negligent, no constitutional violation exists. *See Daniels v. Williams*, 474 U.S. 327 (1986);  *see also Arizona v. Youngblood,* 488 U.S. 51 (1988) (holding that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.")   Since the records of the District Attorney's Office, through the memorandum of Paul Connolly to Laura Scherz, indicate that the Office was aware that Evans had been "relocated to a

5

hotel," the evidence compels the conclusion that Callahan did not deliberately withhold this information.

| | |
|---|---|
| **Defendant,** | **Defendant,** |
| **RICHARD WALSH,** | **TIMOTHY CALLAHAN,** |
| By his attorney, | By his attorney, |
| | |
| /s/ Hugh R. Curran_____ | /s/ Mary Jo Harris_____ |
| Hugh R. Curran (BBO# 552623) | Mary Jo Harris (BBO# 561484) |
| Bletzer & Bletzer, P.C. | Morgan, Brown & Joy, LLP |
| 300 Market Street | 200 State Street |
| Brighton, MA 02135 | Boston, MA 02109 |
| (617) 254-8900 | (617) 523-6666 |

DATED:  April \_\_\_, 2008

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the ____ day of April, 2008, I electronically filed with within document with the Clerk of the United States District Court for the District of Massachusetts, using the CM/ECF System. The following participants have received notice electronically:

**For Plaintiff Shawn Drumgold,**
Michael W. Reilly, Esq.
Tommassino & Tommasino
Two Center Plaza
Boston, MA 02108-1904

**For Plaintiff Shawn Drumgold,**
Rosemary Curran Scapicchio, Esq.
Four Longfellow Place, Suite 3703
Boston, MA 02114

**For Defendant, City of Boston**
Susan Weise, Esq.
Chief of Litigation
Assistant Corporate Counsel
City of Boston/Law Department
City Hall, Room 615
Boston, MA 02201

**For Defendants City of Boston and Francis M. Roache,**
John P. Roache, Esq.
The Law Offices of John P. Roache
66 Long Wharf
Boston, MA 02110

**For Defendant Richard Walsh,**
Hugh R. Curran, Esq.
Bletzer & Bletzer, P.C.
300 Market Street
Brighton, MA 02135

/s/ Mary Jo Harris_____