UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
_____
                              )
SHAWN DRUMGOLD,               )
     Plaintiff,               )
                              )
     v.                       )   Civil Action No. 04cv11193-NG
                              )
TIMOTHY CALLAHAN,             )
FRANCIS M. ROACHE,            )
PAUL MURPHY,                  )
RICHARD WALSH, and            )
THE CITY OF BOSTON,           )
     Defendants.              )
_____)
```
GERTNER, D.J.

<u>Ruling on Trial Transcripts</u>
April 3, 2008

Upon consideration of the parties' arguments, the Court will allow the transcripts of the underlying criminal trial in <u>Commonwealth v. Drumgold</u> to be submitted to the jury during the first phase of deliberations, but only for certain purposes, as described below. As such, the kinds of arguments that counsel will be allowed to make in closing arguments regarding the transcripts will be limited to those purposes. The Court will instruct the jury in accordance with these limitations.

First, with respect to Tracie Peaks: The defendants argue that Peaks' recantation -- her trial testimony in this case -- is false. In support of that position, they point to the testimony Peaks gave at the underlying criminal trial, as well as the testimony of other witnesses that tended to corroborate her version of events at that time. Thus, the trial transcript is

important insofar as it bears on the credibility of Peaks' testimony in this § 1983 action.

With respect to Mary Alexander: The defendants argue that the defendants did not know of the extent of Mary Alexander's medical condition and/or impairment in 1988 and 1989 and, thus, cannot be held responsible for failing to communicate it either to state prosecutors or to defense counsel.  In support of this position, they point to Mary Alexander's state trial testimony, including her cross examination, to suggest that nothing she said or did during the trial gave any of the parties -- defense or prosecution -- notice of the extent of her medical condition.  In addition, defendants can point to other witnesses who corroborate Mary Alexander's testimony to suggest that they were not on notice of any impairment.  The jury could find that this evidence, along with other evidence in the case, suggests that the officers did not know of her brain cancer.  (It should also be noted that the same evidence suggests that defense counsel was not on notice of Mary Alexander's condition.) The jury could also find that regardless of whether Alexander gave any outward indication of her medical condition, the defendants nonetheless knew of the brain cancer from other sources, namely, Mary Alexander's mother.  There is no question that _if_ the jury found the latter -- that defendants knew of the brain cancer in a major witness -- the failure to disclose that knowledge would be a <u>Brady</u> violation as a matter of law.  See <u>United States v.</u>

Calhelha, 456 F. Supp. 2d 350, 367 (D. Conn. 2006) ("Information coming within the scope of this principle [Brady] ...includes not only evidence that is exculpatory, i.e., going to the heart of the defendant's guilt or innocence, but also evidence that is useful for impeachment, i.e., having the potential to alter the jury's assessment of the credibility of a significant prosecution witness.") (quoting United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998).

    Finally, with respect to Ricky Evans: The defendants argue that Evans' recantation, as with Tracie Peaks, was false, and point to what he said at the state trial in support of that position.  Conversely, the plaintiff argues that Evans' testimony that he had received no benefit for his testimony, in the presence of one of the defendants, was false and that the defendant made no effort to correct it.  The trial transcript is important for the same reason as with Tracie Peaks: it bears on Evans' credibility in this trial.  However, there is no question that *if* the jury found that Evans was lodged in a hotel for a period of time and received compensation, and/or was receiving a benefit for his testimony in terms of his pending cases, failure to disclose would be a Brady violation as a matter of law. United States v. Giglio, 405 U.S. 150, 154-155 (1972) (Due Process Clause requires that an agreement made with a government witness for testimony in exchange for monetary compensation or

favorable treatment in the criminal justice system should be disclosed as impeachment evidence).

In sum, the trial transcripts may be used to buttress or undermine the credibility of the witnesses in the trial at bar; to demonstrate Mary Alexander's condition; or to show what was or was not known to counsel during the trial.  The trial transcripts may not be used to argue proximate cause, which will be an issue for the third phase of this trial.  Nor may the trial transcripts be used to argue what omission was or was not material, i.e. whether or not the contested information would have made a difference in the in the outcome of the criminal trial.  First, that approach elides materiality and proximate cause.  Second, a Brady violation in the § 1983 context, as distinguished from a criminal appeal or habeas corpus petition, is to be judged as of the time of the alleged conduct, namely, prior to trial.

**SO ORDERED.**

**Date: April 3, 2008**             /s/ NANCY GERTNER U.S.D.J.