UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHAWN DRUMGOLD, | ) | C.A. NO. 04-11193NG |
|     Plaintiff | ) | |
| | ) | |
| v | ) | |
| | ) | |
| TIMOTHY CALLAHAN, ET AL. | ) | |
|     Defendant(s) | ) | |
| | ) | |

**PROPOSED SUMMARY OF OTHER CASES OFFERED IN THE STAGE TWO TRIAL**

The Plaintiff submits the following proposed summary of the cases to be discussed in Stage Two of the trial.

**A.**   *Commonwealth v. Salman*, **387 Mass. 160, 439 N.E.2d 245 (1982)**

On June 17, 1980, defendants Salman and Barton were arrested and charged with a number of armed robberies. (Id., at 161). In November of 1980, a grand jury returned grand jury returned 29 indictments against defendant Salman and 32 indictments against defendant Barton. (Id., at 160-161). A number of those indictments were obtained solely as a result of the testimony of only one grand jury witness, Boston Police Detective Arthur Linsky of the Boston Police department. (Id., at 161). Detective Linsky testified that some of the victims identified the defendants from a photo array. The victims and a different Boston Police detective testified that another individual, Sherman A. Carter, was identified by the victims as the perpetrator. (Id., at 161-163).

Defendants filed a motion to dismiss the indictments, alleging that false testimony was knowingly presented to the grand jury. (Id., at 161). The trial court agreed and

dismissed 37 of the indictments without prejudice. (Id., at 164). On August 18, 1982, Justice Hennessey of the Supreme Judicial Court, affirmed the holding of the trial court. (Id., at 166-168).

B. *Commonwealth v. Lewin*, 405 Mass. 566, 542 N.E.2d 275 (1989)

On February 17, 1988, Boston Police Officer Carlos A. Luna obtained a search warrant based on information provided by a "reliable informant." (Id., at 567). During an attempt to execute the search warrant, Boston Police Detective Sherman Griffiths was shot and killed. (Id., at 567). Defendant Lewin was charged with the murder of Detective Griffiths, and on May 11, 1998, a grand jury indicted him for murder. (Id., at 568, 570). The record later showed that substantially all of Officer Luna's testimony at the probable cause hearing was false. (Id., at 570).

The Defendant moved to dismiss the indictments. (Id., at 573). Suffolk Superior Court Justice Grabau allowed the motion, finding that Luna had intentionally failed to follow Police procedures. (Id., at 573). On a motion for reconsideration, the District Attorney's Office filed affidavits from several Boston Police officers stating that the informant named in the search warrant did not exist and that the informant had been fabricated in order to obtain the warrant. (Id., at 574-576). Judge Grabau denied the Commonwealth's motion. He held that dismissal of the indictments was required because the pattern of misconduct from the tragic death of Detective Griffiths to the present had been "pervasive, egregious, deliberate and intentional." (Id., at 580). On appeal, Supreme Judicial Court Justice Wilkins "agree[d] with the motion judge that the

Police engaged in egregious conduct." (Id., at 566). He held that there was "contemptible and disgusting misconduct by Police officers in blatant violation of their sworn duties" and "their criminal and reprehensible behavior intrudes on the constitutional rights of all of us by undermining the integrity of our system of constitutional protections." (Id., at 586). He ruled, however, that the case should be remanded back to the Superior Court. (Id., at 588).

### C.   *Commonwealth v. Tarahn Harris*, SUCR 91-25141, Findings of Fact and Rulings of Law on Defendant's Motion to Dismiss, J. Borenstein (June 17, 1994)

On April 20, 1991, two boys were shot in Roxbury and later pronounced dead. (p. 2). The grand jury heard evidence against Tarahn Harris. Boston Police Officer Herbert Spellman was the prosecution's primary witness, and the only adult witness to testify. (p. 3-4). On November 21, 1991, a Suffolk County grand jury returned two indictments against Tarahn Harris, for murder in the first degree. The defendant moved to dismiss the indictment. The Commonwealth opposed dismissal. (p. 1).

In ruling on the defendant's Motion to Dismiss, Superior Court Justice Borenstein found that the City of Boston Police officer Herbert Spellman "knowingly and intentionally falsified, reckless fabricated, distorted, misled, and deceived the grand jury." (p. 18). Officer Spellman distorted Harris' statement, suggesting to the jury that Harris made incriminating statements, while failing to inform the jury that Harris actually made exculpatory statements as well. (p. 19). He assigned to Harris statements that Harris had not made and knowledge that Harris may not have had. (p. 6, 9, 14, 19). Judge Borenstein was "convinced that Officer Spellman knowingly falsified and distorted the

evidence against Tarahn Harris…for the purpose of strengthening what appeared to be a weak case against Tarahn Harris." (p. 19).

The defendant's motion was allowed, and both indictments were dismissed without prejudice. (p. 1).

**D.     *Commonwealth v. Christopher Harding*, SUCR 081158-62, SUCR 081406-07, Memorandum and Order on Defendant's Motion for New Trial, J. Volterra (December 22, 1997)**

On August 18, 1989, a shooting took place in the Mission Hill Housing Project where Mr. Harding lived. (p. 5). Boston Police officers captured one suspect but the other fled. Boston Police Officer Terrence O'Neil claimed he saw Mr. Harding running away and that Mr. Harding fired three shots, one of which was fired at him. (p. 7-9). Boston Police Officer Mitchell wrote a report supporting O'Neil's claims. (p. 5). Boston Police officer Michael Stratton testified at trial that he witnessed Mr. Harding shoot at O'Neil. (p. 5-6). The officers' version of the events was proven to be false. (p. 17).

The Boston Police department falsely stated that Officer Mitchell was out of town during the trial and could not testify because they were concerned that Officer Mitchell might recant her earlier false report. (p. 3, 10, 13, 15). Judge Volterra of the Suffolk Superior Court found that Christopher Harding was denied his federal and state constitutional and statutory right to summons and elicit testimony from Police witnesses who were critical to the defense when supervisory officers at the Police department ordered Officer Mitchell not to go to the courthouse as a witness. (p. 13, 15). Officer Mitchell was a necessary witness for the defense. She had recorded statements in her

Police report from the responding officers to the incident, Officers Stratton, O'Neil, and Callan. Moreover, Mitchell herself was a percipient witness to the incident and could have provided valuable exculpating evidence to the defense. (p. 13). The court concluded that Harding was entitled to a new trial based on the misconduct of the Police supervisors who ordered Officer Mitchell not to appear at Harding's trial, and then lied to the prosecutor and to trial Judge Steele to cover up their misconduct. (p. 17-18).

      The defendant's motion for new trial was allowed. (p. 22).

**E.**    *Commonwealth v. Santos*, **402 Mass 775 (1988)**

      On October 28, 1983 Louis Santos was charged with a murder which occurred on that day. Boston Police detectives Murphy and Defendant Walsh in this case took a 32-year-old man suffering from Down syndrome who was a witness to the shooting and asked him to do an identification at the stationhouse. At the time of the identification, the defendant Santos was the only non-uniformed black person in the police station. The Massachusetts Supreme Judicial Court concluded that the stationhouse identification conducted by Murphy and Walsh was unduly suggestive and had to be suppressed. (Id. at 782).

**F.**    *Commonwealth v. Toro*

      Angel Toro was charged with the April 19, 1981 murder of Kathleen Downey at the Howard Johnson's Hotel in Dorchester, MA. Boston Police detectives Steven Murphy and Defendant in this case Richard Walsh prepared a report on May 1, 1981 concerning

their conversation with a Malden Police Department detective. The detective told them that an individual who was shot and killed while committing a robbery in Malden fit the general description of the suspect in the murder of Kathleen Downey and that the shotgun used by that suspect appeared to be similar to the shotgun used in the Downy murder and that there was information that the suspect had been involved in other holdups. The Police Report about this investigation by Steven Murphy and Defendant Walsh was not disclosed to Angel Toro or his lawyer. In 1983 Angel Toro was convicted of murder. Mr. Toro was granted a new trial and the Commonwealth issued a nol pross in October of 2004.

G.  *Commonwealth v. Bennett*

That matter is outlined in the United States Attorney's investigative report to be offered pursuant to Fed.R.Evid. 803 (8) based on the testimony of Ralph Martin.

|  |  |
|---|---|
| Respectfully submitted,<br>Attorney for Plaintiff,<br>Shawn Drumgold | Respectfully submitted,<br>Attorney for Plaintiff,<br>Shawn Drumgold |
| /s/ Michael W. Reilly | /s/ Rosemary Curran Scapicchio<br>Rosemary Curran Scapicchio, Esq. |
| Michael W. Reilly, Esq.<br>Tommasino & Tommasino<br>2 Center Plaza<br>Boston, MA  02108<br>(617) 723-1720<br>BBO# 415900 | Four Longfellow Place<br>Suite 3703<br>Boston, MA  02114<br>(617) 263-7400<br>BBO# 558312 |