UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                )
SHAWN DRUMGOLD,                 )
        Plaintiff               )
                                )
v.                              )
                                )          04-CV-11193-NG
TIMOTHY CALLAHAN, FRANCIS       )
M. ROACHE, RICHARD WALSH and    )
 THE CITY OF BOSTON,            )
        Defendants              )
_____)
```

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION IN LIMINE TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S CITED CASES OF ALLEGED PAST POLICE MISCONDUCT

Defendants the City of Boston and Francis M. Roache move the Court *in limine* to preclude from the evidence in the trial against them all of the cases of alleged past police misconduct cited by the Plaintiff as documents in the Plaintiff's possession and witnesses regarding those cases were not timely disclosed by the Plaintiff in advance of trial.  This motion is also submitted pursuant to F.R.C.P. 37(c)(1).

Defendants further move on separate grounds for the Court *in limine* to preclude from the evidence in the trial against them certain cases of alleged past police misconduct pursuant to Rule 402 of the Federal Rules of Evidence as these cases are not relevant to proving the elements of the Plaintiff's claims against the City of Boston and Commissioner Francis M. Roache.  The cases in question pertain to the following:  Christopher Harding, Willie Bennett, Tarahn Harris, Donnell Johnson, Neil Miller, Marlon Passley, Angel Toro, Louis Santos and Stephen Cowans.

A. **Plaintiff Must Be Precluded From Introducing Evidence Pertaining to All of His Cited Cases of Alleged Pas Police Misconduct for Failure to Comply With Fed.R.Civ.P. 26(a)(1)(A)(ii).**

In support of his allegation of a custom, practice or policy of the City of Boston to violate the civil rights of citizens, the Plaintiff identifies A) seven separate instances in his complaint, B) one from his opposition to summary judgment, and C) adds four more in his portion of the Joint Pretrial Memorandum.  The City of Boston responded to the first seven allegations of past misconduct in its answer to the complaint and made initial disclosures under Fed.R.Civ.P. 26(a)(1)(A)(ii) based on the notice given in Plaintiff's complaint.  However, the Plaintiff's initial disclosures do not indicate that he was in possession of any documents nor identifies any witnesses pertaining to the alleged misconduct cases he cites in his complaint and never supplemented such disclosures pursuant to the rules.  See Plaintiff's Initial Disclosures attached hereto as Exhibit A.  The cases must be excluded pursuant to Fed.R.Civ.P. 37(c)(1).[1]

In opposing the Defendants motion for summary judgment, the Plaintiff offered five (5) cases in support of his claim against the City of Boston as evidence of a custom, policy or practice permitting violations of citizens constitutionally protected civil rights.  These cases concerned Keith D. Salmon, Albert Lewin, Willie Bennett, Tarahn Harris and Christopher Harding.  See Plaintiff's Concise Statement of Disputed Material Issues of Fact, ¶ 80 (a-e).  Of these five, the case of alleged police misconduct with regard to Albert Lewin was not previously disclosed to the Defendants by the Plaintiff in either his complaint or initial disclosures.  See Plaintiff's Concise Statement of Disputed Material Issues of Fact, ¶ 80 (b).

---

[1] Rule 37(c)(1) provides in pertinent part, "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."  F.R.C.P. 37(c)(1).

On the eve of trial in the Joint Pretrial Memorandum filed with the Court, the Plaintiff offers additional instances of alleged past police misconduct not previously disclosed.  The Plaintiff lists as witnesses Neal Miller, Marlon Passley, Angel Toro and Louis Santos.  The Plaintiff also lists various documents or other materials which he intends to offer into evidence at trial with regard to these newly raised allegations of past police misconduct.  For example, the Plaintiff lists the following exhibits in his Pretrial Memorandum: photographs of Stephen Cowans, Marlon Passley, Angel Toro and Neal Miller; the transcript of a hearing in Commonwealth v. Passley; a Superior Court decision in Commonwealth v. Toro; the release order in Commonwealth v. Miller; and a Superior Court decision in Commonwealth v. Cowans. None of these materials and witnesses was listed in the Plaintiff's initial disclosures filed with this Court nor were those disclosures ever supplemented to include information pertaining to these other alleged instances of past police misconduct which the Plaintiff now offers to introduce at trial.

The Plaintiff was under an independent obligation to either identify or timely produce materials pertaining to all of these cited instances pursuant to Fed.R.Civ.P. 26(a)(1)(A)(ii). "[T]he duty of a party to seasonably supplement its disclosures under Rule 26(e) 'carries with it the implicit authority of the district court to exclude such materials when not *timely* produced even if there was no rigid deadline for production.'"  Wilson, et al. v. Bradlees of New England, Inc., et al., 250 F.3d 10, 20 (C.A.1 (N.H.) 2001) *citing* Fusco v. General Motors Corp., 11 F.3d 259, 265 (1st Cir.1993) (a pre-1993 amendment case); *See also*, Williams v. Monarch Machine Tool Company, Inc., 26 F.3d 228, 230 (1st Cir.1994).  Allegations of past police misconduct is a central issue of Plaintiff's claims asserted against the City of Boston in this case.  Therefore, these witnesses and documents pertaining to these raised instances of alleged past police

misconduct must have been timely disclosed and not on the eve of trial. Therefore, the Plaintiff

must be precluded from introducing such evidence and making any reference to these asserted

incidents.

**B.    Plaintiff Must Be Precluded Pursuant to Federal Rule of Evidence 402 From Introducing Evidence Pertaining to Certain Cited Cases of Alleged Pas Police Misconduct As They Are Not Relevant.**

Those cases which Plaintiff has identified to date that he intends to offer at Phase II of

the trial of this action are not supportive of his claims of municipal and supervisory liability

against the City of Boston and former commissioner Francis M. Roache. The cases cited by the

Plaintiff concern situations where neither Callahan nor Walsh would have been on notice that

officers, such as themselves, could act with impunity in violating this Plaintiff, Shawn

Drumgold's, civil rights because the cited instances concern situations that for the most part

either began after the Plaintiff was convicted for the murder of Tiffany Moore or overlapped

very briefly. Furthermore, as these cases cited by the Plaintiff involved allegations of

misconduct that arose after Commissioner Roache's tenure as commissioner, there is no support

from these cited cases for the Plaintiff's assertion that Commissioner Roache had active or

constructive notice that there was a problem with officer conduct that needed to be addressed.

The cases which the Plaintiff intends to introduce are not relevant and must be excluded.

### 1.  Municipal Liability Under 42 U.S.C. § 1983

There are two essential elements that must be satisfied to establish a claim under §1983:

"(i) that the conduct complained of has been committed under color of state law, and (ii) that this

conduct worked a denial of rights secured by the Constitution or laws of the United States."

Grant v. John Hancock Mutual, Life Insurance Co., et al., 183 F.Supp.2d 344, 355 (2002) (Citing

Martinez v. Colon, 54 F.3d 980, 984 (1st Cir.1995) (Citing Chongris v. Board of Appeals, 811

F.2d 36, 40 (1st Cir.), cert. denied, 483 U.S. 1021 (1988); accord West v. Atkins, 487 U.S. 42, 48, 101 L. Ed. 2d 40, 108 S. Ct. 2250 (1988); Daniel v. Williams, 474 U.S. 327, 330-31, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986).  The Supreme Court held in Albright v. Oliver that §1983 is not a source of substantive rights, "but merely provides 'a method for vindicating federal rights elsewhere conferred.'" (Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n.3, 61 L. Ed. 2d 433, 99 S. Ct. 2689 (1979))).

The Albright Court instructs that "the first step in such a claim is to identify the specific constitutional right allegedly infringed." Id.  Drumgold in the instant case alleges violations of his constitutional rights, specifically those secured by the Fifth, Sixth and Fourteenth Amendments protecting his right to due process and his right to a fair trial.

Plaintiff has alleged several constitutional violations against several Boston Police Officers that were driven by a policy of the City.  However, unless the Plaintiff can first prove that a constitutional violation has occurred, his claims must fail.   A municipality cannot be held liable under Section 1983 unless the Plaintiff proves that the municipality's policy or custom caused the resulting injury or deprivation of rights.  See Judge v. City of Lowell, 160 F.3d 67, 78 (1st Cir. 1998) (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)).   The Plaintiff must demonstrate that through its deliberate conduct, the City was the moving force behind the alleged injury.  See Harris, 489 U.S. at 397 (citing Monell, 436 U.S. at 694).  The City cannot be liable to the Plaintiff for having a policy that causes constitutional violations unless such a constitutional violation has occurred.

The Plaintiff alleges that the City "had a policy, custom, or practice of failure to train its police officers adequately in the laws regarding exculpatory evidence, perjury, and other laws, rules, and regulations relating to the rights of a citizen charged with a crime."  The Plaintiff

further alleges that "[t]hese policies, customs, or practices resulted in implicit tolerance and

authorization of continuing misconduct and caused the plaintiff's improper deprivation of his

constitutional rights."

A municipality cannot be held liable under Section 1983 unless the Plaintiff proves that

the municipality's policy or custom caused the resulting injury or deprivation of rights.  See

Judge v. City of Lowell, 160 F.3d 67, 78 (1st Cir. 1998) (citing Monell v. New York City Dept.

of Social Services, 436 U.S. 658, 694 (1978)).  The custom "must be unambiguously established

by official policy makers' conduct, and may not be simply suggested by isolated actions of some

employees."  Woodley v. Town of Nantucket, 645 F.Supp. 1364, 1378 (D.Mass 1986).  In City

of Oklahoma City v. Tuttle, the Supreme Court held that a jury could not be permitted to infer a

"policy" of inadequate training from a single incident of police misconduct but rather that

substantial evidence of a policy of custom may be required to establish liability against a

municipal defendant:

> "Proof of a single incident of unconstitutional activity is not
> sufficient to impose liability under Monell, unless proof of the
> incident includes proof that it was caused by an existing,
> unconstitutional municipal policy, which policy can be attributed
> to a municipal policy maker.  Otherwise the existence of the
> unconstitutional policy and its origin, must be separately proved.
> *But where the policy relied upon is not itself unconstitutional,*
> *considerably more proof that the single incident will be necessary*
> *in every case to establish both the requisite fault on the part of the*
> *municipality and the causal connection between the "policy" and*
> *the constitutional deprivation*."  City of Oklahoma City v. Tuttle,
> 471 U.S. 808, 823 (1985).  [Emphasis added.]

The isolated incidents from which the Plaintiff tries to create an unambiguous policy are

inadequate to prove such a policy.  "A single incident of misconduct, without other evidence,

cannot provide the basis for municipal liability under [Section] 1983."  See Bordanaro v.

McLeod, 871 F.2d 1151, 1161 n.8 (1st Cir. 1989) (emphasis added); See also, Armstrong v.

Lamy, 938 F.Supp. 1018 (D. Mass 1996). "[M]unicipal liability under Section 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. Harris, 489 U.S. 378, 389 (1989). See also, Oklahoma City v. Tuttle, 471 U.S. at 823.

"It is only when the 'execution of the government's policy or custom ... inflicts the injury'" that a municipality may be held liable under Section 1983. See Springfield v. Kibbe, 480 U.s. 257, 267 (1987). The burden is on the Plaintiff to identify a municipal policy or custom that caused his injury. See Bd. Of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Brown, 520 U.S. at 403-404. "A 'policy' giving rise to liability cannot be established merely by identifying a policymaker's conduct that is properly attributable to the municipality." Id. at 397.

The instances of alleged police misconduct which the Plaintiff seems poised to introduce in Phase II of the trial occurred after the arrest of Drumgold and investigation of Tiffany Moore's murder. Therefore, these cited allegations of police misconduct occurring after the arrest of the Plaintiff and investigation of the death of Tiffany Moore are not evidence of a City custom, policy or practice that resulted in the violation of Drumgold's rights as they could not have been the motivation for the Defendants' alleged misconduct resulting in Drumgold's conviction. See Rizzo v. Goode, 423 U.S. 362, 373-374 (1976) and City of Springfield, Massachusetts v. Kibbe, 480 U.S. 257, 268-270 (1987). These cases are too far remote from the instant action and must not be used as a basis for attempting to establish a *Monell* claim against

the City.  (Exhibit A, Plaintiff's Complaint ¶ 27).  See also Bordanaro v. McLeod, 871 F.2d 1151, 1161 n.8 (1st Cir. 1989) and Armstrong v. Lamy, 938 F.Supp. 1018 (D. Mass 1996).

The Plaintiff must also demonstrate that through its deliberate conduct, the City was the moving force behind any alleged injury.  See Harris, 489 U.S. at 397 (citing Monell, 436 U.S. at 694).  To prove that a custom or policy is the "moving force" behind the alleged injury, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the injury.  See Brown, 520 U.S. at 406-407.  Thus, the Plaintiff here must show that the City's actions were culpably taken and demonstrate a direct causal link between that action and the Plaintiff's injury.

The Supreme Court "is very sensitive to the requirement of proving a 'causal link' between the town's policy and the alleged deprivation."  Woodley, 645 F. Supp. At 1379-1380 (citing e.g., Tuttle, 471 U.S. 808 (1985)).  "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held solely for the actions of its employee."  Brown, 520 U.S. at 404 (citation omitted).  To permit a lesser standard of fault "would result in de facto respondeat superior liability on municipalities...a result...rejected in Monell."  Harris, 489 U.S. at 392 (citing Monell, 436 U.S. at 693-694)

For municipal liability to attach there must be an affirmative link between the municipality's actions or inaction and any constitutional violations committed by the individual officers.  The municipality's actions must be the cause of and the moving force behind any deprivation of constitutional rights in order to hold the municipality liable.  Oklahoma City v. Tuttle, 471 U.S. 808 (1985).  A persistent and widespread practice which has gained the force of custom, which practice was known to, or should have been known to, the appropriate

policymakers of the municipality, and which was tolerated by those policymakers, the municipality will be liable for acts taken pursuant to that custom. Monell v. Department of Social Servs., 436 U.S. 658 (1978); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Bordanaro v. McLeod, 871 F.2d 1151 (1st Cir.1989). Liability against a municipality may be based upon the existence of a custom "found in 'persistent and widespread . . . practices of [municipal] officials [which] [a]lthough not authorized by written law, [are] so permanent and well-settled as to [have] the force of law.'" Spell v. McDaniel, 824 F.2d 1380, 1386 (4th Cir. 1987), quoting Monell v. Department of Social Servs., 436 U.S. 658, 690-691 (1978), citing and quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970).

## 2.  Supervisory Liability Under 42 U.S.C. § 1983

Plaintiff claims Roache should be liable to him because he insufficiently supervised, trained, and/or disciplined other police officers before Callahan, Murphy and/or Walsh, such that these individual defendant officers believed they could commit unlawful practices including perjury, and the withholding of exculpatory evidence. The U.S. Supreme Court has held that respondeat superior cannot serve as a basis for supervisor liability. Board of County Comm'rs of Bryan Co. v. Brown, 520 U.S. 397, 403 (1997, nor can a simple failure to exercise proper supervisory control. Daniels v. Williams, 474 U.S. 327, 331 (1986). Therefore, under Section 1983, a supervisor may only be found liable for conduct resulting from his own acts or omissions. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); Figueroa v. Aponte-Rogue, 864 F.2d 947, 953 (1st Cir. 1989).

Plaintiff must prove that Roache's conduct or inaction was intentional, grossly negligent, or must have "amounted to a reckless or callous indifference to the constitutional rights of others." Gutierrez-Rodriguez, 882 F.2d at 562. Courts have traditionally required a showing

that the superior was either a primary actor involved or a prime mover behind the underlying

alleged violation.  Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999).  See Delaney v.

Dias, 415 F. Supp. 1351, 1353-54 (1st Cir. 1976) (many abuse of police power cases have held

offending officers liable while dismissing complaints against superiors who had no personal

involvement in alleged misconduct).  Moreover, the First Circuit has held that the supervisor's

knowledge of his subordinate's activities is central to the determination of "whether the former

ought to be liable (or immune from suit) for the latter's unconstitutional acts."  Camilo-Robles,

175 F.3d at 46.

The evidence which the Plaintiff is poised to offer at trial does not establish that Roache

had any knowledge or played any role in the unconstitutional acts alleged by Plaintiff.

Accordingly, Plaintiff cannot prove that Roache's alleged conduct or inaction was intentional,

grossly negligent, or amounted to a reckless or callous indifference to the constitutional rights of

the Plaintiff.  Furthermore, Plaintiff cannot show that Roache was a prime mover behind the

alleged constitutional violations.  Moreover, Plaintiff cannot offer any evidence that Roache had

personal knowledge beforehand of any of the officers' intention, thereby imposing upon him a

duty to investigate the situation or to prevent the officers' conduct.  See O'Malley v. Sheriff of

Worcester County, 415 Mass. at 143, 612 N.E.2d 641 (1993).  Finally, Plaintiff may not simply

allege that there was a weakness in training or supervision to establish that the supervisor was

deliberately indifferent to his constitutional rights.  See Burns v. Loranger, 907 F.2d 233, 239 (1st

Cir. 1990) (stating that weakness in police training or supervision does not amount to deliberate

indifference to citizen's constitutional rights.)

Rather the Plaintiff must "prove an "affirmative link' between the street-level misconduct

and the action or inaction of supervisory officials."  Gutierrez-Rodriguez, 882 F.2d at 562.  The

First Circuit has held that a state official may be liable under Section 1983 for the unconstitutional behavior of subordinates if the official's actions were affirmatively linked to the subordinates' unconstitutional behavior such that it could be characterized as "supervisory encouragement, condonation, or acquiescence or 'gross negligence amounting to deliberate indifference'." Muniz Souffront v. Alvarado, 115 F. Supp.2d 237, 245 (1st Cir. 2000) quoting Tuttle, 471 U.S. 808, 823 (1985). Case law demands a showing of an affirmative link either through direct participation or conduct that amounts to condonation or tacit authorization. Camilo-Robles, 175 F.3d at 44; see also, Rogan v. Menino, 175 F.3d 75, 78 (1st Cir. 1999). In order to demonstrate this, Plaintiff must prove "distinct acts or omissions that are a proximate cause" of the constitutional violation. Figuero, 864 F.2d at953.

### 3.  Facts

Tiffany Moore was murdered on August 19, 1988. Shawn Drumgold was convicted for the murder in the first degree of Tiffany Moore on October 13, 1989. The investigation of Moore's homicide and the prosecution and conviction of Shawn Drumgold spanned a period just days short of fourteen (14) months. It is within this fourteen month period that the Plaintiff alleges that officers Callahan, Murphy and Walsh violated his constitutionally protected civil rights. He alleges that these officers violated his civil rights without any fear of being meaningfully disciplined by their superiors within the Boston Police Department based on a then existing custom, policy or practice. The Plaintiff alleges that this custom, policy or practice allowed for 1) the inadequate training of officers and 2) the inadequate supervision and discipline of officers by the Boston Police Department. Francis M. Roache served as commissioner of the Boston Police Department from 1985 through on or about June 23, 1993.

Based on the Plaintiff's proposed exhibit list for Phase II of the trial and witnesses listed in the joint witness list for trial, the Defendants offer the following cases which it believes the Plaintiff intends to offer evidence in Phase II of the trial that must be excluded as they are not relevant:

### a. Misconduct Cases Cited in Plaintiff's Complaint

1. Christopher Harding

On August 18, 1989 Christopher Harding was arrested and later found guilty on May 25, 1990 for various charges including two counts for armed assault with intent to murder.  The Massachusetts Appeals Court affirmed Harding's conviction and denying his motion for a new trial on July 28, 1994.  Based on grounds not previously raised in his prior motion, Suffolk Superior Court Judge Vieri Volterra granted Harding a new trial on December 22, 1997.  The events surrounding this case began less than two months before the conviction of the Plaintiff. Harding was granted a new trial after Commissioner Roache left the Boston Police Department.

2. Willie Bennett

Carol Stuart was murdered on October 23, 1989.  Her husband, Charles Stuart, suffered a serious gunshot wound from this incident.  Charles Stuart described the assailant among other things as a black male, age 28-34, 5 ft., 10 in., 150-160 lbs.   Based on the testimony of several witnesses to a meeting which occurred on October 24, 1989, Willie Bennett became a prime suspect in the homicide investigation.  Bennett was arrested and information presented to a Suffolk County grand jury.  Based in large part on a statement made to members of the Suffolk County District Attorney's office by Matthew Stuart, Charles Stuart's brother, and the apparent suicide of Charles Stuart on January, 4, 1990, Bennett was not indicted with regard to the murder of Carol Stuart.  Matthew Stuart was subsequently indicted for his participation in the 1989

murder of his sister-in-law.  On or about November 2, 1992, Matthew Stuart pleaded guilty and was sentenced to three to five years in prison for his role in disposing of the gun his brother Charles Stuart alleged used to shoot his pregnant wife.  Matthew Stuart was represented in these criminal proceedings by the Honorable Nancy Gertner prior to her appointment in 1994 as a justice to the United States District Court.

The investigation of Willie Bennett for the murder of Carol Stuart was the subject of enormous scrutiny by many parties, including the Boston Police Department, the City of Boston and the U.S. Attorney for the District of Massachusetts.  After conducting an extensive investigation, the U.S. Attorney, Wayne Budd, on July 10, 1991 declined to bring federal criminal charges against officers that participated in the investigation.  The events of this case began after the conviction of the Plaintiff and were resolved during the tenure of Commissioner Roache.

3.  <u>Tarahn Harris</u>

Tarahn Harris was arrested on April 21, 1991 for the murders of Korey Grant and Charles Copney the previous evening.  Harris was indicted for those murders by a Suffolk County grand jury on November 21, 1991.  On Harris' motion to the Suffolk Superior Court, Judge Isaac Borenstein dismissed the indictments against Harris on June 17, 1994.  The events surrounding this case occurred after the conviction of the Plaintiff.  The indictments against Harris were dismissed after Commissioner Roache left the Boston Police Department.

4.  <u>Donnell Johnson</u>

On the night of October 31, 1994 Jermaine Goffigan was shot and killed by at least two gunmen outside his home while counting his Halloween candy.  A woman named Crystal Brown was also wounded during the assault.  Donnell Johnson was arrested on November 1, 1994 and

subsequently charged in connection with that incident. Johnson was indicted by a Suffolk

County grand jury on December 13, 1994 for the murder of Goffigan and for the shooting of

Brown. Johnson's bench trial commenced on March 25, 1996 in the Boston Division of the

Juvenile Court Department for murder and related offenses concerning the death of Jermaine

Goffigan and the shooting of Crystal Brown. Johnson was found delinquent.

      In 1994, a juvenile charged with a crime had the right to a trial before a judge in Juvenile

Court. If the juvenile were not satisfied with the adjudication of delinquency or with the

disposition of the case, the juvenile had the right to appeal the case for a trial by jury. The effect

of the appeal by the juvenile for a jury trial was to nullify the finding of delinquency and the

disposition imposed at the bench trial.

      Johnson's de novo jury trial commenced on Monday, November 18, 1996. Johnson was

found to be delinquent by a jury for each of the offenses and sentenced to 18 to 20 years.

Commonwealth v. Kent K., a juvenile, 427 Mass. 754 (1998). On July 7, 1998, the Supreme

Judicial Court of Massachusetts affirmed the delinquency adjudication. Based on new evidence

Johnson was released in November 1999 and in or about March 2000 the Suffolk County District

Attorney's office filed a Nolle Prosequi. The events surrounding this case occurred both after

the conviction of the Plaintiff and Commissioner Roache left the Boston Police Department.

## b. Additional Cases Cited By Plaintiff From His Witness List (Pretrial Memorandum) and Exhibit List re: Trial Stage Two

### 5. Neil Miller

      In August and September of 1989 three women were sexually assaulted in Boston. These

assaults occurred on August 3rd, August 24th and September 30th. All three of the assaults were

very similar in nature. After being identified by the victim of the August 24, 1989 assault, Neil

Miller was arrested on November 15, 1989. Miller was convicted for the sexual assault and

other associated crimes in December 1990.  In 2000 a grant to the Boston Police Department

allowed various cold cases to be tested for DNA evidence and identification.  Samples from the

three sexual assaults that were previously connected to Miller identified another individual,

Lawrence Taylor, as the assailant.  In or about May 10, 2000, Miller was released and a Nolle

Prosequi filed with the court by the Suffolk County District Attorney's office.  The events

surrounding this case occurred after the conviction of the Plaintiff.  The DNA testing which

identified an assailant other than Miller and which formed the basis for his release came about

after Commissioner Roache left the Boston Police Department.

6. <u>Marlon Passley</u>

On the evening of August 11, 1995, two men on a motorcycle pulled up alongside a

group of people on Nelson Street in Dorchester.  The passenger on the motorcycle alighted from

the bike and fired into the group, killing Tennyson Drakes and seriously wounding two others.

Eye witnesses identified Marlon Passley as the shooter.  Passley was charged and subsequently

convicted for these crimes before the Suffolk Superior Court in 1996.  The Supreme Judicial

Court upheld Passley's conviction in 1999.  See <u>Commonwealth v. Passley</u>, 428 Mass. 832

(1999).  Based on testimony from a drug dealer facing charges in federal court, another

individual was identified to law enforcement as the shooter, and Passley was released in April

1999.  In 2000 the Suffolk County District Attorney's office filed a Nolle Prosequi with regard

to Passley and the events of that night.  The events surrounding this case occurred both after the

conviction of the Plaintiff and Commissioner Roache left the Boston Police Department.

Moreover, there is no allegation of any misconduct committed by members of the Boston Police

Department.

7.  Angel Toro

Kathleen Downey was robbed and murdered on Easter Sunday, April 19, 1981 at the

Howard Johnson's Hotel in Dorchester.  Several witnesses identified Angel Toro as the assailant

and he was subsequently arrested and indicted on charges of armed robbery and first-degree

murder.  Toro's first trial in April 1983 ended in a mistrial.  At the second trial in June 1983, a

Suffolk Superior Court jury convicted Toro of the crimes charged.  The Supreme Judicial Court

affirmed Toro's conviction on July 10, 1985.  See Commonwealth v. Toro, 395 Mass. 354

(1985).  On September 13, 2004, the Suffolk County District Attorney's office filed a motion to

vacate Toro's conviction and grant him a new trial based on the discovery that a report, authored

by Sgt. Det. Stephen Murphy, had not been disclosed to Toro prior to his trial.  A Suffolk

Superior Court judge granted the Commonwealth's motion on September 16, 2004.  The

Commonwealth filed a Nolle Prosequi with regard to Toro and the murder of Kathleen Downey

on October 5, 2004.  Defendant Richard Walsh participated in the original investigation of this

case under the supervision of the late Stephen Murphy.  There is no evidence of any misconduct

on the part of Defendant Richard Walsh with regard to the investigation of the events of April

19, 1981.  The events surrounding this case occurred long before the conviction of the Plaintiff

and Commissioner Roache's tenure.  In addition, any allegation of misconduct arose long after

Commissioner Roache left the Boston Police Department.

8.  Louis Santos

On October 28, 1983, Coleen Maxwell, a social worker, was walking to the Ashmont

train station in Dorchester with her client, Charles Bartick, aged thirty-two and born with

Down's Syndrome, when they were attacked and robbed by three individuals.  Bartick was hit

over the head.  Maxwell left Bartick and pursued her attackers.  She was subsequently shot and

killed by one of the attackers. All three assailants fled the scene of the crime. Louis Santos eventually became a suspect in the investigation and was identified by both Bartick and two high school students on their way home from football practice. Defendant Richard Walsh and the late Paul Murphy participated in the investigation of the case against Louis Santos and an in-station identification of Santos by Bartick.

Santos was tried and convicted by a Suffolk Superior Court jury for first-degree murder, armed robbery and other related charges on October 4, 1985. On appeal the Supreme Judicial Court, among other things, held that the in station identification of Santos made by the developmentally challenged witness was impermissibly suggestive and reversed and remanded the case for a new trial. See Commonwealth v. Santos, 402 Mass. 775 (1988). Santos was retried in March 1990 and a Suffolk Superior Court jury returned a verdict of not guilty.

This case does coincide roughly with a time frame that would be supportive of the Plaintiff's case. However, it is not relevant because there is no allegation of misconduct against Defendant Richard Walsh or any of the other investigating officers. Neither the Supreme Judicial Court nor the presiding judge at Santos trial in 1985 even hinted that officers involved committed misconduct. Therefore, this case is not relevant to prove Plaintiff's claims against the City of Boston and Commissioner Roache.

9. Stephen Cowans

Stephen Cowans was convicted for numerous crimes, including the assault with intent to murder Sgt. Gregory Gallagher of the Boston Police Department, on June 30, 1998. Mr. Cowans was granted a new trial and the Commonwealth filed a Nolle Prosequi on or about February 2, 2004. The events surrounding this case occurred both after the conviction of the Plaintiff and Commissioner Roache left the Boston Police Department.

## Conclusion

For the reasons stated herein, Defendants request that the Court rule in limine that late disclosed cases of alleged past police misconduct, and/or the cases pertaining to Christopher Harding, Willie Bennett, Tarahn Harris, Donnell Johnson, Neil Miller, Marlon Passley, Angel Toro, Louis Santos and Stephen Cowans as they are not relevant, be excluded from the evidence of this case, and may not be the subject of question or comment by Plaintiff at trial.

Respectfully submitted,
By Defendants City of Boston and
Francis M. Roache
Through their attorneys,

  /s/ John P. Roache_____
John P. Roache (BBO# 421680)
Patrick J. Donnelly (BBO# 651113)
Roache & Associates, P.C.
66 Long Wharf
Boston, Massachusetts 02110
Date:   April 3, 2008                    Tel.: (617) 367-0330

## CERTIFICATE OF SERVICE

I, John P. Roache, hereby certify that on April 3, 2008, I served a copy of the above upon counsel of record by filing with the ECF/Pacer Case Management System.

/s/ John P. Roache_____
John P. Roache