UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAWN DRUMGOLD,         )<br>    Plaintiff                        )<br>                                       )<br>v                                     )<br>                                       )<br>TIMOTHY CALLAHAN, ET AL. )<br>    Defendant(s)                 )<br>                                       ) | C.A. NO. 04-11193NG |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF THE ADMISSIBILITY OF
JULY 10, 1991 REPORT OF THE UNITED STATES DEPARTMENT OF JUSTICE**

The Defendant has offered a document titled "Press Release" issued by the U.S. Department of Justice on July 10, 1991 pursuant to Fed.R.Evid. 803 (8)(C). (Attached hereto as Ex 1.) This Memorandum of Law addresses its admissibility and relevancy.

**A.    THE REPORT IS ADMISSIBLE PURSUANT TO FED.R.EVID. 803 (8)(C).**

The Rule provides in pertinent part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth…(C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

The United States Supreme Court in <u>Beech Aircraft Corp. v. Rainey</u>, 488 U.S. 153, 109 S. Ct. 439 (1988), resolved a long-standing conflict as to the admissibility, under Rule 803(8)(C), of evaluations, conclusions, and opinions contained in investigative reports. The Court held that portions of investigatory reports otherwise admissible under Rule 803(8)(C) are not inadmissible merely because they state a conclusion or opinion. As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it is admissible along with other portions of the report. <u>Beech Aircraft Corp. v. Rainey</u>, 488 U.S. 153, 170, 109 S. Ct.

439 (1988) (Judge Advocate General report concerning the cause of an air crash, which was not barred from admission in civil proceedings by any act of Congress).  The Court held that the rule should be interpreted broadly in favor of admissibility;

> A broad approach to admissibility under Rule 803(8)(C), as we have outlined it, is also consistent with the Federal Rules' general approach of relaxing the traditional barriers to "opinion" testimony…We see no reason to strain to reach an interpretation of Rule 803(8)(C) that is contrary to the liberal thrust of the Federal Rules. Id., at 450.

The key issue on admissibility is whether the report is "satisfies the Rule's trustworthiness requirement."  Schwartz v. United States, 149 F.R.D. 7, 9 (D.Mass. 1993); Beech Aircraft Corp. v. Rainey, 488 U.S. at 170.  See also O'Dell v. Hercules, Inc., 904 F.2d 1194, 1204 (8th Cir. 1990) cited with approval by the First Circuit in Lubanksi v. Coleco Industries, 929 F.2d 42, 46 (1st Cir. 1991); Schwartz v. United States, 149 F.R.D. 7, 9 (D.Mass. 1993).

In Limone v. United States, 497 F. Supp. 2d 143, 156-157 (D.Mass. 2007), this Court admitted a report of the United States House of Representatives Committee on Government Reform under Rule 803(8).  The report, entitled "Everything Secret Degenerates: The FBI's Use of Murderers as Informants", concerned an investigation into FBI misconduct in the Deegan case.  Although the government contested both the admissibility and the weight to be given to the report, this Court admitted the evidence as a public record, leaving open the question of its weight, to be given in the final opinion. (Id. at 156, n. 16).

Public investigations of police misconduct are admissible as "public reports" pursuant to Rule 803(8)(C).  In Montiel v. City of Los Angeles, 2 F.3d 335, 341 (9th Cir. 1993), the Ninth Circuit discussed the admissibility of the Report of the Independent Commission on the Los Angeles Police Department 168 (1991) ("the Christopher Commission Report"), which was an examination of police practices in Los Angeles after the beating of Rodney King by uniformed police officers.  The Court in Montiel held that, "[T]he district court's cursory denial of Montiel's Rule 803(8)(C) motion concerns us.

The district court should have presumed the Christopher Commission Report was trustworthy and,…shifted the burden of establishing its untrustworthiness to the City." Montiel, *supra*, at 341.  See also Blair v. City of Pomona, 223 F.3d 1074, 1081 (9th Cir. 2000) (Court took judicial notice of the Christopher Commission Report).

The United States Attorney's release meets the elements of Rule 803(8)(C). Admissibility under Rule 803(8)(C) requires: (1) that the report is a report of a public office or agency; (2) that the document set forth "actual findings"; and (3) that the findings contained in the report result from an "investigation made pursuant to authority granted by law." Rule 803(8)(C) (2007); United States of America v. Davis, 826 F.Supp. 617, 621-622 (D.R.I. May 7, 1993); Beech Aircraft Corp. v. Rainey, 488 U.S. at 170.

First, the report is the report of the U.S. Department of Justice and the U.S. Attorney's Office. Secondly, the document sets forth "actual findings". The report at Page 19 sets out the findings made as a result of an investigation. These are factual findings as a result of an investigations as opposed to policy recommendations, opinions or suggestions. Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 109 S.Ct. 439 (1988). Thirdly, the findings contained in the report result from an investigation made pursuant to authority granted by law. The United States Attorney's Office is fully authorized by law to investigate violations of the Federal Criminal Civil Rights statutes, 18 U.S. §§241 and 242. The investigation of these matters is well within the authority of the U.S. Attorney's Office.

Once the requirements of the rule are met, the proffered evidence should be admitted unless the party opposing the admission of the evidence makes an affirmative showing of untrustworthiness.  Kehm v. Proctor & Gamble Mfg. Co., 724 F.2d 613, 618 (8th Cir. 1983). In Gentile v. County of Suffolk, 926 F.2d 142 (2d Cir. 1991), the Court found no error in the lower court's decision to admit selected portions of a report by a state investigatory commission concerned with past misconduct of the County Police Department and the District Attorney's Office.  The Second Circuit noted that under Fed. Rule Evid. 803(8) (C), government investigatory reports are presumed to be admissible and the party opposing the admission of the

report has the burden of going forward with "negative factors" that would outweigh the presumption of admissibility. Id., at 148. The Defendant bears the burden of satisfying the court that the Report is untrustworthy and should be excluded. Kehm v. Proctor & Gamble Mfg. Co., 724 F.2d 613, 618 (8th Cir. 1983).

The First Circuit has explained that "Trustworthiness, in the context of the evidentiary rule governing admissibility of public records, refers to matters such as whether the evidence is self-authenticating or contemporaneously compiled by a person of adequate skill and experience." Blake v. Pellegrino, 329 F.3d 43, 48 (1st Cir. 2003). In this case, the report is both self-authenticating and contemporaneously compiled by a person of adequate skill and experience.

Mr. Martin, at his deposition, testified that he was the prosecutor who led the investigation concerning this matter (Ex 2 P 8) and that he was assigned to this investigation by the United States Attorney Wayne Budd (Ex 2 P 10) and that the report is the fair summary of the investigation (Ex 2 P 11). The report itself sets out the authenticating information which establishes its trustworthiness. The report at Page 1 provides

> This release summarizes the results of the joint investigation by the United States Attorney's Office and the Federal Bureau of Investigation into allegations of violations of the Federal Criminal Civil Rights statutes, 18 U.S.C. §241 and 242, by members of the Boston Police Department during their investigation of the homicide of Carol Stuart.

The report at Page 19, after setting out its conclusions, explains

> This evidence was developed through an extensive and thorough review of investigations conducted by the Suffolk County District Attorney, the Massachusetts Attorney general, and a joint FBI and federal grand jury investigation conducted by this office, which consisted of interviews, re-interviews, testimony under oath, as well as utilizing investigative tools such as immunity.

The report on its face clearly meets the trustworthiness requirement of rule 803 (8)(C).

### B. THE REPORT IS RELEVANT TO THE CASE AGAINST THE CITY.

The Plaintiff will argue that the violations of Plaintiff's civil rights were caused, in part, by the Boston Police's failure to properly train homicide detectives, failure to implement regulations to control homicide investigations, failure to supervise homicide detectives and failure to evaluate and review the performance of homicide detectives. The testimony will be offered through the Plaintiff's expert, Dr. Michael Lyman.

The Defendant is expected to argue that the policies and procedures of the City of Boston adequately regulated the conduct of homicide detectives and were reasonably calculated to prevent violation of civil rights and therefore any violations which occurred in connection with the Plaintiff in this case were simply an aberration.

The Report of the U.S. Attorney's Office establishes that in October of 1989, at the exact time the Plaintiff was on trial in this case, the same homicide unit was violating the rights of the criminal defendant Willie Bennett. The Boston Police Homicide Unit used almost the exact same techniques of coercion and intimidation of civilian witnesses, use of actual or implied "threats of arrest", supplying witnesses with crucial facts previously unknown to them for purposes of enhancing witnesses' knowledge of incriminating facts and the using coerced statements in affidavits to obtain search warrants (Ex 1 P 19). That evidence is relevant to support Dr. Lyman's testimony that what happened to the Plaintiff in this case was a predictable result of the City's failure to properly control and supervise its officers and that what was done to the Plaintiff in this case was not an aberration but was a result of the City's failure to control.

Similarly, the allegations against former Commissioner Roache are that he totally failed to supervise or control the homicide detectives and made no efforts to assure that they did not violate civil rights despite his actual knowledge from previous cases that there was legitimate reasons to be concerned about whether civil rights of the Plaintiff would be honored. Commissioner Roache is expected to testify that he appropriately delegated authority and that his appropriate delegation of authority to what he determined were competent supervisors was reasonably sufficient to prevent violation of civil rights.

The fact that an almost identical violation of civil rights occurred at the same time in 1989 is relevant to show that the procedures adopted by Commissioner Roache were woefully inadequate and that Commissioner Roache's claim that the conduct in this case was simply an unpredictable aberration from what was otherwise a working system is not credible.

The evidence of the release is also important to the extent that it establishes generally that, as predicted by Dr. Lyman and as disputed by Defendant's expert Melvin Tucker, the controls and checks and balances which the City had in place to prevent the abuse of civil rights were not effective. The testimony supports Dr. Lyman's conclusions that further action by the City was necessary in order to prevent such violations and that, in the absence of such further action, violations of civil rights could reasonably be expected. The report also helps establish that there is a reasonable causal connection between the failure to properly train, supervise, regulate and review homicide detectives and the resulting violations of civil rights. The jury is entitled to learn that exactly what Dr. Lyman predicted would happen, happened not only in connection with this Plaintiff but also, at the exactly the same time, with Willie Bennett. The evidence is central to rebut the City's claim that the conduct in this case was simply a one time aberration.

The evidence of the Boston Police's misconduct in connection with the Bennett case is also relevant to support the inference that Commissioner Roache condoned violations of civil rights in connection with homicide investigations. The Plaintiff is allowed to prove the personal liability of former Commissioner Roache on the theory that he failed to remedy violation of civil rights in connection with this case after being informed of it by report or appeal. <u>Iqbal v. Hasty</u>, 490 F.3d 143, 152 (2nd Cir. 2007); <u>Blankenhorn v. City of Orange</u>, 485 F.3d 463, 486 (9th Cir. 2007).

The jury is entitled to infer that Commissioner Roach's practice in October of 1989 was to condone violations of civil rights. The jury will hear that he took no action in connection with Judge Volterra's opinion in this case. His failure to respond appropriately in connection with the findings in the Bennett report, which was issued when he was the Commissioner of Police is

consistent with his actions in this case and support the inference that Commissioner Roache, as the policy maker of the City of Boston, condoned and failed to take appropriate actions to correct violations of civil rights.

Respectfully submitted,

By His Attorneys,

 /s/ Michael Reilly

Michael W. Reilly, Esq.
Tommasino & Tommasino
Two Center Plaza
Boston, MA   02108
617 723 1720
BBO 415900

/s/ Rosemary Curran Scapicchio

Rosemary Curran Scapicchio, Esq.
Four Longfellow Place
Boston MA 02114
617 263 7400
BBO 558312