1

Volume:   I

Pages:    1 - 120

Exhibits: See Index

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-11193NG

---------------------------------x
SHAWN DRUMGOLD,
                    PLAINTIFF

VS.

TIMOTHY CALLAHAN, ET AL,
                    DEFENDANTS
---------------------------------x

      DEPOSITION of RALPH C. MARTIN, II, a witness called on behalf of the Plaintiff, pursuant to the provisions of the Federal Rules of Civil Procedure, before Nancy M. Walsh, Certified Shorthand Reporter (#118593)/ Registered Professional Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the law office of Tommasino & Tommasino, Two Center Plaza, Boston, Massachusetts 02108, on Monday, February 26, 2007, commencing at 8:14 a.m.

NANCY M. WALSH
COURT REPORTING SERVICES
131 CRANE STREET
DEDHAM, MASSACHUSETTS  02026
TELEPHONE (781) 326-5062
FAX (781) 326-5072

5

```
 1                    P R O C E E D I N G S
 2
 3            (Document marked Exhibit No. 208 for
 4            identification.)
 5
 6                    RALPH C. MARTIN, II,
 7       a witness called for examination, having duly sworn or
 8       affirmed to tell the truth, testified as follows:
 9
10       DIRECT EXAMINATION BY MR. REILLY:
11   Q   Good morning.  Could you identify yourself for the
12       record?
13   A   Ralph, middle initial C, Martin, II.
14   Q   Mr. Martin, my name is Michael Reilly.  I represent Shawn
15       Drumgold.  For your purposes, maybe it will make sense if
16       we go around the table so you can get an idea of who's
17       representing who.
18            MS. HARRIS:  Mary Jo Harris representing
19       Timothy Callahan.
20            MR. WHITE:  William White representing the
21       Estate of Paul Murphy.
22            MR. ROACHE:  Good morning, Mr. Martin.  John
23       Roache representing the City of Boston and former Police
24       Commissioner Francis M. Roache.
```

8

| | | |
|---|---|---|
| 1 | | there, I spent most of my six and a half years in what |
| 2 | | started out as the Major Frauds Unit of the U.S. |
| 3 | | Attorney's office and ended up becoming the Economic |
| 4 | | Crimes Division. |
| 5 | Q | Did you have any title or rank in the U.S. Attorney's |
| 6 | | office? |
| 7 | A | I was just an Assistant United States Attorney. |
| 8 | Q | Who was the head of the Major Fraud Commerce Crimes Unit? |
| 9 | A | At first, it was Brackett Denniston, III or IV, I don't |
| 10 | | remember.  Then it was Peter Mullen. |
| 11 | Q | At some point during your tenure as a United States |
| 12 | | Attorney, did you get involved in an investigation |
| 13 | | arising from the shooting of Carol Stuart on October 23, |
| 14 | | 1989? |
| 15 | A | Yes, I did. |
| 16 | Q | What was your role in that investigation? |
| 17 | A | I was the prosecutor who led the investigation working |
| 18 | | with the FBI agents. |
| 19 | Q | What was it that was being investigated? |
| 20 | A | Allegations of civil rights violations in connection with |
| 21 | | the Boston Police Department's investigation of Carol |
| 22 | | Stuart's murder. |
| 23 | Q | Was that an investigation where members of the Boston |
| 24 | | Police Department were the target of the investigation? |

1              MS. HEALY SMITH:  Objection.  This, as you
2    know, and I'll just give my speech now, Mr. Martin is
3    testifying pursuant to an authorization by the U.S.
4    Attorney under the so-called Touhy, T-o-u-h-y,
5    Regulations, 28 CFR Section 16.21 et seq.
6              Those regulations, as I previously told
7    Mr. Reilly, require that before any current or former
8    federal employee may disclose documents or give testimony
9    about matters obtained in his official capacity that he
10   receive authorization, in this case from the U.S.
11   Attorney.  Mr. Reilly sent me a letter outlining those
12   areas of testimony, and I replied on November 29th about
13   those topics for which Mr. Martin has been authorized to
14   testify.
15             The target of the investigation is beyond the
16   scope of that request and the authorization.  Under those
17   circumstances, I have to instruct Mr. Martin not to
18   respond because it's beyond the scope of any
19   authorization that he's received from the U.S. Attorney.
20             MR. CURRAN:  Can we have your response marked
21   as an exhibit?  I don't think it's been shared with
22   defense, just so we can take a chance to look at it.
23             (Documents marked Exhibit Nos. 209 and 210
24                  for identification.)

```
 1    Q    Who gave you the assignment to do the investigation?
 2    A    The United States Attorney, Wayne Budd.
 3    Q    What was your assignment?
 4              MS. HEALY SMITH:  Objection.  I have to
 5    instruct him not to answer.  The investigation itself,
 6    the assignment, the findings were not the subject of the
 7    Touhy Request and are beyond the scope of the
 8    authorization.
 9              MR. REILLY:  The request was for the
10    circumstances surrounding the preparation of the July 10,
11    1991 press release.
12              MS. HEALY SMITH:  The press release, that's
13    correct, not the investigation but the press release.
14    Q    Let me show you what's been marked as Exhibit 208, and
15         that's a copy of a press release dated July 10, 1991,
16         correct?
17    A    Yes.
18    Q    And do you know who wrote this?
19    A    I mean ultimately it was the -- I would say it was the --
20         it was the summary of a number of people's input.  But
21         ultimately I would have to say it's the U.S. Attorney who
22         is responsible for the preparation of this.
23    Q    The U.S. Attorney being Wayne Budd?
24    A    Yes.
```

```
1    Q    Were you involved in being an author of this report in
2         the sense of actually writing the words that appear in
3         Exhibit 208?
4    A    I definitely contributed to the preparation.
5    Q    Were you the primary author of the report?
6    A    I honestly don't know how to answer that because I
7         certainly made a substantial contribution.  I couldn't
8         tell you if it was 30 percent, 55 percent, you know, went
9         through drafts.  I don't know how to answer that,
10        Mr. Reilly.
11   Q    Would it be fair to say the report summarizes the
12        investigation that you were in charge of?
13   A    The report recognizing that it doesn't include 6E
14        material, so that's an important caveat.  I want to make
15        that --
16   Q    Fair enough.
17   A    So the report I think it says it's a summary of
18        witnesses' interviews and non-6E material.
19   Q    And is it a fair summary of the investigation you
20        conducted with the exception of 6E Grand Jury
21        information?
22                   MR. ROACHE:  Objection.
23   Q    You can answer.
24   A    I would say yes.
```