UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SHAWN DRUMGOLD, <br>     Plaintiff <br><br> v. <br><br> TIMOTHY CALLAHAN, FRANCIS M. ROACHE, RICHARD WALSH and THE CITY OF BOSTON, <br>     Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | 04-CV-11193-NG |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MEMORANDUM IN SUPPORT OF THE ADMISSIBILITY OF JULY 10, 1991 REPORT OF THE UNITED STATES DEPARTMENT OF JUSTICE

Defendants, the City of Boston and Francis M. Roache, oppose the admission into evidence by the Plaintiff of the "Press Release" issued by the United States Attorney for the District of Massachusetts dated July 10, 1991 (hereinafter "the Press Release"). See Plaintiff's Memorandum in Support, Exhibit 1 (Plaintiff's Memo, Exhibit 1). The Plaintiff moves for the admission of the "Press Release" on the grounds that it is relevant and admissible pursuant to Fed.R.Evid. 803 (8)(C). The "Press Release" is not admissible under Fed.R.Evid. 803 (8)(C) because it fails to satisfy the Rule's requirement for trustworthiness.

### Argument

Fed.R.Evid. 803 (8)(C) provides in pertinent part as follows:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth...(C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, <u>unless the sources of information or other circumstances indicate lack of trustworthiness</u>. [Emphasis added.]

Under Fed.R.Evid. 803(8)(C) the proffered evidence should be admitted unless the party opposing the admission of the evidence makes an affirmative showing of a lack of trustworthiness.  Kehm v. Proctor & Gamble Mfg. Co., 724 F.2d 613, 618 (8th Cir. 1983); see also, Gentile v. County of Suffolk, 926 F.2d 142, 148 (2nd Cir. 1991) (Second Circuit noted that under Fed.R.Evid. 806 (8)(C), government investigatory reports are presumed to be admissible and the party opposing the admission of the report has the burden of going forward with "negative factors" that would outweigh the presumption of admissibility.).

The sources of information and other circumstances concerning the "Press Release" indicate a lack of trustworthiness that requires its exclusion from the evidence at trial. The United States Attorney's Office produced this "Press Release" as "summar[izing] the results of the joint investigation by the United States Attorney's Office and the Federal Bureau of Investigation (hereinafter "the F.B.I.") into allegations of violations of the Federal Criminal Civil Rights statutes, 18 U.S.C. §§241 and 242, by members of the Boston Police Department during their investigation of the homicide of Carol Stuart."  See Plaintiff's Memo, Exhibit 1, p.1.  The "Press Release" sets out allegations of misconduct against members of the Boston Police Department.  See Plaintiff's Memo, Exhibit 1, pp. 2-3  However, the "Press Release" is lacking in trustworthiness for the following reasons.

1. The Document Is Only a "Press Release."

The "Press Release" is exactly what its title purports it to be, a press release.  Though this document delves into great detail concerning the allegations of misconduct against members of the Boston Police Department with regard to investigating the murder of Carol Stuart, it, by its own descripton, only summarizes the findings of the investigation.  Ralph Martin was an Assistant United States Attorney who participated in the investigation and drafting of the "Press

Release" described the document as a summary in his deposition testimony. See attached hereto Exhibit A, p. 11. It is not a comprehensive document supported by citations to exhibits contained in various attached appendices.

2. <u>Motivations of the U.S. Attorney</u>

Furthermore, as it is entitled, a "Press Release", a critical reader must call into question the motivations of the United States Attorney for so styling it and the manner in which it was disclosed to the public. In his deposition testimony in the case-at-bar, Ralph Martin affirmed that the murder of Carol Stuart and the subsequent investigation was the subject of great public scrutiny and coverage by the news media. See Exhibit A, pp. 14, 16. Despite the fact that the Boston Police Department pursued suspects conforming to Charles Stuart's description of the man who grievously shot him and killed his wife and unborn son as being a man of African-American descent, racial tensions in the city ran very high due to the perception of members and leaders from the African-American community as reported from various sources, including the press, that the Boston Police Department was overly aggressive in its investigation. As the Stuarts were Caucasian, their attacker reportedly African-American, and the subsequent revelation that Charles Stuart very likely committed this heinous crime, the African-American community in Boston was angry, rightly or wrongly, at being the focus of the investigation. Therefore, it is not unreasonable for a critical reader to infer that the presentation and scope of both the investigation and its findings was made by the United States Attorney for the District of Massachusetts with political considerations in mind.

3. <u>The Document Summarizes Only Part of the Investigation.</u>

Most importantly, the "Press Release" presents only conclusory allegations that are unrebutted by members of the Boston Police Department and the Suffolk County District

3

Attorney's office. A federal grand jury was convened to investigate any federal criminal civil rights violations alleged against the Boston Police Department. At his deposition in this case, Ralph Martin, the former Assistant United States Attorney, testified as follows:

> [By MR. REILLY for the Plaintiff]
>
> Q. Would it be fair to say the report summarizes the investigation that you were in charge of?
>
> A. **The report recognizing that it doesn't include 6E material, so that's an important caveat. I want to make that --**
>
> Q. Fair enough.
>
> A. So the report I think it says it's a summary of witnesses' interviews and non-6E material.
>
> Q. And is it a fair summary of the investigation you conducted with the exception of 6E Grand Jury information?
>
> MR. ROACHE: Objection.
>
> Q. You can answer.
>
> A. I would say yes.

See Exhibit A, p. 11.[1] [Emphasis added.]

Later in his deposition testimony Mr. Martin was asked about conversations he might have had with officers of the Boston Police Department and replied in pertinent part, "I obviously talked to officers who I questioned in the Grand Jury." See Exhibit A, p. 17.

The United States Attorney's office was prohibited from identifying witnesses and information from testimony before the grand jury pursuant to Fed.R.Crim.P. 6(e)(2)(B)(vi). Witnesses from both the Boston Police Department and the Suffolk County District Attorney's

---

[1] Federal Rules of Criminal Procedure, Rule 6(e)(2)(B): Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury: (i) a grand juror; (ii) an interpreter; (iii) a court reporter;

office may have appeared and given testimony before the federal grand jury, but the United States Attorney's office was prohibited from including that information in the "Press Release." It is not unreasonable to infer that the testimony given by these government witnesses likely rebutted much of what was ultimately included, i.e. certain witness interviews and the non-6(e) part of the investigation, in the "Press Release." This is further buttressed by the United States Attorney's decision to not pursue charges for violations under 18 U.S.C. §§ 241 or 242 because of the lack of admissible evidence sufficient to prevail at a trial. See Plaintiff's Memo, Exhibit 1, p.20.

Furthermore, the witness interviews and non-6(e) information contained in the "Press Release" only pertains to those individuals who came into contact with either the Boston Police Department and the Suffolk County District Attorney's office and made allegations of misconduct. In fact, the "Press Release" does not disclose that it is only a summary of witness interviews and non-6(e) information and that other information was obtained but could not be revealed to the public. Notwithstanding considerations regarding the grand jury proceedings, neither the investigating officers nor members of the district attorney's office were interviewed with regard to the allegations cited in the "Press Release." The document does not even go so far to indicate that any attempt was made to interview these government sources or that an invitation was made and declined.

In conducting their investigation, the U.S. Attorney and the F.B.I. examined taped interviews and the transcripts of interviews between various detectives of the Boston Police Department and Erick Whitney and Derek Jackson. See Plaintiff's Memo, Exhibit 1, pp. 3-6. Also reviewed were the transcripts of testimony given by Erick Whitney and Derek Jackson

---

(iv) an operator of a recording device; (v) a person who transcribes recorded testimony; (vi) an attorney for the government; or (vii) a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii).

before the Suffolk County grand jury. See Plaintiff's Memo, Exhibit 1, pp. 6-8. The "Press Release" recounts the events of a meeting at the Suffolk County District Attorney's office of November 21, 1989, but fails to state the basis for the information concerning this meeting. See Plaintiff's Memo, Exhibit 1, p. 7. Present at this meeting were eight (8) people: Erick Whitney, Derek Jackson, Bill Crowe (Jackson's attorney), ADA Tom Mundy, ADA Francis O'Meara, Marylinda Whitney, and Detectives Peter O'Malley and Trent Holland of the Boston Police Department. *Id*. The F.B.I. interviewed Whitney, Jackson and Jackson's then-girlfriend, Angela Brittle, relative to their investigation. See Plaintiff's Memo, Exhibit 1, pp. 8-12. However, the "Press Release" is silent on whether anyone else from either the Boston Police Department or the district attorney's office were interviewed to rebut the allegations made by Whitney, Jackson and Brittle.

The "Press Release" cites "additional witnesses" who the document asserts "corroborate the version of events that Jackson, Whitney and Brittle have testified." See Plaintiff's Memo, Exhibit 1, p. 12. David Brimmage, Ronald Ferguson and Barry Smith testified before the Suffolk County grand jury and were interviewed by the F.B.I. as part of this investigation. See Plaintiff's Memo, Exhibit 1, pp. 13-15. Larry Cox is noted as testifying before the Suffolk County grand jury, but no mention is made as to whether he was interviewed by the F.B.I. See Plaintiff's Memo, Exhibit 1, p. 14. Mary Smith, the mother of Barry Smith who was in the custody of DYS at the time of the Stuart homicide investigation, was interviewed regarding her interaction with the Boston Police Department's investigators and her witnessing Willie Bennet on the night of October 23, 1989 with a handgun. See Plaintiff's Memo, Exhibit 1, pp. 15-16. Yvonne and Shannon Jenkins and Joey and Veda Bennet were interviewed by the F.B.I.

regarding their interactions with Boston Police Department investigators and the search warrants conducted at their respective residences. See Plaintiff's Memo, Exhibit 1, pp. 16-18.

Each and every one of these individuals had some relationship to Willie Bennett directly or indirectly through his nephew, Joey "Toots" Bennett. Given such relationships these people had ample motivation for reporting allegations of misconduct by the Boston Police Department to federal investigators. The "Press Release" reports nothing in the way of federal investigators testing these allegations by speaking with members of the Boston Police Department nor the district attorney's office.

In light of the above stated reasons and the explicit and unsolicited caveat offered by Mr. Martin with regard to the contents of this document, it is clear that the contents of the "Press Release" do not represent a complete report or summary of the entire investigation. Therefore, the "Press Release" of the United States Attorney's office of July 10, 1991 is not admissible as it is lacking in trustworthiness due to the sources of information included and other circumstances pursuant to Fed.R.Evid. 803 (8)(C).

## **Conclusion**

For the above stated reasons, Defendants request that the Court DENY the Plaintiff's Memorandum in Support of the Admissibility of the July 10, 1991 Report of the United States Department of Justice and exclude the admission of this document from the evidence of this case and not allow it to be the subject of question or comment by Plaintiff at trial.

                                                  Respectfully submitted,
                                                  By Defendants City of Boston and
                                                  Francis M. Roache
                                                  Through their attorneys,

                                                  _/s/ John P. Roache_____
                                                  John P. Roache (BBO# 421680)
                                                  Patrick J. Donnelly (BBO# 651113)
                                                  Roache & Associates, P.C.
                                                  66 Long Wharf
                                                  Boston, Massachusetts 02110
Date:   April 8, 2008                            Tel.: (617) 367-0330


## CERTIFICATE OF SERVICE

     I, John P. Roache, hereby certify that on April 8, 2008, I served a copy of the above upon counsel of record by filing with the ECF/Pacer Case Management System.


                                                  /s/ John P. Roache_____
                                                  John P. Roache