1

Volume: I

Pages: 1 - 120

Exhibits: See Index

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-11193NG

------------------------------x
SHAWN DRUMGOLD,
          PLAINTIFF

VS.

TIMOTHY CALLAHAN, ET AL,
          DEFENDANTS
------------------------------x

      DEPOSITION of RALPH C. MARTIN, II, a witness called on behalf of the Plaintiff, pursuant to the provisions of the Federal Rules of Civil Procedure, before Nancy M. Walsh, Certified Shorthand Reporter (#118593)/ Registered Professional Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the law office of Tommasino & Tommasino, Two Center Plaza, Boston, Massachusetts 02108, on Monday, February 26, 2007, commencing at 8:14 a.m.

**NANCY M. WALSH**
**COURT REPORTING SERVICES**
**131 CRANE STREET**
**DEDHAM, MASSACHUSETTS 02026**
**TELEPHONE (781) 326-5062**
**FAX (781) 326-5072**

| | | |
|---|---|---|
| 1 | Q | Were you involved in being an author of this report in |
| 2 | | the sense of actually writing the words that appear in |
| 3 | | Exhibit 208? |
| 4 | A | I definitely contributed to the preparation. |
| 5 | Q | Were you the primary author of the report? |
| 6 | A | I honestly don't know how to answer that because I |
| 7 | | certainly made a substantial contribution. I couldn't |
| 8 | | tell you if it was 30 percent, 55 percent, you know, went |
| 9 | | through drafts. I don't know how to answer that, |
| 10 | | Mr. Reilly. |
| 11 | Q | Would it be fair to say the report summarizes the |
| 12 | | investigation that you were in charge of? |
| 13 | A | The report recognizing that it doesn't include 6E |
| 14 | | material, so that's an important caveat. I want to make |
| 15 | | that -- |
| 16 | Q | Fair enough. |
| 17 | A | So the report I think it says it's a summary of |
| 18 | | witnesses' interviews and non-6E material. |
| 19 | Q | And is it a fair summary of the investigation you |
| 20 | | conducted with the exception of 6E Grand Jury |
| 21 | | information? |
| 22 | | MR. ROACHE: Objection. |
| 23 | Q | You can answer. |
| 24 | A | I would say yes. |

1   address the issue of the U.S. Attorney's office's
2   practice in other cases historically by policy in
3   relation to issuing press releases.
4       MR. REILLY: But the Touhy Regulations deal
5   with questions concerning his work as the United States
6   Attorney. This question is simply his observations, not
7   anything he learned doing investigations but simply his
8   observations whether that was an unusual occurrence?
9       MS. HEALY SMITH: To the extent the question
10  goes to his experience and observations as an Assistant
11  U.S. Attorney between 1985 and 1992, then it is -- comes
12  within the Touhy Regulations and is beyond the scope.
13  Q  Why was a press release issued in this case?
14      MR. ROACHE: Objection.
15      MS. HEALY SMITH: Objection. That is
16  specifically beyond the scope of the authorization.
17  Q  What were the circumstances surrounding the preparation
18  of this report?
19  A  The investigation had come to a conclusion. It was
20  determined that no charges would be filed. And the --
21  obviously the murder of Carol Stuart and the Boston
22  Police Department investigation after that had been a
23  case of great public -- great coverage by the news
24  media --

|   |   |   |
|---|---|---|
| 1 |   | MS. HEALY SMITH: I have to stop you. I have |
| 2 |   | to instruct you not to answer as to the purpose of the |
| 3 |   | press release as that is expressly excluded from your |
| 4 |   | authorization. |
| 5 | Q | My question is what were the circumstances surrounding |
| 6 |   | the preparation of the report? |
| 7 | A | So after the report -- excuse me, after the investigation |
| 8 |   | was concluded, the U.S. Attorney -- I'm sort of -- you |
| 9 |   | guys have me in limbo. |
| 10 | Q | That makes two of us, but do your best. |
| 11 |   | MS. HEALY SMITH: If I can just read from the |
| 12 |   | authorization letter which circumscribes what Mr. Martin |
| 13 |   | can testify about today, it says that Mr. Martin, who is |
| 14 |   | not responsible for making the decision to issue the |
| 15 |   | press release, may not testify as to the purpose of the |
| 16 |   | press release as such testimony by him would violate the |
| 17 |   | deliberative process privilege, end of quote from the |
| 18 |   | letter. |
| 19 |   | So as to the preparation of the report, who |
| 20 |   | contributed, those are -- he's authorized to testify |
| 21 |   | about those, but he's not authorized to tell you why the |
| 22 |   | U.S. Attorney made the determination to issue the press |
| 23 |   | release. |
| 24 | Q | What were the circumstances surrounding the preparation |

```
 1            of the report?
 2   A        The circumstances were that the investigation had been
 3            concluded. No people were going to be charged. It was a
 4            case of great public scrutiny. And that's probably about
 5            as much as I can say given counsel's limitation, Miss
 6            Smith's limitation.
 7   Q        As part of the investigation you conducted, did you talk
 8            to any Boston police officers?
 9   A        I did not -- well, yes.
10   Q        What Boston police officers do you remember talking to?
11   A        I had -- I believe I had a brief conversation with then
12            Lieutenant Ed McNelley in the corridor of the Federal
13            Courthouse.
14   Q        What was his position at that point when you talked to
15            him?
16   A        He was the commander of the Homicide Unit.
17   Q        What do you remember him saying and you saying in that
18            conversation?
19   A        It was I think they were pleasantries. That's about it.
20   Q        Did you talk to Mickey Roache, the Police Commissioner
21            during the time you did this investigation?
22   A        No, I did not.
23   Q        Did you talk to any of the police officers who were
24            involved in the investigation of Carol Stuart's murder?
```

```
 1                    MR. ROACHE:  Objection.
 2    A    Can I go back to my conversation?  Because this was a
 3         frame of reference.  I obviously talked to officers who I
 4         questioned in the Grand Jury.  I take it your question is
 5         asking me did I talk to them outside the Grand Jury
 6         process.
 7    Q    That's correct.  I'm not asking about what you asked them
 8         in the Grand Jury.
 9    A    The only one I remember talking to outside of the Grand
10         Jury process was Lieutenant McNelley, and that, as I
11         said, was just an exchange of pleasantries.
12    Q    As part of the investigation, and all of my questions are
13         focusing on outside of the Grand Jury, with the exception
14         of the Grand Jury testimony, as part of your
15         investigation, did you have conversations with any
16         witnesses concerning the management of the Boston Police
17         Homicide Unit?
18                    MR. ROACHE:  Objection.
19    A    I don't believe I did.  You're talking about outside the
20         Grand Jury process?
21    Q    Correct.
22    A    I don't believe that I did.
23    Q    Lieutenant McNelley was in charge of the Homicide Unit;
24         is that correct?
```