# EXHIBIT A

Page 1

```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MASSACHUSETTS
 2
 3   SHAWN DRUMGOLD,                )
                                    )
 4             Plaintiff            )
                                    )
 5        -VS-                      ) C.A. No. 04-11193-NG
                                    ) Pages 1 - 124
 6   TIMOTHY CALLAHAN, et al,       )
                                    )
 7             Defendants           )
 8
 9                   JURY TRIAL - DAY ONE
10             BEFORE THE HONORABLE NANCY GERTNER
                   UNITED STATES DISTRICT JUDGE
11
12
13
14
15                            United States District Court
                              1 Courthouse Way, Courtroom 2
16                            Boston, Massachusetts
                              March 5, 2008, 10:00 a.m.
17
18
19
20
21
22
                              LEE A. MARZILLI
23                        OFFICIAL COURT REPORTER
                          United States District Court
24                        1 Courthouse Way, Room 3205
                              Boston, MA  02210
25                            (617)345-6787
```

Page 2

1  APPEARANCES:
2      ROSEMARY CURRAN SCAPICCHIO, ESQ., Four Longfellow Place,
    Boston, Massachusetts, 02114, for the Plaintiff.
3
    MICHAEL W. REILLY, ESQ., Two Center Plaza, Boston,
4  Massachusetts, 02108, for the Plaintiff.
5      WILLIAM M. WHITE, JR., Davis, Robinson & White, LLP,
    One Faneuil Hall Marketplace, South Market Place, Boston,
6  Massachusetts, 02109-1649, for the Defendants.
7      JOHN P. ROACHE, ESQ., 66 Long Wharf, Boston,
    Massachusetts, 02110, for the Defendants.
8
    HUGH R. CURRAN, ESQ., Bonner, Kiernan, Trebach &
9  Crociata, LLP, One Liberty Square, Boston, Massachusetts,
    02109, for the Defendants.
10
    MARY JO HARRIS, ESQ., Morgan, Brown & Joy, LLP,
11  200 State Street, Boston, Massachusetts, 02109-2605,
    for the Defendants.
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

1              I N D E X
2  OPENING STATEMENTS      PAGE
3  By Ms. Scapicchio:    20
4  By Mr. Curran:    33
5  By Ms. Harris:    44
6  WITNESSES    DIRECT  CROSS  REDIRECT  RECROSS
7  Ricky Lee Evans    54    114
8  EXHIBITS    PAGE
9  4    77
10  5    79
11  7    81
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 4

1             P R O C E E D I N G S
2     THE COURT: You can be seated. Let me first deal
3 with some preliminary matters. I will instruct the jury
4 generally at the beginning as to what the case is about
5 deriving from the form instructions.
6     Ms. Scapicchio, you had asked for a supplemental
7 instruction, which was also consistent with what you had said
8 in the Globe this morning, that I had precluded you from
9 arguing innocence. I have not. What I have said is that the
10 issue of innocence or guilt bears on the question of damages;
11 and if you open that door, the defendants will open the door
12 to their perceptions of the guilt or innocence of
13 Mr. Drumgold as well; and that in the first part of the case
14 with respect to the question of whether there was a wrongful
15 conviction, innocence or guilt is not relevant to that. But,
16 again, if you wanted to show motive or context, then that's a
17 door that you, if you open, you open the door to their
18 counter-charges. I haven't precluded you from arguing that
19 at all. It's just the implications of that will have -- in
20 other words, if you do, it will have implications for the
21 scope of the trial. And you, as I said over and over again,
22 hold the key.
23     MS. SCAPICCHIO: Yes, your Honor.
24     THE COURT: Okay.
25     There's an issue with respect to a juror, I

Page 5

1 understand? Is that right?
2     MS. SCAPICCHIO: Yes, your Honor.
3     THE COURT: Does anyone know which witness he said
4 he knows?
5     THE CLERK: No.
6     THE COURT: Okay. And then there is an issue with
7 respect to an exhibit, I understand.
8     MS. SCAPICCHIO: Yes, your Honor. I expect my
9 first will be Ricky Evans. There are three agreed-upon
10 exhibits that I would need to introduce through Mr. Evans,
11 and there is also one unagreed exhibit that I am seeking to
12 introduce with respect to Mr. Evans. The unagreed exhibit is
13 CCCCC, which I don't know if we're going to say that in front
14 of the jury, but this is a copy of what appears to be two
15 separate records of Ricky Evans, one that is dated 6/15/2006,
16 and one that is dated 5/8/2006. The original one, 5/8/2006,
17 doesn't appear to have the violations and cases that stem
18 from --
19     THE COURT: Show me what you're looking at because
20 my C-5 is not the same thing as your C-5.
21     MS. SCAPICCHIO: I'm sorry, your Honor. Oh, you
22 know what? It's an amended list that they just gave us this
23 morning.
24     THE COURT: All right, so this is a probation
25 document?

Page 62

1   was two on the first floor; and there was one, like, up the
2   street a little bit, like, toward the corner of Charles
3   Street and Hancock Street. And they had put me in a car and
4   they had took me down to the Howard Johnson's Hotel on Boston
5   Street.
6   Q.  Okay. Did you know why you were being brought down to
7   the Howard Johnson's Hotel on Boston Street?
8   A.  I think it was because of the conversation we had of
9   Tiffany Moore.
10  Q.  Okay. And when you got to the hotel, what happened?
11  A.  Uhm, I was put up in the hotel where actually --
12  actually it was where I was living at.
13  Q.  You were living at the hotel. How long did you live at
14  the hotel?
15  A.  Eight months, eight, nine months, somewhere around
16  there.
17  Q.  Okay. And when you say you lived at the hotel, did you
18  stay there every night?
19  A.  Yes.
20  Q.  And did you pay a bill? Did you get a bill from the
21  Howard Johnson's?
22  A.  No, I did not.
23  Q.  Do you know who paid the bill?
24  A.  No, I do not.
25  Q.  Okay. But you remember Detective Callahan and/or

Page 63

1   Detective McDonough bringing you to the Howard Johnson's?
2   A.  Yes.
3   Q.  Okay. And who signed you in to the Howard Johnson's
4   Hotel?
5   A.  Detective Callahan.
6   Q.  Detective Callahan. And did somebody accompany you to a
7   room?
8   A.  I think -- I think, yes, they did.
9   Q.  Okay, who was that?
10  A.  I think it was Detective -- it was either
11  Detective Callahan or Detective McDonough.
12  Q.  Okay. And do you remember where your room was within
13  the Howard Johnson's?
14  A.  Yes, on the fifth floor.
15  Q.  Okay. And can you tell me, other than giving you a
16  place to stay, were you able to order any meals at the Howard
17  Johnson's?
18  A.  Yes.
19  Q.  Can you tell the jurors how that worked.
20  A.  Uhm, if I -- if say, for instance, if I got -- if I got
21  up and I wanted to go eat or something, I would just go
22  downstairs to the restaurant, you know, order whatever I
23  want; and the only thing I did was sign for it, sign my room
24  number.
25  Q.  And when you signed your room number, did you ever pay

Page 64

1   any of the bills for the food that you ate while you were at
2   the Howard Johnson's?
3   A.  No, I did not.
4   Q.  And were you the only one who ate at the Howard
5   Johnson's?
6   A.  No.
7   Q.  Were you able to invite other people to eat with you?
8   A.  Yes, I was.
9   Q.  Who else could you invite?
10  A.  Basically anybody I wanted.
11  Q.  Okay. And did you take advantage of that and invite
12  people to share meals with you at the Howard Johnson's?
13  A.  Yes.
14  Q.  Okay. And other than putting you up at the Howard
15  Johnson's and paying for your meals, did Detective Callahan
16  give you anything else?
17  A.  If I needed, like, say if I needed money or something, I
18  would just give him a call, I'd call him, and, you know,
19  he'd, like, drop me off $30, $40, $50.
20  Q.  Okay. And what did you tell him the 30 or $40 or $50
21  was for?
22  A.  Like clothes, whatever. You know, like, if I didn't
23  have any money and I needed money for traveling, buses, or
24  get around town, you know, I'd call him and I'd ask him, and
25  he'd bring it to me.

Page 65

1   Q.  Now, when you were at the Howard Johnson's, was there
2   anyone posted outside your hotel room?
3   A.  No.
4   Q.  Any police officer?
5   A.  No.
6   Q.  Did anyone ask you to stay within the hotel and not
7   return to the Dorchester or Roxbury neighborhood?
8   A.  No.
9   Q.  Did you in fact return to the Dorchester or Roxbury
10  neighborhood during the eight months that you stayed at the
11  hotel?
12  A.  I was allowed to go wherever I wanted.
13  Q.  Okay, so you could leave the hotel anytime you wanted?
14  A.  Yes.
15  Q.  You didn't have to call anyone before you left?
16  A.  No.
17  Q.  And you were allowed to go back to the neighborhood?
18  A.  Yes.
19  Q.  Okay. Now, in addition to the hotel and the meals and
20  the money, were there any other things that
21  Detective Callahan did for you?
22  A.  Uhm, he would -- I remember we had went to Roxbury
23  Court, District Courthouse, because back then I had warrants.
24  Q.  When you say "warrants," you had outstanding --
25  A.  Outstanding warrants.