UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAWN DRUMGOLD,<br>    Plaintiff<br><br>v.<br><br>TIMOTHY CALLAHAN, MICKY ROACH,<br>FRANCIS M. ROACHE, PAUL MURPHY,<br>RICHARD WALSH and the CITY OF<br>BOSTON,<br>    Defendants | 04-CV-11193-NG |

### DEFENDANTS', THE CITY OF BOSTON AND FRANCIS M. ROACHE, MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

The Defendants, the City of Boston and Francis M. Roache, in the above-captioned matter respectfully move this Honorable Court to enter judgment on the pleadings pursuant to Fed.R.Civ. P. 12(c) in favor of the aforementioned Defendants with regard to Plaintiff's Complaint, Count III with regard to the City of Boston and Count I with regard to Francis M. Roache.

### I.    STATEMENT OF THE CASE

The Plaintiff, Shawn Drumgold (hereinafter "Drumgold"), in this civil action alleges claims arising under both Federal law and Massachusetts law, respectively 42 U.S.C. §1983 and M.G.L. c. 12, §11I, for alleged violations of Drumgold 's civil rights protected by the Fifth, Sixth and Fourteenth Amendments. According to Drumgold, the City of Boston allegedly "maintains policies, customs or practices exhibiting deliberate indifference to the constitutional rights of persons in Boston, which caused the violation of the plaintiff's rights." See Plaintiff's Complaint, ¶ 25.

Drumgold further alleges that Francis M. Roache, both individually and in his official capacity as Commissioner of the Boston Police Department during the period of time relevant to this lawsuit, did nothing to increase the credibility of the internal affairs procedures and continued to maintain the custom, policy or procedure that Drumgold alleges brought about the alleged abuses of the individual defendant officers in the case-at-bar and thus deprived Drumgold of due process and his right to a fair trial, in violation of 42 U.S.C. § 1983 and the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and through the use of threats, intimidation and coercion deprived Drumgold of his civil rights secured by the Constitutions of the United States and the Commonwealth of Massachusetts, in violation of G.L. c. 12, § 11I.

At the conclusion of Phase I of the trial of this action as it pertains to only whether Defendants Callahan and/or Walsh committed acts constituting a violation of the Plaintiff's constitutionally protected right to a fair trial, the jury returned only one count against Defendant Callahan. The jury found that Defendant Callahan "violated [Drumgold's] right to a fair trial by withholding exculpatory evidence from prosecutors, manufacturing evidence, and/or obtaining false statements regarding Ricky Evans being given substantial amounts of money." See Verdict Slip dated April 9, 2008.

## II.   ARGUMENT

**A.   Legal Standard For Judgment On The Pleadings**.

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is "a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings..." Tavares de Almeida v. Children's Museum, 28 F.Supp.2d 682 (D. Mass. 1998), citing Wright & Miller, *Federal Practice and*

*Procedure*: Civil 2d § 1367.  A trial court must accept all of the facts presented by the non-movant as true and the inferences to be drawn therefrom must be viewed in the light most favorable to the non-movant.  See Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988). A defendant's motion for judgment on the pleadings may not be granted by a court "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Id.*, quoting Conley v. Gibson, 355 U.S. 41, 45-46, 2 L.Ed.2d 80, 78 S.Ct. 99 (1957).

**B.**     **The City of Boston**

The Plaintiff alleges that the City "had a policy, custom, or practice of failure to train its police officers adequately in the laws regarding exculpatory evidence, perjury, and other laws, rules, and regulations relating to the rights of a citizen charged with a crime."  See Plaintiff's Complaint, ¶ 1.  The Plaintiff further alleges that "[t]hese policies, customs, or practices resulted in implicit tolerance and authorization of continuing misconduct and caused the plaintiff's improper deprivation of his constitutional rights."  See Plaintiff's Complaint, ¶ 1.

A municipality cannot be held liable under Section 1983 unless the Plaintiff proves that the municipality's policy or custom caused the resulting injury or deprivation of rights.  See Judge v. City of Lowell, 160 F.3d 67, 78 (1st Cir. 1998) (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)).  The custom "must be unambiguously established by official policy makers' conduct, and may not be simply suggested by isolated actions of some employees."  Woodley v. Town of Nantucket, 645 F.Supp. 1364, 1378 (D.Mass 1986).  In *City of Oklahoma City v. Tuttle*, the Supreme Court held that a jury could not be permitted to infer a "policy" of inadequate training from a single incident of police misconduct but rather that

3

substantial evidence of a policy of custom may be required to establish liability against a municipal defendant:

> "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker. Otherwise the existence of the unconstitutional policy and its origin, must be separately proved. *But where the policy relied upon is not itself unconstitutional, considerably more proof that the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality and the causal connection between the "policy" and the constitutional deprivation*." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). [Emphasis added.]

The isolated incidents from which the Plaintiff tries to create an unambiguous policy are inadequate to prove such a policy. "A single incident of misconduct, without other evidence, cannot provide the basis for municipal liability under [Section] 1983." See Bordanaro v. McLeod, 871 F.2d 1151, 1161 n.8 (1st Cir. 1989) (emphasis added); See also, Armstrong v. Lamy, 938 F.Supp. 1018 (D. Mass 1996). "[M]unicipal liability under Section 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. Harris, 489 U.S. 378, 389 (1989). See also, Oklahoma City v. Tuttle, 471 U.S. at 823.

The Plaintiff simply cannot prove that the City maintained a policy or custom of failing to reasonably train and supervise its police officers or that it made a deliberate choice that caused the constitutional violation found by the jury. The sworn deposition testimony of Callahan, Walsh, Roache and Daley and supported by the materials from the defendant officers personnel files clearly shows that not only was there adequate training and constant supervision of the defendant officers, but there was an obvious realization on the part of the Boston Police

Department from the Commissioner down to the members of the Homicide Unit that homicide investigators had to be properly trained due to the specialized nature of their work. Count III of the Complaint alleges vague and conclusory allegations with no evidentiary support. Therefore, the City is entitled to judgment on the pleadings as a matter of law.

    a)    <u>The Plaintiff Fails to Identify a City Policy, Practice or Custom of Failing to Adopt and Implement Reasonable Internal Affairs Department Procedures to Prevent Abuse of Police Authority</u>.

"It is only when the 'execution of the government's policy or custom ... inflicts the injury'" that a municipality may be held liable under Section 1983. See <u>Springfield v. Kibbe</u>, 480 U.s. 257, 267 (1987). The burden is on the Plaintiff to identify a municipal policy or custom that caused his injury. See <u>Bd. Of County Comm'rs v. Brown</u>, 520 U.S. 397, 403 (1997). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." <u>Brown</u>, 520 U.S. at 403-404. "A 'policy' giving rise to liability cannot be established merely by identifying a policymaker's conduct that is properly attributable to the municipality." <u>Id</u>. at 397.

    The Plaintiff relies in Count III of his complaint on two separate classes of information to support his allegation that the City has maintained policies, practices or customs whereby officers could violate citizen's constitutionally protected rights without fear of being disciplined by the Boston Police Department. The first class of information upon which the Plaintiff relies is the "St. Clair Report." See Plaintiff's Complaint, ¶¶ 28-31. The Court has ruled that this document is not to be entered into evidence at Phase II of the trial of this action. The second class of information is made up of eight (8) vignettes of instances described by the Plaintiff where certain officers of the Boston Police Department are alleged to have committed

5

some type of misconduct and for which they were not disciplined. See Plaintiff's Complaint, ¶¶ 27 and 32, a-g). Now on the eve of Phase II of the trial only four cases remain on which Plaintiff relies to prove his claims. These cases concern Keith Salman, Tarahn Harris, Christopher Harding and Willie Bennett. Not one of these cases involves a scenario where a witness for the prosecution was improperly given money by an investigating officer of the Boston Police Department.

The Plaintiff's failure to articulate a policy supporting his claim of failure to adopt and follow a disciplinary procedure by the Boston Police Department is fatal to his claim. See McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (plaintiff must affirmatively point to specific facts that demonstrate the existence of an authentic dispute). For this reason, the City of Boston is entitled to judgment on the pleadings as a matter of law as Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Tavares de Almeida v. Children's Museum, 28 F.Supp.2d 682 (D. Mass. 1998) quoting Conley v. Gibson, 355 U.S. 41, 45-46, 2 L.Ed.2d 80, 78 S.Ct. 99 (1957).

      c)      <u>The Plaintiff Can Not Establish That the Actions of the City Were the Moving Force Behind the Plaintiff's Alleged Injuries.</u>

The Plaintiff must also demonstrate that through its deliberate conduct, the City was the moving force behind any alleged injury. See Harris, 489 U.S. at 397 (citing Monell, 436 U.S. at 694). To prove that a custom or policy is the "moving force" behind the alleged injury, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the injury. See Brown, 520 U.S. at 406-407. Thus, the Plaintiff here must show that the City's actions were culpably taken and the they demonstrate a direct causal link between that action and the Plaintiff's injury.

6

The Plaintiff can not meet this burden. It is clear that the City was not, through its deliberate conduct, the "moving force" behind the Plaintiff's alleged injury. Moreover, the Supreme Court "is very sensitive to the requirement of proving a 'causal link' between the town's policy and the alleged deprivation." Woodley, 645 F. Supp. At 1379-1380 (citing e.g., Tuttle, 471 U.S. 808 (1985)). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held solely for the actions of its employee." Brown, 520 U.S. at 404 (citation omitted). To permit a lesser standard of fault "would result in de facto respondeat superior liability on municipalities...a result...rejected in *Monell*." Harris, 489 U.S. at 392 (citing Monell, 436 U.S. at 693-694),

Here, the only evidence that the Plaintiff has put forth regarding his allegations are unsubstantiated claims that there was a policy or custom that led to his injury. He has not produced any evidence as to the existence of any policy or custom, let alone that it was the moving force behind his injury. This lack of evidence hardly meets the rigorous standard of culpability and causation envisioned by the Supreme Court. The Plaintiff cannot prove that the City was the moving force behind the constitutional violation found by the jury. For this reason, the City is entitled to judgment on the pleadings as a matter of law.

**C.    Francis M. Roache**

    1.    Plaintiff's Section 1983 Claim Against Roache In His Official Capacity Is Not Viable.

Plaintiff's claim under Section 1983 against Roache in his official capacity is not viable because it is merely duplicative of claims the Plaintiff has already asserted against the municipal defendant, the City of Boston in Count III of his Complaint. It is well-established that when an individual files a claim against a public official in his or her official capacity based upon a

violation of 42 U.S.C. § 1983, this constitutes "only another way of pleading" an action against the public entity that the official represents. See Monell, 436 U.S. at 690, n.55; Stratton v. City of Boston, 731 F.Supp. 42, 46 (D. Mass. 1989) ("suit against a public official in his or her official capacity actually a suit against entity he or she represents"). Accordingly, any claim against Roache in his official capacity serves as the functional equivalent of claims against the City of Boston. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Stratton, 731 F. Supp. 42, 46 (D. Mass. 1989). Therefore, the Plaintiff's claim against Roache in his official capacity fails and judgment on the pleadings granted as a matter of law.

    2.    <u>Plaintiff Fails To Adduce Facts To Hold Roache Liable In His Individual Capacity Under A Theory of Supervisory Liability Under Section 1983</u>.

Plaintiff claims Roache should be liable to him because he insufficiently supervised, trained, and/or disciplined other police officers before Callahan, Murphy and/or Walsh, such that these individual defendant officers believed they could commit unlawful practices including perjury, and the withholding of exculpatory evidence. See Plaintiff's Complaint, ¶ 1. The U.S. Supreme Court has held that respondeat superior cannot serve as a basis for supervisor liability. Board of County Comm'rs of Bryan Co. v. Brown, 520 U.S. 397, 403 (1997, nor can a simple failure to exercise proper supervisory control. Daniels v. Williams, 474 U.S. 327, 331 (1986). Therefore, under Section 1983, a supervisor may only be found liable for conduct resulting from his own acts or omissions. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); Figueroa v. Aponte-Rogue, 864 F.2d 947, 953 (1st Cir. 1989).

In order for Roache to be held liable under a claim of supervisory liability, Plaintiff must prove that Roache's conduct or inaction was intentional, grossly negligent, or must have "amounted to a reckless or callous indifference to the constitutional rights of others." Gutierrez-Rodriguez, 882 F.2d at 562. Courts have traditionally required a showing that the superior was

8

either a primary actor involved or a prime mover behind the underlying alleged violation. Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999).  See Delaney v. Dias, 415 F. Supp. 1351, 1353-54 (1st Cir. 1976) (many abuse of police power cases have held offending officers liable while dismissing complaints against superiors who had no personal involvement in alleged misconduct).  Moreover, the First Circuit has held that the supervisor's knowledge of his subordinate's activities is central to the determination of "whether the former ought to be liable (or immune from suit) for the latter's unconstitutional acts."  Camilo-Robles, 175 F.3d at 46.

Here, Plaintiff cannot adduce evidence to establish that Roache had any knowledge or played any role in the unconstitutional act found by the jury in Phase I against Defendant Callahan.  Accordingly, Plaintiff cannot prove that Roache's alleged conduct or inaction was intentional, grossly negligent, or amounted to a reckless or callous indifference to the constitutional rights of the Plaintiff.  Furthermore, Plaintiff cannot show that Roache was a prime mover behind the alleged constitutional violations.  Moreover, Plaintiff cannot offer any evidence that Roache had personal knowledge beforehand of any of the officers' intention, thereby imposing upon him a duty to investigate the situation or to prevent the officers' conduct. See O'Malley v. Sheriff of Worcester County, 415 Mass. at 143, 612 N.E.2d 641 (1993).

Finally, Plaintiff may not simply allege that there was a weakness in training or supervision to establish that the supervisor was deliberately indifferent to his constitutional rights.  See Burns v. Loranger, 907 F.2d 233, 239 (1st Cir. 1990) (stating that weakness in police training or supervision does not amount to deliberate indifference to citizen's constitutional rights.)

9

      3.    <u>Plaintiff Cannot Adduce Evidence to Establish An Affirmative Link Between the Conduct of Defendant Callahan and Roache</u>.

Plaintiff cannot offer evidence that there is an affirmative link between Roache and Defendant Callahan. In order for Roache to be held liable for supervisory liability, Plaintiff must "prove an "affirmative link' between the street-level misconduct and the action or inaction of supervisory officials." <u>Gutierrez-Rodriguez</u>, 882 F.2d at 562. The First Circuit has held that a state official may be liable under Section 1983 for the unconstitutional behavior of subordinates if the official's actions were affirmatively linked to the subordinates unconstitutional behavior such that it could be characterized as "supervisory encouragement, condonation, or acquiescence or 'gross negligence amounting to deliberate indifference'." <u>Muniz Souffront v. Alvarado</u>, 115 F. Supp.2d 237, 245 (1st Cir. 2000) quoting <u>Tuttle</u>, 471 U.S. 808, 823 (1985). Caselaw demands a showing of an affirmative link either through direct participation or conduct that amounts to condonation or tacit authorization. <u>Camilo-Robles</u>, 175 F.3d at 44; <u>see</u> <u>also</u>, <u>Rogan v. Menino</u>, 175 F.3d 75, 78 (1st Cir. 1999). In order to demonstrate this, Plaintiff must prove "distinct acts or omissions that are a proximate cause" of the constitutional violation. <u>Figuero</u>, 864 F.2d at953.

Here, Plaintiff cannot causally connect any acts of Roache to the violation of Defendant Callahan. Plaintiff cannot put forth any evidence suggesting there is an affirmative (or any) link between Roache's conduct and the constitutional violation found by the jury. Furthermore, there is no evidence that any acts or omissions on the part of Roache contributed that constitutional violation. Accordingly, Count I of Plaintiff's Complaint fails and judgment on the pleadings must be granted as a matter of law.

### III.     CONCLUSION

WHEREFORE, the Defendants, the City of Boston and Francis M. Roache, respectfully move this Honorable Court to grant judgment on the pleadings in favor of the above defendants and on all counts of the Plaintiff's Complaint against them, with prejudice.

|  |  |
|---|---|
|  | Respectfully submitted,<br>**Defendants, the City of Boston and Francis M. Roache,**<br>By their attorneys,<br><br> /s/ John P. Roache_____<br>John P. Roache (BBO# 421680)<br>Patrick J. Donnelly (BBO# 651113)<br>Roache & Associates, P.C.<br>66 Long Wharf<br>Boston, Massachusetts 02110 |
| Dated: April 10, 2008 | Tel.: (617) 367-0330 |

### CERTIFICATE OF SERVICE

I, John P. Roache, hereby certify that on April 10, 2008, I served a copy of the above document upon counsel of record by filing with the ECF/Pacer Case Management System.

/s/ John P. Roache_____
John P. Roache