UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHAWN DRUMGOLD, | ) | C.A. NO. 04-11193NG |
|     Plaintiff | ) | |
| | ) | |
| v | ) | |
| | ) | |
| TIMOTHY CALLAHAN, ET AL. | ) | |
|     Defendant(s) | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM RE: SCOPE OF RETRIAL**

**INTRODUCTION**

Plaintiff moves this Court to order a full retrial for two independent grounds. First a full retrial is the appropriate remedy after a mistrial on the particular facts of this case. Second justice may not have been done as a result of the Court's supplemental jury instructions that released Defendant Callahan from the responsibility for damages proximately caused by his violation of 42 U.S.C. §1983.

**A.    A FULL RETRIAL IS NECESSARY AFTER THE MISTRIAL IN THIS CASE.**

**1.    BACKGROUND AND SUMMARY**

This Court allowed the Defendant's Motion to Bifurcate. The first stage of the trial asked the jury to determine whether the Defendants Callahan and Walsh violated the Plaintiff's civil rights in connection with Mary Alexander, Tracy Peaks or Ricky Evans. The jury found no violation by the Defendants in regards to Mary Alexander and Tracy Peaks. The jury found that the Defendant Callahan did violate the Plaintiff's civil rights in regards to Ricky Evans by giving

1

Ricky Evans substantial amounts of money and failing to disclose that exculpatory evidence.

Stage Two of the trial asked the jury to determine whether Callahan's violation of Plaintiff's civil rights in regards to Ricky Evans was the proximate cause of his conviction and, if so, determine damages. The jury, after deliberation, announced that it was unable to determine whether or not the Defendant's violation of civil rights was the proximate cause of the Plaintiff's criminal conviction.

This Court has asked the parties to brief the question of the effect of a mistrial at Stage Two on the retrial in this case. In light of the complexity of this issue, Plaintiff discusses herein its position as to a variety of potential retrials. In summary, the retrial types can be classified, in order of appropriateness, as follows:

- **Retrial of the Entire Liability Phase Against Both Defendants**

The rule under <u>Gasoline Products Co. v. Champlin Refining Co.</u>, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931) is that in the retrial of a partial mistrial, the entire case should be submitted to the second jury when the issue to be resolved by the second jury "is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial". (Id. at 500). In this case, the entire liability phase of the trial is necessarily interwoven with the proximate cause issue which remains for the jury.

- **Retry the Ricky Evans Portion of the Liability Case Against the Defendant Callahan**

2

**Only.**

The issue of Defendant Callahan's providing undisclosed money to Ricky Evans cannot be understood by a second jury without all of the evidence concerning Ricky Evans' involvement with the Boston Police. It is necessarily interwoven with the issues concerning Ricky Evans' stay at the hotel, Mr. Evans' receiving of consideration for cases and the Defendant's disclosure or non-disclosure of information to the District Attorney.  Thus, at a minimum, the entire Ricky Evan's portion of the liability case against Mr. Callahan should be retried at the second trial.

- **Preserve the First Jury's Verdict.**

Plaintiff objects to this alternative. However if the Court is inclined to do so, the second jury could hear the evidence concerning the provision of money to Ricky Evans, which would necessarily include all of the testimony concerning Ricky Evans' involvement with the Boston Police. The jury could be instructed that it has already been determined that Mr. Callahan violated the Plaintiff's civil rights in connection with the failure to disclose money and that jury could be asked to determine whether the evidence they heard in regards to Ricky Evans receiving substantial amounts of money was the proximate cause of the Plaintiff's conviction.

- **Retrial of Only the "Substantial Money" Portion of the Liability Case**

The least equitable retrial would be to allow Defendant Callahan to have a new trial on the question of whether he supplied money to Ricky Evans and failed to disclose it, without

retrying the other questions in regards to Ricky Evans.

As discussed above, all of the questions concerning Ricky Evans and Mr. Callahan's involvement with him are interwoven. It would produce jury confusion and fundamental unfairness to allow Callahan to only face retrial on the question involving money and to disregard his entire relationship with Ricky Evans including putting up Ricky Evans in a hotel and taking care of his cases.

2.    **STANDARD OF REVIEW**

The Supreme Court in Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931) held that when there is a partial mistrial, the Seventh Amendment Right to Trial does not require a complete retrial of all issues nor does it prevent retrial of issues decided at the first partial trial. The court instead held the question of the scope of a retrial after a partial mistrial is whether the question that remains unresolved by the jury is "so distinct and independent from the others, that a trial of it alone may be had without injustice." (Id. at 499). The First Circuit has held that any advantage in time or expense which may flow from allowing a partial retrial "must yield to the injustice resulting in trying interconnected damages issues separately to different juries". Franchi Const. Co., Inc. v. Combined Ins. Co. of America, 580 F.2d 1, 25 Fed.R.Serv.2d 1100 (1978). A full retrial is necessary when the issues on retrial are "inextricably interwoven". Payton v. Abbott Labs, 780 F.2d 147, 154 (1st Cir. 1985). The question presented by a partial mistrial is whether the second jury must understand and appreciate the all of the evidence in order to resolve the remaining

4

issues in the trial.

Typically, the remaining issue to be resolved is the question of damages. Uniquely in this case, the first question to be resolved at the retrial is the issue of proximate cause. Proximate cause is necessarily and intensively a fact bound inquiry which starts with an inquiry as to whether or not Walsh and Callahan conspired together to violate Drumgold's constitutional rights. The court in U.S. v. Rule Industries, Inc., 878 F.2d 535, 541-542 (1st Cir., 1989) explained that "cases involving the application of fact-sensitive, rather amorphous legal standards to an extensive set of nuanced facts" must be decided by a jury. Putnam Resources v. Pateman, 958 F.2d 448, 460-461 (1st Cir. 1992). Springer v. Seaman, 821 F.2d 871, 876 (1st Cir., 1989). (Question of proximate cause in civil rights case is for the jury to decide based upon review of all the evidence.)

In this case, the Defendants are expected to argue that the question of proximate cause can be separated for consideration by the jury from the question of whether there was a violation of civil rights. That separation is not possible. This is a case where the "nuanced facts" of the relationship between the Boston Police Department and the prosecution of Shawn Drumgold need to be applied by the jury to use the "rather amorphous legal standard" of proximate cause. See U.S. v. Rule Industries, *supra*. It is not possible to separate out liability evidence from the question of whether the particular liability facts were the proximate cause of the Defendant's injury. There is a much stronger argument that the liability facts are interwoven with the proximate cause question than would typically be the case when the issue to be retried is damages only.

5

This case can be contrasted with the situation in <u>Olsen v. Correiro</u>, 1995 WL 62101 where Judge Saris held that a partial retrial was permissible because the issue of municipal liability in a 1983 action was "not intertwined with the amount of compensatory damages" and "the jury's decision that the suppression of exculpatory evidence proximately caused plaintiff's damages is not intertwined with the issue of the state of mind of the individual actors". (Id. at 4). Here all of the facts concerning the Boston Police's prosecution of Mr. Drumgold are necessarily intertwined with the question of whether any portion of that conduct proximately caused his conviction.

As a practical matter in this case, the second jury will be asked an intensely fact bound question; whether actions by the Defendants proximately caused Plaintiff's conviction. As illustrated by closing arguments by all counsel at Stage Two of this trial, that question necessarily requires a review of all of the evidence in the case, all of the witnesses in the case and the interconnection between the actions by the Boston Police Department, the District Attorney's Office, and the defense counsel. It is the most extreme example of interwoven facts which cannot be fairly parceled out for the second trial.

**3.    THIS COURT SHOULD ORDER A RETRIAL OF ALL STAGE ONE LIABILITY ISSUES.**

Perhaps the best way to understand the necessity to retry all of the liability issues is to attempt to imagine the scope of a trial involving only the question of whether Mr. Callahan gave money to Ricky Evans. The Plaintiff would argue in that trial that by the time Callahan became involved in the case in May of 1989, the Boston Police Department had a mess on its hands that

6

needed to be cleaned up. Judge Volterra had harshly criticized Detectives Walsh and Murphy for their misconduct in connection with taking Mr. Drumgold's statement. Detective Callahan was brought in, the Plaintiff would argue, "to clean up the mess". Callahan was allowed to retain his friend Paul McDonough to help him, even though McDonough was not a member of the homicide unit. Callahan's state of mind and motivation was to salvage a case which was in peril. The Plaintiff would have the right to explain to the jury the background to Callahan's involvement in the case and his motivation.

In explaining the reason for Callahan's providing money to Evans, and to support the credibility of Evans' allegation which Callahan denies, Plaintiff would offer the evidence concerning Callahan's knowledge of Mary Alexander's health problems and failure to disclose them, his knowledge of Tracy Peaks' unreliable testimony and Richard Walsh's role in reviewing the file and introducing Callahan to Mary Alexander. All of that evidence would be admissible to show the plan which was designed by Callahan to clean up the case against Mr. Drumgold. That evidence would be relevant to establish the Plaintiff's claims that Callahan provided substantial amounts of money to Ricky Evans.

When the evidence on a partial retrial would be largely the same as the evidence of a full retrial, a jury should be permitted to apply it to all issues rather than an isolated one. Sears v. Southern Pac. Co., 313 F.2d 498, 503 (9th Cir., 1963); Colonial Leasing of New England, Inc. v. Logistics Control Intern., 770 F.2d 479 (5th Cir., 1985).

One of the factors to be considered in determining the scope of a retrial is the risk that a partial retrial can result in the two successive juries coming to inconsistent findings. In re Lower

<u>Lake Erie Iron Ore Antitrust Litigation</u>, 1993 WL 176640, Fn.35 (3rd Cir., 1993). In this case, for example, if the second jury were to determine that Callahan did provide hotel housing and assistance on cases without revealing it to the Defendant, or that Callahan knew of Mary Alexander's illness and failed to reveal it, then the jury could use those conclusions to determine that it was likely that Callahan also gave substantial amounts of money to Ricky Evans. The risk of inconsistent yet binding jury findings is real. On the other hand, if the Court simply declared a mistrial as to the first case, the second jury would be allowed to make the factual findings necessary on a clean slate and avoid the risk of inconsistent verdicts.

The liability issues are also interwoven into the issues remaining to be tried against the City of Boston. The liability case against Commissioner Roache, for example, is premised in part on Commissioner Roache's knowledge of Judge Voleterra's actions in suppressing the statements taken from Mr. Drumgold and Mr. Roache's subsequent failure to withdraw the commendation issued to Walsh and Murphy. The punitive damages sought against the City of Boston also arise from the fact that the City failed to address issues which had already arisen in the prosecution of Shawn Drumgold. The City's assignment of Callahan and his non-homicide detective partner McDonough to a case where there had already been police misconduct, without making any attempts to assure that no further misconduct occurred, could be considered condoning the prior misconduct. In addition the consequences of the City's failure to properly train or supervise Walsh and Murphy, which resulted in Walsh and Murphy's misconduct with Tracy Peaks, is admissible to establish the foreseeable effect of the City's failure to supervise Callahan. For purposes of a retrial, the issues of compensatory and punitive rewards are also

inextricably intertwined. Burke v. Deere & Co., 6 F.3d 497, 513 (8th Cir., 1993). Failing to

allow retrial of all liability issues would require that in the case against the City, the liability

issues be revisited for purposes of determining compensatory and punitive damages. Spence v.

Board of Educ. of Christina School Dist., 806 F.2d 1198, 1202 (3rd Cir., 1986).

   The evidence relevant to the conspiracy charge is also relevant to the question of whether

Callahan gave undisclosed money to Evans. For example, the evidence of Callahan's

involvement with Walsh during the investigation is relevant to Callahan's motive and intent to

clean up the mess created by Walsh. The evidence of the City's failure to prevent prior

misconduct by Walsh and Murphy in regards to Tracy Peaks is relevant to the foreseeability by

the City of Callahan's misconduct with Ricky Evans. The question of whether Walsh and

Callahan conspired to deprive Drumgold of his civil rights is interwoven with the issues raised in

a partial retrial of Callahan. If there is to be retrial of those issues, the jury should be allowed to

consider the evidence for all purposes.

   Another appropriate factor for the Court to consider in determining the scope of a retrial

is whether there is a possibility that the first jury's verdict was the result of a compromise.

Stanton by Brooks v. Astra Pharmaceutical Products, Inc., 718 F.2d 553, 578 (3rd Cir., 1983).

(Where jury appeared to compromise to the detriment of the Plaintiff, a full retrial is necessary

upon a retrial because "we believe that fairness to plaintiffs requires the liability question to be

retried in toto."). In this case, the jury answered "No" to ten out of eleven special questions at

Stage One of the Trial and were unable to reach an agreement on proximate cause. The actions

of the jury raise the distinct possibility that some substantial group of jurors compromised on the

initial liability stage of the trial with the thought that although they would limit the amount of violations found, they would insist that the violations they did find resulted in liability. The reported jury split, seven to five in favor of the Plaintiff at the time of the mistrial, supports the notion that jurors may have compromised at Stage One in anticipation that a proximate cause finding would be made in Stage Two. The real possibility of a compromise verdict makes it more equitable and fair to allow the second jury to simply retry the contested issues rather than give the Defendant the unfair advantage of a half of a potential compromise which does not accurately represent the true desires of the initial jury.

The Defendant Walsh, is not denied his rights if the Court allows a retrial on the entire first liability phase. There is no Seventh Amendment Right to avoid a retrial upon a partial mistrial. Gasoline Products Co. v. Champlin Refining Co. (Id.) No judgment has ever entered on behalf of Walsh in this case and therefore there is no enforceable order of the court that determines Walsh's rights at this point. There is simply a partial jury verdict which results in a mistrial. Walsh is not deprived of any essential rights by being a party to the retrial.

4.    **AT MINIMUM, ALL OF THE ISSUES CONCERNING CALLAHAN'S INVOLVEMENT WITH RICKY EVANS SHOULD BE RETRIED.**

A second alternative is to order that there be a retrial of the three Ricky Evans' claims against Mr. Callahan; that he put Ricky Evans up in a hotel, that Callahan assisted him on his cases and that Callahan provided him with substantial amounts of money, all of which were withheld from the Plaintiff. If the Court is not inclined to order a retrial of the entire liability phase, the Defendant would urge, without waiving his objection, this result as the second most

10

equitable retrial.

The question for the second jury is whether Callahan's actions in connection with Ricky Evans proximately caused Mr. Drumgold's conviction. It is impossible to judge the effect of Callahan's actions in connection with Ricky Evans' by focusing only on his provision of substantial amounts of money to Ricky Evans. The likely effect of providing substantial amounts of money to Ricky Evans is necessarily interwoven with the fact that at the time that Callahan provided him with that money, Mr. Evans was staying at a hotel which had been arranged by Callahan. Mr. Evans was the beneficiary of his cases having been taken care of. The entire relationship between Evans and Callahan must be reviewed as whole and the provision of money cannot be parceled out.

The second jury would not know and could not understand the reason for the first jury's finding of liability on the money issue and no liability on the hotel and pending cases issue. The jury would be confused if it was instructed that it should consider the hotel and pending case evidence for some purposes but not for other purposes. This is a case where "The district court would have been unable in the second trial to clearly instruct the jury as to the basis of the presumed liability leading to juror confusion". Prendeville v. Singer, 155 Fed.Appx. 303, 305 (9th Cir., 2005). A jury cannot understand the issue concerning payment of money unless it also understands the issues concerning the hotel and the pending cases and therefore all of those issues must be retried. Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, 729 F.2d 1530, 1539 (5th Cir., 1984). (Full retrial necessary in fraud/contract case because "The fraud claim arose out of the acts surrounding the breach of contract, and an understanding of the fraud required an

understanding of the contract claim".)

In addition, the question of Callahan's provision of substantial amounts of money to Ricky Evans can only be evaluated in connection with his action of disclosing or not disclosing the fact of the stay at the hotel and his involvement with Evans' criminal records. The Plaintiff would certainly be entitled to argue that the jury should find it more likely that Callahan did not disclose the provision of money to the District Attorney's Office because there is substantial evidence to believe that Callahan did not disclose Ricky Evans' stay at the hotel to the District Attorney's Office or that Ricky Evans had been assisted in his criminal cases.

It should be noted that the Defendants argued, through the use of the Connolly memorandum, that the District Attorney's Office knew about Ricky Evans' being put up in the Howard Johnson's. That question is different from, and distinct from, the fact that Callahan knew of Ricky Evans being put up in a hotel and failed to reveal it to the District Attorney's Office. That is, the Defendants argued that the District Attorney found out, somehow but not necessarily from Callahan, that Evans was at the hotel. Plaintiff can still argue that Callahan knew about it and failed to reveal it, which makes it more likely that he also failed to reveal the substantial amounts of money given to Ricky Evans.

The issue of Mr. Callahan providing substantial amounts of money to Ricky Evans is necessarily interconnected and interwoven with all of the dealings between Evans and Callahan. It would be fundamentally unfair and confusing to the jury to limit a retrial to the single issues of substantial amounts of money. If this Court does not allow a full retrial of the liability phase it should order the full trial of the Ricky Evans issues involving Timothy Callahan.

12

5.      **IF THE COURT DOES NOT ALLOW THE RETRIAL OF ALL OF THE RICKY EVANS ISSUES, THE COURT SHOULD ADOPT THE FIRST STAGE JURY VERDICT.**

A third possible result, if the Court does not allow retrial of the entire liability phase or retrial of the entire Ricky Evans issues, would be to accept the Stage One jury verdict. As argued above, the Plaintiff would object to that result since the proximate cause issue is necessarily interwoven with the liability issues. However, a retrial could be fashioned where a jury was instructed that a previous jury had determined that Defendant Callahan provided substantial amounts of money to Ricky Evans. That jury would be asked whether that was the proximate cause of Mr. Drumgold's conviction. The jury could be allowed to hear all of the evidence related to the provision of substantial amounts of money to Ricky Evans. As argued above, that would include the entire relationship between Evans and Callahan. Thus the question of Evans' being put up in a hotel and his cases being taken care of would necessarily be admissible as explanation to that jury for the significance of the substantial amounts of money to Ricky Evans.

The jury would then be instructed that they were to assume that Callahan had provided substantial amounts of money to Evans and that he had not disclosed it and would be asked to determine whether that failure to disclose was the proximate cause of the conviction.

As indicated above, the Plaintiff does not urge the result, he simply notes it is one possible resolution of the issue.

6.      **THE COURT SHOULD NOT ALLOW RETRIAL OF THE SINGLE QUESTION OF WHETHER CALLAHAN PROVIDED SUBSTANTIAL AMOUNTS OF MONEY TO RICKY EVANS.**

13

It is expected that Defendant will urge this Court to adopt the Stage One jury verdict to the extent that the jury found a failure to violate civil rights but to reject the Stage One jury verdict where the jury found a violation of civil rights. The Defendants will seek a retrial on the single liability issue of whether Callahan provided a substantial amount of money to Ricky Evans and failed to reveal it. This result would be fundamentally unfair. The Defendant is expected to urge the Court to separate out Callahan's dealings with Ricky Evans regarding the provision of money, from the dealings between Callahan and Evans in connection with providing the hotel and taking care of cases. That type of division is not appropriate. "The action may not be splintered in that fashion." Franchi Const. Co., Inc. v. Combined Ins. Co. of America. (Id. at 8). Splitting out one portion of the evidence for a retrial will "cause confusion and uncertainty and result(s) in prejudice amounting to a denial of a fair trial." Payton v. Abbott Labs, 780 F.2d 147, 155 (1st Cir., 1985).

Although the use of special interrogatories, as used in this case, may at times facilitate the use of a partial retrial, the Court is required to make a case by case analysis. The use of special interrogatories does not have "talismanic significance" on the question of whether a full or partial retrial is necessary. Brooks v. Brattleboro Memorial Hosp., 958 F.2d 525, 531 (2nd Cir., 1992). In this case, the special interrogatory questions dealt with issues which were necessarily intertwined. A jury cannot make a determination as to whether Ricky Evans received substantial amounts of undisclosed funds from Defendant Callahan without being aware of all of the evidence concerning Callahan's dealing with Ricky Evans and the background of Walsh and Callahan's dealings with Tracy Peaks and Mary Alexander.

14

The reason Callahan provided money to Ricky Evans was because Mr. Evans was a homeless person being put up in a hotel. Evans testified that he used the money to buy necessities which flowed from his staying in a hotel. Callahan's payment of funds to Evans with undocumented and unrecorded cash rather than approved money from Boston Police Department or the District Attorney's Office is understandable only in the context of the series of dealings between Callahan and Evans. Plaintiff is entitled to argue Callahan's dealings in cash with Evans were part of the entire plan of dealings with Evans which involve providing benefits to him. All of the issues between Callahan and Evans are necessarily interwoven and it would be fundamentally unfair and confusing to attempt to separate out the single issue involving money. The Defendant should not be allowed to "cherry pick" the one portion of the jury verdict he wants to retry. If there is to be a retrial on the liability portions of this case, the Court cannot splinter out the one small portion of Callahan's involvement with Evans to retry it by itself.

**B.     THE COURT'S SUPPLEMENTAL JURY INSTRUCTIONS RELIEVED DEFENDANT CALLAHAN OF RESPONSIBILITY FOR DAMAGES PROXIMATELY CAUSED BY HIS VIOLATION OF 42 U.S.C. §1983**

**1.     INTRODUCTION**

Plaintiff moves this Court to grant a new trial as to Defendant Callahan on the ground that the initial jury was erroneously instructed that it was sufficient for an officer to report exculpatory evidence to any individual in the District Attorney's office rather than to the particular District Attorney who was prosecuting the Defendant. This instruction went to the heart of the Plaintiff's case and clearly was central to the jury's deliberations since it was the

15

subject of a very focused and particular question from the jury.

On day 22 of the trial during its deliberations, the jury asked the Court the following question:

> Regarding the obligation of a detective to report to the DA any potential exculpatory evidence, is it sufficient to report to the DA's office or does he need to report to the specific DA on all relevant cases? Does Callahan need to tell both Connolly and Beauschene [sic] about Ricky Evans?

Following a lengthy colloquy between the Court and counsel for the plaintiff and defendants on how to address the jury's question, the Court instructed the jury as follows:

> It is sufficient for an officer to report to the D.A.'s Office rather than to any particular D.A. so long as you find that the plaintiff has proven two things by a fair preponderance of the evidence. One thing is about the content of the report and the second is about timing. About the content, the officers have an obligation to disclose to the D.A. any and all evidence which you find to have been materially exculpatory as to Shawn Drumgold or his case.  As to the timing, the officers had an obligation to disclose to the D.A. any information prior to the Shawn Drumgold trial. (Drumgold v. Callahan, et al., Jury Trial Day 22, Pages 31-32)

During the colloquy, counsel for Drumgold argued that the Court's proposed instruction fell short of the mark and that the issue was whether, for purposes of §1983 litigation, Callahan could be found liable because he withheld information from A.D.A. Beauchesne and it was foreseeable that this suppression of evidence would harm Drumgold.  Counsel argued that the Court's original instruction to the jury, that Callahan had to notify the Assistant District Attorney in the Drumgold case was the correct statement of the law. (Drumgold v. Callahan, et al., Jury Trial Day 22, Pages 19-31)   In support of this position, Drumgold relies on the following argument.

16

2.    **CALLAHAN IS RESPONSIBLE FOR THE FORESEEABLE CONSEQUENCES OF HIS FAILURE TO REVEAL EXCULPATORY EVIDENCE**

Callahan's duty to disclose exculpatory evidence required him to disclose exculpatory evidence known to him to Assistant District Attorney Beauchsene. Any failure by Callahan to disclose constitutes an independent 1983 violation, whether or not the District Attorney's office learned the information from another source. Callahan is responsible if that failure to disclose was a proximate cause of the Plaintiff not learning the information.

42 U.S.C. §1983 imposes liability on every person who under color or law "subjects, or causes to be subjected" a person to a violation of constitutional rights.  Id.  An individual who is deprived of a fair trial by the failure of the government to disclose exculpatory evidence has suffered a violation of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.  Brady v. Maryland, 373 U.S. 83, 87 (1963).  The duty to disclose exculpatory evidence extends not only to prosecutors or judicial officers, but also to the police and their investigators.  Youngblood v. West Virginia, 547 U.S. 867, 870 (2006) citing Kyles v. Whitley, 514 U.S. 419,  434 (1995).  The duty to disclose such evidence is ongoing. Pennsylvania v. Ritchie, 480 U.S. 39, 60 (1987).

Plaintiff was required to prove that the Defendant violated his rights under Section 1983. The Defendant is liable if the Defendant's wrongful conduct was a substantial factor but not necessarily the only cause or the last and nearest cause resulting in injury or harm. It is sufficient if the failure to disclose occurs with some other cause, acting at the same time, which, in combination, caused the injury. Egervary v. Young, 366 F.3d 238 (3rd Cir., 2004) c.d. 543 U.S. 1049, 125 S.Ct. 868, 160 L.Ed.2d 769; Police Misconduct: Law and Litigation Third Edition

17

(Avery, et al., 2007) §12.6. The causal connection for a constitutional violation can be established by a Defendant setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional injury. Hydrick v. Hunter, 449 F.3d 978, 991 (9th Cir., 2006). Section1983 imposes liability of individuals who "subjects, or causes to be subjected" a Plaintiff to constitutional injury. The statute imposes liability not only for conduct that directly violates constitutional right but also for conduct that is the effective cause of another's direct infliction of constitutional injury. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 560-561 (1st Cir., 1989); Springer v. Seaman, 821 F.2d 871, 879 (1st Cir., 1987); Sales v. Grant, 158 F.3d 768, 776 (4th Cir., 1998).

The question for the jury is whether the Defendants' acts were the proximate cause of the failure to disclose exculpatory evidence, i.e. the constitutional harm would not have been caused but for the defendant's breach of a legal duty, and the harm was reasonably foreseeable to the Defendant at the time of his action. Olsen v. Correrio, 189 F.3d 52 at n. 16 (1st Cir.1999) citing Peckham v. Continental Cas. Ins. Co., 895 F.2d 830, 836 (1st Cir.1990).

As counsel argued during the colloquy regarding the jury's question, the Court's proposed instruction fell short of a complete statement of the law. The instruction to the jury was a statement of the law in the context of Brady and its progeny in criminal cases and post-conviction appeals. The knowledge of one prosecutor is imputed to all prosecutors in the office, as the Court instructed the jury in the instant case. Giglio v. United States, 405 U.S. 150 (1972)(defendant entitled to new trial for state's failure to disclose exculpatory evidence even when trial prosecutor was unaware evidence existed because it was in the hands of another

prosecutor).  Similarly, the government is charged with disclosure of exculpatory information in the hands of not only the prosecutor's office, but also information known to police officers even if it has not been disclosed to the prosecutor; failure to produce that information can result in reversal of a conviction.  Kyles v. Whitley, 514 U.S. at 438.  The jurisprudence created by these cases have safeguarded criminal defendants in their trial and post-conviction efforts by imposing a burden on prosecutors' offices to create information systems so that all lawyers dealing with a case were aware of all relevant information.  See, Giglio v. United States, 405 U.S. at 154.  The Court's instruction in this case, therefore, would have been correct if Drumgold was seeking a new trial.  It would have been sufficient for Drumgold to show that Callahan told any prosecutor in the District Attorney's office about Ricky Evans to impute that exculpatory knowledge on the entire office to succeed on a motion for new trial.  Kyles v. Whitley, *supra*. Drumgold, however, is seeking redress for a constitutional tort, and therefore the standard established by Brady and its progeny is the starting point, but not the resolution of the 1983 claim.

Brady and the cases following it established rules to aid criminal defendant's in their defense and post-conviction appeals. The safeguards provided by those cases protected against governmental finger-pointing, where the government could claim that a rogue police officer withheld information from the prosecutor and therefore the defendant should not be entitled to a new trial because the government was acting in good faith.  As a general rule, however, failure to disclose material exculpatory evidence entitles a convicted defendant to reversal regardless of good faith.  Brady v. Maryland, 373 U.S. at 87.

In the civil context, application of this safeguard would actually have the opposite effect

19

on an aggrieved §1983 plaintiff seeking redress for constitutional wrongs proximately caused by

not only prosecutors, but also by police officers.  In the instant case, the defendants claim that

Callahan's conduct in telling any prosecutor in the District Attorney's office relieved him of any

liability under §1983, relying on the <u>Brady</u> "one is as good as any" safeguard.  Logically, this

means that even if Callahan had[1] *actual knowledge* that the information he allegedly offered to

A.D.A. Connolly would not make it to Drumgold, and that as a result Drumgold would be

harmed, he would not be liable because he just told someone.  This could not have been the

intent of the Brady Court, or the objective of Congress in enacting §1983, especially given the

general rule that even if a state actor's conduct does not amount to a violation of a constitutional

duty, that actor may still be liable under §1983 if their conduct causes a constitutional violation.

<u>City of Canton, Ohio v. Harris</u>, *supra*.

There is an independent duty of police officers in the §1983 context apart from their

limited duty under <u>Brady</u> and its progeny. It is not enough for them to disclose exculpatory

information to any prosecutor, or to a secretary at the District Attorney's office, or to a victim

witness advocate – police officers have a duty to deliver material information to "*competent*

*authorities*." <u>Brady v. Dill</u>, 187 F.3d 104, 115 (1st Cir.1999)(emphasis added).  The

constitutional

_____

1. No evidence suggests that Callahan told Connolly. Connolly has no memory of Callahan
telling him. Callahan has no memory of telling Connolly or Beauchsene.

wrong for purposes of §1983 litigation results when the officer fails to deliver such information

to such an authority and it is reasonably foreseeable that the failure will result in a denial of

constitutional rights. <u>Id</u>.  See also, <u>Steidl v. Fermon</u>, 494 F.3d 623, 630 (7th Cir. 2007)(although

Brady places ultimate duty of disclose on prosecutor "anomalous to say that" state troopers are not liable for failure to disclose exculpatory evidence to "competent" authority which resulted in defendant's conviction).

     The independent duty outlined above stems from the fundamental principle of constitutional tort cases that "a man is responsible for the natural consequences of his actions." Monroe v. Pape, 365  U.S. 167, 187 (1961)(overturned on separate grounds).  The causal link between an officer's actions and a §1983 plaintiff's harm is established where that officer, well-trained in his position, reasonably could have foreseen that his actions would cause that harm. Jones v. Chicago, 856 F.2d 985, 993-994 (7th Cir.1988) citing Malley v. Briggs, 475 U.S. 335 (1986)(officer liable for 4th amendment false arrest violation where a reasonably well-trained officer in his position would have known that his affidavit failed to establish probable cause even with the intervening authorization of that warrant by the magistrate).   Even if the officer's conduct does not amount to the violation of a constitutional duty, he may still be liable where that conduct was instrumental in the later violation of a §1983 plaintiff's constitutional rights. City of Canton, Ohio v. Harris, *supra*.  An officer cannot and Callahan should not "escape liability by pointing to the decisions of prosecutors," or by the inefficiency of the transmission of information in the prosecutor's office if he reasonably could have foreseen that his conduct would result in Drumgold's harm.  Jones v. Chicago, 856 F.2d at 994.  Officers cannot hide behind the officials they have defrauded by invoking Brady and its progeny.

     Given the independent duty of an officer to avoid constitutional harm to a criminal defendant, given the requirement that the duty to disclose exculpatory evidence is ongoing, and

given this Circuit's clear rules regarding proximate cause, the instruction to the jury that it was sufficient for Callahan to tell any prosecutor about Ricky Evans was not a complete statement of the law and requires a new trial.

## CONCLUSION

This Court should order a full retrial or, at a minimum and over Plaintiff's objection, should order a retrial of the all allegations concerning Ricky Evans and the Defendant Timothy Callahan.

Respectfully submitted,

By His Attorneys,

/s/ Michael Reilly
Michael W. Reilly, Esq.
Tommasino & Tommasino
Two Center Plaza
Boston, MA   02108
617 723 1720
BBO 415900

/s/ Rosemary Curran Scapicchio

Rosemary Curran Scapicchio, Esq.
Four Longfellow Place
Boston MA 02114
617 263 7400
BBO 558312