UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAWN DRUMGOLD,<br>    Plaintiff<br><br>v.<br><br>TIMOTHY CALLAHAN, FRANCIS<br>M. ROACHE, RICHARD WALSH and<br>THE CITY OF BOSTON,<br>    Defendants | 04-CV-11193-NG |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION
IN LIMINE TO EXCLUDE AT TRIAL PLAINTIFF'S CITED CASES OF
ALLEGED PAST POLICE MISCONDUCT**

Defendants, the City of Boston and Francis M. Roache, move the Court *in limine* to preclude from the evidence in the trial against them all of the cases of alleged past police misconduct cited by the Plaintiff pursuant to Rule 402 of the Federal Rules of Evidence as these cases are not relevant in light of the jury's Phase I verdict to proving the elements of the Plaintiff's claims against the City of Boston and Commissioner Francis M. Roache.

**1. Individual, Municipal and Supervisory Liability Under 42 U.S.C. § 1983**

A. Individual Liability

There are two essential elements that a plaintiff must be satisfy to prevail on a claim under §1983 against an individual police officer: "(i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." Grant v. John Hancock Mutual, Life Insurance Co., et al., 183 F.Supp.2d 344, 355 (2002) (citing Martinez v. Colon, 54 F.3d 980, 984 (1st Cir.1995) (citing Chongris v. Board of Appeals, 811 F.2d 36, 40 (1st Cir.), cert. denied, 483 U.S.

1021 (1988); accord West v. Atkins, 487 U.S. 42, 48, 101 L. Ed. 2d 40, 108 S. Ct. 2250 (1988); Daniel v. Williams, 474 U.S. 327, 330-31, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986).  The Supreme Court held in Albright v. Oliver that §1983 is not a source of substantive rights, "but merely provides 'a method for vindicating federal rights elsewhere conferred.'" (Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n.3, 61 L. Ed. 2d 433, 99 S. Ct. 2689 (1979))).

A plaintiff in a § 1983 action must also prove that the defendant officer caused the harm or injuries that he allegedly suffered.  For liability to attach, it must be shown that the defendant officer's allegedly wrongful conduct was a substantial factor in the resulting injury or harm. Monroe v. Pape, 365 U.S. 167 (1961); Pickrel v. City of Springfield, 45 F.3d 1115 (7th Cir. 1995); Drewitt v. Pratt, 999 F.2d 774 (4th Cir. 1993).

B.  Municipal Liability

A municipality cannot be held liable under Section 1983 unless the Plaintiff proves that the municipality's policy or custom caused the resulting injury or deprivation of rights.  See Judge v. City of Lowell, 160 F.3d 67, 78 (1st Cir. 1998) (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)).  The custom "must be unambiguously established by official policy makers' conduct, and may not be simply suggested by isolated actions of some employees."  Woodley v. Town of Nantucket, 645 F.Supp. 1364, 1378 (D.Mass 1986).  In *City of Oklahoma City v. Tuttle*, the Supreme Court held that a jury could not be permitted to infer a "policy" of inadequate training from a single incident of police misconduct but rather that substantial evidence of a policy of custom may be required to establish liability against a municipal defendant:

> "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the

>incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker. Otherwise the existence of the unconstitutional policy and its origin, must be separately proved. *But where the policy relied upon is not itself unconstitutional, considerably more proof that the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality and the causal connection between the "policy" and the constitutional deprivation.*" City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). [Emphasis added.]

"A single incident of misconduct, without other evidence, cannot provide the basis for municipal liability under [Section] 1983." See Bordanaro v. McLeod, 871 F.2d 1151, 1161 n.8 (1st Cir. 1989) (emphasis added); See also, Armstrong v. Lamy, 938 F.Supp. 1018 (D. Mass 1996). "[M]unicipal liability under Section 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. Harris, 489 U.S. 378, 389 (1989). See also, Oklahoma City v. Tuttle, 471 U.S. at 823.

"It is only when the 'execution of the government's policy or custom ... inflicts the injury'" that a municipality may be held liable under Section 1983. See Springfield v. Kibbe, 480 U.S. 257, 267 (1987). The burden is on the Plaintiff to identify a municipal policy or custom that caused his injury. See Bd. Of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Brown, 520 U.S. at 403-404. "A 'policy' giving rise to liability cannot be established merely by identifying a policymaker's conduct that is properly attributable to the municipality." Id. at 397.

The Plaintiff must also demonstrate that through its deliberate conduct, the City was the moving force behind any alleged injury. See Harris, 489 U.S. at 397 (citing Monell, 436 U.S. at

3

694). To prove that a custom or policy is the "moving force" behind the alleged injury, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the injury. See Brown, 520 U.S. at 406-407. Thus, the Plaintiff here must show that the City's actions were culpably taken and demonstrate a direct causal link between that action and the Plaintiff's injury.

The Supreme Court "is very sensitive to the requirement of proving a 'causal link' between the town's policy and the alleged deprivation." Woodley, 645 F. Supp. At 1379-1380 (citing e.g., Tuttle, 471 U.S. 808 (1985)). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held solely for the actions of its employee." Brown, 520 U.S. at 404 (citation omitted). To permit a lesser standard of fault "would result in de facto respondeat superior liability on municipalities...a result...rejected in *Monell*." Harris, 489 U.S. at 392 (citing Monell, 436 U.S. at 693-694)

For municipal liability to attach there must be an affirmative link between the municipality's actions or inaction and any constitutional violations committed by the individual officers. The municipality's actions must be the cause of and the moving force behind any deprivation of constitutional rights in order to hold the municipality liable. Oklahoma City v. Tuttle, 471 U.S. 808 (1985). A persistent and widespread practice which has gained the force of custom, which practice was known to, or should have been known to, the appropriate policymakers of the municipality, and which was tolerated by those policymakers, the municipality will be liable for acts taken pursuant to that custom. Monell v. Department of Social Servs., 436 U.S. 658 (1978); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Bordanaro v. McLeod, 871 F.2d 1151 (1st Cir.1989). Liability against a municipality may be

based upon the existence of a custom "found in 'persistent and widespread . . . practices of [municipal] officials [which] [a]lthough not authorized by written law, [are] so permanent and well-settled as to [have] the force of law.'"  Spell v. McDaniel, 824 F.2d 1380, 1386 (4th Cir. 1987), quoting Monell v. Department of Social Servs., 436 U.S. 658, 690-691 (1978), citing and quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970).

C.  Supervisory Liability

The U.S. Supreme Court has held that respondeat superior cannot serve as a basis for supervisory liability.  Board of County Comm'rs of Bryan Co. v. Brown, 520 U.S. 397, 403 (1997, nor can a simple failure to exercise proper supervisory control.  Daniels v. Williams, 474 U.S. 327, 331 (1986).  Therefore, under Section 1983, a supervisor may only be found liable for conduct resulting from his own acts or omissions.  Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); Figueroa v. Aponte-Rogue, 864 F.2d 947, 953 (1st Cir. 1989).

Plaintiff must prove that Roache's conduct or inaction was intentional, grossly negligent, or must have "amounted to a reckless or callous indifference to the constitutional rights of others."  Gutierrez-Rodriguez, 882 F.2d at 562.  Courts have traditionally required a showing that the superior was either a primary actor involved or a prime mover behind the underlying alleged violation.  Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999).  See Delaney v. Dias, 415 F. Supp. 1351, 1353-54 (1st Cir. 1976) (many abuse of police power cases have held offending officers liable while dismissing complaints against superiors who had no personal involvement in alleged misconduct).  Moreover, the First Circuit has held that the supervisor's knowledge of his subordinate's activities is central to the determination of "whether the former ought to be liable (or immune from suit) for the latter's unconstitutional acts."  Camilo-Robles, 175 F.3d at 46.

Rather the Plaintiff must "prove an "affirmative link' between the street-level misconduct and the action or inaction of supervisory officials." Gutierrez-Rodriguez, 882 F.2d at 562. The First Circuit has held that a state official may be liable under Section 1983 for the unconstitutional behavior of subordinates if the official's actions were affirmatively linked to the subordinates' unconstitutional behavior such that it could be characterized as "supervisory encouragement, condonation, or acquiescence or 'gross negligence amounting to deliberate indifference'." Muniz Souffront v. Alvarado, 115 F. Supp.2d 237, 245 (1st Cir. 2000) quoting Tuttle, 471 U.S. 808, 823 (1985). Case law demands a showing of an affirmative link either through direct participation or conduct that amounts to condonation or tacit authorization. Camilo-Robles, 175 F.3d at 44; see also, Rogan v. Menino, 175 F.3d 75, 78 (1st Cir. 1999). In order to demonstrate this, Plaintiff must prove "distinct acts or omissions that are a proximate cause" of the constitutional violation. Figuero, 864 F.2d at953.

## 2. Facts

Tiffany Moore was murdered on August 19, 1988. Shawn Drumgold was convicted for the murder in the first degree of Tiffany Moore on October 13, 1989. Drumgold alleges that the defendant officers violated his civil rights without any fear of being meaningfully disciplined by their superiors within the Boston Police Department based on a then existing custom, policy or practice. The Plaintiff alleges that this custom, policy or practice allowed for 1) the inadequate training of officers and 2) the inadequate supervision and discipline of officers by the Boston Police Department. Francis M. Roache served as commissioner of the Boston Police Department from 1985 through on or about June 23, 1993.

At the conclusion of Phase I of the trial of this action, this Court limited the scope of the jury's deliberation of the evidence to determining solely whether Defendants Walsh and

6

Callahan violated the Plainitff's constitutionally protected right to a fair trial.  The Verdict Slip, dated April 4, 2008, submitted to the jury enumerated four (4) categories with eleven (11) specific questions for the jurors to consider.  These categories concerned Tracie Peaks, Mary Alexander, Ricky Evans and Civil Conspiracy.  The jury rendered a Special Verdict on April 9, 2008 finding only one constitutional violation out of eleven.  Namely the jury answered in the affirmative to the question of whether Shawn Drumgold had proven by a preponderance of the evidence that Timothy Callahan "violated his right to a fair trial by withholding exculpatory evidence from prosecutors, manufacturing evidence, and/or otaining false statements regarding Ricky Evans being given substantial amounts of money."  (See Verdict Slip, April 9, 2008, No. 3 (c).)

Subsequently, this Court deferred the municipal and supervisory phase of the trial and proceeded directly to the presentation of evidence on damages with arguments on proximate cause and damages to the jury to follow.  The jury resumed its deliberations for this new Phase II on April 15, 2008 and notified the Court on April 16, 2008 that it was unable to reach a unanimous verdict on the question of causation.  As a result, this Court was compelled to declare a mistrial on April 16, 2008.

### 3. Argument

The municipal and supervisory claims alleged by the Plaintiff have yet to be tried.  However, the scope of any trial of those claims will necessarily be determined by this Court's ruling on the question of the scope of any retrial of Phase II as it pertains to Defendant Callahan and proximate causation and damages.  The Court, *sua sponte*, decided on or about March 28, 2008 to sever the issues that would be submitted to the jury at the conclusion of Phase I.  Specifically, the Court held that the jury would deliberate only on the question of whether a

7

constitutional violation had occurred. If such a constitutional violation were found by the jury, the Court had indicated that it was intending to shift the burden of proof to the Defedants on the essential element of causation; to prevail the Defendants would need to show that Drumgold's conviction would have occurred irrespective of the constitutional violation.

Relying on the Court's restrictions regarding what elements constituted a constitutional violation, the jury reached a unanimous verdict for Phase I. Justice requires that this Court uphold that verdict because both defendants and plaintiff are entitled to it. (See Spell v. McDaniel, 824 F.2d 1380 (4th Cir. 1987) where the Court rejected the City's counter-motion to have all issues relitigated and instead allow a retrial only on the issue of inadequate damages (citing to Great Coastal Express, Inc. v. International Brotherhood of Teamsters, etc., 511 F.2d 839, 846-848 (4th Cir. Va. 1975), and Gasoline Products Co. v. Champlin Co., 283 U.S. 494, 75 L.Ed. 1188, 51 S.Ct. 513 (1931)).) This Court must uphold to the determination of the factfinder as the fairest avenue to resolving this question.

If this Court were to uphold the jury's Phase I verdict and order a retrial regarding causation and damages, notwithstanding the possibility that retrial on the issue of causation at this stage may be barred by the doctrine of issue preclusion, any subsequent trial of the municipal and supervisory claims must be limited to the scope of the jury's Phase I verdict. The initial question for such a trial would be whether the City of Boston had a custom, policy or practice of allowing officers to give "substantial amounts of money" to witnesses to procure their testimony without disclosing such actions to the district attorney's office.

This question should not be broadened to disclosure of any and all promises, rewards or inducements as the Phase I jury considered such broader issues. The jury did not find constitutional violations committed by Defendant Callahan with regard to assisting Ricky Evans

8

with his criminal cases (See Verdict Slip, April 9, 2008, No. 3(d)) or with regard to providing Evans with lodging and meals (See Verdict Slip, April 9, 2008, No. 3(b)).  Therefore, if a jury on retrial were to find that Defendant Callahan's violation of Drumgold's right to a fair trial by not disclosing to the district attorney's office and/or the defendant that he gave "substantial amounts of money" to Ricky Evans was the proximate cause, i.e. a substantial factor, of Drumgold's conviction and incarceration, then any trial of the municipal and supervisory claims must be limited to that specific type of misconduct.

      None of the cases of alleged past police misconduct cited by the Plaintiff, at any time in this litigation, concern allegations of police officers giving money to witnesses and such acts not being disclosed to the office of the District Attorney.  In fact, not one of the cases relied upon by the Plaintiff even concern the broader allegation of police officers making promises, rewards or inducements of any nature to witnesses and such acts not being disclosed to the office of the District Attorney.  Plaintiff's cases of alleged past police misconduct concern allegations of offering false testimony, non-disclosure of material exculpatory evidence and witness intimidation.  Therefore, these cases are irrelevant and must be excluded from use at trial pursuant to Federal Rule of Evidence 402.

      The Plaintiff offers only one case from which he alleges a scenario where officers offered money and other inducements to witnesses in order to secure their testimony, but this case does not stand up to scrutiny and must also be excluded as being irrelevant.  In support of his municipal and supervisory claims in his complaint, Drumgold cites to the investigation of Willie Bennett for the murder of Carol Stuart and states, "[t]he police offered witnesses money and other inducements in an attempt to coerce them to testify falsely against Bennett."  (See Plaintiffs Complaint, ¶ 32(e))  However, the "Press Release" of the U.S. Department of Justice,

9

dated July 10, 1991, which the Plaintiff intended to introduce into evidence at trial in support of his case and the Willie Bennett matter makes no mention of any such allegation of misconduct. The Defendants have argued against the admissibility of this document due to the fact that it reports only from the point of view of those individuals making complaints against the investigating officers of the Boston Police Department and fails to include any investigation or information that may tend to rebut the assertions of the complainants.  Insofar as the U.S. Attorney's Press Release adopts the unrebutted assertions of the complaining individuals, the document still makes no mention in its conclusions of allegations of officers giving money or other inducements to witnesses to secure their cooperation or testimony.  (See U.S. Attorney's Press Release, dated July 10, 1991, p. 19.)  Therefore, the Willie Bennett case must be deemed irrelevant, and the Plaintiff must be precluded from making any use of it or the Press Release at trial pursuant to Federal Rule of Evidence 402.

## Conclusion

For the reasons stated herein, Defendants request that the Court rule in limine that Plaintiff's cited cases of alleged past police misconduct are not relevant, be excluded from the evidence of this case, and may not be the subject of question or comment by Plaintiff at trial or the any retrial on the question of causation.

Respectfully submitted,
By Defendants City of Boston and
Francis M. Roache
Through their attorneys,

 /s/ John P. Roache
John P. Roache (BBO# 421680)
Patrick J. Donnelly (BBO# 651113)
Roache & Associates, P.C.
66 Long Wharf
Boston, Massachusetts 02110
Tel.: (617) 367-0330

Date:   June 2, 2008

CERTIFICATE OF SERVICE

    I, John P. Roache, hereby certify that on June 2, 2008, I served a copy of the above upon counsel of record by filing with the ECF/Pacer Case Management System.

                                            /s/ John P. Roache_____
                                            John P. Roache