UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAWN DRUMGOLD )<br>Plaintiff, )<br> )<br>v. )<br> )<br>TIMOTHY CALLAHAN, FRANCIS M. )<br>ROACHE, PAUL MURPHY, RICHARD )<br>WALSH, and THE CITY OF BOSTON, )<br>Defendants. ) | C.A. NO.: 04-11193NG |

**DEFENDANT TIMOTHY CALLAHAN'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION FOR ENTRY OF FINAL JUDGMENT**

**OR IN THE ALTERNATIVE, FOR AN ORDER DEFINING
THE SCOPE OF RETRIAL**

I.  INTRODUCTION

As this Court is aware, in this case the Plaintiff, Shawn Drumgold alleged that his conviction for the murder of Tiffany Moore in October 1989 was obtained by misconduct on the part of the named individual defendants, former Boston Police detectives assigned to the homicide unit at the time of the murder and prosecution. Specifically, Drumgold alleged that Walsh pressured eyewitnesses into testifying that Drumgold was seen leaving the location of the shooting and conspired with other police officials to withhold exculpatory evidence, and that Callahan also pressured witnesses into testifying falsely, and failed to disclose exculpatory evidence (promises, rewards and inducements allegedly provided to witnesses in exchange for their testimony, and the medical condition of eyewitness Mary Alexander).

At trial, the jury heard testimony of Tracie Peaks and her mother, Betty Peaks, concerning Tracie's identification of Drumgold as being one of the men she saw passing

in front of her house immediately following the shooting, and their claims that this testimony was false, manufactured in response to police pressure. The jury also heard the testimony of Lola Alexander concerning her claim that she informed police personnel that her daughter, Mary Alexander, suffered from a brain tumor and attendant perception deficits at the time of the murder and/or the time of trial. Finally, the jury heard the testimony of Rickie Evans, who testified that his testimony at trial was perjured, and was manufactured by Evans in discussions with Callahan and other police personnel; that outstanding criminal cases pending against Evans "disappeared" in exchange for his perjured testimony; that Evans was provided housing in a hotel for months on end; and that Evans was given cash payments by Callahan on request.

    The trial was bifurcated, so that the jury was first asked to determine whether the individual defendants violated Drumgold's rights to a fair trial. The jury was given a special verdict form, which set forth the separate allegations as to each recanting witness and each defendant. The jury reached a unanimous verdict at this phase, returning verdicts in favor of both individual defendants as to (1) the allegations that Tracie Peaks was coerced into identifying Drumgold and testifying falsely against him, (2) that they were aware of Mary Alexander's medical condition and withheld it from the prosecution, and (3), as to Ricky Evans, that his testimony was manufactured by the defendants, that his cases were favorably disposed of in exchange for his perjurious testimony, and that evidence of his housing was withheld from the prosecution. The jury found in favor of Drumgold on the claim that Callahan gave a "substantial amount" of money to Evans.

    Based on this finding, the Court ordered the trial to proceed to the issue of proximate cause and damages. The jury was provided with the entire trial transcript from

the 1989 criminal trial, and Drumgold testified in his own behalf about his experiences while incarcerated. The jury retired to deliberate, but informed the Court that they were unable to reach an unanimous verdict as to proximate cause. The Court gave the jury a modified *Allen* charge, but the jury ultimately declared itself hopelessly deadlocked. The Court then declared a mistrial.

At issue is the extent to which the case should be retried to a new jury[1]. Callahan moves for entry of final judgment, pursuant to Fed.R.Civ.P. Rule 54(a), on the claims that he violated Drumgold's right to a fair trial with regard to the trial testimony of Tracie Peaks, on claims that he withheld exculpatory evidence regarding the health of Mary Alexander, with regard to the allegations that he procured false trial testimony by Ricky Evans, and on claims that he withheld exculpatory evidence regarding Evans' housing and criminal cases. Callahan also requests entry of judgment in his favor with regard to claims that he conspired to deprive Drumgold of his constitutional rights to a fair trial.

In the alternative, Callahan respectfully submits that any retrial should be limited to the one outstanding issue left for resolution by the jury's verdict: whether Callahan's actions in providing money to Ricky Evans violated Drumgold's right to a fair trial.

## II.   ARGUMENT

### A. The Jury's Unanimous Verdict In Defendants' Favor In Phase One Deliberations Is Conclusive On Those Issues.

The doctrine of collateral estoppel bars retrial of the claims that were resolved in the Defendants' favor – that is, the claims related to Tracie Peaks, Mary Alexander, and in large measure, Ricky Evans. Under the federal law of issue preclusion, a final

---

[1] Callahan files this Memorandum at the Court's invitation, but does not waive his motion for a directed verdict or for judgment notwithstanding the verdict, made at the close of plaintiff's case, defendants' case and upon receipt of the jury's declaration of deadlock.

3

judgment on the merits of an action precludes the parties from relitigating in a second trial claims that were brought to final judgment in the first trial  See Biggens v. Hazen Paper Co., 111 F.3d 205, 209 (1st Cir. 1999).  See also Restatement (Second) of Judgments, § 27 (1982) (when an issue of fact or law is actually litigated, and determined by a valid and final judgment, that judgment is conclusive in a subsequent action between the parties whether on same or different claims).

Final judgment was reached by the jury's answers to special questions numbers 1, 2, 3 (a),(b) and (d), and 4 in phase one of this trial:  the judgment is final, in that no element survived to be considered as part of the jury's consideration of the issues.

The issue with regard to Callahan's giving Evans money is not final:  the jury's answer in Phase One was a prerequisite to reaching the issues of proximate cause and damages, but certainly not a final judgment on the constitutional question.  Because that question was preliminary to the ultimate finding of liability, final judgment on that issue was not reached, and it remains to be relitigated.  See Restatement (Second) of Judgments, § 28 (exception to collateral estoppel where party against whom preclusion is sought could not have obtained review).

    **2.**     **Any Retrial Must Be Limited To The Issues Left Undecided By The Jury.**

    **a.**     **The Court has discretion to order a partial retrial**

Fed.R.Civ.P. Rule 59(a) gives the court authority to allow a new trial "to all or any of the parties and on all or part of the issues..."  The Supreme Court formulated the test to determine the appropriate scope of a new trial when part of the original jury verdict is defective in Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 594 (1937).  The Court held that a partial retrial is appropriate where the issues are "distinct

4

and severable," but not favored in cases where "the [issue to be retried] ... is so interwoven with that of liability [or the other claims] that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to denial of a fair trial." Id., at 499.

This case, and the issues presented at Phase One, turned exclusively on questions of credibility, and the jury's findings were unequivocal. None of the issues with these witnesses overlap. Since the issues as to Tracie Peaks, Mary Alexander and, in large measure, Ricky Evans have been completely decided, as argued *supra*, and since retrial on the remaining issue may be had without revisiting the entire complaint, the scope of retrial should be so limited.

      **b.**    **No infirmity in the jury verdict requires a complete retrial.**

In civil rights actions, courts have ordered complete retrials in cases where the first jury was presented with a complex set of factual disputes and the verdict ultimately reached by them bore hallmarks of improper compromise. See See generally J. Moore 6A, Moore's Federal Practice ¶ 59.06 (2nd ed. 1979). See also Pryer v. C.O. 3 Slavic, 251 F.3d 448 (3d Cir. 2001) (finding abuse of discretion where partial retrial on issue of damages because of complexity of facts presented and inference of jury compromise); Atkins v New York City, 143 F.3d 100 (2nd Cir. 2000) (new trial ordered on all issues due to vigorously contested issues of liability and lopsided damages award). Compare, Wheatley v. Beetar, 637 F.2d 863 (2nd Cir. 1980) (partial retrial appropriate where liability is amply supported by the evidence) and Olsen v. Correiro, 1995 WL 62101 (D.Mass.) (partial retrial where verdict did not reflect possible jury compromise).

It is significant, and dispositive on this issue, that the jury in this case showed no

indication of having reached a compromise verdict. In fact, the jury's announcement of deadlock demonstrates that it did <u>not</u> compromise. There is no indication whatsoever that the unanimous verdict rendered by the jury in their response to the special questions was in any way infirm. Because those unanimous decisions were clearly the result of careful deliberation by a responsible jury, those decisions should not be subject to retrial.

Nor is there support in the case law for retrial in circumstances such as these. Rather, the cases in which a plaintiff's allegations are presented anew to a second jury all involve cases where the issues – almost exclusively issues of liability and damages – are so intertwined that retrial on only the "defective" issue is illogical or patently unfair.

In <u>Olsen v. Correiro</u>, 1995 WL 62101 (D.Mass. 1996), Judge Saris thoroughly reviewed the issue of retrial in the context of a wrongful conviction case (where a new trial was ordered on damages after the Supreme Court's decision in <u>Heck v. Humphrey</u>). The Court surveyed the various circuit courts' evaluations of the <u>Gasoline Products</u>' "interwoven" test, in the absence of a compromise verdict, and noted that complete retrials were ordered where a plaintiff would need to demonstrate facts on a defendant's liability to justify an award of punitive damages or where an error or invalidity of the jury's decision on one part of the verdict could have "infected" its reasoning on another part. In contrast, the Court noted that where a special verdict form was used, "error with respect to one issue will ordinarily not constitute reason to retry an issue that was separately determined." <u>Id</u>., at *4.

Even in cases where a jury compromise was suspected, the courts have not ordered retrial of all parties or all claims. In <u>Pryer</u>, for example, the plaintiff alleged that he was subjected to a brutal series of beatings by prison guards, and brought suit against

6

nineteen individual defendants.  The Court dismissed several guards on its own initiative, and a total of eight guards remained for the jury's consideration.  Ultimately, the jury found in favor of four individual defendants, and returned verdicts against the remaining four.  It awarded plaintiff a nominal damage award of $1.00, and no compensatory or punitive damages.  The trial court limited retrial to damages, and instructed the jury that liability had been found against the four officers.  It did not order retrial of those officers who had been exonerated.

      The Court of Appeals held that a retrial on all issues (including liability) was required because the testimony adduced at the first trial revealed a "tangled or complex fact situation,"  one where plaintiff's injuries "could be attributed to the guards' reasonable use of force, their excessive use of force, his own actions, or some combination of these several factors."  251 F.3d at 455.  Under the circumstances, foreclosing the remaining four defendants from contesting liability was error.  The appellate panel also examined the damage award - a nominal award, and no compensatory or punitive award, despite clear evidence of substantial injury - and concluded "the verdict most likely represented a compromise among jurors with differing views on whether the correctional officers were liable."  Id. at 457.   However, and notably, neither the trial court nor the Court of Appeals ordered retrial of the exonerated officers.

       Similarly, in Wheatley v. Beetar, 637 F.2d 863 (2nd Cir. 1980), a civil rights case where liability was bifurcated from damages, the Court of Appeals remanded the matter for a new trial on damages alone after a jury found for plaintiff on excessive force allegations, but awarded only $1.00 in damages.  The Court noted that although "the new

7

trial on damages will necessarily require introduction of some of the evidence which came in during the liability stage… that fact does not give this court power or reason to reverse sua sponte the separate finding of liability which was amply supported by the evidence…" Further, since the original trial had been bifurcated, and the jury had unanimously returned a verdict on liability, the Court found there was no need for a new trial on those issues: "If the trial had not been bifurcated a remand for retrial of the entire case might be permissible on the theory that the jury erred or compromised on liability…[h]ere, however, the jury found liability before it ever went on to the separate trial of the damages issue…[defendant] has had a fair trial on the issue of liability and it would be grossly unfair …to require a retrial of the question of defendant's culpability…" Id., 637 F.2d at 867 (citations omitted).

As in Wheatley, the jury here was given special questions to answer, and made individual findings on the questions presented at Phase One. There can be no good faith argument that the jury's verdict was infirm. Nothing in the answers to special questions (or in the jury's questions to the Court during deliberations) reflects confusion, bias, prejudice, or other flaw in the deliberative process that would even remotely suggest jury error requiring a new trial. Instead, the jury's questions reflected a concerted and dedicated effort to fairly and completely consider the issues presented.

    3.    The "Ricky Evans" issues can be separated.

Drumgold's claim with regard to Ricky Evans was that his testimony at the criminal trial was perjured, and the product of intentional fabrication by Callahan. The jury rejected this claim. Drumgold also claimed that Evans was induced to testify falsely because his criminal charges were disposed of favorably to him. The records do not

accord with this claim, and the jury rejected it. Drumgold also claimed that by housing Evans in a hotel, he was induced to lie. Callahan did not dispute that Evans was housed, and testimony was given by a former assistant district attorney that the prosecutor's office was aware of the housing situation. The jury considered this carefully (as its question to the Court demonstrates), and rejected the claim. The jury apparently believed that Callahan gave Evans money – a fact that Callahan himself testified to – and did not so inform the prosecution.

These claims are distinct, and a retrial on the sole issue of whether by giving Evans money, Callahan caused a violation of Drumgold's right to a fair trial, can be had without relitigating the issues already rejected by the first jury.

Since the elements can be considered separately, the Court should decline to order retrial of the issues already decided, and should instead defer to the careful decisions reached by the jury.

III. **CONCLUSION**

For the reasons stated herein, the Court should enter judgment for Callahan on the issues with regard to Tracie Peaks, Mary Alexander, Ricky Evans (as to issues in verdict slip answers 3 (a), (b) and (d)), the conspiracy issue (Count II of the Complaint). Without waiving his previous motions for judgment to enter in his favor, Callahan alternatively moves the Court to limit the scope of retrial as argued herein: namely, whether Drumgold can prove that Callahan violated his rights to a fair trial by withholding information from the prosecution that he gave substantial amounts of money to Ricky Evans, and that Drumgold's conviction was the proximate cause of that violation.

Respectfully submitted:

**Defendant,**

**TIMOTHY CALLAHAN,**
By his attorneys,

/s/            Mary            Jo            Harris_____

Mary Jo Harris (BBO# 561484)
Morgan, Brown & Joy, LLP
200 State Street
Boston, MA 02109
(617) 523-6666

William M. White
William White & Associates
One Faneuil Hall Marketplace
Boston, MA 02109
(617) 720-2002

Certificate of Service

I, Mary Jo Harris, hereby certify that a copy of the within document was served upon all counsel of record by filing same via ECF on June 2, 2008.

/s/ Mary Jo Harris