UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAWN DRUMGOLD )<br>Plaintiff, )<br> )<br>v. )<br> )<br>TIMOTHY CALLAHAN, FRANCIS M. )<br>ROACHE, PAUL MURPHY, RICHARD )<br>WALSH, and THE CITY OF BOSTON, )<br>Defendants. ) | C.A. NO.: 04-11193NG |

**DEFENDANT TIMOTHY CALLAHAN'S OPPOSITION
TO PLAINTIFF'S MEMORANDUM RE: SCOPE OF RETRIAL**

Defendant Timothy Callahan hereby opposes Plaintiff's request that the Court order a full retrial or alternatively, retrial of all issues regarding Ricky Evans, and further, opposes Plaintiff's request that the partial finding of a constitutional violation be permitted to stand.

This case was tried to a verdict after seven weeks of testimony, and as the jury's queries to the Court during both phases of their deliberations illustrates, the jury took its responsibility very seriously. There can be no legitimate claim that the jury's verdict was influenced by improprieties. There can also be no legitimate demand that the issues this jury unanimously and finally decided must be retried. As demonstrated by the special verdict form, agreed to by both Plaintiff and Defendants, the issues presented to this jury for their consideration were separate and distinct. Indeed, the Jury Charge Conference of April 3, 2008 illustrates that <u>all</u> parties, and the Court, by agreeing to submit eleven separate questions to the jury in Phase I, recognized that claims made as to the testimony offered by Tracie and Betty Peaks, Lola Alexander, and Ricky Evans were completely

1

separate, and even within the testimony of Ricky Evans, the issues were distinct (thus, the extended colloquy on April 3 with regard to the four issues pressed with Evans: the hotel, his criminal cases, his testimony, and the money issue).

Although this case presented novel issues of constitutional law for the Court and counsel, the jury was asked to perform the most basic fact finding function: was the testimony of Tracie and Betty Peaks, Lola Alexander, and Ricky Evans credible? Clearly, the jury found they were not. Any retrial should respect these findings, and the second jury should only be asked to answer the question left outstanding: by giving Ricky Evans a sum of money, did Timothy Callahan violate Plaintiff's right to a fair trial.

**1.       The Jury's Findings In Favor Of Callahan In Phase I Should Stand.**

Plaintiff argues that the Court should disregard all the findings of the jury in this case, and order a complete retrial of all issues against all defendants. This argument should be disregarded.

The holding of Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494 (1931) provides ample support for the proposition that the jury's unanimous verdict should remain undisturbed. Gasoline Products counsels that questions that are "distinct and independent" may be subject to separate retrials. Here, the allegations of police misconduct resting on the testimony of Tracie and Betty Peaks and Lola Alexander – issues that hinged exclusively on the credibility of these three witnesses – were decisively dismissed by the jury. These issues were not "inextricably interwoven" with the other evidence presented to the jury, except in Plaintiff's theory of conspiratorial police corruption, a theory he failed to prove.

2

Plaintiff's argument is circular: he claims he should be permitted a complete retrial because the proximate cause issue "starts with an inquiry as to whether or not Walsh and Callahan conspired together..." Plaintiff's' Memorandum at p. 5. Respectfully, that question was been resolved in Walsh and Callahan's favor when the jury concluded that they did <u>not</u> conspire, and there is no basis to suggest the jury erred in so finding. By unanimously finding in Defendants' favor, the jury concluded that the Peaks were lying in this case – and that conclusion is buttressed by the fact that Steven Rappaport, Plaintiff's 1989 trial counsel, testified that he had a number of conversations with them in 1989, and not once did either claim police coercion. While Plaintiff's case may be weaker on retrial if he cannot make multiple allegations of misconduct, that weakness is not a valid basis to order a complete retrial in the absence of any showing of juror error. Simply put, the first jury's verdict means that the trial testimony of Tracie Peaks and Mary Alexander was not infected by police misconduct. There is no "confusion" threatened by presentation of the 1989 trial, and no reason why Callahan should be foreclosed from arguing to the second jury that Plaintiff's conviction was the result of evidence presented at that trial, including the eyewitness identifications of Peaks and Alexander[1].

Plaintiff's argument that he must be able to present evidence against Walsh and Callahan in order to proceed against the City is also fatally flawed. The Court bifurcated the trial in recognition that some evidence may be admissible against the City, but not against the individual defendants. Just so, if the second jury were to find against

---

[1] The Court can determine that the Peaks and Alexander issues are severable, because as a practical matter, they are now indistinguishable from the other 1989 trial witnesses. The second jury would be no more confused by the Peaks and Alexander testimony than it would be by consideration of Willie Simms, Eric Johnson, Tanoi Curry or any of the other witnesses in the criminal trial record.

Callahan, the second jury could hear a municipal liability case that could include evidence of the suppression of Plaintiff's statement[2].

2. **Retrial Of The Single Question Upon Which The First Jury Deadlocked Does Not Require Retrial Of The Various Allegations Made With Respect To Ricky Evans.**

The second jury will be asked to consider whether Callahan's undisputed actions in providing money to Ricky Evans was an error of constitutional magnitude, and whether that action was a proximate cause of Plaintiff's conviction. This inquiry can readily be determined by the second jury without its having to reconsider the Plaintiff's other allegations as to Evans – that he was housed (a fact that is not disputed), that his cases were disposed of favorably to him (a fact disputed, and found in Callahan's favor), and that his testimony was manufactured by Callahan (a fact disputed, and also wholly rejected by the jury). The second jury can be instructed by the Court that Evans was put in a hotel by Callahan and that this fact was known to the District Attorney's office. That instruction is sufficient to put Evans' "story" before the second jury.

Plaintiff's claims about Evans' testimony were several, and severable. While the strength of Plaintiff's arguments about Evans is greater if he can argue that Evans was prompted to lie by the deliberate efforts of Callahan to manufacture testimony, that argument is incidental to Plaintiff's claims that exculpatory evidence about money was withheld from him. Plaintiff argues that these issues are "interrelated," but does not explain how – because in fact, they are not[3]. Certainly, Plaintiff can argue that money

---

[2] Plaintiff also argues that he should be permitted to retry the rejected theories of conspiracy and misconduct with regard to the Peaks and Alexanders in order to prove compensatory and punitive damages. Punitive damages are not recoverable against a municipality, City of Newport v. Fact Concerts, 453 U.S. 247 (1981) and in any event, this Court has already declined to instruct on punitive damages, a ruling to which that the Plaintiff did not raise objection.
[3] The cases cited by Plaintiff in support of his position are inapposite, so much so that they provide no meaningful guidance here. For example, Franchi Const. Co., Inc. v. Combined Ins. Co. of America, 580

4

given to Evans was a reward, and that failure to disclose it was a violation of his rights (though of course, the second jury could also believe that the money given by Callahan was de minimus and did not affect the 1989 trial). See U.S. v. Bagley, 473 U.S. 667 (1985). His argument that the money ought to have been disclosed is not dependent upon the separate claims that Evans' testimony was manufactured.

Plaintiff explicitly and repeatedly declined to put his actual innocence to the test in this case. He wants the second jury to infer his innocence, by claiming police manufactured the testimony against him. There is no good faith justification to try the issue again, after the first jury unanimously voted to reject it.

### 3. The Court Should Disregard Plaintiff's Arguments Concerning The First Jury's Deliberations.

Plaintiff argues that the first jury compromised in reaching its verdict, and recites the "reported jury split" (without providing the "report" itself) in support of his claim. Plaintiff's Memorandum at p. 10. This is improper. Fed.R.Evid. Rule 606(b) prohibits jury testimony about its deliberations; thus, hearsay "reports" of what the jury thought or did are deserving of no consideration whatsoever. See Cont'l Cass. Co. v. Howard, 775 F.d 876, 885 (7th Cir. 1985) (suggesting that post verdict testimony should be admissible only where "all jurors agree that through inadvertence, oversight or mistake the verdict announced was not the verdict on which agreement had been reached."). See also Munafo v. Metro. Trans. Auth'y, 381 F.2d 99, 108 (2nd Cir. 2004) (rejecting proffered

---

F.2d 1 (1st Cir. 1988) deals with retrial on a quantum meruit claim, where the damages hinged on the parties' dealings as a whole. The Court concluded that under those circumstances, it was impossible to separate the individual items of work from the appropriate award of damages. Likewise, in Payton v. Abbott Labs, a case involving a claim of DES injuries, the question of damages necessarily hinged on which of the plaintiff's claimed injuries were attributable to the drug produced and sold by the defendant or to some other cause, and thus evidence of plaintiff's medical history could not be extricated from evidence on damages. 780 F.2d 147, at 153, 155. No such intertwined issues of liability and damages are presented here. In fact, the theory of liability Plaintiff pursued in this case was starkly defined by witness, and even within witness (as with Evans), by topic.

affidavits of two jurors, and noting that "courts must proceed with great caution to avoid giving the secret thought of one the power to disturb the expressed conclusions of twelve…" (internal citations omitted)).  There is no reason to disturb the unanimous jury vote on the questions they answered in Defendants' favor.

    4.    **The Court's Instruction On Callahan's Duty To Disclose Was Correct.**

Callahan opposes Plaintiff's motion for a new trial on the grounds that the Court mis-instructed the jury when it informed them that Callahan's disclosure of Evans' housing to ADA Paul Connolly.  The Court's instruction was correct.

The Court instructed the jury as follows:

> It is sufficient for an officer to report information to the DA's office rather than to any particular D.A. so long as you find that the plaintiff has proven two things by a fair preponderance of the evidence.  One thing is about the content of the report and the second about its timing.  About the content, the officers have an obligation to disclose to the D.A. any and all evidence which you find to have been material exculpatory as to Shawn Drumgold or his case.  As to the timing, the officers had an obligation to disclose to the D.A. any information prior to the Shawn Drumgold trial.

Thus, this jury found that Callahan disclosed <u>any and all evidence</u> about Evans' housing to the District Attorney's office, <u>and</u> that he did so prior to the Plaintiff's trial.  That disclosure satisfies the obligation the Constitution imposes on Callahan as an investigating officer, and to hold otherwise – to hold that, as some extension of the continuing duty to disclose, Callahan had a legal duty to repeatedly inform each prosecutor about his interactions with Evans, as suggested by Plaintiff's Memorandum at page 21-22, would be to create a legal obligation that has never before been set forth.  The cases relied upon for support for this concept do not do so:  in <u>Jones v. Chicago</u>, the exculpatory "street files" evidence was withheld from the prosecution deliberately and in its entirety.  <u>See</u> 856 F.2d 985, ___ (7th Cir. 1988).  Likewise, in <u>Steidl v. Fermon, et al.</u>,

6

494 F.3d 623, 630 (7th Cir. 2007) the police defendants did not claim that the exculpatory information was disclosed to the prosecution team; they argued that <u>Brady</u> did not support a civil rights violation against police investigators at all, under any circumstances.

     Plaintiff's suggestion that police investigators should be charged with disclosing exculpatory information serially to prosecutors working together in one office in order to satisfy their constitutional obligations is unprecedented.  Essentially, Plaintiff argues that Callahan ought to have realized that Connolly, despite having full awareness of the Evans' housing issue, failed to share that information with Beauchesne, and that Beauchesne thus failed to disclose it to Plaintiff's counsel.  Plaintiff thus would impose the burden for assessing, sharing and disclosing exculpatory information on the police investigator, and not on the District Attorney's Office.  This burden has been rejected explicitly by the Supreme Court in <u>Kyles v. Whitley</u>, 514 U.S. 419, 438 (1995) (rejecting the concept that the police, and not the prosecutors, are the final arbiters of the government's obligation to ensure fair trials) and is an illogical inversion of the duties and responsibilities applicable to each function.

> The prosecutor must ask such lawyer's questions as whether an item of evidence has 'exculpatory' or 'impeachment' value and whether such evidence is 'material.'  It would be in appropriate to charge police with answering these same questions, for their job of gathering evidence is quite different from the prosecution's task of evaluating it.  This is especially true because the prosecutor can view the evidence from the perspective of the case as a whole while police officers, who are often involved in only one portion of the case, may lack necessary context.  To hold that the contours of the due process duty applicable to the police must be identical to those of the prosecutor's Brady duty would thus improperly mandate a one-size-fits-all regime.

<u>Jean v. Collins</u>, 221 F.3d 656, 660 (4th Cir.2000)(en banc).

The Court's instruction was proper, and therefore, the jury's verdict in Callahan's favor on this issue should remain intact.

## **CONCLUSION**

For the reasons stated herein, and in Callahan's previously filed Motion for Final Judgment or alternatively, to limit the scope of retrial, Callahan requests judgment enter in his favor on each final verdict issued by the jury.

8

**Defendant,**
**TIMOTHY CALLAHAN,**
By his attorneys,

/s/ Mary Jo Harris_____
Mary Jo Harris (BBO# 561484)
Morgan, Brown & Joy, LLP
200 State Street
Boston, MA 02109
(617) 523-6666

William M. White
William White & Associates
One Faneuil Hall Marketplace
Boston, MA 02109
(617) 720-2002

## CERTIFICATE OF SERVICE

I, Mary Jo Harris, counsel for defendant Timothy Callahan, hereby certify that I have filed the within document on all counsel of record, listed below, by filing with the ECF Pacer System on June 12, 2008.

/s/ Mary Jo Harris

**For Plaintiff Shawn Drumgold,**
Michael W. Reilly, Esq.
Tommassino & Tommasino
Two Center Plaza
Boston, MA 02108-1904

**For Defendants City of Boston and Francis M. Roache,**
John P. Roache, Esq.
The Law Offices of John P. Roache
66 Long Wharf
Boston, MA 02110

**For Defendant Richard Walsh,**
Hugh R. Curran, Esq.
Bletzer & Bletzer, P.C.
300 Market Street

**For Plaintiff Shawn Drumgold,**
Rosemary Curran Scapicchio, Esq.
Four Longfellow Place, Suite 3703
Boston, MA 02114

Brighton, MA 02135