# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAWN DRUMGOLD,<br>    Plaintiff,<br><br>v.<br><br>TIMOTHY CALLAHAN, et al.,<br>    Defendants. | )<br>)<br>)<br>)    Civil Action No. 04cv11193-NG<br>)<br>)<br>) |

GERTNER, D.J.:

## MEMORANDUM RE: RULE 54(b)
February 24, 2011

The defendant Timothy Callahan ("Callahan") moves this Court to direct a separate and final judgment to be entered pursuant to Rule 54(b) of the Federal Rules of Civil Procedure with regard to the jury verdict against him on individual liability and damages. He also requests a stay of the proceedings as to the other defendants pending his appeal on individual liability. The plaintiff has assented to this motion.[1]

The defendant Richard Walsh ("Walsh") moved for the same (document #299), which was initially denied on March 22, 2009. With this order, I reverse that determination.

I **GRANT** the motion for a separate a final judgment to be entered pursuant to Rule 54(b) on the jury's findings of liability and damages with respect to Callahan, and the jury's findings of no liability with respect to Walsh.

Plaintiff Shawn Drumgold ("Drumgold") sued certain police officers, the police commissioner, and City of Boston under 42 U.S.C. § 1983 and Mass. Gen. Laws ch.12, § 11I for violations of his rights under the Massachusetts and United States Constitutions arising from his wrongful conviction and fifteen-year imprisonment for first-degree murder. Plaintiff alleges that

---

[1] The Court allowed the motion originally but without findings adequate to Rule 54(b) and without the entry of a "Separate and Final Judgment." This memorandum and the attached judgment is intended to remedy the situation.

defendant police officers, Timothy Callahan and Richard Walsh deliberately manipulated witnesses and withheld exculpatory information during his criminal trial (the "individual liability case"). Plaintiff also argues that the City and the Police Department facilitated this misconduct by failing to correct or punish similar misconduct for years and by failing to adequately train police officers (the "supervisory liability case").

The case against the individual defendants was first tried in the fall of 2008. The trial of the individual defendants was bifurcated, the jury initially asked to determine whether the individual defendants violated Drumgold's rights to a fair trial, to be followed by a trial on damages if the jury so held. The jury returned a verdict on behalf of the individual defendants on all claims but one, finding that defendant Callahan gave a "substantial amount" of money to witness Ricky Evans without disclosing that fact to the prosecution. Defendant Walsh, however, received a finding of no liability on all counts. The case against Callahan proceeded to the damage phase, but the jury was unable to reach a verdict.

In September-October 2009, the case was retried but only with respect to the issue involving defendant Callahan and the witness, Ricky Evans. The 2009 jury rejected all claims but, like the 2008 jury, found against Callahan on the issue of whether he withheld information from the district attorney regarding Evans' housing and the fact that he had given money to Evans. The subsequent damages trial resulted in a verdict of $14,000,000.00. With the concurrence of the parties, the Court then decided that supervisory and municipal liability issues were to be tried to a different jury, at a date to be determined. The parties then sought a separate and final judgment under Rule 54(b) with respect to the verdicts rendered in the individual liability cases.

Rule 54(b) provides that where there are multiple parties, the Court "may direct entry of a final judgment as to one or more, but fewer than all . . . .parties" but only if the Court makes certain findings. First, "the ruling underlying the proposed judgment must itself be final in the sense that it disposes completely either of all claims against a given defendant or of some discrete substantive claim or set of claims against the defendants generally." Maldonado-Denis v. Castillo-Rodriguez, 23 F. 3d 576, 579 (1st Cir. 1994). Second, the Court must "trac[e] the interrelationship between, on the one hand, the legal and factual basis of the claims undergirding the proposed judgment (i.e., the jettisoned claims), and on the other hand, the legal and factual basis of the claims remaining in the case." Id. (Citations omitted). The bottom line concern is for "sound judicial administration," avoiding the possibility that "a later determination at trial of the remaining claims could render an intervening decision by the court of appeals moot or require the appeals court to decide the same issue twice." Daniel v. American Bd. of Emergency Medicine, 212 F.R.D. 134, 137 (W.D. N.Y. 2002).

Defendants argue that all issues raised with regard to Walsh and Callahan have been resolved by the jury's verdicts and further, that there is no overlap between the individual liability and City liability theories. I agree.

For example, one of the central issues raised by the individual liability case was the scope of the officer's obligations under Brady v. Maryland, 373 U.S. 83 (1963), an issue that does not overlap with the issues to be considered in the supervisory liability case. In that regard, the Court was obliged to determine how to define the Brady obligation of a police officer for the purposes of a section 1983 claim, and how that definition differs from or is the same as the Brady standard used by an appellate court in reviewing a conviction. These issues, and many more, were

reflected in the Court's instructions (docket # 376 in the liability trial, and document #393 in the damages trial) and in its evidentiary rulings.[2]

In a docket entry, the Court noted that the proximate cause standard in a chapter 1983 constitutional tort case "should be meaningfully different from the harmless error standard applied to direct attacks on criminal convictions," March 28, 2008, (citing Brandon L. Garrett, "Innocence, Harmless Error, and Federal Wrongful Conviction Law," 2005 Wis.L. Rev. 35, 65-75 (2005). The harmless error standard considers when a constitutional violation so undermines a conviction that it should be set aside. The bar is set relatively high because of the state's interest in finality. In the section 1983 context, the community's interest in finality is no longer of concern, however, because the underlying conviction has already been vacated.

Reflecting these different settings, the Court defined "materiality" for the purposes of a chapter 1983 Brady violation as, inter alia, the failure to disclose evidence "of a type that could undermine confidence in the outcome of a trial." The Court expressly cautioned that the standard was "not whether a defendant would more likely than not receive a different verdict if the evidence had been disclosed" but "whether without the evidence he would receive a fair trial, understood as a trial resulting in a verdict worthy of confidence." (See Instructions II.A.(3), document #376.)

Likewise, the Court defined "causation," which involves the relationship between the constitutional violation and the injury, as, inter alia, factual cause, whether "the act was a

---

[2] The Court provided the parties with its written instructions in advance, invited them to evaluate not only the content of the instructions, but its formatting, the order of the instructions, even the language. After the parties did so, the Court read from the document and provided the jurors with a copy along with the evidence. See documents # 376 and 393.

substantial factor in bringing about the injury" and legal cause -- whether "the injury is a reasonably foreseeable consequence of the act." See Instructions IV.A. The Court also instructed on concurring causes -- that the causation standard is met, "if [the violation] concurs with some other cause acting at the same time, which in combination with it contributed to Shawn Drumgold's conviction."[3] See Instructions I.A.(5).

In addition, issues reflected in the legal instructions, there were a host of evidentiary questions -- the significance of the Drumgold trial transcript, the admissibility of prior rulings of the Superior Court of the Commonwealth in connection with the decision to vacate Drumgold's conviction, the scope of the evidence with respect to the underlying charge, whether evidence not admitted in the original case should be considered, etc.

The supervisory liability trial will not relitigate these issues. Moreover, the liability of the individual defendants will be fully resolved during this appeal. Thus, separate and final judgment is appropriate and will be entered with respect to both Walsh and Callahan pursuant to Rule 54(b), Fed. R. Civ. Pro.

**SO ORDERED.**

**Date: February 24, 2011**     /s/ Nancy Gertner
                                **NANCY GERTNER, U.S.D.J.**

---

[3] In addition, during the damages trial, the defendant presented evidence that this exculpatory information had been turned over to a prosecutor involved in a different case, in which Evans was the victim, but not to the prosecutor involved in the Drumgold prosecution, in which Evans was a witness. That evidence raised issues with respect to intervening cause, namely, that the prosecutor in the first case had received the Brady information, but did not turn over the evidence he had received from the defendants to the prosecutor in U.S. v. Drumgold. Accordingly, I instructed, inter alia: "A defendant is responsible for all the consequences in [the chain of causation] unless the chain is somehow broken by a significant intervening event that is unforeseeable to the defendant." See document # 393, Instructions II.B.