UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHAWN DRUMGOLD, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-11193-NG |
| | ) | |
| TIMOTHY CALLAHAN, et al., | ) | |
|     Defendant. | ) | |

GERTNER, D.J.:

### MEMORANDUM AND ORDER RE: ATTORNEYS' FEES AND COSTS
August 18, 2011

**I.     INTRODUCTION**

The plaintiff, Shawn Drumgold ("Drumgold"), moves for an award of attorney's fees and costs against defendant Timothy Callahan ("Callahan") after a successful trial in which the jury concluded that Callahan, through his conduct during criminal proceedings against Drumgold in 1989, violated the plaintiff's right to a fair trial. After serving fourteen years in prison for murder, Drumgold's Motion for a New Trial was granted, and the government nolle prossed his case. In the instant case, brought pursuant to 42 U.S.C. § 1983, the jury determined that Callahan intentionally or recklessly withheld exculpatory evidence, that this evidence was material, and that its withholding was the legal cause of Drumgold's conviction. It awarded $14,000,000.00 in damages to the plaintiff. On February 24, 2011, the Court entered a Separate and Final Judgment as to Defendant Callahan. The entry of Judgment was then followed by a series of post trial motions and a notice of appeal by Defendant Callahan, which motions have been denied in a Memorandum and Order Re: Post-Trial Motions (document # 457), issued this day.

As the prevailing party in his claim against Callahan, the plaintiff now seeks attorneys' fees and costs, pursuant to 42 U.S.C. § 1988(b) (the Civil Rights Attorney's Fees Award Act of 1976), 42 U.S.C. § 1983, and Fed. R. Civ. P. 54(d).

## II.  BACKGROUND[1]

On August 29, 1988, Drumgold was charged with the murder of Tiffany Moore, a 12 year old girl killed ten days earlier in the midst of gang warfare in Boston. Callahan, a detective for the Boston Police Department, was assigned to investigate the case. Prior to Drumgold's trial, which began in September of 1989, Callahan worked to secure the testimony of Ricky Evans ("Evans"), a young homeless man who had been the victim of another shooting also under investigation by Callahan. During this time, Callahan provided Evans with meals, cash, and a room at a local Howard Johnson's hotel, which according to Evans included an open expense account. Evans, in turn, offered crucial testimony that implicated Drumgold in Moore's murder; an account of the events of August 29th that placed Drumgold and his codefendant, Terrance Taylor ("Taylor"), carrying guns, near the scene of the crime. After he was found guilty of first-degree murder by a jury on October 13, 1989, Drumgold received a sentence of life in prison without parole.

Fourteen years after Drumgold began his sentence, his attorneys interviewed several witnesses who recanted their testimony, including Evans. During a contested 2003 hearing on Drumgold's Motion for a New Trial, Evans testified that Callahan gave him information about the crime and about Drumgold, including descriptions of Drumgold's clothing and car, information which he could not have otherwise known. He also disclosed that Callahan had

---

[1] For a more full account of the facts of this case, the procedural background and the trial testimony, see Memorandum and Order: Re Post Trial Motions, August 18, 2011 (docket # 457).

provided him with meals and lodging in the months preceding the trial. None of this information had been provided to Drumgold's defense counsel. Based on all of the evidence (including the disclosures about Evans), the Court granted Drumgold's motion for a new trial; Drumgold was released and shortly thereafter, the government nolle prossed the charges.

Drumgold filed the present suit against Callahan, as well as Police Commissioner Micky Roach ("Roach"), officers Paul Murphy ("Murphy") and Richard Walsh ("Walsh"), and the City of Boston (the "City") on June 3, 2004, for violations of his state and federal constitutional rights pursuant to 42 U.S.C. § 1983 and Mass. Gen. Laws ch.12, § 11I. He claimed that Callahan and Walsh deliberately withheld exculpatory evidence and manipulated witnesses, and that the City and the Boston Police Department facilitated the officers' misconduct through their failure to adequately investigate and discipline such behavior.

During fall of 2008, the case against the individual defendants was tried for the first time. The jury ruled in favor of the defendants on all claims except one, the allegation that Callahan had given Evans a "substantial amount" of money without disclosing this fact to the prosecution. In the second phase of the trial which aimed to assess damages against Callahan, the jury was unable to reach a verdict. The case was re-tried in October of 2009, but only against Callahan and only with respect to the Evans' issues, resulting in a verdict in favor of the plaintiff. The jury ultimately found Callahan liable for recklessly or deliberately withholding evidence that he had provided Evans with housing and meals prior to Drumgold's trial, and determined that his failure to reveal this evidence was the legal cause of Drumgold's conviction. As the prevailing party in his claim against Callahan, the plaintiff now seeks an award of attorneys' fees and costs to compensate members of his counsel for their work during both trials.

## III. DISCUSSION

The Court has discretion to award reasonable attorney's fees in a civil rights case. Lewis v. Kendrick, 944 F.2d 949, 954 (1st Cir. 1991). "The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). Here, the plaintiff requests a sum of $2,305,585.00 for legal fees, plus $100,399.18 for costs and expenses paid out-of-pocket by members of counsel over the course of both trials. Pl. Mot. Attorney Fees and Costs (document #441). The defendant challenges the fees on the grounds that they are untimely, excessive, based on time records lacking the required degree of specificity and details, and include more than the single successful claim. As described below, I award $1,613,846.50 in reasonable attorneys' fees and $51,631.93 in costs.

### A. Hourly Rates

#### 1. The Lodestar Figure

The First Circuit uses the lodestar method to evaluate whether the requested fee is reasonable. Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984). The Court calculates fees by multiplying the number of hours productively spent on litigation by a reasonable hourly rate, as determined by prevailing market rates in light of an attorney's skill and experience. Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir. 2008).

Once the lodestar is calculated, the fee may be adjusted in consideration of a number of factors, including "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the

fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Doran v. Corte Madera Inn Best Western, 360 F. Supp. 2d. 1057, 1061 (N.D. Cal. 2005).

### a. Reasonable Rate

The reasonableness of attorney fees is determined by the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984). The plaintiff has calculated the sum of $2,305,585.00 based on the following rates for his attorneys: $500 per hour for Rosemary Curran Scapicchio ("Scapicchio"), a trial attorney with more than twenty years of experience who has represented Drumgold since 1991; $500 per hour for Michael W. Reilly ("Reilly), a partner attorney with more than thirty-two years of experience in litigation; and $90 per hour for work completed by Amy Codagone while she worked for Scapicchio as a third-year law student, and $190 per hour for work completed after she was admitted to the bar in Massachusetts in November of 2010. See Scapicchio Aff. (document #445); Codagone Aff. (document #446); and Reilly Aff. (document #447).

The rates requested are consistent with both the rates of trial lawyers in the greater Boston area who have comparable experience and expertise, see Pichette Aff. 5, 7 (document #442-1), Feinberg Aff. 4-6 (document #442-2), and Sinsheimer Decl. (document #442-3), and the fees awarded in other recent cases. In Mr. Sinsheimer's declaration, for example, he describes in great detail, not only his knowledge of the prevailing rates for civil rights work in

Boston, but his unique knowledge of Scapicchio's skill and experience.[2]  His office was located in the same building; they used each other as "sounding boards" for "serious and complex litigation matters."  In addition, Sinsheimer indicates that he was generally familiar with the Drumgold case, which he believes -- and I agree -- was an extraordinarily difficult one.  See Fronk v. Fowler, 22 Mass. L. Rptr. 366, 2007 WL 1130381, at *5 (Mass. Super. May 21, 2007) (finding that Wilmer Hale hourly rates of $450-575 for partners, $195-360 for associates, and $110-195 for paralegals over four years of litigation, while high, were reasonable in the context of the litigation).

In addition, I find that although plaintiff's counsel Rosemary Scapicchio is not a § 1983 expert, she has unquestionably brought unique skill and experience to this case.  She has represented Drumgold since 1991, including the Motion for a New Trial in Drumgold's criminal case, which resulted in his release and was based, in part, on the same factual and legal issues as the instant case.  She represented him on his direct appeals and his federal habeas corpus claim.  She is also a skilled trial lawyer, trying over 100 state court felony criminal cases, including murder, armed robbery, trafficking, rape, and conspiracy trials.  And she has litigated complex civil cases, including a wrongful death case with a settlement of over $1,700,000.00 and a § 1983 claim (with Mr. Reilly) with a jury verdict of $1,565, 618.  To suggest that this hourly rate is not appropriate for her expertise and her work in this case is simply absurd.

Reilly is likewise a skilled litigator, in state and federal criminal cases, as well as state and federal civil cases.  In addition, he has briefed and argued over thirty appellate cases in federal and state appellate courts.  I find that he is fully entitled to the hourly rate he claims.

---

[2] Compare Sinsheimer's affidavit in this case with the one that was submitted in Chao v. Ballista, no. 07-10934 (document #182-3).

Finally, with respect Codagnone, I find that the rates are also reasonable, distinguishing between her rates when she was a law student ($90) and when she passed the bar ($190). To the extent that the defendant has provided the Court with affidavits suggesting a lower hourly figure, I do not credit them. They are inconsistent with the cases in this session and with cases in this District.

**B.     Number of Hours**

Plaintiff claims that his attorneys devoted time to the present case in the following hourly amounts: 2,535.95 hours for Scapicchio; 2,052.6 hours for Reilly; and 99 hours in total for Codagone, 75 of which she worked before becoming a lawyer (at a $90 hourly rate), and 24 of which she completed afterward (at a $190 hourly rate). In assessing the number of hours for which counsel is owed compensation, I will adjust the requested number of hours mentioned above downward by 30% to reflect the unsuccessful claims.

**1.     The Nature of the Underlying Documents**

Callahan claims that the fee application should be stricken in its entirety because it is not supported by contemporaneous time records. The principle case on point is <u>Grendel's Den</u>, 749 F. 2d 945, in which counsel had absolutely no contemporaneous records. They reconstructed their time on the basis of their usual practices, the documents they had filed, and the amount of time such documents take to draft. The Court found that "the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance." <u>Id.</u> at 952. In the instant case, there is absolutely nothing to indicate that they were *not* contemporaneous. Counsel have represented that they kept contemporaneous records and that their submissions reflected a

summary of their claims. The issues with which the court was concerned in Grendel's Den do not apply. I will not strike this petition.

    **2.    Degree of Success**

The Court in Hensley found that the "important factor of the results obtained" may warrant an upward or downward adjustment of the lodestar figure. Hensley, 461 U.S. at 430 (internal quotation marks and citation omitted). In Riverside, the Court noted that a judge should consider "whether or not the plaintiff's unsuccessful claims were related to the claims on which he succeeded, and whether the plaintiff achieved a level of success that makes it appropriate to award attorney's fees for hours reasonably expended on unsuccessful claims." Riverside v. Rivera, 477 U.S. 561, 568 (1986) (citing Hensley, 461 U.S. at 435). In the present case, plaintiff requests attorneys' fees for time devoted to unsuccessful claims against defendants Callahan, Walsh, and the City.

In his memorandum in support of his motion, Drumgold counters that the $14,000,000 award in damages resulting from the case -- the largest jury award for a wrongful conviction in the history of the District of Massachusetts -- attests to counsel's "extraordinary level of success." Pl.'s Mem. In Support of His Motion for Costs and Attorneys' Fees (document #442). The plaintiff argues that his unsuccessful claims against Walsh arose from the exact same legal arguments -- a denial of his right to a fair trial under 18 U.S.C. § 1983 -- and the exact same incident -- Drumgold's 1989 prosecution -- as his successful claim against Callahan. Hensley, 461 U.S. at 434.

I disagree. The Walsh case focused on different evidence, different witnesses, and a different theory of liability. The claim was that Walsh had manipulated certain witnesses and

failed to disclose information pertaining to them. The jury rejected the claim. In calculating the lodestar amount, the Court "can segregate time spent on certain unsuccessful claims, eliminate excessive or unproductive hours, and assign more realistic rates to time spent." Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 337 (1st Cir. 1997) (internal citations omitted).

In assessing a reasonable number of hours, I will reduce the amount requested by the plaintiff by thirty percent to avoid compensating counsel for time devoted to preparing for and litigating the failed claims against Walsh. The plaintiff's successful claim against Callahan derived from the former police officer's contact with Evans. The witnesses and evidence necessary to prove this claim were different than those used by counsel in litigating the plaintiff's claims against Walsh and the City. The thirty percent reduction in hours reflects the necessity for a skilled attorney to examine the case as a whole but recognizes the failed claims.

I will go no further than a thirty percent reduction. Given the complexity of § 1983 law, as evidenced by the huge docket in this case, given the passion with which the claim was defended (approaching intemperance on both sides, myriad motions to strike, motions to disqualify counsel, etc.), and given the nature of the victory, a greater reduction would be unfair.

### 3. Compensation for Two Trials

I will award fees to plaintiff's attorneys for their work in both the first trial of 2008 and the subsequent trial in 2009. A prevailing party involved in a case where there are two trials is entitled to legal fees from the first trial, unless the conduct of plaintiff's counsel was responsible for the necessity of two trials. O'Rourke v. City of Providence, 235 F.3d 713, 737 (1st Cir. 2001). The jury in the first trial was unable to reach a verdict in assessing damages against

Callahan, necessitating a re-trial. Plaintiff's counsel was not responsible for the mistrial in any way.

### 4. Timeliness of the Petition

The defendant claims that this attorneys' fees petition is untimely filed and should be stricken in its entirety. A motion for attorneys' fees must be filed within 14 days of the entry of judgment. Fed. R. Civ. P. 54(d)(2)(B)(I). Prior to recent amendments to the Federal Rules of Civil Procedure, the deadline for filing post-trial motions (Fed. R. Civ. P. 50(b), 52(b), and 59) would ordinarily coincide with the 14-day deadline for a motion for attorneys' fees. Because timely-filed post-trial motions suspend the finality of judgment, the deadline for a motion for attorneys' fees would generally be tolled until the resolution of the post-trial motions. The finality of judgment is automatically affected by post-trial motions because these motions seek to amend or alter final judgment. Osterneck v. Ernst & Whinney, 489 U.S. 169, 174 (1989); Weyant v. Okst, 198 F.3d 311, 314 (2d Cir. 1999) (citing Fed. R. Civ. P. 59 Advisory Committee Note (1995)). See also Roque-Rodriguez v. Lema Moya, 926 F.2d 103, 106 (1st Cir. 1991). While this Circuit has not explicitly addressed the issue of whether the motion for attorneys' fees time limit is tolled pending the resolution post-trial motions, other circuits toll the motion for attorneys' fees because post-trial motions "operate to suspend the finality of the district court's judgment." Bailey v. Riverside, 414 F.3d 1023, 1025 (9th Cir. 2005). See also Weyant, 198 F.3d at 315 ("And because the finality of judgment is negated by the timely filing of a motion under Rule 50(b), 52(b), or 59, we conclude that a Rule 54(d)(2)(B) motion is timely if filed no later than 14 days after the resolution of such a Rule 50(b), (52(b), or 59 motion."); Members First Fed. Credit Union v. Members First Credit Union of Fla., 244 F.3d 806, 807 (11th Cir.

2001) (holding that "because the finality of judgment is effectively postponed by the timely filing of a motion under Rule 59," the deadline for filing a motion for attorneys' fees is tolled until the post-judgment motion is resolved).

However, while the general rule is that timely-filed post-trial motions extend the deadline for a motion for attorneys' fees, this case is unique because of the 2009 amendments to the Federal Rules. In 2009, the deadline for filing post-trial motions was extended from 10 to 28 days. As a result, the 14-day deadline for filing a motion for attorneys' fees will now almost always expire prior to filing of any post-trial motions. This change in the Federal Rules creates uncertainty about the deadline for filing a motion for attorneys' fees when post-trial motions are filed after that initial 14-day deadline. While attorneys' fees were due March 10, the post trial motions did not have to be filed until March 24.

Here, Drumgold's motion for attorneys' fees was filed after the initial 14-day deadline, but prior to the resolution of Callahan's post-trial motions (which were finally resolved on August 18, 2011). There are three ways in which this issue can be resolved:

(1) I can deny Drumgold's motion for attorneys' fees and find that such motions must be filed within 14 days of judgment unless post-trial motions are filed by the 14-day deadline. That would pivot Drumgold's rights on whether the defendant uses the full 28 day period now allowed by the rules or choose to file earlier.

(2) I can allow Drumgold's motion for attorneys' fees and find that such motions can be filed within 14 days after the resolution of timely-filed post-trial motions, even if the post-trial motions were filed after the initial 14-day deadline for filing a motion for attorneys' fees.

(3) I can allow Drumgold's motion for attorneys' fees and find that even though the 14-day deadline passed, it is excusable because of the uncertainty created by the recent changes in the Federal Rules, an approach that also makes sense.

I choose options (2) and (3). I find that Drumgold's motion for attorneys' fees was timely-filed because Callahan's post-trial motions suspended the finality of judgment, thereby negating the initial 14-day deadline.[3] This holding is thus in line with the original purpose of the 14-day limitation to "minimize the need for piecemeal appeals." Weyant, 198 F.3d at 314 (citing Fed. R. Civ. P. 54 Advisory Committee Note (1993)).

While there is some merit to Option 1 (Callahan's preferred ruling), I decline to apply it. The overarching rule is that a motion for attorneys' fees "is timely filed if filed no later than 14 days after the resolution of [post-trial motions]." Weyant, 198 F.3d at 315. See also Miltimore Sales, Inc. v. Int'l Rectifier, Int., 412 F.3d 685, 692 (6th Cir. 2005). In fact, in Miltimore, the court recognizes that "the absent-minded or negligent prevailing attorney might fail to file the [attorneys' fee] application, but will receive a reprieve by virtue of his opponents filing a [post-trial] motion." Id. While Drumgold's attorney may have been "absent-minded or negligent" in allowing the initial 14-day deadline of March 10, 2011 to pass, once Callahan's post-trial motions suspended the finality of judgment, the initial deadline was no longer relevant and Drumgold's fee application was not untimely.

This approach also promotes judicial efficiency because it minimizes the likelihood that the prevailing party will need to file multiple motions for attorneys' fees, first within 14 days of

---

[3] While it is most efficient for the prevailing party to wait to file a motion for attorneys' fees until after the resolution of post-trial motions, this will generally be impossible because the prevailing party will not know prior to the initial 14-day deadline whether any post-trial motions will be filed.

judgment and again after post-trial motions.  The plaintiffs' fee petition would look very different if I were to allow post-trial motions in whole or in part.  The defendant's arguments about failed claims, and whether counsel should be compensated for them, depends entirely upon the ultimate resolution of the post trial motions.  And were I to set aside the verdict, as the defendant requested, there would not be an attorneys' fees petition; the plaintiff would not be a "prevailing party."  This holding is thus in line with the original purpose of the 14-day limitation to "minimize the need for piecemeal appeals."  Weyant, 198 F.3d at 314 (citing Fed. R. Civ. P. 54 Advisory Committee Note (1993))

As an alternative, I also adopt option (3).  Even if Drumgold's motion for attorneys' fees was indeed untimely under the rule, I can extend the deadline after it has expired if I find that Drumgold failed to act because of "excusable neglect." Fed. R. Civ. P. 6(b).  Excusable neglect could be attributed to the uncertainty of the law created by the recent changes in the Federal Rules.  In addition, during a May 17, 2011, status conference, after final judgment had entered (on February 24, 2011) and before the defendant had filed post trial motions (on May 24, 2011), I expressly instructed Drumgold to file a motion for attorneys' fees by May 24, 2011.  I understood that as of the time of that status conference, the 14 day period for the motion had passed, but I concluded that it made no sense for plaintiff's to file a fee petition unless they understood what they were facing.  Accordingly, I find the filing of this petition to be timely.

### C.     Costs

The plaintiff requests a sum of $100,399.18 for costs and expenses paid out of pocket by members of counsel in preparing for and litigating both trials.  This amount includes depositions, court reporter payments, travel expenses, fees for the use of online services such as Westlaw and

Pacer, and payments for both expert witnesses and private investigators. Of this sum, plaintiff requests $72,602.81 for work associated with Scapicchio, and $27,796.37 for work associated with Reilly.

The defendant argues that the plaintiff should not be awarded costs for their experts and private investigators. Fees and costs are recoverable only if authorized by contract or statute. See Ashker v. Sayre, 2011 WL 825713, *4 (N.D. Cal. 2011). While the Civil Rights Attorney's Fees Award Act as amended specifically allows the award of expert fees for actions under 42 U.S.C. § 1981 or 1981(a), it does not include § 1983. Id.; 42 U.S.C. § 1988(c) ("In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."). I must therefore conclude that courts are not authorized to award expert fees for actions brought under § 1983. I will subtract the fees of $34,138.00 to Dr. Michael Lyman; $1,500.00 to Dr. Michael Li; and $1,650.00 to Professor Feldman.

Similarly, monies paid to private investigators are not set forth as compensable costs under 28 U.S.C. § 1920 and are thus not recoverable in a § 1983 suit. See Tinch v. City of Dayton, 199 F. Supp. 2d 758, 770 (S.D. Ohio 2002). I will subtract $9,974.25 for the fees of two private investigators (Jay Groob/American Investigative Services ($7,047) and Keller Investigations ($2,927.25)).

IV. **CONCLUSION**

Plaintiff's Motion for Attorney Fees and Costs (document #441) is **GRANTED IN PART** and **DENIED IN PART**. Accordingly, I hereby **AWARD** $1,613,846.50 in reasonable attorney fees and $51,631.93 in costs, for a total of **ONE MILLION, SIX HUNDRED SIXTY-**

**FIVE THOUSAND, FOUR HUNDRED SEVENTY-EIGHT AND 43/100 ($1,665,478.43)**

**DOLLARS** to the plaintiff.

The fees and costs shall be disbursed as follows:

**Rosemary Curran Scapicchio:**
    Attorney's Fees:    $887,582.50
    Costs:    $26,890.56

**Amy Codagone:**
    Attorney's Fees:    $7,854.00

**Michael W. Reilly:**
    Attorney's Fees:    $718,410.00
    Costs:    $24,741.37

**SO ORDERED.**

**Date: August 18, 2011**    */s/ Nancy Gertner*
    **NANCY GERTNER, U.S.D.J.**