UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                            )
SHAWN DRUMGOLD,             )
           Plaintiff,       )
                            )   Civil Action No. 04-11193-PBS
        v.                  )
                            )
TIMOTHY CALLAHAN,           )
           Defendant.       )
_____)
```

### MEMORANDUM AND ORDER

January 14, 2014

Saris, U.S.D.J.

## I. INTRODUCTION

After the First Circuit vacated a jury award of $14 million, plaintiff, Shawn Drumgold, returns to this Court requesting a full retrial of this § 1983 action, in which he alleges that the defendant, a police officer, withheld exculpatory evidence that he supplied lodging, meals, and cash to a crucial government witness in the plaintiff's 1989 murder trial. After review of the parties' submissions and the First Circuit's opinion, the Court will conduct a partial retrial limited to the defendant's liability for the provision of lodging and meals, causation, and damages.

## II. BACKGROUND

The Court will summarize background information here; for a

more exhaustive description of the procedural and factual circumstances of the case, see <u>Drumgold v. Callahan</u>, 707 F.3d 28, 32-38 (1st Cir. 2013).

In the fall of 1989, a jury convicted the plaintiff of murdering twelve-year-old Tiffany Moore, caught by a stray bullet during a gang-related shooting in Boston. The state court sentenced Drumgold to life without parole. In 2003, a Massachusetts Superior Court judge granted Drumgold's motion for a new trial. The Commonwealth declined to re-try the case. The following year, Drumgold filed this civil action claiming constitutional violations under 42 U.S.C. § 1983 against the City of Boston and three police officers. Relevant to this action, Drumgold claimed that Callahan withheld certain exculpatory evidence related to Ricky Evans, a key witness in the 1989 prosecution. Drumgold alleges that Callahan provided Evans, who was homeless at the time, with lodging, meals, and substantial amounts of money in order to secure Evans's testimony implicating Drumgold in Moore's death.

The case went to trial in 2008 before now-retired Judge Nancy Gertner. The first jury found that Callahan withheld evidence about supplying Evans with "substantial" cash but did not withhold evidence about providing Evans with shelter and

food.[1] The jury deadlocked on whether Callahan's actions caused Drumgold's conviction and the trial judge declared a mistrial. Over Callahan's objection, the case was fully retried in 2009, again before Judge Gertner. The second time around, the jury's findings seemed to flip: the second jury found that Callahan *did* withhold information about Evans's hotel room and meals, but that he only gave Evans $20 in cash benefits.[2] The retrial jury went

---

[1] The 2008 special verdict form asked:

(1) Has the Plaintiff, Shawn Drumgold, proven by a preponderance of the evidence that Defendant Timothy Callahan violated his right to a fair trial by withholding exculpatory evidence from prosecutors, manufacturing evidence, and/or obtaining false statements regarding Ricky Evans being housed at a hotel and provided with meals?

(2) Has the Plaintiff, Shawn Drumgold, proven by a preponderance of the evidence that Defendant Timothy Callahan violated his right to a fair trial by withholding exculpatory evidence from prosecutors, manufacturing evidence, and/or obtaining false statements regarding Ricky Evans being given substantial amounts of money?

The jury answered "no" to question one and "yes" to question two.

[2] The 2009 special verdict form asked:

(1) Has the Plaintiff, Shawn Drumgold, proven by a preponderance of the evidence that Defendant Timothy Callahan intentionally or recklessly withheld exculpatory evidence from prosecutors regarding Ricky Evans being housed at a hotel and provided with meals?

(2) Has the Plaintiff, Shawn Drumgold, proven by a preponderance of the evidence that Defendant Timothy Callahan intentionally or recklessly withheld exculpatory evidence from prosecutors regarding money given to Ricky Evans?

3

on to conclude that these actions caused Drumgold's conviction, and awarded the plaintiff $14 million in damages (one million for each year he spent in prison).

Callahan appealed, arguing, *inter alia*, that the trial judge granted too broad a retrial and that he was entitled to a new trial due to error in the jury instructions on causation. The First Circuit concluded that the trial judge did not abuse her discretion in ordering a full retrial, but agreed that erroneous jury instructions necessitated a new trial. Drumgold, 707 F.3d at 33. The First Circuit vacated the judgment in Drumgold's favor and remanded the case to the District Court.

### III. DISCUSSION

The First Circuit's opinion did not delineate the scope of this retrial. The plaintiff moves for a full retrial of the pertinent issues: (1) whether Callahan withheld evidence that he supplied lodging and meals to Evans, (2) whether Callahan withheld information that he provided money to Evans, and (3) whether the withheld evidence proximately caused Drumgold's conviction and subsequent incarceration. The defendant proposes a partial retrial limited to the first and third issues.

A. Standard for Partial Retrial

---

The jury answered "yes" to both question one and question two. The special verdict form then asked the jury to determine how much money Callahan gave to Evans by marking either "$20" or "more than $20," and the jury selected the former.

4

A partial retrial is appropriate where it "clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." Gasoline Prods. Co. v Champlin Refining Co., 283 U.S. 494, 500 (1931). While the general practice is to retry the full spread of pertinent issues, Gasoline Products established that separate claims involving shared sets of facts can be separated on retrial, a principle later codified in Federal Rule of Procedure 59(a), permitting a new trial on "all or part of the issues." Fed. R. Civ. Pro. 59(a); see also Olsen v. Correiro, 1995 WL 62101, at *2-4 (D. Mass. Feb. 3, 1995) (summarizing the development of partial retrial doctrine in case law). The trial judge is afforded "broad power" to decide whether to grant a full or partial retrial. Sprague v. Boston and Maine Corp., 769 F.2d 26, 28 (1st Cir. 1985); see also Drumgold, 707 F.3d at 47 (noting that whether "the issues [a]re too 'interwoven' to retry one case separately" is "a question that is uniquely within the district court's expertise").

B. Lodging and Meals

As described above, the 2008 jury determined that Callahan did not withhold evidence that Evans was housed at a hotel and compensated for his meals, but concluded that Callahan did withhold evidence that he provided Evans with money. After it became clear that a retrial would occur, Callahan opposed

retrying these questions. Callahan requested a partial retrial
limited to the issue of causation (i.e., whether withholding
information about the provision of money to Evans was a legal
cause of Drumgold's conviction). Def.'s Mem. for Entry of Final
J., at 4-9 (Docket No. 306). The trial judge denied this request
and instead held a full retrial of both the hotel and the money
issues. In her order on the scope of the retrial, the trial judge
reasoned that a full retrial made better sense, since the jury
would have to hear about "all aspects" of Callahan's interactions
with Evans in order to evaluate proximate cause and damages.
Order: Re - Scope of the Retrial at 4 (Docket No. 313).

    The First Circuit majority opinion agreed that a retrial
limited to causation was not feasible:

> The retrial jury could not have conducted a meaningful
> causation inquiry without rehearing the entirety of the
> 2008 trial evidence involving Evans in order to
> understand both the dynamics of his relationship with
> Callahan and his role in Drumgold's criminal trial.
> Having heard that evidence, the retrial jury inevitably
> would have drawn its own conclusions as to the nature
> and amount of benefits that Callahan gave Evans, and
> would have been confused if prevented from returning a
> verdict reflecting those conclusions. While juries are
> frequently instructed to consider evidence for one
> purpose and not others, see Fed. R. Evid. 105, we share
> the district judge's concern that such an instruction
> would have posed an unacceptably high risk of confusion
> in this case . . . .

707 F.3d at 46-47 (internal citation omitted). The dissent
disagreed with the trial judge's decision to order a full
retrial, but appears to have agreed that causation alone would

6

have been unworkable. See id. at 63-64 (Lynch, J., dissenting)
("[T]he court *should have asked* the second jury to determine
whether Callahan had deliberately suppressed evidence that he
gave Evans money . . . [and, if the jury found the sum material,]
whether the withholding of that information caused Drumgold's
injury.") (emphasis added); id. at 66 (observing that "it may
have risked confusion to ask the second jury to evaluate
causation on the money question without also evaluating violation
on the money question"). Notably, the dissent characterized the
"interwovenness of violation and causation" as a "common retrial
issue." Id. at 66 (citing Bohack Corp. v. Iowa Beef Processors,
Inc., 715 F.2d 703, 709 (2d Cir. 1983)).

       With this background in mind, the Court must determine the
scope of the retrial of the retrial. This time, Callahan does not
ask for a "causation only" retrial, and agrees that a partial
retrial would include both "whether Callahan failed to disclose
his provision of lodging to Evans, and whether that nondisclosure
violated Drumgold's constitutional rights." Def.'s Mem. Regarding
Scope of Retrial at 6 (Docket No. 487). Drumgold's request for a
full retrial encompasses reopening Callahan's liability on the
lodging issue. Pl.'s Mem. Regarding Scope of Retrial at 8-10
(Docket No. 488). As the First Circuit's majority and dissent
both noted -- and the parties seem to agree -- it would risk
confusion to ask a jury to evaluate causation without evaluating

the underlying violation. Accordingly, the retrial jury will examine both liability and causation on the lodging and meals question.

C. Cash Payments

To review, the 2008 jury found that Callahan withheld evidence that he gave "substantial amounts of money" to Evans. Both parties declined the judge's invitation to clarify the meaning of "substantial," leaving ambiguity as to the jury's interpretation of the term. See Drumgold, 707 F.3d at 46. The 2009 jury found that Callahan provided Evans with "money" and chose "$20" as the amount. The First Circuit concluded that this amount was not material, since it is "too small to have made a difference" in Drumgold's criminal trial. Id. at 42.

The defendant submits that the 2009 jury rendered a complete verdict on the cash payment question, and thus it should not be retried. The plaintiff, as stated above, urges a full retrial of both matters (lodging and meals as well as cash benefits). Because I find that the money issue is distinct from, and not interwoven with, the issue of lodging and meals, the Court will not retry the money question.

Crucial to my assessment is the specificity of the jury's determination. When a special verdict form is used, as it was in the 2009 civil trial, "error with respect to one issue will ordinarily not constitute reason to retry an issue that was

8

separately determined." <u>Crane v. Consolidated Rail Corps.</u>, 731
F.2d 1042, 1050 (2d. Cir.) (Friendly, J.), <u>cert. denied</u>, 469 U.S.
854 (1984); <u>see also</u> <u>Drumgold</u>, 707 F.3d at 65-66 (Lynch, J.,
dissenting). The 2009 jury marked "yes" when asked if Callahan
provided Drumgold with cash, and marked an exact dollar amount,
$20, instead of selecting the broader "more than $20" option. The
precision of the jury's conclusion is self-evident, and the
structure of the special interrogatories allows the Court to
compartmentalize this finding from the hotel and meals finding,
without causing confusion and uncertainty, satisfying the
<u>Gasoline Products</u> standard. 283 U.S. at 500.

The plaintiff might seek to introduce information about the
cash payment of $20 to the new jury. While the Court need not
resolve the issue now, one approach would be to instruct the jury
that this amount, taken alone, is not material. <u>See</u> <u>Drumgold</u>, 707
F.3d at 45; <u>see also</u> Fed. R. Evid. 105 (a court may admit
evidence for one purpose but not another, instructing the jury to
restrict the evidence to its proper scope). The Court awaits
briefing on the issue and will resolve it before trial.

### IV. ORDER

The Court will retry the following issues: whether Callahan
suppressed exculpatory evidence regarding whether Ricky Evans was
housed at a hotel and provided with meals, whether the evidence
withheld was material, whether it proximately caused the

9

plaintiff's damages, and the amount of those damages. The Court will not retry the issue of whether Callahan intentionally or recklessly suppressed evidence regarding cash payments. Trial is set to begin May 5, 2014 at 9:00 AM. **<u>SO ORDERED</u>**.

        <u>/s/ PATTI B. SARIS</u>
        Patti B. Saris
        Chief United States District Judge